**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x
                                                   :

In re                                       :     **Chapter 11**
                                                   :

**METROPARK USA, INC.,**                    :
                                                   :     **Case No. 11-_____ (RDD)**

           **Debtor.**                     :

                                                  :
-------------------------------------------------------------- x

**DECLARATION OF CYNTHIA HARRISS**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

I, Cynthia Harriss, declare, pursuant to section 1746 of title 28 of the United States Code, that:

1.      I am the Chief Executive Officer of the above-captioned debtor (the "Debtor", "Metropark" or the "Company"). I am authorized to submit this Declaration in support of the Debtor's chapter 11 petition and the first day pleadings described herein. I am familiar with the Debtor's day-to-day operations, businesses and financial affairs.

2.      I was named Chief Executive Officer in June 2010. Prior to that time, I served for approximately four years at Gap, Inc. I served 2 years as President of Gap Brand North America after serving for 2 years as President of Gap Outlet Division. Before that, I served as President of Disneyland Resort for five years. I attended St. Louis University from 1970-72.

3.      On the date hereof (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), as well as certain motions and other pleadings (collectively, the "First Day Pleadings"). I am authorized by the Debtor to submit this Declaration on its behalf in support of the First Day Pleadings.

4.      The First Day Pleadings are intended to enable the Debtor to operate effectively and efficiently within this chapter 11 case, as well as to avoid certain adverse consequences that might otherwise result from the commencement of this case. Among other things, the First

Day Pleadings are designed to meet the Debtor's goals of: (i) continuing its operations in chapter 11 with as little disruption and loss of productivity and value as possible; (ii) maintaining the confidence and support of its customers, employees, vendors and service providers; and (iii) establishing procedures for the smooth and efficient administration of this chapter 11 case. I have reviewed the First Day Pleadings, and it is my belief that the relief sought therein is necessary to: (a) avoid immediate and irreparable harm to, and ensure the uninterrupted operation of, the Debtor's businesses, and (b) maximize and preserve the value of the Debtor's chapter 11 estate.

5.      In my capacity as Chief Executive Officer, I am familiar with the Debtor's day-to-day operations, financial affairs, business affairs and books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge; (ii) my review of relevant documents; (iii) information supplied to me by other members of the Debtor's management team or professionals retained by the Debtor; or (iv) my opinion based on my experience and knowledge of the Debtor's operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

6.      Parts I through III of this Declaration provide an overview of the Debtor's businesses, capital structure, and the circumstances giving rise to the commencement of this chapter 11 case. Part IV summarizes the relief requested in each of the First Day Pleadings. Part V lists the schedules of information requested by Local Bankruptcy Rule 1007-2.

## I.

## THE DEBTOR'S BUSINESS

7.      Metropark was founded in 2004 to capitalize on the large Gen Y segment (the 25-35 year old customer) who had moved on from teen retailers, but were still looking for fashion-forward apparel and accessories. Through a multi-channel sales strategy, including sales through retail stores and e-commerce, Metropark caters to trendsetting 25-35 year old

customers by offering a unique and highly differentiated merchandise assortment introducing a "Fashion, Music, Art" philosophy into the marketplace.

## Background

8.     Since its founding in 2004, Metropark has grown rapidly from its four original store locations to approximately 70 stores in 21 states, in addition to its newly redesigned online retail presence at www.metroparkusa.com.  Metropark offers its customers a unique mix of premium quality apparel and accessories geared toward the 25-35 year old trendsetter.  The Metropark retail stores provide a unique experiential lifestyle shopping environment, including, style consultants, in-store events (e.g. live art installations, fashion shows and DJ performances) and a carefully edited inventory assortment of highly sought after brands with a strong offering from up and coming, fashion forward designers who deliver an authentic and culturally relevant mix of diverse brands to the customer.  The Debtor prides itself as the trusted destination for premium denim in the mall and a vehicle for artistic expression through its graphic tee shirts and accessories.

9.     The Debtor is incorporated in Delaware with its headquarters, distribution centers, and e-commerce site located in Los Angeles, California.  As of the Petition Date, the Debtor operates 4 retail stores in New York at the following mall locations: Palisades Center, Roosevelt Field, Smith Haven Mall and Walden Galleria. The Palisades Center location, in West Nyack, NY has been open for approximately 3 years, employs approximately 11 employees and is currently stocked with approximately $118,000 of the Debtor's inventory (at cost value).   In addition, the Debtor currently operates six stores in New Jersey and three stores in Connecticut.

## Sales Channels

10.     Retail.  The Debtor currently operates 69 retail stores in 21 states.  The average retail store leased by the Debtor is approximately 2,400-2,800 square feet.  For the fiscal year ending December 31, 2010, sales from the Debtor's retail stores accounted for approximately 94 percent of the Debtor's revenues.

3

11.     Internet.   The Debtor sells its products directly to its consumers through its internet site, located at www.metroparkusa.com.   In the first quarter of 2011, the Debtor launched its newly revamped internet site with many enhanced features and capabilities focused on engaging customers. This consumer friendly shopping experience includes the introduction of virtual sales associates who highlight recent trends, provide product recommendations and assist customers in shopping for outfits consistent with the Metropark philosophy.   The Debtor's website emphasizes their consumers' connection with social media and links the Metropark page with Twitter © and Facebook © and an interactive platform which enables the customer to "like" and "share" products with friends with a simple click.   Lastly, the Debtor's website and social media pages offer internet-only promotions, provide customers with the opportunity to sign up to obtain exclusive email-only offers, obtain internet-only promotions, and provide information about the Debtor's product lines and retail store locations.   For the fiscal year ending December 31, 2010, sales from the internet accounted for approximately 6 percent of the Debtor's revenues.

**Employees and Labor Matters**

12.     The Debtor currently employs approximately 815 employees, including 210 full-time employees and 605 part-time employees, none of whom are unionized.   Historically, the Debtor has enjoyed favorable relationships with its highly qualified and enthusiastic personnel. The Debtor believes that its labor relations are good, and it has not experienced a work stoppage.

**Properties and Assets**

13.     The Debtor's primary assets include inventory, contract rights, intellectual property rights, and accounts receivable for goods sold.   In addition, the Debtor leases approximately 70 retail stores in some of the best malls in the country, located in 21 states and 1 location in Los Angeles, California wherein the Debtor's headquarters, distribution center and e-commerce operations are located.

4

## II.

## CAPITAL STRUCTURE[1]

### Secured Debt

14.    On December 17, 2003, the Debtor (known at the time as Santa Barbara Street Asylum, Inc.) entered into certain Note Purchase Agreements (as amended from time to time, (the "Bricoleur Loans") between the Debtor and Bricoleur Capital Partners, LP and certain of its affiliates ("Bricoleur") in the aggregate amount of $4.5 million.  In accordance with the terms of the Bricoleur Loans, interest was paid quarterly.

15.    On August 15, 2006, the Debtor and Irwin Union Bank, F.S.B. ("Irwin Union") entered into a senior credit agreement pursuant to which the Debtor was provided approximately $4 million of secured indebtedness (the "Irwin Union Facility").  Concurrently therewith, Irwin Union and Bricoleur entered into a subordination agreement which provided for subordination of the Bricoleur Loans to the secured facility provided by Irwin Union.

