COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

Proposed Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
:
**In re** : Chapter 11
:
**METROPARK USA, INC.,** :
: **Case No. 11-22866 (RDD)**
**Debtor.** :
:
---------------------------------------------------------------- x

**MOTION OF THE DEBTOR FOR (I) USE OF**
**CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION;**
**(III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Metropark USA, Inc., as debtor and debtor in possession (the "Debtor"),[1] hereby moves the Court, pursuant to sections 105, 361, 362, 363, 503(b) and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") for the entry of an order (the "Cash Collateral Order"), substantially in the form attached hereto as Exhibit A, providing for the following relief on an interim basis and, after parties in interest have been afforded notice and an opportunity to be heard, on a final basis: (i) authorizing the Debtor to use cash collateral on the terms and conditions contained therein; (ii) granting adequate protection

---

[1] The last four digits of the Debtor's federal tax identification number are 6659.

with respect thereto; (iii) scheduling a hearing to approve the relief requested herein on a final basis (the "Final Hearing"); and (iv) certain related relief. In support of this Motion, the Debtor incorporates the statements contained in the Affidavit of Cynthia Harris Pursuant to Local Bankruptcy Rule 1007-2 (the "Harriss Affidavit") filed contemporaneously herewith and further respectfully represents as follows:

**Background**

1. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court. The Debtor is authorized to operate its businesses and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case

2. Metropark was founded in 2004 to capitalize on the large Gen Y segment (the 25-35 year old customer) who had moved on from teen retailers, but were still looking for fashion-forward apparel and accessories. Through a multi-channel sales strategy, including sales through brick-and-mortar stores and e-commerce, Metropark caters to trendsetting young adult customers by offering a unique and highly differentiated merchandise assortment introducing a "Fashion, Music, Art" philosophy into the marketplace.

3. Since its founding in 2004, Metropark has grown rapidly from its four original store locations to approximately 70 stores in 21 states, in addition to its newly redesigned online retail presence at www.metroparkusa.com. Metropark offers its customers a unique mix of premium quality apparel and accessories geared toward the 25-35 year old trendsetter. The Metropark retail stores provide a truly unique experiential lifestyle shopping environment including, style consultants, in-store events (e.g. live art installations, fashion shows and DJ performances) and a carefully edited inventory assortment of highly sought after brands with a strong offering of up and coming, fashion forward designer talent to deliver an authentic and culturally relevant mix of diverse brands to the customer.

-2-

4. As a result of several internal and external factors, the Debtor faced extraordinary liquidity constraints in the first quarter of 2011. Because of this reality, the Debtor spent the better part of the first quarter of 2011 trying to identify a financial partner to provide an equity infusion, debt investment or otherwise stabilize the financial wherewithal of the Company. Unfortunately, a transaction in the best interest of the Company, its creditors and its shareholders was not available outside of chapter 11 and the Company has reached the end of its liquidity runway. Accordingly, the Debtor has determined that the commencement of this case would provide the sole opportunity to, among other things, sell substantially all of the assets of the Debtor as a going concern or liquidation and, if successful in identifying a going concern buyer, right-size the Debtor's business through (i) the evaluation and elimination of liabilities that serve as a drain on the Debtor's profitability, and (ii) operational improvements.

5. Concurrently herewith, the Debtor has filed a motion for the sale of substantially all of its assets, on an expedited basis, either as a going concern or through an orderly liquidation with a goal towards maximizing value for the Debtor's estate and its creditors.

**Pre-Petition Funding of the Debtor's Operations**

6. Prior to the Petition Date, the Debtor had obtained two primary forms of secured financing. First, Metropark was a borrower under that certain Credit Agreement dated as of April 1, 2008 (the "<u>Prepetition Senior Credit Agreement</u>"), by and among the Debtor and the Prepetition Senior Secured Parties Bank, National Association (as successor by merger to the Prepetition Senior Secured Parties Retail Finance, LLC), as administrative agent and collateral agent (in such capacities, together with any successors in such capacities, the "<u>Prepetition Agent</u>"), and the other Credit Parties referred to in the Prepetition Senior Credit Agreement (together with the Prepetition Agent, collectively, the "<u>Prepetition Senior Secured Parties</u>"), pursuant to which the Prepetition Senior Secured Parties established in favor of the Debtor a secured revolving credit facility in the maximum amount of $6,000,000.00, in addition to other financial accommodations established in the Prepetition Senior Credit Agreement. As

