**PROPOSED:**
Bid Procedures Objection Deadline:  May 18, 2011, 2011 at 4:00 p.m. (ET)
Cure Amount Objection Deadline:  May 18, 2011 at 4:00 p.m. (ET)
Bid Procedures Hearing Date:  May 23, 2011 at 10:00 a.m. (ET)
Sale Objection Deadline: May 27, 2011 at 5:00 p.m. (ET)
Adequate Assurance Objection Deadline: May  27, 2011 at 5:00 p.m. (ET)
Sale Hearing Date:  May 31, 2011

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

Proposed Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                               :

**In re**                                          :       **Chapter 11**
                                             :

**METROPARK USA, INC.,** [1]           :       **Case No. 11-22866 (RDD)**
                                             :

               **Debtor.**                          :
                                             :

------------------------------------------------------------ x

**MOTION OF THE DEBTOR FOR ORDER (A) SETTING (1) DATE TO CONDUCT AUCTION OF DEBTOR'S INTERESTS IN CERTAIN REAL PROPERTY LEASES AND INTELLECTUAL PROPERTY, AND (2) SALE HEARING DATE; (B) APPROVING BIDDING PROCEDURES AND TERMS OF AUCTION; (C) ESTABLISHING CURE AMOUNTS; (D) AUTHORIZING DEBTOR TO ENTER INTO LEASE TERMINATION AGREEMENTS; (E) APPROVING AND AUTHORIZING SALE OF LEASES AND INTELLECTUAL PROPERTY TO HIGHEST OR OTHERWISE BEST BIDDER FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES PURSUANT TO § 363 OF THE BANKRUPTCY CODE; (F) WAIVING THE REQUIREMENTS OF RULE 6004  OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL BANKRUPTCY RULE 6004-1 AND (G) GRANTING RELATED RELIEF**

        The above-captioned debtor and debtor in possession (the "Debtor"), hereby moves this Court (the "Motion") for entry of an order pursuant to §§ 105, 363 and 365 of title 11 of the United States Code, (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1 of the Bankruptcy Rules

---

[1] The Debtor's tax identification number is 81-0636659.

of the for the Southern District of New York (the "Local Rules"), (A) scheduling the following dates with respect to the relief requested herein (1) an auction (the "Auction") to sell the Debtor's interests in each of its unexpired nonresidential leasehold interests[2] (the "Leases") and intellectual property, including but not limited to trade names, trade dress, logos, and related intellectual property rights used in connection with the operation of the Debtor's retail stores (collectively, the "Intellectual Property") for May 26, 2011 at 10:00 AM (ET) in the offices of the Debtor's counsel, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, (2) a deadline of May 27, 2011 at 5:00 PM (ET) for landlords or other parties in interest to file and serve objections to an assignee's ability to provide adequate assurance of future performance, (3) a deadline of May 27, 2011 at 5:00 PM (ET) for landlords or other parties in interest to file and serve objections to the Court's approval of the sale of Intellectual Property and the disposition of the Leases as a result of the Auction, (4) a sale hearing (the "Sale Hearing") for May 31, 2011; (B) approving the bidding procedures and the terms and conditions of the Auction; (C) establishing the cure amounts for the Leases; (D) authorizing the Debtor to enter into lease termination agreements with landlords when appropriate; (E) approving and authorizing the sale of the Leases and Intellectual Property pursuant to the terms and conditions stated herein; (F) waiving the automatic fourteen-day stay provided for under Bankruptcy Rules 6004(h) and 6006(d); and (G) granting related relief.  In further support of the Motion the Debtor respectfully represents as follows:

---

[2]A schedule of the properties comprising the Leases is annexed as Exhibit A to the proposed Order (defined below).

1719890 v4/NY

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.§§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The relief sought by this Motion is predicated upon §§ 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 and Local Rule 6004-1.

