Niclas A. Ferland, Esq.
Ilan Markus, Esq.
LeClairRyan, a Professional Corporation
545 Long Wharf Drive, 9th Floor
New Haven, CT  06511
Telephone: (203) 672-3212
Facsimile: (203) 672-3231

Counsel to Westfield, LLC and affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
In re:                                                   :          Chapter 11
                                                         :
**METROPARK USA, INC,**                                  :          Case No. 11-22866
                                                         :
      Debtor.                            :
------------------------------------------------------------X

**OBJECTION BY WESTFIELD, LLC AND CERTAIN AFFILIATES TO
MOTION OF THE DEBTOR FOR ORDER (A) SETTING (1) DATE TO
CONDUCT AUCTION OF DEBTOR'S INTERESTS IN CERTAIN REAL
PROPERTY LEASES AND INTELLECTUAL PROPERTY, AND (2) SALE
HEARING DATE; (B) APPROVING BIDDING PROCEDURES AND TERMS
OF AUCTION; (C) ESTABLISHING CURE AMOUNTS; (D) AUTHORIZING
DEBTOR TO ENTER INTO LEASE TERMINATION AGREEMENTS;
(E) APPROVING AND AUTHORIZING SALE OF LEASES AND
INTELLECTUAL PROPERTY TO HIGHEST OR OTHERWISE BEST
BIDDER FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS
AND ENCUMBRANCES PURSUANT TO § 363 OF THE BANKRUPTCY
CODE; (F) WAIVING THE REQUIREMENTS OF RULE 6004 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL
BANKRUPTCY RULE 6004-1 AND (G) GRANTING RELATED RELIEF**

WESTFIELD, LLC, and those of its affiliates listed on the attached Schedule A

(collectively, the "Westfield Landlords"), hereby submit this Objection (the "Objection")

to the Motion of the Debtor for Order (A) Setting (1) Date to Conduct Auction of

Debtor's Interests in Certain Real Property Leases and Intellectual Property, and (2) Sale

Hearing Date; (B) Approving Bidding Procedures and Terms of Auction; (C)

Establishing Cure Amounts; (D) Authorizing Debtor to Enter into Lease Termination Agreements; and (E) Approving and Authorizing Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of all Liens, Interests, Claims and Encumbrances Pursuant to § 363 of the Bankruptcy Code; (F) Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 6004-1 and (G) Granting Related Relief (the "Motion"), and in support thereof, state as follows:

## I.     BACKGOUND

1.     On May 2, 2011 (the "Petition Date"), the above-captioned debtor (the "Debtor") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.     The Westfield Landlords are the landlords and the Debtor is the tenant pursuant to unexpired leases (the "Westfield Leases") of nonresidential real property for retail stores (the "Premises") located at shopping centers (the "Centers") around the country.

3.     Each of the Centers constitutes a "shopping center" as that term is used in 11 U.S.C. § 365(b)(3).

4.     Pursuant to the Motion, the Debtor seeks to, *inter alia*, establish procedures for the auction (the "Auction") of substantially all of the Debtor's assets, including the assumption and assignment of the Westfield Leases to the success bidder at the Auction (the "Successful Bidder").

## II. OBJECTIONS

### A. Objection to Assumption and Assignment of the Westfield Leases[1]

5. Before assuming a lease of a shopping center that is in default, a debtor must, *inter alia*, provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1).[2] Bankruptcy Code section 365(b)(3) states:

(3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

---

[1]  As reflected on Exhibit 1 hereto, certain of the Westfield Leases that are listed in the Motion as leases that may be assigned to the Successful Bidder have already been rejected in accordance with the lease rejection procedures adopted by the Court in this case. The rejected Westfield Leases cannot now be assumed and assigned to the Successful Bidder without the Westfield Landlords' consent.

[2]  Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . . lease, the trustee" (A) cures, or provides adequate assurance that it will promptly cure such default, (B) compensates, or provides adequate assurance that it will promptly compensate the landlord for actual pecuniary loss resulting from the default, and (C) provide adequate assurance of future performance under such lease. 11 U.S.C. § 365(b)(1).

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

6.        Because the Westfield Landlords have yet to receive any information about, let alone the identity of, the ultimate Successful Bidder, the Westfield Landlords object to the proposed assumption and assignment of the Westfield Leases to the Successful Bidder for lack of adequate assurance.

**B.   The Debtor Has Not Provided Adequate Assurance of the Successful Bidder's Ability to Satisfy the Debtor's Financial Obligations Under the Westfield Leases**

7.        As stated above, the Westfield Landlords have not been provided with the identity of, or financial information for, the Successful Bidder (such as a basic list of its assets, liabilities and projected available liquid assets and/or free cash flow), and thus, they cannot determine whether the Successful Bidder can provide adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b) and (f).