16.    On or about April 1, 2008, the Irwin Union Facility was replaced with that certain Credit Agreement (the "Credit Agreement") among the Debtor and Wells Fargo Retail Finance, LLC ("Wells Fargo"), as administrative agent, collateral agent and swingline lender.  As of the Petition Date, the balance owed under the Credit Agreement was approximately $255,353.12[2] (the "Prepetition Obligations").

17.    Pursuant to that certain (i) Security Agreement and (ii) Intellectual Property Security Agreement, both dated April 1, 2008 (collectively, the "Security Agreements"), the Prepetition Obligations are secured by security interests in and liens on substantially all assets (the "Collateral"), including, without limitation, inventory, intellectual property, general

---

[1]    The summary of the loan document and security agreement set forth herein is qualified in its entirety by the documents themselves.  To the extent there is a discrepancy between the descriptions set forth herein and the documents, the documents control.

[2]    This amount is inclusive of $618,840.60 of obligation related to outstanding letters of credit, but does not include April interest, which has accrued as of the Petition Date.

1717500 v3/NY

intangibles, receivables, and certain other assets of the Debtor, and cash and proceeds of the foregoing.

18.      In January 2010, the board of directors formed a finance committee of independent directors to determine whether the Debtor could repay approximately $4.5 million of outstanding unsecured indebtedness under the Bricoleur Loans upon maturity, consistent with the terms thereof.  On or about the maturity date, January 31, 2010, the Bricoleur Loans were paid in full.

19.      The Debtor is also a party to that certain Note Purchase Agreement, dated March 21, 2011 (the "<u>Junior Credit Agreement</u>") among the Debtor and Bricoleur Capital Partners, LP, as second lien agent ("<u>Bricoleur</u>"), on behalf of itself and the lenders, including certain officers and directors of the Debtor (the "<u>Second Lien Lenders</u>").  As of the Petition Date, the balance owed under the Note Purchase Agreement was approximately $825,000.00 (the "<u>Second Lien Obligations</u>").  The Second Lien Obligations are secured by security interests in and liens on the Collateral (the "<u>Subordinate Liens</u>"), expressly subordinated to the security interests and liens of Wells Fargo pursuant to that certain Security Agreement, dated March 21, 2011 (the "<u>Second Lien Security Agreement</u>")..

20.      Wells Fargo and the Second Lien Lenders are party to that certain Subordination Agreement dated as of March 21, 2011 ("<u>Subordination Agreement</u>"), pursuant to which, among other things, the Subordinate Liens provided to the Second Lien Lenders pursuant to the Second Lien Security Agreement are subordinated to the Senior Liens provided pursuant to the Securty Agreements and subject in right and time of payment to the security interest of Wells Fargo.  Under Section 2.3(d) of the Subordination Agreement, in the event Metropark filed for bankruptcy, the Second Lien Lender agreed that, among other things: (i) Wells Fargo "may consent to the use of cash collateral or provide financing to [Metropark] on such terms and conditions and in such amounts as [Wells Fargo], in its sole discretion, may decide …;" (ii) ithe Second Lien Lender would not object to or oppose a sale or other disposition of any property

securing all or any part of the Senior Obligations free and clear of security interests under section 363 of the Bankruptcy Code; (iii) the Second Lien Lender will not assert any right it may have to "adequate protection" incidental to the use of cash collateral or the sale or disposition of any property securing the Senior Obligations; and (iv) the Second Lien Lender will not seek relief from the automatic stay without the prior written consent of Wells Fargo.

**Unsecured Debt**

21.     The Debtor owes its trade vendors approximately $8,807,558 as of April 30, 2011. These claims are for the delivery of goods and services to the Debtor. Finally, the Debtor leases all of its retail stores, for which approximately $2,507,439 is outstanding as of May 2, 2011.

**Recent Financial Information**

22.     The Debtor attained revenue of approximately $104 million in fiscal year 2010 (year ending December 31, 2010), which represents a decline from fiscal year 2009 revenue, which was approximately $114 million and a 15% decline from the Debtor's peak performance in fiscal year 2008 revenue, which was approximately $123 million. Current revenue projections for fiscal year 2011 (year ending December 31, 2011) are approximately $104 million with sufficient inventory and the same number of stores.

23.     The Debtor has suffered operating losses for the past 3 years. The operating loss in fiscal year 2010 was approximately $16.4 million. The operating loss in fiscal year 2009 was approximately $3 million. The operating loss in fiscal year 2008 was approximately $1.5 million. The operating loss for fiscal year 2011 is projected to be approximately $4.5 million.

24.     While the Debtor's sales per transaction and average dollars per unit sold have decreased since fiscal year 2008, for a variety of reasons discussed further in Section III below, the number of transactions the Debtor completed in fiscal year 2010 actually increased 8.4% from the Debtor's peak performance in fiscal year 2008. Moreover, the Debtor has experienced continued growth in its e-commerce sales from $2.5 million in fiscal year 2008 to $6.3 million in

2010, with increasing expectations for the future buttressed by the introduction of the Debtor's new website in the first quarter of 2011.

## III.

## EVENTS LEADING TO THE CHAPTER 11 CASE

25.    Several internal and external factors recently have severely impacted the Debtor's retail business, ultimately prompting the current liquidity pressures that precipitated the decision to commence this chapter 11 case.

### Market Conditions

26.    While Metropark's customer is less impacted by the dramatic decline in the U.S. housing market than more mature demographics, Metropark's customer was disproportionately affected by recent economic and social changes.  As a consequence of the macro economic recession in the Fall of 2008, the unemployment rate for consumers in their twenties approached 20% throughout 2009 and 2010.  When combined with an expansive overhaul of the credit card industry, a dramatic decline in credit availability and the virtual disappearance of interest rates on savings accounts, the 25-35 year old customers have curtailed their spending patterns.  These limitations have resulted in a notable change in consumer tastes toward value and promotions, a proliferation of fast fashion retail and a glut of premium denim at reduced price points which have impacted Metropark's product offerings and profit margins.

27.    It is well known that the Debtor is not the only retailer to struggle in the current economic climate, the most difficult downturn experienced in the United States in decades.  In fact, over the last couple of years, fashion retailers such as Eddie Bauer, Filene's Basement, Rock and Republic, Goody's Family Clothing, Loehmann's, Steve & Barry's, Mervyn's, Boscov's and Gottschalks have all sought relief under chapter 11.

### Liquidity Constraints

28.    After realizing disappointing sales in December 2010 and January 2011, the Debtor's availability under the Credit Agreement was decreased by approximately $700,000 due

to additional reserve requirements imposed by Wells Fargo pursuant to the terms of the Credit Agreement. Further reducing credit availability to the Debtor, in January 2011, CIT Group/Commercial Services, Inc. ("CIT"), one of the Debtor's factors, required the Debtor to post a $500,000 letter of credit in support of its obligations to CIT. Finally, at the beginning of fiscal year 2011, inventory receipts fell approximately 30% below planned amounts, further reducing availability under the Credit Agreement and resulting in an accelerated decline in sales.

**Prepetition Operational Initiatives**

29.     In an effort to proactively respond to Metropark's decline in performance and evolution of consumer spending patterns, over the last 12 months the Company retained new, experienced management with an unparalleled depth in retail and merchandising. In June 2010, I was appointed Chief Executive Officer. I previously served as the President of GAP North America, President of Disneyland Resort and Sr. Vice President of Disney Stores. In January 2011, Lisa Chi was appointed Chief Merchandising Officer. Ms. Chi previously served as Vice President of Merchandising of Lucky Brand, Divisional Merchandising Manager of Old Navy and Merchandiser of GAP International. In addition, in October 2010, Metropark promoted Tim Delasantos, its former Vice President of Information Systems to Vice President of E-Commerce.