of the Petition Date, the balance owed under the Credit Agreement was approximately $$2,555,353.12 (inclusive of $618,840.60 of letters of credit), plus any and all interest, fees and costs, and any and all other debts or obligations of the Debtor to the Prepetition Senior Secured Parties (the "<u>Prepetition Senior Secured Claim</u>").

7. The Prepetition Senior Secured Claim is secured by valid, perfected, and unavoidable first priority liens and security interests in substantially all of the personal property of the Debtor, including without limitation, all "Collateral" (as defined in the Prepetition Senior Credit Agreement), and all proceeds thereof, substitutions therefor, and accessions thereto, as further provided in the Prepetition Senior Secured Claim Documents (the "<u>Prepetition Collateral</u>").

8. Second, Metropark was a party to that certain Note Purchase Agreement, dated March 21, 2011 (the "<u>Prepetition Subordinated Credit Agreement</u>") among the Debtor and Bricoleur Capital Partners, LP, as second lien agent, on behalf of itself and the lenders, including certain officers and directors of the Debtor (the "<u>Prepetition Subordinated Secured Parties</u>"). As of the Petition Date, the balance owed under the Prepetition Subordinated Credit Agreement was approximately $825,000.00 (the "<u>Prepetition Subordinated Secured Claim</u>"). The Prepetition Subordinated Secured Claim is secured by security interests in and liens on the Collateral, expressly subordinated to the security interests and liens of the Prepetition Senior Secured Parties pursuant to that certain Security Agreement, dated March 21, 2011.

9. The Prepetition Senior Secured Parties and the Prepetition Subordinated Secured Parties are party to that certain Subordination Agreement dated as of March 21, 2011 ("<u>Subordination Agreement</u>"), pursuant to which, among other things, the interests of the Prepetition Subordinated Secured Parties are contractually subordinated and subject in right and time of payment to the security interest of the Prepetition Senior Secured Parties. Under Section 2.3(d) of the Subordination Agreement, in the event Metropark filed for bankruptcy, the Prepetition Subordinated Secured Parties agreed that the Prepetition Senior Secured Parties

-4-

"may consent to the use of cash collateral or provide financing to [Metropark] on such terms and conditions and in such amounts as [the Prepetition Senior Secured Parties], in its sole discretion, may decide …."

10. All of the Debtor's cash, including cash in its deposit accounts, wherever located, constitutes Cash Collateral of the Prepetition Senior Secured Parties. In addition, the Debtor acknowledges that (a) the Prepetition Senior Claim is secured by valid, binding, enforceable, and perfected liens that are senior to any and all other liens on Collateral other than prior liens (if any) and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Prepetition Senior Claim constitutes a legal, valid, binding and non-avoidable obligation of the Debtor that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Prepetition Senior Credit Agreement and the Subordination Agreement, (c) no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any of the Prepetition Senior Claim exist, and, except for the subordination of the Prepetition Subordinated Claim to the Prepetition Senior Claim in accordance with the Subordination Agreement, no portion of the Prepetition Senior Claim and Prepetition Subordinated Claim is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (d) the Debtor and its estate have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including without limitation claims under chapter 5 of the Bankruptcy Code, against the Prepetition Senior Secured Parties and/or their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees on account of the secured indebtedness arising from the Prepetition Senior Credit Agreement.