## BACKGROUND

3.      On May 2, 2011 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief in this Court under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4.      On May 6, 2011, the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

### The Debtor's Business

5.      Metropark was founded in 2004 to capitalize on the large Gen Y segment (the 25-35 year old customer) who had moved on from teen retailers, but were still looking for fashion-forward apparel and accessories.  Through a multi-channel sales strategy, including sales through brick-and-mortar stores and e-commerce, Metropark caters to trendsetting young adult customers by offering a unique and highly differentiated merchandise assortment introducing a "Fashion, Music, Art" philosophy into the marketplace.

6.      Since its founding in 2004, Metropark grew rapidly from its four original store locations to approximately 70 stores in 21 states, in addition to its newly redesigned online retail presence at www.metroparkusa.com.  Metropark offers its customers a unique mix of premium quality apparel and accessories geared toward the 25-35 year old trendsetter.  The Metropark

3.

retail stores provide a truly unique experiential lifestyle shopping environment including, style consultants, in-store events (e.g. live art installations, fashion shows and DJ performances) and a carefully edited inventory assortment of highly sought after brands with a strong offering of up and coming, fashion forward designer talent to deliver an authentic and culturally relevant mix of diverse brands to the customer.

7.     As a result of several internal and external factors, the Debtor faced extraordinary liquidity constraints in the first quarter of 2011.  Because of this reality, the Debtor spent the better part of the first quarter of 2011 trying to identify a financial partner to provide an equity infusion, debt investment or otherwise stabilize the financial wherewithal of the Company. Unfortunately, a transaction in the best interest of the Company, its creditors and its shareholders was not available outside of chapter 11 and the Company has reached the end of its liquidity runway.  Accordingly, the Debtor determined that the commencement of this case would provide the sole opportunity to, among other things, sell substantially all of the assets of the Debtor.

8.     In order to expedite the selection of a liquidator and begin the liquidation process, on May 3, 2011, the Debtor conducted an auction to assure the highest or otherwise best bid so as to maximize value of the assets.  The auction resulted in the selection of a joint venture comprised of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC as the highest bidder (collectively, the "<u>Agent</u>") to conduct the going out of business sales at all locations.

9.     On May 4, 2011, the Court approved the Emergency Motion of the Debtor for Entry of an Order Pursuant to Sections 105, 363, 364, 365 and 554 (I) Approving Assumption of Agency Agreement, (II) Approving Store Closing Sales, (III) Approving Break-up Fee (IV) Authorizing the Debtor to Abandon Property and (V) Granting Related Relief (the "<u>Sale Motion</u>") (Doc. No. 19) and subsequently the Court entered an order (the "<u>Sale Order</u>") (Doc. No. 59)

1719890 v4/NY

pursuant to which the Debtor has commenced an orderly liquidation of its inventory with the assistance of the Agent.

10.     While the Debtor respectfully refers the Court, creditors, and interested parties to that certain Agency Agreement (the "Agency Agreement") attached as Exhibit 1 to the Sale Order, the Debtor submits for reference only that the Agency Agreement essentially provides that the Agent will act as the Company's exclusive agent for the purpose of conducting going out of business sales at all of the Company's retail locations and disposing of the Company's inventory, furniture, fixtures and equipment, free and clear of all liens, claims, or encumbrances.[3]

11.     As described more fully in Exhibit A attached to the proposed order (the "Order"), the Debtor is party to approximately 58 nonresidential real property leases for its retail store locations and one nonresidential real property lease for its headquarters and distribution center, which have not yet been assumed or rejected in this bankruptcy case.

## RELIEF REQUESTED

12.     By this Motion, the Debtor seeks an order: (A) scheduling the following dates with respect to the relief requested herein (1) an auction (the "Auction") to sell the Debtor's interests in each of its unexpired nonresidential leasehold interests[4] (the "Leases") and intellectual property, including but not limited to trade names, trade dress, logos, and related intellectual property rights used in connection with the operation of the Debtor's retail stores (collectively, the "Intellectual Property") for May 26, 2011 at 10:00 AM (ET) in the offices of the Debtor's counsel, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, (2) a deadline of May 27, 2011 at 5:00 PM. for landlords or other parties in interest to file and serve objections to an assignee's ability to provide adequate assurance of future performance, (3) a deadline of May 27, 2011 at 5:00 PM (ET) for landlords or other parties in interest to file and serve