8.        Under 11 U.S.C. § 365(b)(1) and (b)(3) and under 11 U.S.C. § 365(f)(2)(B), the Westfield Landlords are entitled to "adequate assurance" of future performance by the Successful Bidder. In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996) (§ 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed); c.f., In re Embers 86th Street, Inc., 184 B.R. 892, 900-01 (Bankr.S.D.N.Y. 1995) (adequate assurance of payment of cure did not exist where plan was to "meet projections by reducing staff (and thereby affording customers fewer services) while simultaneously offering smaller food portions at increased prices"); Matter of World Skating Center, Inc., 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"); In re Future Growth Enterprises, Inc., 61 B.R. 469

(Bankr. E.D. Pa. 1986) (lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

9.      Additionally, pursuant to Bankruptcy Code section 365(l), the Westfield Landlords request that the Successful Bidder be required to provide the Westfield Landlords with an adequate security deposit under each of the Westfield Leases. See 11 U.S.C. §365(l) ("[i]f an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant"). The Westfield Landlords request a minimum of two months rent under each of the Westfield Leases as an appropriate security deposit.

10.     Also to the extent that the Successful Bidder is a single purpose entity or not the main operating company with substantial assets, the Westfield Landlords demand that a guaranty by a suitable entity be provided.

**C.  The Debtor Has Not Provided Adequate Assurance of Future Performance of Lease Terms**

11.     The Westfield Landlords object to any attempts by the Debtor and/or the Successful Bidder to modify the Westfield Leases or any of the Westfield Landlords' rights thereunder. The Westfield Leases must be assumed and assigned without modification, with all of their benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C). See Thompson v. Texas Mexican Railway Co., 328 U.S. 134 (1946); In re Jamesway Corp., 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996) (same); Rockland Center Assoc. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.), 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1985) (same).

12.     Furthermore, "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers." In re Joshua Slocumb Ltd., 922 F.2d at 1086. "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." Id. "Where the leased premises are in a shopping center, the assignee must meet the heightened definition of adequate assurance of future performance in section 365(b)(3) to ensure that [t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed in order to facilitate assignment." In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3rd Cir. 2000), cert. denied, 121 S.Ct. 175 (2000) (internal quotation marks omitted).

13.     Specifically, the Debtor should not be permitted to limit the Westfield Landlords' rights under the Westfield Leases to assert claims against the Successful Bidder for accrued but as yet unbilled adjustments for such items as common area maintenance charges and taxes ("Adjustments"). The Successful Bidder will receive the benefit of any Adjustments in the tenant's favor under the Westfield Leases, so the Successful Bidder should be required to accept the burdens of any Adjustment in the Westfield Landlords' favor.

14.     The Westfield Landlords also object to any attempt by the Debtor to assume the Westfield Leases free and clear of the Debtor's indemnity obligations (including, without limitation, accrued obligations for personal injury or negligence against the Debtor that could be asserted against the Westfield Landlords) under the Westfield Leases (collectively, the "Unliquidated Claims"). Again, Bankruptcy Code

section 365(b)(3) requires that the Westfield Leases be assumed "subject to all the provisions thereof." 11 U.S.C. §365(b)(3)(C). The Westfield Landlords' Unliquidated Claims under the Westfield Leases should be preserved and survive any order authorizing assumption of the Westfield Leases.

15.     Accordingly, any requests by the Debtor to modify clauses in the Westfield Leases to suit the desires of the Successful Bidder are without merit and inconsistent with the protections afforded by Bankruptcy Code section 365(b)(3) to lessors of real property contained within a shopping center. To the extent this Court authorizes assumption and assignment of the Westfield Leases, the Successful Bidder must be required to accept all clauses in that Westfield Lease. Id.

**D.  The Debtor Also Has Not Provided Adequate Assurance of Future Performance of its Cure Obligations**

16.     In the event that the Westfield Leases are assumed and assigned to the Successful Bidder, the Debtor shall be required to, among other things, cure all defaults under the Westfield Leases and compensate the Westfield Landlords for actual pecuniary loss as a result of such defaults. 11 U.S.C. § 365(b). As of the date of the filing of this Objection, but exclusive of (i) any amounts that may become outstanding thereafter, (ii) interest, and (iii) attorneys' fees, the proper 11 U.S.C. § 365(b) "cure" amounts for the Westfield Leases is as set forth in detail on the attached Exhibit 1 (the "Cure Amount").