30.     Joining forces with certain key members of existing management, this new management team quickly crafted a strategic 3-year plan which has already resulted in a year-to-year expense savings of approximately $6 million, increased identification with tech-savvy, highly social 25-35 year old customers via multiple media channels through the revamped website and social media immersion and the establishment of a more dynamic merchandise assortment with key brands which strongly connect with Metropark's core customer.

31.     Moreover, prior to the Petition Date, the Debtor began negotiations of lease modification agreements for certain of the Debtor's underperforming retail stores. The Debtor

received a positive initial response from its major landlords and hopes to continue those discussions post-petition in an effort to provide additional savings beyond the $6 million in expense savings noted above should the Debtor succeed in attracting an investor to purchase its assets as a going concern or fund a reorganization in the context of this chapter 11 case.

32.     Despite these operational improvements, the Debtor remains in a precarious financial condition that can no longer sustain operations in the ordinary course of business.  As stated in paragraph 28 above, the Debtor faced extraordinary liquidity constraints in the first quarter of 2011.  In fact, such constraints limited the Debtor's ability to pay rent to many of its landlords for the months of March and April 2011, to purchase new inventory and normalize the inventory mix of its 69 retail locations and to restore sufficient availability under the Credit Agreement with Wells Fargo.  Because of this reality, the Debtor has spent the better part of the first quarter of 2011 trying to identify a financial partner to provide an equity infusion, debt investment or otherwise stabilize the financial situation of the Company.  Unfortunately, a transaction in the best interest of the Company, its creditors and its shareholders was not available outside of chapter 11 and the Company has reached the end of its liquidity runway.

33.     As a result, the Debtor ultimately determined that the commencement of this case would provide the only platform to recapitalize the Company or maximize the value of its assets as a going concern or otherwise.  If the Debtor is successful in identifying a going concern buyer, this proceeding will allow the Debtor to reduce the size of and improve its business through (i) the evaluation and elimination of liabilities that serve as a drain on the Debtor's profitability, and (ii) operational improvements.  While chapter 11 provides a framework to recapitalize the Debtor or sell substantially all of the Debtor's assets, the Debtor's limited liquidity mandates an expedited sale process in this chapter 11 case.  The Debtor simply lacks the access to capital to sustain operations beyond the first week of this chapter 11 case, absent the infusion of new capital  either through DIP financing or the receipt of a guaranteed payment from a national liquidator to conduct going out of business sales in the Debtor's retail locations.

Wells Fargo has consented to the use of its cash collateral to support a truncated sale process which, while abbreviated on a post-petition basis, essentially represents the culmination of extended marketing and refinancing efforts.

34.     While the Debtor's hope is that its assets will be purchased by a party that will continue its business as a going concern, it recognizes that such an outcome is far from certain. Accordingly, during the weeks prior to the petition date while the Debtor was seeking going-concern financing, it also took steps to prepare for an orderly liquidation of its assets through going out of business sales.  To that end, the Debtor solicited bids from nationally recognized liquidation firms and filed a motion for the approval of an expedited sale process that would allow liquidation sales to commence shortly after the Petition Date.  The sale process is structured such that it would not foreclose the possibility that a going concern bid could be made for the Debtor's assets and the Debtor continues to believe that, if available, a going concern sale would provide the best result for all interested parties.

**IV.**

**<u>SUMMARY OF FIRST DAY PLEADINGS</u>**

**<u>Emergency Motion of the Debtor for the Sale of Substantially All of Its Assets</u>**

35.     In the weeks prior to the Petition Date, the Debtor conducted an extended marketing process in an effort to identify a going concern partner and/or equity investment in Metropark.  While doing so, the Debtor's financial condition continued to deteriorate to the point that it can no longer operate in the ordinary course without immediate access to additional financing.  Unfortunately, the Debtor's assets cannot adequately collateralize additional financing, thus, in order sustain further operations (including payment of payroll and May rent), the Debtor is left with no choice but to immediately commence going out of business sales at all of its retail locations by no later than May 6, 2011.

36.     Through its Emergency Motion of the Debtor for Entry of an Order Pursuant to Section 105, 363, 365 and 554 (I) Approving Assumption of Agency Agreement, (II) Approving

Store Closing Sales, (III) Approving Break-up Fee, (IV) Authorizing the Debtor to Abandon Property, and (V) Granting Related Relief (the "Sale Motion"), filed contemporaneously herewith, the Debtor is seeking to assume that certain Agency Agreement dated May [1], 2011, a copy of which is annexed to the Sale Motion, which provides for, among other things, the immediate commencement of going out of business sales and sufficient financing to support the Debtor through the duration of the sale process. The Agency Agreement will be subject to higher or otherwise better bids at an auction to be held between the date of this filing and the hearing on the Sale Motion. At such hearing, the Debtor will seek approval of the highest or otherwise best bid, on terms substantially similar to those contained in the Agency Agreement.

37.     As of the filing of this Motion, certain financial partners continue to conduct due diligence on a possible going concern acquisition of Metropark. In the event remaining interest materializes into a committed transaction prior to the hearing on the Sale Motion, the Debtor expects to proceed with the Sale Motion -- albeit on a smaller scale -- as any going concern bidder is likely to require the closure of underperforming stores prior to closing on a going concern transaction. The Debtor will **not** seek approval of a going concern transaction at the hearing on this Sale Motion, but rather will only seek approval of "store closing sales" for specified retail locations. Any going concern transaction will be subject to a separate motion and appropriate notice and hearing, under the circumstances.

## **Motion of the Debtor for Use of Cash Collateral and Granting Adequate Protection**

38.     It is essential that the Debtor obtains immediate post-petition authority to use cash collateral (the "Cash Collateral"), as that term is defined by section 363 of the Bankruptcy Code. The Debtor is facing an immediate liquidity crisis. After consulting with its professional advisors, the Debtor concluded that the best course to maximize value for its estate is to conduct an expedited process simultaneously seeking going concern and non-going concern bids. In order to allow the Debtor the opportunity to pursue a value maximizing sale, the Debtor negotiated with and received the consent of its senior secured lender to use Cash Collateral in

accordance with a budget that the Debtor believes will be sufficient to pay its administrative expenses that become due and payable before such a sale can be consummated. Without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain its assets, provide financial information, pay employees, payroll taxes, inventory suppliers and other vendors, overhead, lease expenses, and other expenses necessary for the operation of the Debtor's business in the ordinary course and to maintain the value of the Debtor's assets. Accordingly, without immediate access to Cash Collateral, the Debtor could suffer substantial and irreparable harm.

39. By contrast, once the usage of Cash Collateral is approved, the Debtor will be able to continue its business operations during the interim period between the Petition Date and the consummation of a going concern sale or liquidation of the Debtor's business, which would allow it to maximize the value of its assets for the benefit of all of its stakeholders. The Debtor's need for access to Cash Collateral, therefore, is urgent. In addition, because the Debtor lacks sufficient unencumbered funds to meet certain imminent expenses necessary for a smooth transition to chapter 11, it is essential that it obtains interim approval of the use of Cash Collateral.