**The Debtor's Urgent Need for Use of Cash Collateral**

11. It is essential that the Debtor obtains immediate post-petition authority to use cash collateral (the "<u>Cash Collateral</u>"), as that term is defined by section 363 of the

-5-
1717480 v3/NY

Bankruptcy Code. As described in the Harriss Affidavit, the Debtor is facing an immediate liquidity crisis. After consulting with its professional advisors, the Debtor concluded that the best course to maximize value for its estate is to conduct an expedited process simultaneously seeking going concern and non-going concern bids. In order to allow the Debtor the opportunity to pursue a value maximizing sale, the Debtor negotiated with and received the consent of its senior secured lender to use Cash Collateral in accordance with a budget that the Debtor believes will be sufficient to pay its administrative expenses that become due and payable before such a sale can be consummated. Without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain its assets, provide financial information, pay employees, payroll taxes, inventory suppliers and other vendors, overhead, lease expenses, and other expenses necessary for the operation of the Debtor's business in the ordinary course and to maintain the value of the Debtor's assets. Accordingly, without immediate access to Cash Collateral, the Debtor could suffer substantial and irreparable harm.

12. By contrast, once the usage of Cash Collateral is approved, the Debtor will be able to continue its business operations during the interim period between the Petition Date and the consummation of a going concern sale or liquidation of the Debtor's business, which would allow it to maximize the value of its assets for the benefit of all of its stakeholders. The Debtor's need for access to Cash Collateral, therefore, is urgent. In addition, because the Debtor lacks sufficient unencumbered funds to meet certain imminent expenses necessary for a smooth transition to chapter 11, it is essential that it obtains interim approval of the use of Cash Collateral.

-6-
1717480 v3/NY

**The Proposed Terms of the Cash Collateral Order**

13. The Debtor and the Prepetition Senior Secured Parties have been negotiating the terms pursuant to which the Debtor can use the Cash Collateral on a consensual basis. These negotiations have resulted in the Cash Collateral Order. The principal terms of the Cash Collateral Order are summarized below:[2]

   a. <u>Term</u>. Pursuant to the terms and conditions of the Cash Collateral Order, the Debtor is authorized to use Cash Collateral for the period from the Petition Date through the date which is the earlier to occur of (i) the occurrence of an Event of Default; or (ii) May __, 2011, at 5:00 p.m. prevailing eastern time (the "<u>Expiration Date</u>"), at which time all of the Debtor's authority to use Cash Collateral under this Interim Cash Collateral Order shall terminate, unless a Final Cash Collateral Order shall have been entered by that date and time.

   b. <u>Budget</u>. The Debtor shall be permitted to use Cash Collateral to pay actual, ordinary, and necessary expenses as set forth in the budget attached to the Interim Cash Collateral Order as <u>Exhibit A</u>, with a permitted variance no greater than 10% by line item or in the aggregate.

   c. <u>Adequate Protection of the Prepetition Senior Secured Parties</u>. As adequate protection of the interests of the Prepetition Senior Secured Parties in the Collateral (including the Cash Collateral) against any diminution in value of their interests in the Collateral as a result of the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Collateral, subordination to the Carve Out, or the imposition of the automatic stay, the Prepetition Senior Secured Parties will receive adequate protection as follows:

   (i) <u>Senior Replacement Liens</u>. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Prepetition Senior Secured Parties will be granted additional and replacement continuing, valid, binding, enforceable, and non-avoidable security interests and liens on all Collateral and any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, together with any proceeds thereof, including the proceeds of leaseholds (but not the leases themselves), but specifically excluding the proceeds of avoidance actions (other than those pursuant to section 549 of the Bankruptcy Code) except to the extent Cash Collateral is used in the prosecution of such avoidance actions for reimbursement thereof (collectively, the "<u>Adequate Protection Collateral</u>");

---

[2] This summary of the Cash Collateral Order is intended only to assist the Court in understanding key aspects of the arrangement and is qualified in its entirety by reference thereto. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the proposed Cash Collateral Order.

-7-

(ii) <u>Superpriority Claim</u>.  The Prepetition Senior Secured Parties will have an allowed claim under § 507(a)(1) of the Bankruptcy Code, which claim is and shall at all times during the pendency of this Case or any successor case have super priority in accordance with the provisions of § 507(b) of the Bankruptcy Code over all administrative expenses of the kind specified in the Bankruptcy Code.