---

[3] Nothing herein shall be deemed to modify the Agency Agreement or the Sale Order.
[4] A schedule of the properties comprising the Leases is annexed hereto as Exhibit A.

objections to the Court's approval of the sale of Intellectual Property and the disposition of the Leases as a result of the Auction, (4) a sale hearing (the "Sale Hearing") for May 31, 2011; (B) approving the bidding procedures and the terms and conditions of the Auction; (C) establishing the cure amounts for the Leases; (D) authorizing the Debtor to enter into lease termination agreements with landlords when appropriate; (E) approving and authorizing the sale of the Leases and Intellectual Property pursuant to the terms and conditions stated herein; (F) waiving the automatic fourteen-day stay provided for under Bankruptcy Rules 6004(h) and 6006(d); and (G) granting related relief.

### A.  Sale of the Leases and Intellectual Property Pursuant to Auction

13.    In accordance with Bankruptcy Rule 6004(f)(1), the sale of property outside of the ordinary course of business may be by private sale or by public auction.  See Fed. R. Bankr. P. 6004(f)(1). The sale of the Leases and Intellectual Property by the Auction (with a reservation of rights to withdraw any or all of the Leases and Intellectual Property from the Auction or to proceed with a private sale of any or all of the Leases and Intellectual Property) will enable the Debtor to obtain the highest or otherwise best offers for the Leases and Intellectual Property, thus, maximizing the value of its estate and serve the best interests of the Debtor, its creditors, and other parties-in-interest.

14.    The Debtor intends to undergo a marketing program to provide adequate notice to interested purchasers of the sale of the Leases and Intellectual Property.  The Debtor, as assisted by its advisors, including GA Keen Realty Advisors, A Division of Great American Group ("Keen"),[5] will identify potential purchasers (the "Potential Purchasers"), comprised of retailers, brokers, and other parties, and will send marketing materials ("Marketing Materials") to the Potential Purchasers as well as advertise the Leases through a variety of trade publications and websites.  Additionally, the Debtor will include information about the Leases and Intellectual Property on its bankruptcy case website maintained by Omni Management Group, LLC at

---

[5] The Debtor will seek to retain Keen as its real estate consultant by separate application.

1719890 v4/NY

www.omnimgt.com/metropark. The Debtor or Keen will provide a copy of the Marketing Materials to any person requesting them and/or expressing an interest in the Auction and such other information reasonably requested by any party interested in purchasing one or more of the Leases or Intellectual Property.

## B. Proposed Bidding Procedures[6]

15. The Debtor proposes to follow the Bidding Procedures, attached to the proposed Order as <u>Exhibit B</u> (the "<u>Bidding Procedures</u>"), and to conduct the Auction on May 26, 2011 at 10:00 AM (ET) in the offices of the Debtor's counsel, Cooley LLP, 1114 Avenue of the Americas, New York, NY 11036.

16. To participate in the Auction, the Debtor proposes that all interested persons comply with the Bidding Procedures, including the requirement that all written bids be submitted no later than May 25, 2011 at 3:00 PM (ET) to the parties set forth herein.

17. Bidders are cautioned that, as set forth in the Bidding Procedures, in the event of a failure to consummate a sale of a Lease and/or Intellectual Property because of a breach or failure on the part of the successful bidder with respect to such Lease and/or Intellectual Property, the Debtor is requesting authority to, and shall, retain the successful bidder's deposit as liquidated damages, and the next highest or otherwise best qualified bidder, as disclosed at the hearing(s) with respect to such Lease and/or Intellectual Property, shall be deemed the successful bidder and the Debtor shall be authorized to consummate the sale of the Lease and/or Intellectual Property without further order of the Court.

## C. Cure Amounts and Adequate Assurance of Future Performance

18. Upon information and belief, the Debtor is current on all obligations under the Leases, except as set forth on <u>Exhibit A</u> to the Order.[7] The Debtor requests that unless a non-

---

[6] The following description of the Bidding Procedures is a summary of the terms of the Bidding Procedures set forth on <u>Exhibit B</u>. To the extent that the summary differs in any way from the terms set forth in the Bidding Procedures, the Bidding Procedures, as set forth in <u>Exhibit B</u>, shall control.