17.     In addition to the Cure Amount set forth on Exhibit 1, pursuant to the terms of the Westfield Leases and 11 U.S.C. § 365(b), the Court should award the Westfield Landlords interest and a reasonable amount for attorneys' fees actually incurred as a result of the Debtor's bankruptcy case in the amount of $1,500 per Lease (the "Total Cure Amount"). See, e.g., Travelers Cas. & Su. Co. of Am. v. Pacific Gas

and El. Co., 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); In re Beltway Medical, Inc., 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); In re East 44th Realty, LLC, No. 07 Civ 8799, 2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. 2008) (affirming bankruptcy court's finding that a $1.7 million settlement of attorneys' fees to a landlord was reasonable); In re James Londagin, No. RS 06-12181, 2008 Bankr. LEXIS 806, *26 (Bankr. C.D. Cal. 2008) (awarding postpetition attorneys' fees); In re Entertainment, Inc., 223 B.R. 141, 151-154 (Bankr. E.D. Ill. 1998) (interest and attorneys' fees must be paid as provided for in the assumed lease); In re Exchange Resources, Inc., 214 B.R. 366, 371 (Bankr. D. Minn. 1997) (legal fees incurred by landlord in collecting post-petition rent "give[s] rise to a priority administrative-expense claim allowable and payable now"); In re MS Freight Distribution, Inc., 172 B.R. 976, 978-79 (Bankr. W.D. Wash. 1994) ("the legislative history of [section 365(d)(3)] and the language of the section itself mandate that a lessor be paid interest, late fees, and legal fees incurred in the first 60 days of the bankruptcy case").

18.     If the Court authorizes the Debtor to assume and assign the Westfield Leases notwithstanding this Objection, the Debtor should be required to deposit in a segregated account funds equal to the cure amounts asserted herein to provide adequate assurance that the Westfield Landlords actually receive the cure amounts to which they

are entitled to under 11 U.S.C. § 365(b). Given the Westfield Landlords' experience with non-debtor assignees that purchase leases out of a chapter 11 case and then fail to pay all of their agreed-upon cure obligations before themselves seeking chapter 11 bankruptcy protection, requiring adequate assurance in the manner requested by the Westfield Landlords herein, is appropriate. See, e.g., In re Whitehall Jewelers Holdings, Inc., Case No. 08-11261-KG (Bankr. D. Del. 2008) (chapter 11 filing a few months after purchasing leases out of In re Friedman's Inc., Case No. 08-10161-CSS (Bankr D. Del. 2008) and without satisfying cure obligations); In re BH S&B Holdings, LLC, Case No. 08-14604-MG (Bankr. S.D.N.Y. 2008) (chapter 11 filing a few months after purchasing leases out of In re Steve & Barry's Manhattan, LLC, Case No. 08-12579-ALG (Bankr. S.D.N.Y. 2008) and without satisfying cure obligations).

### E.  Request for Evidentiary Hearing and Establishment of a Discovery Schedule

19.     Pursuant to Rule 6006(a) of the Federal Rules of Bankruptcy Procedure, the Motion initiated a contested matter under Rule 9014. See Fed. R. Bankr. P. 6006(a) ("[a] proceeding to assume, reject, or assign an . . . unexpired lease, other than as part of a plan, is governed by Rule 9014" ).

20.     Rule 9014(c) contemplates the applicability of most of the discovery-related rules that govern adversary proceedings. See Fed. R. Bankr. P. 9014(c).

21.     Additionally, pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure, the Court "shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses will testify." Fed. R. Bankr. P. 9014(e).

22.     To the extent the Westfield Landlords cannot reach agreement with the Debtor and the Successful Bidder regarding a consensual assumption and assignment of any of the Westfield Leases, the Westfield Landlords may wish to take discovery of the Debtor and the Successful Bidder regarding, *inter alia*, the Debtor's financial condition at the time it entered into the Westfield Leases and the Successful Bidder's current financial condition and operating performance., and will certainly need adequate time to prepare, before a contested evidentiary hearing on the request in the Motion to assume and assign the relevant Westfield Lease(s).

23.     Accordingly, with respect to any non-consensual requests to assume and assign any Westfield Leases, the Westfield Landlords respectfully ask this Court to use the initial hearing on the Motion as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing on the Motion.

WHEREFORE, the Westfield Landlords respectfully request that this Court enter an order:

    a. Sustaining this Objection;

    b. Denying the Debtor's request to assume and assign the Westfield Leases to the Successful Bidder unless the Debtor and Successful Bidder meet all requirements under the Bankruptcy Code in accordance with this Objection;

    c. Establishing a fair and appropriate discovery and evidentiary hearing schedule in connection with any non-consensual request to assume and assign any of the Westfield Leases; and

    d. Granting the Westfield Landlords such other and further relief as the Court deems appropriate.

Dated: May 19, 2011

        **LeCLAIRRYAN,**
        **a Professional Corporation**


        /s/ Ilan Markus
        Niclas A. Ferland, Esq.
        Ilan Markus, Esq.
        545 Long Wharf Drive, Ninth Floor
        New Haven, CT 06511
        Telephone: (203) 672-3212
        Facsimile: (203) 672-3231
        Email: niclas.ferland@leclairryan.com
                ilan.markus@leclairryan.com

        Counsel to: Westfield, LLC, and certain of its affiliates
                as set forth on Schedule A attached hereto