**Motions to be Heard at First Day Hearing**

40. In addition, the Debtor intends to seek relief from the Court as soon as possible after the Petition Date through each of the motions described below:

| **TITLE** | **PURPOSE OF MOTION** |
|---|---|
| Motion Pursuant to Sections 105(a), 345(b), 363(c) and 364(a) of the Bankruptcy Code Authorizing the Debtor to (I) Continue Using Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Waive Requirements of Section 345(b) of the Bankruptcy Code | Authorization to use the Debtor's existing bank accounts and cash management system is requested. |

1717500 v3/NY

| **TITLE** | **PURPOSE OF MOTION** |
|---|---|
| Motion Pursuant to Bankruptcy Rules 1007(c) and 2002(d) for an Extension of the Time to File the Debtor's (I) Schedules of Assets and Liabilities, (II) Schedules of Current Income and Expenditures, (III) Schedules of Executory Contracts and Unexpired Leases, and (IV) Statements of Financial Affairs | A 30-day extension of the time required to file schedules and statements of financial affairs is requested. |
| Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code (I) Authorizing Payment of Wages, Compensation and Employee Benefits and (II) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations | Authorization to pay prepetition wage claims and continue existing employee benefit programs is requested. |
| Motion Pursuant to Sections 105(a), 342(a), and 521(a)(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a) and 2002(a), (f), and (l) and Local Bankruptcy Rule 1007-1 for (I) Waiver of Requirement to File List of Creditors, and (II) Authority to Establish Procedures to Notify Creditors of the Commencement of the Debtor's Chapter 11 Case | Waiver of the requirement to file a list of creditors, and to establish procedures by which to notice parties of the commencement of this case, is requested. |
| Motion Pursuant to Sections 105(a), 363(b), and 541 of the Bankruptcy Code for (I) Authorization to Pay Prepetition Sales and Use Taxes and (II) To Allow Financial Institutions to Cash and Process Related Checks and Transfers | Authorization to pay accrued but unpaid prepetition sales and use taxes is requested. |
| Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures | Authorization to establish certain notice and case management procedures is requested. |
| Motion Pursuant to Sections 105(a), 365 and 554(a) of the Bankruptcy Code for Authorization to Establish Expedited Procedures for the Rejection of Executory Contracts and Unexpired Leases and Abandonment of Related Personal Property | Authorization to establish procedures for the rejection of executory contracts and unexpired leases and the abandonment of related personal property is requested. |

1717500 v3/NY

| TITLE | PURPOSE OF MOTION |
|---|---|
| Application for Order Authorizing Retention and Employment of Omni Management Group, LLC as Claims Agent for the Clerk of the Bankruptcy Court Under 28 U.S.C. § 156(c) and Granting Related Relief | Authorization to retain Omni Management Group, LLC as claims and noticing agent is requested. |
| Motion of the Debtor for Entry of an Order Authorizing the Debtor to Reject Unexpired Lease (Located at 2042 N. Halstead Street) *Nunc Pro Tunc* to the Petition Date | Authorization to reject an unexpired lease *nunc pro tunc* to the Petition Date is requested. |

**Motions Filed Contemporaneously Herewith But Not Heard at First Day Hearing**

41.     In addition, the Debtor intends to seek relief from the Court at a hearing approximately 25 days after the Petition Date through each of the motions described below, all of which have been filed contemporaneously herewith:

| TITLE | PURPOSE OF MOTION |
|---|---|
| Application Pursuant to Sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 Authorizing Employment and Retention of Cooley LLP as Attorneys for Debtor, *Nunc Pro Tunc* to the Petition Date | Authorization to retain Cooley as attorneys for the Debtor, effective as of the Petition Date, is requested. |
| Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals | Authorization to establish procedures providing for interim monthly compensation and reimbursement of retained professionals is requested. |

1717500 v3/NY

| TITLE | PURPOSE OF MOTION |
|---|---|
| Motion Pursuant to Sections 105(a) and 366 of the Bankruptcy Code (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Payment, and (III) Establishing Procedures for Determining Adequate Assurance of Payment | Approval of adequate assurance of payment to utilities, and approval of procedures to determine the amount of that adequate assurance, is requested. |

**V.**

**INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2**

42.     Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

43.     In accordance with Local Bankruptcy Rule 1007-2(a)(3), and to the best of my knowledge, information, and belief, no prepetition committee has been formed in this chapter 11 case.

44.     In accordance with Local Bankruptcy Rule 1007-2(a)(4), Schedule 1 hereto is a list of the names, addresses, and, where available, telephone and facsimile numbers of the creditors holding the 30 largest unsecured claims (excluding insiders, unless otherwise noted) against the Debtor. Such list includes the amount of the claim, the nature of the claim and, if appropriate, an indication of whether such claim is contingent, unliquidated, disputed, or partially secured, subject, however, to the reservations of rights stated on Schedule 1 regarding, among other things, the actual validity of any such claims.

45.     In accordance with Local Bankruptcy Rule 1007-2(a)(5), Schedule 2 is a list of the names and addresses of the creditors holding the five largest secured claims against the Debtor, as well as the names and addresses for the holders of record of such secured claims. Such list includes the amount of the claim, an estimate of the value of the collateral, and whether the claim or lien is disputed, subject, however, to the reservations of rights stated on Schedule 2.

1717500 v3/NY

46.     In accordance with Local Bankruptcy Rule 1007-2(a)(6), Schedule 3 hereto provides a summary of the Debtor's assets and liabilities.

47.     In accordance with Local Bankruptcy Rule 1007-2(a)(8), Schedule 4 hereto is a list of the Debtor's property not in the Debtor's possession, including property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

48.     In accordance with Local Bankruptcy Rule 1007-2(a)(9), Schedule 5 hereto is a list of the premises owned, leased, or held under other arrangement, from which the Debtor operates its business.

49.     In accordance with Local Bankruptcy Rule 1007-2(a)(10), Schedule 6 hereto provides the location of the Debtor's substantial assets, the location of its books and records, and the value of any assets held by the Debtor outside the territorial limits of the United States.

50.     In accordance with Local Bankruptcy Rule 1007-2(a)(11), Schedule 7 hereto is a list of litigation commenced against the Debtor.

51.     In accordance with Local Bankruptcy Rule 1007-2(a)(12), Schedule 8 hereto contains the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.   The Debtor intends to continue to operate as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

52.     In accordance with Local Bankruptcy Rule 1007-2(b)(1), Schedule 9 hereto is the estimated amount of the payroll to employees of the Debtor (exclusive of officers, directors and stockholders) for the 30-day period following the commencement of the Debtor's chapter 11 case.

53.     In accordance with Local Bankruptcy Rule 1007-2(b)(2)(A), Schedule 10 hereto contains the amounts to be paid to the Debtor's officers, directors, and stockholders for services for the 30-day period following the commencement of the Debtor's chapter 11 case.

1717500 v3/NY

54.    In accordance with Local Bankruptcy Rule 1007-2(b)(3), Schedule 11 hereto contains the estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, for the 30-day period following the commencement of the Debtor's chapter 11 case.

55.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

56.    Accordingly, I respectfully request that the Court grant all of relief requested in the First Day Pleadings and such other and further relief as may be just and appropriate.

Dated: May 2, 2011

Metropark USA, Inc.