(iii) <u>Adequate Protection Payments</u>.  The Prepetition Senior Secured Parties will receive adequate protection payments, as follows:

(a) interest on the first day of each month on the Prepetition Senior Claim which shall continue to accrue after the Petition Date at the rate set forth in the Prepetition Senior Claim Documents until the Prepetition Senior Claim has been paid in full;

(b) all costs, expenses, and costs of collection, including without limitation, reasonable attorneys' fees and expenses, and all "Credit Party Expenses" (as defined in the Prepetition Senior Credit Agreement) incurred by the Prepetition Senior Secured Parties, which shall continue to accrue whether before or after the Petition Date;

(c) all proceeds from the Store Closing Sale (as defined in Paragraph 30 below) in cash at closing, including without limitation the "Initial Guaranty Payment", the "Guaranteed Amount", the "Recovery Amount", and the "Augment Recovery Fee", (as each of those terms is defined in the Agency Agreement referred to in Paragraph 30 below); and

(d) the unpaid balance of the Prepetition Senior Claim in full as provided in the Budget.

(iv) <u>Store Closing Sale</u>:  the Debtor shall immediately file a motion (the "<u>Store Closing Motion</u>") to enter into an Agency Agreement with a joint venture comprised of SB Capital Group, LLC and Tiger Capital Group, LLC (the "<u>Stalking Horse</u>") to implement a liquidation of the Debtor's business and assets located at the Debtor's 69 retail store locations through store closing and going-out-of-business sales (the "<u>Store Closing Sale</u>").  The Store Closing Sale shall be on terms and conditions acceptable to the Prepetition Agent, in its sole and exclusive discretion, substantially in the form of the Agency Agreement annexed to the Store Closing Motion.  In all events, a Bankruptcy Court order in form and substance reasonably satisfactory to the Prepetition Agent (the "<u>Sale Order</u>") approving the Agency Agreement with the Stalking Horse and authorizing the conduct of the Store Closing Sale, shall have been entered on or before May 5, 2011.

d. <u>Carve-Out</u>.  (i) the quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) the fees and expenses of the Clerk of this Court; (iii) up to the amounts provided in the Budget for professional fees and expenses incurred

-8-

by professionals employed by the Debtor or by the Committee rendering services to advance this Case, as the same may be hereafter allowed by this Court (the "Professional Expenses") or (iv) up to $10,000 for fees and expenses incurred by a chapter 7 trustee, in the event this case converts to a case under chapter 7 of the Bankruptcy Code.

      e.    Events of Default. The occurrence of any of the following events, unless waived by the Prepetition Senior Secured Parties in writing, constitutes an "Event of Default": (i) any default, violation, or breach of any of the terms of this Interim Cash Collateral Order by the Debtor, including all reporting requirements and all representations, warranties, covenants, and other obligations; (ii) the dismissal of this Case or the conversion of this Case to a case under chapter 7 of the Bankruptcy Code; (iii) the appointment of a Trustee or examiner in this Case; (iv) the failure to obtain entry of the Sale Order on or before May 5, 2011; (v) the sale of all or any substantial portion of the Debtor's assets, other than incidental to the Store Closing Sale; (vi) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Interim Cash Collateral Order without the express written consent of the Prepetition Agent, (vii) any other security interest, lien, claim, or encumbrance shall be granted on the Collateral, other than as consented to in writing by the Prepetition Agent in its sole and exclusive discretion; (viii) the entry of an order granting relief from the automatic stay to the holder or holders of any security interest or lien to permit the pursuit of any judicial or non-judicial transfer or other remedy against any material assets of the Debtor; (ix) any challenge to the extent, validity, priority, or unavoidability of the Prepetition Agent's liens securing the Prepetition Senior Claim; (x) any expenditure of Cash Collateral at variance from the Budget in excess of 105% of the budgeted amount either (A) by line item or (B) in the aggregate, or in advance of the week in which the cash disbursement is scheduled to be made; (xi) the failure of the Debtor to maintain all insurance required under the Prepetition Senior Claim Documents and this Interim Cash Collateral Order; (xii) the occurrence of a postpetition event that causes or would cause a material adverse change or a material adverse effect on the ability of the Debtor to continue to operate its business as contemplated herein, or (xiii) the failure of the Debtor to obtain entry of a Final Cash Collateral Order of the Bankruptcy Court authorizing the use of the Prepetition Senior Secured Parties' cash and non-cash Collateral on terms and conditions substantially identical to those set forth herein, and acceptable to the Prepetition Agent in its sole and exclusive discretion in any event, on or before the Expiration Date.

      f.    Reservation of Rights. The Cash Collateral Order provides the Statutory Committee a period no greater than 60 days from the Petition Date to investigate the extent validity and priority of the Prepetition Senior Claim, in compliance with Local Rule 4001-2(f).