Debtor party to a Lease files an objection to this Motion asserting a claim for any amounts due and owing under a Lease (the "Cure Amount") in an amount exceeding that referenced on Exhibit A to the Order, if any, by the objection deadline of May 18, 2011 at 4:00 PM (ET), that such party to the Lease shall be forever barred from claiming a Cure Amount different from that set forth on Exhibit A to the Order, if any, and from asserting any additional cure or other amounts with respect to its Lease relating to the period prior to assignment (except that the Debtor acknowledges that rent accruing from the Petition Date through the date of assignment also must be paid in connection with an assignment, absent waiver by the respective landlord).

19.     The Debtor further requests that if an objection is filed by a party to such Lease, that the Court shall hear that objection at the hearing on this Motion on May 23, 2011, at 10:00 a.m., unless otherwise resolved by the parties.  The Debtor is willing to and will cooperate with the landlords of the Leases to attempt to reconcile any differences in a particular Cure Amount believed by the landlord to exist.

20.     Furthermore, the Debtor requests that any Cure Amounts deemed by the Court or otherwise agreed by the Debtor to be due and owing should be deemed to include all other losses, if any, under the Leases.  Consequently, payment of any Cure Amounts, as determined by the Court or otherwise agreed to by the Debtor, will compensate the appropriate party for any such other loss arising under or in connection with the Leases.

21.     The Debtor acknowledges that any assumption and assignment of a Lease will be subject to all of the provisions of the Leases, to the extent required by applicable law, and will be subject to all applicable provisions of the Bankruptcy Code.  The proposed terms and conditions of the Auction are designed to ensure that any assignees are financially able and prepared to undertake all of the obligations of the Leases.  Copies of the proposed assumption and assignment agreements are attached as schedules to the Bidding Procedures.  The Sale

---

[7] Under the terms of the Agency Agreement, as approved by the Sale Order, the Agent shall reimburse the Debtor for occupancy costs incurred from May 5, 2011 through the closing of each Lease location.  Such amounts have not been included in the cure amount.

Hearing (at which the sale of a Lease to a particular assignee will be considered) gives the other parties in interest an opportunity to consider any assignment issues that may be resolved only after identification of a particular assignee and an opportunity to file objections, if any, to such matters.  The Debtor proposes that subsequent to the conclusion of the Auction on May 26, 2011, it will provide applicable landlords with information relevant to the assignee's ability to provide adequate assurance of future performance.  The Debtor further proposes that landlords have until May 27, 2011 at 5:00 p.m. (ET) to object to an assignee's ability to provide adequate assurance of future performance.

22.     Under these circumstances, the Debtor submits that it has established, or will establish at the Auction and/or the Sale Hearing, the requisite adequate assurance of future performance pursuant to § 365 of the Bankruptcy Code with respect to the potential assumption and assignment of the Leases.

### D.     <u>Lease Termination Agreements</u>

23.     In the event that a landlord is the successful bidder for the Lease under which it is the landlord, the Debtor requests authorization by this Motion to enter into a lease termination agreement with any such landlord.

### E.     <u>Proposed Sale of the Leases and Intellectual Property Free and Clear of Liens</u>

24.     Section 363(b) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  In addition, § 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

25.     The proposed use, sale, or lease of property of the estate may be approved under § 363(b) of the Bankruptcy Code if it is supported by sound business justification. <u>See In</u>

re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); Licensing By Paolo, Inc. v. Sinatra (In re Gucci)., 126 F.3d 380, 387 (2d cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); Stephens Indus. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under [section] 363(b)(1) when a sound business purpose dictates such action."); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

26.     Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration has been provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice has been provided. See In re Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test).  If a sound business justification exists, then a presumption attaches that the decision was informed, in good faith and in the honest belief that the action was in the best interests of the estate. In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). The proposed sale of Leases and Intellectual Property meets each of these requirements.