By:  /s/ Cynthia Harriss
     Cynthia Harriss
     Chief Executive Officer

1717500 v3/NY

## SCHEDULE 1

## CONSOLIDATED LIST OF CREDITORS
## HOLDING 30 LARGEST UNSECURED CLAIMS AGAINST THE DEBTOR[1]

     The following is a list of creditors holding the thirty (30) largest unsecured claims against the Debtor.  This list has been prepared from the unaudited books and records of the Debtor.  The list reflects amounts from the Debtor's books and records as of [April 28], 2011. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in the Debtor's chapter 11 case.  This list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101 except as otherwise noted, or (2) secured creditors, unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the thirty (30) largest unsecured claims.  The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtor.  Moreover, nothing herein shall affect the Debtor's right to challenge the amount or characterization of any claim at a later date.

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| 1.  TRUE RELIGION | TRUE RELIGION<br>2263 VERNON AVENUE<br>VERNON, CA 90058<br>TEL: (323) 266-3072<br>FAX: (323) 266-8060 | Trade Debt | | $629,334.70 |
| 2.  NSB RETAIL SOLUTIONS INC | NSB RETAIL SOLUTIONS INC<br>2800 TRANS CANADA HIGHWAY<br>POINTE CLAIRE, QUEBEC H9R 1B1<br>CANADA<br>TEL: (514) 426-0822<br>FAX: (514) 426-0824 | Trade Debt | | $283,731.56 |
| 3.  LIFE AFTER DENIM | LIFE AFTER DENIM<br>847 W. 16ST STREET<br>NEWPORT BEACH, CA 92663<br>TEL: (949) 734-4424<br>FAX: (949) 631-6246 | Trade Debt | | $258,340.38 |
| 4.  SCOTCH & SODA | SCOTCH & SODA<br>11811 E. FLORENCE AVE.<br>SANTA FE SPRINGS, CA 90670<br>TEL: (562) 906-9998<br>EMAIL: Yossi@scotch-soda.com | Trade Debt | | $253,915.40 |

---

[1]    The Debtor will continue to update this information and will provide a complete List of Creditors as soon as practicable.  The claims listed herein are currently under investigation and, as a result, unless otherwise indicated herein, remain contingent, unliquidated, disputed or subject to set-off.

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| 5. PROJEK RAW USA INC. | PROJEK RAW USA INC. 433 CHABANEL WEST, SUITE 1000 MONTREAL, QUEBEC H2N 2J8 CANADA TEL: (877) 381-5941 | Trade Debt | | $232,828.68 |
| 6. OBEY | OBEY 17462 VON KARMEN IRVINE, CA 92614 TEL: (949) 596-8400 EMAIL: don@obeyclothing.com | Trade Debt | | $211,891.95 |
| 7. G-STAR | G-STAR 599 BROADWAY 11TH FLOOR NEW YORK, NY 10012 TEL: (212) 431-3730 FAX: (212) 226-0702 | Trade Debt | | $205,831.09 |
| 8. JOES JEANS | JOES JEANS 5804 E. SLAUSON AVE COMMERCE, CA 90040 TEL: (323) 837-3700 EMAIL: marc@joesjeans.com | Trade Debt | | $166,969.00 |
| 9. CHARLIE JADE/COAST STYLE GROUP | CHARLIE JADE/COAST STYLE GROUP 860 S. LOS ANGELES ST., SUITE 709 LOS ANGELES, CA 90014 TEL: (213) 244-9661 EMAIL: gbub@fortuneswimwear.com | Trade Debt | | $166,504.50 |
| 10. CROOKS AND CASTLES/TWELVE OUNCE | CROOKS AND CASTLES/TWELVE OUNCE 107 LOUVAIN WEST MONTREAL, QC H2N 1A3 CANADA TEL: (514) 389-8885 EMAIL: marcr@twelveounce.com | Trade Debt | | $162,337.72 |
| 11. KITTY | KITTY 2812 S. GRAND AVE. LOS ANGELES, CA 90007 TEL: (213) 749-2031 EMAIL: robbin@kittyfashion.com | Trade Debt | | $153,940.00 |
| 12. ARK & CO. / ARYN K | ARK & CO. / ARYN K 726 E. 12TH ST. #103 LOS ANGELES, CA 90021 TEL: (213) 745-8877 EMAIL: ken@arynk.com | Trade Debt | | $147,553.70 |
| 13. ERNST & YOUNG | ERNST & YOUNG DEPT. 6793 LOS ANGELES, CA 90084-6793 EMAIL: brian.ring@ey.com | Professional Fees | | $145,176.00 |

1717500 v3/NY

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| 14. TRICOT JOLI/WOW KNIT, INC. | TRICOT JOLI/WOW KNIT, INC. 1115 E. 14TH ST. LOS ANGELES, CA 90021 TEL: (213) 688-0404 EMAIL: mike@wowknitinc.com | Trade Debt | | $116,380.50 |
| 15. DIESEL | DIESEL 220 W 19TH STREET, 3RD FLOOR NEW YORK, NY 10011 TEL: (212) 755-9200 EXT. 0A/R FAX: (212) 414-8202 | Trade Debt | | $114,450.96 |
| 16. STORE KRAFT | STORE KRAFT 500 IRVING STREET BEATRICE, NE 68310 TEL: (402) 223-2348 FAX: (402) 223-1268 | Trade Debt | | $113,763.54 |
| 17. CENTURY CITY MALL. LLC | CENTURY CITY MALL. LLC C/O BANK OF AMERICA-FILE# 7950 7950 COLLECTION CENTER DRIVE CHICAGO, IL 60693 TEL: (310) 553-5300 EMAIL: centurycity@westfield.com | Rent | | $108,707.81 |
| 18. MOAC MALL HOLDINGS LLC | MOAC MALL HOLDINGS LLC NW 5826 PO BOX 1450 MINNEAPOLIS, MN 55485-5826 EMAIL: info@mallofamerica.com | Rent | | $107,777.52 |
| 19. PLASTIC ISLAND/MCGINN USA | PLASTIC ISLAND/MCGINN USA 1385 E. 15TH STREET LOS ANGELES, CA 90021 TEL: (213) 749-0900 EMAIL: shun@agenticonfashion.com | Trade Debt | | $98,123.70 |
| 20. MID-WEST WHOLESALE LIGHTING | MID-WEST WHOLESALE LIGHTING 5250 HOLLYWOOD BLVD PO BOX 27339 LOS ANGELES, CA 90027-4913 TEL: (323) 957-6050 FAX: (323) 463-6489 | Trade Debt | | $97,182.03 |
| 21. MILK & HONEY | MILK & HONEY 341 W. 31ST LOS ANGELES, CA 90007 TEL: (323) 307-0826 EMAIL: info@division-e.com | Trade Debt | | $95,637.25 |