**Mandatory Provisions Under Local Rule 4001-2(k)(2)**

14.    In accordance with Local Rule 4001-2(k)(2) and Bankruptcy Rule 4001(b)-(d), the Debtor has identified the following provisions of the proposed Cash Collateral Order:

a. <u>Waivers</u>. The Prepetition Senior Secured Parties will not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Collateral. In addition, the Prepetition Senior Secured Parties will be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Senior Secured Parties with respect to proceeds, product, offspring or profits of any of the Collateral.

b. <u>Section 506(c) Waiver</u>. Subject to a final order, no costs or expenses of administration which have been or may be incurred in this case at any time will be charged against the Prepetition Senior Secured Parties, their claims, or the Collateral, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Senior Secured Parties, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Senior Secured Parties.

c. <u>Cross-Collateralization</u>: The Prepetition Secured Parties shall have a lien on previously unencumbered assets of the Debtor, specifically, proceeds of leasehold interests (but not the leases themselves) and the proceeds of avoidance actions, <u>however</u>, limited to the extent Cash Collateral is used in the prosecution of avoidance actions and the proceeds of avoidance actions pursuant to section 549 of the Bankruptcy Code.

**Argument**

15. As described above, it is essential to the success of the Debtor's chapter 11 case that the Debtor immediately obtain authority to use Cash Collateral. The preservation of estate assets and the Debtor's ability to maximize the value of its estate thus depend heavily upon expeditiously obtaining approval of the usage of Cash Collateral and the related relief requested herein.

16. The Debtor's use of Cash Collateral, including the Debtor's proposal to provide replacement liens as adequate protection in connection with such use, is authorized pursuant to section 363(c) of the Bankruptcy Code. Section 363(c) of the Bankruptcy Code provides as follows:

(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless —

(a) each entity that has an interest in such cash collateral consents; or

(b) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c). Section 363(e) of the Bankruptcy Code further provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . . ."

17. The Debtor requires access to its cash and the proceeds of existing accounts receivable and inventory to operate its business and preserve the value of its estate. These essential items, however, constitute collateral under the Prepetition Senior Claim Documents and, therefore, may not be used in support of the Debtor's ongoing activities absent compliance with section 363 of the Bankruptcy Code.

18. The proposed Cash Collateral Order, if approved, will provide the Debtor with the ability to use the Cash Collateral while providing the Prepetition Senior Secured Parties with adequate protection, as contemplated by sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code. Under section 361 of the Bankruptcy Code, adequate protection may be provided by, among other things, periodic cash payments, granting a lienholder an additional or replacement lien and granting other relief to the extent that the usage of the cash collateral results in a decrease in the value of such entity's interest in such property. As discussed above, the proposed Cash Collateral Order provides for replacement liens in the Adequate Protection Collateral to protect the Prepetition Senior Secured Parties against any diminution in value of their respective interests in the Cash Collateral. In addition, in accordance with sections 503(b) and 507(b) of the Bankruptcy Code, the proposed Cash Collateral Order provides for a superpriority administrative expense claim to protect the Prepetition Senior Secured Parties if

the replacement liens granted by the Cash Collateral Order prove inadequate to secure against any diminution in the value of the Prepetition Senior Secured Parties' interest in the Cash Collateral. Moreover, the proposed Cash Collateral Order provides the Prepetition Senior Secured Parties with certain adequate protection payments to further protect the Prepetition Senior Secured Parties against any diminution in value of its interests in the Cash Collateral or other Collateral. Finally, the proposed Cash Collateral Order requires the Debtor to implement Store Closing Sales by no later than May 5, 2011.