27.     The Debtor further requests authority to sell each of the Leases and Intellectual Property free and clear of any and all liens, claims, and encumbrances which may be asserted, subject to the rights granted to the Agent under the Agency Agreement to use the Leases and certain Intellectual Property until the Sale Termination Date (as that term is defined in the Agency Agreement), which shall occur on or prior to June 30, 2011, subject to extension pursuant to the terms of the Sale Order and Agency Agreement, as applicable. Such liens, claims, encumbrances, and security interests will attach to the net proceeds received by the

1719890 v4/NY

Debtor as a result of the sale with the same force and effect that they now have. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of third-party interests only if (1) applicable nonbankruptcy law permits it, (2) the third party consents, (3) the interest is a lien and the purchase price is greater than the aggregate value of all liens on the property, (4) the interest is in bona fide dispute, or (5) the third party could be legally or equitably compelled to accept a money satisfaction of that interest. Since § 363(f) of the Bankruptcy Code is written in the disjunctive, any of the five conditions, including the "consent" of the lienholders, provides authority to sell free and clear of liens. See In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988).

28.    There are compelling reasons and sound business justifications for the Court to authorize the sale of the Leases and Intellectual Property as proposed herein. The Leases and Intellectual Property will be marketed by the Debtor and its advisors to numerous potential purchasers in an attempt to capture the greatest possible value to the estate. Furthermore, the Debtor has concluded that the sale of the Leases and Intellectual Property pursuant to the proposed Bidding Procedures is likely to produce the highest or otherwise best offer that could reasonably be obtained for the Leases and Intellectual Property. The Debtor further believes that the sale of the Leases and Intellectual Property in accordance with the terms of the proposed Bidding Procedures and form of order submitted herewith is in the best interests of the Debtor and its estate and creditors.

29.    Approval of the sale of the Leases and Intellectual Property at this point in the Debtor's case is necessary to maximize their value to the estate. In this regard, the Debtor risks the deterioration in value of the Leases and Intellectual Property if the Auction is not conducted and sales are not authorized promptly, as the Debtor is seeking to sell the Leases prior to the Sale Termination Date while the Agent is paying rent on behalf of the Debtor. After the Sale Termination Date, which will vary by store location, the Debtor will either have to reject the Leases or pay current rent to its landlords, which expenditure is not contemplated in the Debtor's budget (attached as Exhibit A to the Interim Agreed Order signed on May 9, 2011

authorizing limited use of cash collateral and granting adequate protection (Doc. No. 60)). Balanced against the substantial risks attendant to delay, it is in the Debtor's and the estate's best interest to proceed with the Auction at this time.

**F.**      **If Necessary, the Break-Up Fee Should Be Approved**

30.     Pursuant to the Bidding Procedures, the Debtor reserves the right to enter into a "stalking horse" agreement with potential purchasers of the Intellectual Property or one or more of the Leases prior to the Auction. Should the Debtor enter into one or more stalking horse agreements and the stalking horse bidder is not determined by the Debtor to be the winner at the Auction, the Debtor has also reserved the right to seek authority to pay such bidder a break-up fee in consideration of the stalking horse bidder conducting its due diligence, entering into a stalking horse agreement, and agreeing to subject its bid to the Auction (the "Break-Up Fee"). The Debtor will seek approval for any Break-Up Fee at the Sale Hearing.

31.     Courts in the Second Circuit analyze the appropriateness of bidding incentives such as the Break-Up Fee under the "business judgment rule" standard, and it is well established in this district that courts consider whether (a) the relationship of the parties who negotiated the break-up fee is devoid of taint by self-dealing or manipulation, (b) the fee encourages, rather than hampers, bidding, and (c) the amount of the fee is reasonable relative to the proposed purchase price. See Integrated Res., 147 B.R. at 657-8 (to evaluate bid protections, courts should employ the business judgment rule, which proscribes judicial second-guessing of the corporate debtor's actions taken in good faith, absent self-dealing, and in the exercise of honest judgment); see also In re Metaldyne Corp., 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) (approving bid protections because, among other factors, "the stalking horse bid brings value to the estate by setting a floor on the price and providing a structure for potential competing bids . . . [and] would provide comfort to the Debtor's employees and customers that the company was entering the auction with a locked-in bid.").