1717500 v3/NY

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| 22. WOODFIELD MALL LLC | WOODFIELD MALL LLC DEPARTMENT 55401 PO BOX 67000 DETROIT, MI 48267-0554 FAX: (248) 258-7691 | Rent | | $93,462.10 |
| 23. URBAN OUTFITTERS | URBAN OUTFITTERS 5000 S. BROAD ST. PHILADELPHIA, PA 19112-1495 TEL: (215) 454-5500 EMAIL: llieckfelt@freepeople.com | Trade Debt | | $89,977.72 |
| 24. URGENT GEAR, INC. DBA CIVIL SOCIETY | URGENT GEAR, INC. DBA CIVIL SOCIETY 728 E. COMMERCIAL ST. LOS ANGELES, CA 90012 TEL: (213) 741-9926 EMAIL: randall@urgentgear.com | Trade Debt | | $89,532.50 |
| 25. FRANKIE B, INC | FRANKIE B, INC 850 S BROADWAY, STE 504 LOS ANGELES, CA 90014 TEL: (213) 624-5411 EXT. 1000 EMAIL: daniella@frankieb.com | Trade Debt | | $88,950.00 |
| 26. GENTLE FAWN | GENTLE FAWN FAMILY BUSINESS DIST. 8721 SANTA MONICA BLVD. #322 LOS ANGELES, CA 90069-4507 TEL: (866) 992-9226 | Trade Debt | | $88,931.27 |
| 27. DHR INTERNATIONAL, INC. | DHR INTERNATIONAL, INC. 10 SOUTH RIVERSIDE PL. SUITE 2220 CHICAGO, IL 60606 TEL: (312) 782-1581 EMAIL: jmrowca@dhrinternational.com | Trade Debt | | $81,436.00 |
| 28. WANT AGENCY USA | WANT AGENCY USA 545 W. 25TH STREET 8TH FLOOR NEW YORK,, NY 10001 TEL: (212) 414-5814 EMAIL: chris@wantagencyinc.com | Trade Debt | | $80,379.00 |
| 29. WESTFIELD GARDEN STATE PLAZA | WESTFIELD GARDEN STATE PLAZA FILE# 56816 LOS ANGELES, CA 90074-6816 EMAIL: pgenaro@us.westfield.com | Rent | | $79,838.29 |

1717500 v3/NY

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| 30. SAN FRANCISCO WESTFIELD EMPORIUM | SAN FRANCISCO EMPORIUM WESTFIELD EMPORIUM PO BOX 60000 SAN FRANCISCO, CA 94160-0548 EMAIL: sanfrancisco@westfield.com | Rent | | $79,004.58 |

5

# SCHEDULE 2

## LIST OF CREDITORS
## HOLDING 5 LARGEST SECURED CLAIMS[1]

The following is a list of creditors holding the 5 largest secured claims against the Debtor. The list has been prepared in accordance with Local Bankruptcy Rule 1007-2(a)(5). The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtor.

| Name of Creditor | Mailing Address | Description of Collateral Securing the Claim | Estimate of the Value of the Collateral Securing the Claim | Amount of Claim |
|---|---|---|---|---|
| Wells Fargo Bank, N.A. | One Boston Place, 18th Floor Boston, MA 02108 | 1st lien on substantially all of the Debtor's assets | $9,172,960 | $2,555,353.12 plus April interest |
| Bricoleur Capital Partners, LP as Agent for Second Lien Lenders | PO Box 9933 Rancho Santa Fe, CA 92067 Attn: Bob Poole | 2nd lien on substantially all of the Debtor's assets | $9,172,960 | $825,000 |
| Winthrop Resources Corporation | 11100 Wyzata Blvd., Suite 800 Minnetonka, MN 55305 | Computer Equipment | undetermined | $41,284 |
| Somerset Leasing Corp. | 1087 Broad Street, Suite 301 Bridgeport, CT 06604 | Computer Equipment | undetermined | $9,372 |

---

[1] This list reflects the latest information available to the Debtor as of the Petition Date. The estimate value of collateral securing the claims is the value on the Debtor's balance sheet as of April 2, 2011 and does not represent the liquidation value of the collateral.

## SCHEDULE 3

## DEBTOR'S BALANCE SHEET
### (as of April 2, 2011 unaudited)

| ASSETS: | |
|---|---:|
| **Current assets:** | |
| Cash and cash equivalents | $48,296 |
| Accounts receivable, net | $1,085,355 |
| Inventories | $7,195.908 |
| Other Current Assets | $842,383 |
| **Total Current Assets** | **$9,172,960** |
| Property & equipment, net | $19,725,319 |
| **Total Assets** | **$28,933,805** |

| LIABILITIES AND STOCKHOLDERS EQUITY: | |
|---|---:|
| **Current liabilities:** | |
| Accounts Payable | $7,153,525 |
| Accrued Expenses | $4,333,682 |
| Accrued payroll and related liabilities | $1,318,275 |
| Current portion of capital lease obligations | $56,525 |
| Bridge Loan | $825,000 |
| Bank Credit Line | $2,155,547 |
| **Total Current Liabilities** | **$16,370,187** |
| Capital lease obligations - long-term | $- |
| Deferred rent | $12,326,819 |
| **Total Non-Current Liabilities** | **$12,326,819** |
| **Total Liabilities** | **$28,697,006** |
| **Stockholders' equity:** | |
| Series A Convertible Preferred Stock | $2,500,000 |
| Series A-1 Convertible Preferred Stock | $2,000,000 |
| Series B Convertible Preferred Stock | $10,000,000 |
| Series B-1 and B-2 Convertible Stock | $9,151,000 |
| Series C Convertible Preferred Stock | $6,058,752 |
| Common Stock | $3,234 |
| Additional Paid-in Capital | $6,331,276 |
| Accumulated Deficit | ($35,807,464) |
| **Total Equity** | **$236,799** |
| **Total Liabilities and Equity** | **$28,933,805** |

## SCHEDULE 4

## DEBTOR'S PROPERTY NOT IN DEBTOR'S POSSESSION[1]

| Type of Property | Value of Property | Person or Entity in Possession | Address and Telephone Number |
|---|---|---|---|
| Cash Deposit | $1,112.00 | BGE | P.O. Box 660720 Philadelphia, PA 19101-3070 |
| Cash Deposit | $1,946.77 | ComEd | P.O. Box 87522 Chicago, IL 60668 |
| Cash Deposit | $818.00 | Florida Power & Light Co. | P.O. Box 025576 Miami, FL 33102 |
| Cash Deposit | $4,389.91 | Long Island Power Authority | P.O. Box 9039 Hicksville, NY 11802 |
| Cash Deposit | $4,500.00 | Nevada Department of Taxation | Department of Taxation 555 E. Washington Ave Suite 1300 Las Vegas, Nevada 89101 |
| Cash Deposit | $5,700 | Peabody Municipal Light | 201 Warren Street Extension Peabody, MA 01960 |
| Cash Deposit | $1,367.00 | TECO | P.O. Box 31318 Tampa, FL 33631 |
| Cash Deposit | $725.00 | TECO | P.O. Box 31318 Tampa, FL 33631 |
| Cash Deposit | $1,115.00 | Twelve Oaks Mall, LLC | 200 East Long Lake Rd. P.O. Box 200 Bloomfield, MI 48303 |
| Cash Deposit | $7,411.00 | Winthrop Financial | 11100 Wyzata Blvd., Suite 800 Minnetonka, MN 55305 |
| Cash Deposit | $625.00 | XO Communications | 14239 Collections Center Dr. Chicago, IL 60693 |

---

[1]     This list has been prepared based upon the consolidated books and records of the Debtor and reflects amounts as of April 28, 2011. In addition to the properties listed above, in the ordinary course of business, property of the Debtor is likely to be in the possession of various other persons including, without limitation, maintenance providers, shippers, common carriers and materialmen. Through these arrangements, the Debtor's ownership interest is not affected. In light of the movement of this property, providing a comprehensive list of persons in possession of the Debtor's property would be impractical, if not impossible.