19. The Prepetition Senior Secured Parties has agreed to the usage of their interest in Cash Collateral. In the Subordination Agreement, the Prepetition Subordinated Secured Parties assigned its right to consent to usage of Cash Collateral in these circumstances to the Prepetition Senior Secured Parties. Furthermore, the interests of the Prepetition Subordinated Secured Parties in the Cash Collateral are relatively small as, under the Subordination Agreement, they only have a junior lien in the Cash Collateral and the majority of the value of the Cash Collateral is encumbered by the Prepetition Senior Claim of the Prepetition Senior Secured Parties.

20. For several reasons, the Debtor submits that the terms of the Cash Collateral Order are reasonable and beneficial to the Debtor's estate and creditors. First, the Cash Collateral Order will permit the Debtor to continue to operate its business under a reasonable budget. Second, the Cash Collateral Order preserves the rights of parties with valid interests in the Debtor's assets as of the Petition Date and, in addition, preserves the rights of any official committee of unsecured creditors, or other parties in interest if no creditors' committee is appointed, to challenge the validity, priority and extent of the liens and security interests of the Prepetition Senior Secured Parties and the Prepetition Subordinated Secured Parties in and to the Collateral during a reasonable review period. Third, the Cash Collateral Order's provisions for adequate protection of the interests of the Prepetition Senior Secured Parties and the Prepetition Subordinated Secured Parties in the Cash Collateral are fair and

1717480 v3/NY

reasonable under the circumstances of this case. Accordingly, the terms of the Cash Collateral Order should be approved in their entirety.

### **Request for Authority to Use Cash Collateral Immediately**

21. Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

22. Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct an interim hearing and authorize the Debtor to use, on an interim basis, Cash Collateral in accordance with the Cash Collateral Budget and the terms and provisions of the Cash Collateral Order in order to (i) maintain and finance the ongoing operations of the Debtor and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest.

23. As noted above, absent the immediate use of Cash Collateral, the Debtor lacks funds to operate its business on a day to day basis. Even a temporary inability to access Cash Collateral would significant and irreparable harm the Debtor and its estate. The authorization to use Cash Collateral will provide the necessary assurance to employees and customers of the Debtor's ability to meet its near-term obligations.

### Request for a Final Hearing

24. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor respectfully requests that the Court set a date for the Final Hearing that is no later than 21 days from the Petition Date and approve the provisions for notice of the Cash Collateral Order and the objection procedures that are set forth in paragraph 64 of the Cash Collateral Order.

### Request for Waiver of Stay

25. By this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the Cash Collateral Order approving this Motion. Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, immediate use of Cash Collateral is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to pursue a value-maximizing sale. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the ten-day stay imposed by Bankruptcy Rule 6004(h).

### Notice

26. No trustee or examiner has been appointed in this chapter 11 case. Notice of this Motion has been provided by telecopy, email, overnight courier or hand delivery to: (i) the U.S. Trustee (Attn: Susan Golden, Esq.), (ii) Riemer & Braunstein LLP, Three Center Plaza, Boston, MA 02108 (Attn: Donald E. Rothman, Esq.) as counsel for Wells Fargo Bank, N.A., (iii) Solomon Ward Seidenwurm & Smith, LLP, 401 B Street, Ste. 1200 San Diego, CA 92101 (Attn: Michael D. Breslauer, Esq.) as counsel to Bricoleur Capital Partners, LP in its capacity as second lien agent and (iv) the Debtor's 30 largest unsecured creditors. The Debtor submits that no other or further notice need be provided.

## No Prior Request

27. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter the Cash Collateral Order granting (a) the relief requested herein that is substantially in the form annexed hereto as Exhibit A and (b) such other and further relief to the Debtor as the Court may deem proper.

Dated: May 2, 2011
      New York, New York

Respectfully submitted,

By: /s/ Cathy Hershcopf

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf (CH 5875)
Jeffrey L. Cohen (JC 2556)
Alex R. Velinsky (AV 1012)

Proposed Attorneys for Debtor and Debtor in Possession

**EXHIBIT A**