1719890 v4/NY

**G.** **Good Cause Exists To Approve the Terms and Conditions of the Auction and Sale**

32.      The Auction (and the procedures leading up to the Auction) will enable the Debtor to realize the maximum values of the Leases and Intellectual Property and is in the best interest of the Debtor's estate and its creditors.  Based upon discussions with its advisors (which have been involved in numerous lease and intellectual property auctions in various retail chapter 11 cases), the Debtor believes that the Auction and the bidding process will yield the highest or otherwise best bids for the Leases and Intellectual Property.

**H.** **The Sale of Leases and Intellectual Property Do Not Require Appointment of a Consumer Privacy Ombudsman**

33.      Under section 363(b)(1), a debtor may sell or lease its consumer customer list so long as it complies with the debtor's privacy policy.  11 U.S.C. § 363(b)(1)(A).  If a sale is inconsistent with the debtor's privacy policy, section 332 governs the appointment of a consumer privacy ombudsman.  11 U.S.C. § 332(b)(1).

34.      Here, should the Debtor sell its customer list as a result of the Auction or permit the Successful Bidder to use such list for a limited period of time, the Debtor will ensure that the sale is consistent with the Debtor's current privacy policy.   Therefore, the appointment of a consumer privacy ombudsman is unnecessary at this time.  Should the Debtor propose to sell its customer list other than in compliance with its privacy policy, it will promptly notify the Court and the office of the U.S. Trustee, and seek the appointment of a consumer privacy ombudsman in accordance with section 332 of the Bankruptcy Code.

**I.** **The Successful Bidders Should be Afforded All Protections Under Section 363(m) as a Good Faith Purchaser**

35.      Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] ... does not affect the validity of a sale ... to an

> entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" In re Chateaugay Corp., 1993 U.S. Dist. Lexis 6130, *9 (S.D.N.Y. 1993) (quoting In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 at 147). See also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

36.     The selection of the Successful Bidders will be the product of arm's-length, good-faith negotiations in an anticipated competitive purchasing process. The Debtor intends to request at the Sale Hearing a finding that the Successful Bidders is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**J.      Waiver of Stay of Order**

37.     Pursuant to Bankruptcy Rule 6004(h) and 6006(d), an order authorizing the sale of property or the assignment of an unexpired lease is stayed for fourteen days after the entry of the order unless the court orders otherwise. The Debtor requests that the Court order that such stays not apply with respect to the sales and assignment of the Leases. The Debtor has very limited resources and to require them to pay an extra rent on the Leases sold, assumed, and assigned would place a huge burden on its estate and cause the unnecessary expenditure of the creditors' assets for no benefit to the estate. Also, such a stay would cause a further delay the date that a new tenant can take possession of the premises and, therefore, could chill the sale of the Leases.

14.

38.     The Debtor submits that, given the description of the proposed sale of the Leases and Intellectual Property provided herein, the requirements of Local Rule 6004-1 have been satisfied.   Alternatively, to the extent the Court finds that the Debtor has not met any applicable provisions of Local Bankruptcy Rule 6004-1, the Debtor respectfully requests that the Court waive such requirements with respect to this Motion.

## NOTICE

39.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the Debtor's prepetition secured lenders; (iv) all parties entitled to notice pursuant to Bankruptcy Rule 2002; and (v) the known parties having an interest in the Leases and/or Intellectual Property.   In light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.

1719890 v4/NY

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court grant this Motion in all respects and grant such other and further relief as the Court deems just and proper.

Dated: New York, NY
      May 12, 2011

                    Respectfully submitted,

                    By: /s/ Cathy Hershcopf
                        Cathy Hershcopf

                    COOLEY LLP
                    1114 Avenue of the Americas
                    New York, New York 10036
                    Telephone: (212) 479-6000
                    Facsimile: (212) 479-6275
                    Cathy Hershcopf (CH 5875)
                    Jeffrey L. Cohen (JC 2556)
                    Alex R. Velinsky (AV 1012)

                    *Proposed Attorneys for Debtor and Debtor in Possession*

1719890 v4/NY