# SCHEDULE 5

## PREMISES OWNED, LEASED, OR HELD UNDER OTHER ARRANGEMENT FROM WHICH THE DEBTOR OPERATES ITS BUSINESSES

## Leased Real Property

| Location Number | Location Name | Lessor | Location (Address) | City | ST | Zip |
|---|---|---|---|---|---|---|
| 1 | Glendale Galleria | Glendale II Mall Associates, LLC | 2107 Glendale Galleria | Glendale | CA | 91210 |
| 2 | The Oaks Mall | Macerich Oaks LLC | 526 W Hillcrest Drive | Thousand Oaks | CA | 91360 |
| 3 | Oakridge Mall | Oakridge Mall LP | 925 Blossom Hill Road | San Jose | CA | 95123 |
| 4 | Valley Fair Mall | VF MALL LLC | 2855 Stevens Creek Blvd | Santa Clara | CA | 95050 |
| 5 | Barton Creek Square | SIMON PROPERTY GROUP (TEXAS), L.P. | 2901 Capital of Texas Hwy | Austin | TX | 78746 |
| 6 | Mall of America | MOAC MALL HOLDINGS LLC | 108 N Garden, Bloomington | Bloomington | MN | 55425 |
| 7 | Galleria at Tyler | Tyler Mall Limited Partnership | 2045 Galleria at Tyler | Riverside | CA | 92503 |
| 8 | Irvine Spectrum | THE IRVINE COMPANY | 83 Fortune Drive, Suite 233 | Irvine | CA | 92618 |
| 9 | Fresno Fashion Fair | Macerich Fresno Limited Partnership | 639 E Shaw Avenue, Suite 173 | Fresno | CA | 93710 |
| 10 | Fashion Show | Fashion Show Mall, LLC | 3200 Las Vegas Blvd S, Suite 2290 | Las Vegas | NV | 89109 |
| 11 | Northpark Center | NorthPark Partners, LP | 8687 N Central Expy, Suite 2120 | Dallas | TX | 75225 |
| 12 | Beachwood Place | Beachwood Place Limited Partnership | 26300 Cedar Road | Beachwood | OH | 44122 |
| 13 | Washington Square | PPR Washington Square LLC | 9681 SW Washington Square Road | Tigard | OR | 97223 |
| 14 | Los Cerritos Center | Macerich Cerritos, LLC | 243 Los Cerritos Center, Space D23 | Cerritos | CA | 90703 |
| 15 | Miracle Mile Shops | Boulevard Invest LLC | 3663 Las Vegas Blvd, Suite 415 | Las Vegas | NV | 89109 |
| 16 | Del Amo Fashion Center | Simon Property Group | 3525 Carson Street, Suite 82 | Torrance | CA | 90503 |
| 17 | Houston Galleria | HG Galleria I, II, III, L.P. | 5015 Westheimer Road, Space A-3441 | Houston | TX | 77056 |
| 18 | Lenox Square | General Growth Properties | 3393 Peachtree Road NE, Space 2036A | Atlanta | GA | 30326 |
| 19 | Perimeter Mall | Perimeter Mall, LLC | 4400 Ashford Dunwoody Road, Space 2405 | Atlanta | GA | 30346 |
| 20 | Freehold Raceway Mall | Freemall Associates, LLC | 3710 Route 9, Space G214 | Freehold | NJ | 07728 |
| 21 | Willowbrook Mall | GGP-Willowbrook, L.P. | 2000 Willowbrook Mall, Space 1130 | Houston | TX | 77070 |
| 22 | San Francisco Centre | Emporium Development, L.L.C. | 845 Market Street, Space 309 | San Francisco | CA | 94103 |
| 23 | Topanga Plaza | Westfield Topanga Owner LP | 6600 Topanga Canyon Blvd, Space 2036 | Canoga Park | CA | 91303 |
| 24 | Baybrook Mall | Baybrook Mall, L.P. | 500 Baybrook Mall, Space 1192 | Friendswood | TX | 77546 |
| 25 | Walden Galleria | Pyramid Management Group, Inc. | One Walden Galleria, Space TH150 | Buffalo | NY | 14225 |

| Location Number | Location Name | Lessor | Location (Address) | City | ST | Zip |
|---|---|---|---|---|---|---|
| 26 | The Domain | SPGIL DOMAIN, L.P. | 11401 Century Oaks Terrace, Suite 105 | Austin | TX | 78758 |
| 27 | Town Square | TURNBERRYICENTRA SUB, LLC | 6551 Las Vegas Blvd., | Las Vegas | NV | 89119 |
| 28 | Towson Town Centre | Towson TC, LLC | 825 Dulaney Valley Road, Space 2045 | Towson | MD | 21204 |
| 29 | Halsted | Berns & Associates, LLC | 2042 N Halsted Street | Chicago | IL | 60614 |
| 30 | Natick Mall | GGP-Natick West LLC | 1245 Worcester Street, Space 4058 | Natick | MA | 1760 |
| 31 | Brea Mall | THE RETAIL PROPERTY TRUST (Simon Property Group) | 1014 Brea Mall | Brea | CA | 92821 |
| 32 | St. John Town Center | STJTC II, LLC | 4663 River City Drive, Space 137 | Jacksonville | FL | 32246 |
| 33 | Cherry Creek Mall | Taubman Cherry Creek Shopping Center, L.L.C. | 3000 E First Avenue, Space 178 | Denver | CO | 80206 |
| 34 | The Shops at Willow Bend | Willow Bend Shopping Center Limited Partnership | 6121 W Park Blvd, Space B105 | Plano | TX | 75093 |
| 35 | Woodfield Mall | Woodfield Mall LLC | 5 Woodfield Shopping Center, Space L1705 | Schaumburg | IL | 60173 |
| *36* | *Annapolis* | | *2570 Annapolis Mall, Space 1270* | *Annapolis* | *MD* | *21401* |
| 37 | Twelve Oaks | Twelve Oaks Mall, LLC | 27924 Novi Road, Space E205 | Novi | MI | 48377 |
| 38 | Stonestown Galleria | Stonestown Shopping Center, L.P. | 3251 20th Avenue, Space 212 | San Francisco | CA | 94132 |
| 39 | Westfarms | WEST FARMS MALL, LLC | 500 Westfarms Mall, Space E107 | Farmington | CT | 6032 |
| 40 | South Center | WEA Southcenter LLC | 657 Southcenter Mall, Space 1525 | Seattle | WA | 98188 |
| 41 | Kenwood Towne Center | Kenwood Mall L.L.C. | 7875 Montgomery Road, Space R014 | Cincinnati | OH | 45236 |
| 42 | Palisades Center | EKLECCO NEWCO LLC | 1530 Palisades Center Drive, Space F104 | West Nyack | NY | 10994 |
| 43 | Burlington Mall | Bellwether Props of Massachusetts Ltd Partnership | 75 Middlesex Turnpike, Space 1303 | Burlington | MA | 1803 |
| 44 | Alderwood Mall | Alderwood Mall LLC | 3000 184th Street SW, Space 592 | Lynwood | WA | 98037 |
| 45 | Danbury Fair Mall | Danbury Mall, LLC | 7 Backus Avenue, Space G207 | Danbury | CT | 6810 |
| 46 | Scottsdale Fashion Square | Scottsdale Fashion Square LLC | 7014 E Camelback Road | Scottsdale | AZ | 85251 |
| 47 | Ala Moana Center | GGP Ala Moana L.L.C. | 1450 Ala Moana Blvd, Space 2316 | Honolulu | HI | 96814 |
| 48 | Mandalay Place | MGM MIRAGE | 3930 Las Vegas Blvd, Space 132B | Las Vegas | NV | 89119 |
| 49 | Victoria Gardens | Forest City Commercial Management, Inc | 7825 Kew Avenue, Space 5010 | Rancho Cucamonga | CA | 91739 |
| 50 | Menlo Park | Shopping Center Associates (General Growth Properties) | 55 Parsonage Road, Space 2415 | Edison | NJ | 8837 |
| 51 | Tucson Mall | GGP-Tucson Mall L.L.C. | 4500 N Oracle Road, Space 291A | Tucson | AZ | 85705 |
| 52 | Aventura Mall | Turnberry Aventura Mall Company. Ltd. | 19575 Biscayne Blvd. Space 1019 | Aventura | FL | 33180 |

| Location Number | Location Name | Lessor | Location (Address) | City | ST | Zip |
|---|---|---|---|---|---|---|
| 53 | Smith Haven Mall | Mall At Smith Haven, LLC | 142 Smith Haven Mall | Lake Grove | NY | 11755 |
| 54 | Northbrook Court | Westcoast Estates | 1304 Northbrook Court | Northbrook | IL | 60062 |
| 55 | Willowbrook Mall, NJ | Willowbrook Mall, LLC | 1830 Willowbrook Mall | Wayne | NJ | 7470 |
| 56 | Brandon Town Center | Brandon Shopping Center Partners, Ltd. | 853 Brandon Town Ctr Mall | Brandon | FL | 33511 |
| 57 | Century City | Century City Mall, LLC | 10250 Santa Monica Blvd, Suite 1240 | Los Angeles | CA | 90067 |
| 58 | Mainplace | MainPlace Shoppingtown LLC | 2800 N. Main Street Ste 308 | Santa Ana | CA | 92705 |
| 59 | The Shops @ La Cantera | THE SHOPS AT LA CANTERA PHASE II | 15900 La Cantera Pkwy Space 191010 | San Antonio | TX | 78256 |
| 60 | Garden State | Westland Garden State Plaza Limited Partnership | One Garden State Plaza Space I-5 | Paramus | NJ | 7652 |
| 61 | Northshore | MALL AT NORTHSHORE, LLC | 210 Andover St. Space W169A | Peabody | MA | 1960 |
| 62 | Bridgewater Commons | Bridgewater Commons Mall II, LLC | 400 Commons Way Space 275 | Bridgewater | NJ | 8807 |
| 63 | Roosevelt Field | The Retail Property Trust (Simon Property Group) | 630 Old Country Rd. Space 1073A | Garden City | NY | 11530 |
| 64 | Ross Park | Penn Ross Joint Venture | 1000 Ross Park Mall Dr | Pittsburgh | PA | 15237 |
| 65 | Santa Anita | Santa Anita Shoppingtown LP | 400 S. Baldwin Ave | Arcadia | CA | 91007 |
| 66 | Bay Street | Madison Bay Street, LLC | 5616 Bay St. Space 5644 | Emeryville | CA | 94608 |
| 67 | Memorial City | Memorial City Mall, LP | 303 Memorial City Space 255 | Houston | TX | 77024 |
| 68 | Cherry Hill | Cherry Hill Center, LLC | 2000 Route 38 Space 1720 | Cherry Hill | NJ | 8002 |
| 69 | Southlake | Inland Southwest Management LLC | 252 Grand Ave Building GA-2 | South Lake | TX | 76092 |
| 70 | Trumbull | Trumbull Shopping Center #2 LLC | 5065 Main Street Space 232 | Trumbull | CT | 6611 |
| 71 | Tyson's Corner | Tysons Corner Holdings LLC | 1961 Chain Bridge Rd | McLean | VA | 22102 |
|  | Headquarters/DC | Warland | 5750 Grace Place | Los Angeles | CA | 90022 |

3

**<u>SCHEDULE 6</u>**

**LOCATION OF DEBTOR'S ASSETS, BOOKS AND RECORDS**


Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the following lists the locations of the Debtor's substantial assets and the location of its books and records.


| **Location of Debtor's Substantial Assets** |
|---|
| See Schedule 6 |


| **Location of Debtor's Books and Records** |
|---|
| 5750 Grace Place, Los Angeles, California 90022 |

**SIGNIFICANT LITIGATION COMMENCED**
**AGAINST THE DEBTOR PRIOR TO THE PETITION DATE**

| Title of Action | Court | Nature of Action | Status |
|---|---|---|---|
| Lilyana Rubio et al v. Metropark USA, Inc., Case No. CIVRS 1004404 | | Wage and hour claim | Pending |
| Summit Entertainment, LLC v. B.B. Dakota, Inc., Case No. CV104328-GAV(RZx) | | Intellectual property claim | Pending |
| Michael Stellitto v. Metropark USA, Inc. | Maryland | Wrongful termination claim | Pending |
| Joseph Sweiss v. Metropark USA, Inc. | Illinois | Wrongful termination claim | Pending |

## SCHEDULE 8

## DEBTOR'S EXISTING SENIOR MANAGEMENT

| Name/Position | Summary of Responsibilities and Experience |
|---|---|
| Cynthia Harriss, Chief Executive Officer | Day-to-day management of company; prior experience includes Gap Brand, Paul Harris Stores, Disneyland Resorts and Disney Stores |
| Lisa Chi, EVP, Chief Merchandising Officer | Oversight and management of merchandising; prior experience includes Lucky Brand, Old Navy, Gap International |
| Lance Hutchison, EVP, Store Operations | Oversight and management of store operations; prior experience includes Virgin Megastores, Disney Stores, The Broadway |
| Rick Hicks,VP, Finance and Distribution | Day-to-day management of financial and distribution aspects of company; prior experience includes Hot Topic, Anchor Blue |
| Karen Green, VP, Real Estate | Oversight and management of real estate portfolio; prior experience includes Disney Stores, Sesame St./Gymboree, Ann Taylor |
| Tim Delasantos, VP Information Systems & E-Commerce | Oversight and management of IT systems and e-commerce; prior experience includes Hot Topic, Guess, LA Gear, Pic-n-Save Stores |

## SCHEDULE 9

**ESTIMATED AMOUNT OF WEEKLY PAYROLL TO EMPLOYEES
EXCLUSIVE OF OFFICERS, DIRECTORS, AND SHAREHOLDERS
FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE**

| Week Ending | Estimated Gross Payroll |
|:---:|:---:|
| 5/6/11 | $450,000 |
| 5/20/11 | $450,000 |
| 6/3/11 | $450,000 |
| 6/17/11 | $450,000 |

## SCHEDULE 10

**ESTIMATED AMOUNT OF WEEKLY PAYROLL
TO OFFICERS, DIRECTORS, AND SHAREHOLDERS
FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE**

| Week Ending | Payments to Officers, Directors and Stockholders |
|---|---|
| 5/6/11 | $23,400 |
| 5/20/11 | $23,400 |
| 6/3/11 | $23,400 |
| 6/17/11 | $23,400 |

# SCHEDULE 11

## DEBTOR'S ESTIMATED CASH DISBURSEMENTS AND RECEIPTS FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE

| | |
|---|---|
| Cash Receipts | $5.8 million |
| Cash Disbursements | $7.2 million |
| Net Cash Gain (Loss) | ($1.4 million) |
| Unpaid Obligations | $3.1 million |
| Unpaid Receivables | $0.7 million |