COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

Proposed Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------- x
                                                    :
In re                                               :
                                                    :   Chapter 11
METROPARK USA, INC., ¹                               :
                                                    :   Case No. 11-22866 (RDD)
            Debtor.                                 :
                                                    :
-------------------------------------------------------------------- x
```

<u>NOTICE OF FILING STALKING HORSE AGREEMENT</u>

**PLEASE TAKE NOTICE** that on May 12, 2011 Metropark USA, Inc. (the "<u>Debtor</u>") filed

its Motion of the Debtor for Order (A) Setting (1) Date to Conduct Auction of Debtors Interests in

Certain Real Property Leases and Intellectual Property, and (2) Sale Hearing Date; (B)

Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D)

Authorizing Debtor to Enter Into Lease Termination Agreements; (E) Approving and Authorizing

Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of

All Liens, Interests, Claims and Encumbrances Pursuant to § 363 of the Bankruptcy Code; (F)

Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure and

Local Bankruptcy Rule 6004-1 and (G) Granting Related Relief (Doc. No. 88).

---

[1] The Debtor's tax identification number is 81-0636659.

**PLEASE TAKE FURTHER NOTICE** that on May 20, 2011, the Debtor filed a stalking horse Agreement of Assignment and Assumption of Leases attached hereto as <u>Exhibit A</u> with respect to certain of the Debtor's leases.

Dated: May 20, 2011
      New York, New York

By:    <u>/s/ Cathy Hershcopf</u>
        Cathy Hershcopf

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

*Proposed Attorneys for Debtor and Debtor in Possession*

**EXHIBIT A**

# PERRY ELLIS INTERNATIONAL

May 20, 2011

Metropark USA, Inc., Debtor-in-Possession
5750 Grace Place
Los Angeles, California 90022

Re:   In re Metropark USA, Inc., Debtor
      Chapter 11 Case No. 11-22866 (RDD)
      *Offer for Assumption and Assignment of Leases*

Gentlemen and Ladies:

We refer to the bidding procedures attached to the *Motion of the Debtor for Order (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases...* [Docket No. 88] (the "Bidding Procedures").

Perry Ellis International, Inc. ("PEI") hereby makes its offer for the assumption and assignment of eight (8) leases ("Leases") of the referenced Debtor to our affiliate, Perry Ellis Menswear, LLC, a Delaware corporation ("Assignee"), for the sum of $800,000.00 in cash plus "cure" costs of up to $126,083.98 (as described below), for a total "Purchase Price" of up to $926,083.98, as set forth herein and in the attached documents. Undefined, capitalized terms are as defined in the Bidding Procedures.

Attached are:

- Proposed *Agreement of Assumption and Assignment of Leases (Stalking Horse)* (the "Agreement") showing changes from that proposed with the Bidding Procedures to reflect a form of Agreement acceptable to Assignee (Exhibit A);

- Executed copy of the Agreement (Exhibit B);

- Schedule identifying the Leases and "cure" costs (Exhibit C); and

- Evidence of adequate assurance of future performance (Exhibit D); the Assignee is a wholly-owned subsidiary of PEI; the Assignee holds all United States retail real estate interests for all divisions of PEI; the Assignee does not report financial information separate from PEI and therefore parties should consult the public financial information as set forth on Exhibit D.

Consistent with the Bidding Procedures, we hereby state:

*NY241,228,218-5*

- *Irrevocable*: This offer is irrevocable until the earlier of (i) the Closing (as defined in the Bidding Procedures) or forty-five (45) days following the Auction (unless the bid is sooner expressly rejected in writing by the Debtor).

- *Ready, Willing and Able*: If we are the successful bidder, we are ready, willing and able to close on the Agreement in the form attached within one (1) business day after the Sale Hearing, and have the financial wherewithal to meet all obligations required under the Agreement.

- *No Financing Contingency*: This offer is not contingent upon obtaining financing.

- *Deposit*: A deposit in the form of a wire transfer to Debtor's counsel for the benefit of "Metropark USA, Inc., Debtor-in-Possession" in the amount of $138,912.59, representing fifteen percent (15%) of the total Purchase Price ($926,083.98) as required by the Bidding Procedures has been provided (the "Deposit"). The Deposit, to the extent this offer is not rejected, and to the extent this offer represents the first highest or otherwise best Bidder or the second highest or otherwise best Bidder for the Leases, is to be held in escrow (without interest) until the earlier of (i) the Closing, and (ii) forty-five days (45) after the Auction. Please disclose the escrow agreement and/or any orders governing the escrow.

- *Stalking Horse Protection*: As set forth in the Agreement, as part of our offer, we seek a stalking horse fee of 5% of the total Purchase Price ($46,304.20) plus expense reimbursement of up to $40,000.00.

- *Cure*: We will pay up to the "cure" amounts set forth on the schedule attached as Exhibit C reflecting the Debtor's stated "cure" costs and aggregating up to $126,083.98 (with up to a 5% upward variance on a Lease by Lease basis in the event of any discrepancy between the Debtor's and any Landlord's representation of the total "cure" cost, as may ultimately be substantiated). In the event of any dispute, the Bankruptcy Court shall establish all "cure" costs as a pre-requisite in order to approve any assumption and assignment of any Lease. To the extent "cure" costs are established in excess of the variance amount as stated herein, such excess shall be paid by assignor.

3000 NW 107TH AVENUE, MIAMI, FL 33172　T 305 592 2830　F 305 594 2307　WWW.PERY.COM　(NASDAQ:PERY)

We are represented in this transaction by Greenberg Traurig, LLP, Attn: Allen G. Kadish, Esq. (Tel: 212-801-6846; Fax: 212-805-5546; email: kadisha@gtlaw.com).

We look forward to your prompt indication of next steps in lieu or advance of the auction.

Very truly yours,

Cory Shade
General Counsel

3000 NW 107TH AVENUE, MIAMI, FL 33172   T 305 592 2830   F 305 594 2307   WWW.PERY.COM   (NASDAQ:PERY)

cc with enclosures:

(a) *Debtor's counsel*:
Cooley LLP
Attn: Cathy Herschkopf, Esq. and Jeffrey L. Cohen, Esq.
1114 Avenue of the Americas
New York, New York 10036

(b) *Debtor's Real Estate Consultant*:
GA Keen Realty Advisors, A Division of Great American Group
Attn: Matthew Bordwin
130 West 42nd Street, Suite 1001
New York, New York 10036

(c) *Debtor's Financial Advisor*:
CRG Partners
Attn: Craig Boucher
7625 Wisconsin Avenue
Bethesda, Maryland 20814

(d) *Counsel to the Official Committee of Unsecured Creditors*:
Blakely & Blakely LLP
Attn: Ronald A. Clifford, Esq.
444 South Flower Street, Suite 1750
Los Angeles, California 90017

(e) *Counsel to Wells Fargo Bank, N.A.*:
Riemer & Braunstein, LLP
Attn: Donald E. Rothman, Esq.
Three Center Plaza
Boston, Massachusetts 02108

(f) *Counsel to the Second Lien Agent*:
Solomon Ward Seidenwurm & Smith LLP
Attn: Michael D. Breslauer, Esq.
401 B Street, Suite 1200
San Diego, California 32101

(g) *Office of the United States Trustee*
Attn: Susan Golden, Esq.
33 Whitehall Street, 21st Floor
New York, New York 10004

(h) *Our Counsel*:
Greenberg Traurig, LLP
Attn: Allen G. Kadish, Esq.
200 Park Avenue
New York, New York 10166

3000 NW 107TH AVENUE, MIAMI, FL 33172   T 305 592 2830   F 305 594 2307   WWW.PERY.COM   (NASDAQ:PERY)

## Index to Exhibits

Exhibit A - Proposed *Agreement of Assumption and Assignment of Leases (Stalking Horse)* showing changes from Debtor's proposed form

Exhibit B - Executed copy of the *Agreement of Assumption and Assignment of Leases (Stalking Horse)*

Exhibit C - Schedule identifying Leases and "cure" costs

Exhibit D - Evidence of adequate assurance of future performance

3000 NW 107TH AVENUE, MIAMI, FL 33172   T 305 592 2830   F 305 594 2307   WWW.PERY.COM   (NASDAQ:PERY)

# EXHIBIT A

Proposed *Agreement of Assumption and Assignment of Leases (Stalking Horse)* showing changes from Debtor's proposed form

ASSIGNOR MAY HAVE CLAIMS UNDER THE
~~LEASE~~LEASES
FOR CHARGES PAID BY THE ASSIGNOR,
WHICH CLAIMS MAY BE DISPUTED.
THESE CLAIMS WILL BE RETAINED BY ASSIGNOR.

## AGREEMENT OF ASSUMPTION AND ASSIGNMENT OF ~~LEASE~~LEASES
### (Stalking Horse)

THIS ASSUMPTION AND ASSIGNMENT AGREEMENT (this "Agreement") is made as of this ~~_____~~20th day of ~~_____~~May, 2011, by and among Metropark USA, Inc., a Delaware corporation ("Assignor"), and ~~_____~~Perry Ellis Menswear, LLC, a Delaware corporation ("Assignee").

I.      The ~~Lease~~Leases

Assignor, a debtor in possession, is a tenant under ~~a lease dated as of _____ (the "Lease") for the premises located at _____ and~~certain leases for certain premises (the "Premises") identified on the schedule (the "Lease Schedule") annexed as Exhibit A hereto (the "Leases"), more specifically described in the ~~Lease (the "Premises"). A copy of the Lease is attached hereto as Exhibit A. The landlord under the Lease is _____ ("Landlord").~~Leases. The landlords under the Leases are identified on Exhibit A (the "Landlords"). True copies of the Leases are posted by the Assignor as of the date hereof at http://www.greatamerican.com/real_estate/properties/metropark/metropark_documents.html.

II.     Assignor's Bankruptcy Case

On May 2, 2011, Assignor filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Assignor continues to operate its business and manage its properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in Assignor's Chapter 11 case.

III.    Assignor's Assignment of the ~~Lease~~Leases

Assignee is desirous of having Assignor assign to it, pursuant to § 365(f) of the Bankruptcy Code, on the terms and conditions set forth herein, all of Assignor's right, title and interest of any kind or nature in and to the ~~Lease~~Leases including, without limitation, the right to possession.

NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

Pursuant to the terms and for the consideration set forth below, Assignor hereby assigns to Assignee all of its right, title, and interest in and to the ~~Lease~~Leases for the remainder of the respective Lease ~~term~~terms (the "~~Assignment~~Assignments") and Assignee hereby accepts the

~~Assignment~~Assignments; provided, however, that any security deposit presently on account with any Landlord will either be refunded by Assignee to Assignor, or utilized by Assignor to reduce arrearages, if any, under the respective Lease and replaced to ~~Landlord~~Landlords by Assignee. Assignee hereby recognizes and acknowledges that each Landlord's right to full performance of all terms, conditions, and covenants of ~~the~~each Lease remains in effect on and after the effective date of the Assignment. Except to the extent otherwise agreed in writing by Assignee and any Landlord, Assignee assumes all of the terms, conditions, and covenants of ~~the~~each Lease as tenant under the Lease, including without limitation the benefits and burdens of the 2010 and 2011 year end adjustments, except as expressly modified hereby. Further, pursuant to § 365(f) of the Bankruptcy Code, on and after the effective date of the Assignment, Assignor and its estate shall be relieved from any liability for any breach of the ~~Lease~~Leases occurring after the effective date of the Assignment, and Assignee agrees to indemnify and hold Assignor harmless from any default in the performance of such terms, conditions and covenants occurring after the effective date of the Assignment. To the extent any Landlord and Assignee have agreed to the ~~cure amount~~Cure Costs as full satisfaction of Landlord's claim for monies owed under ~~the~~any Lease by Assignor, payment of such amount by Assignor to Landlord together with the assumption and assignment of the respective Lease to Assignee pursuant to this Agreement shall relieve Assignee of all liability arising under the respective Lease on account of any and all claims or defaults accruing prior to the effective date of the Assignment.

A. <u>Consideration</u>. The total consideration to be paid by Assignee (the "Purchase Price") is up to $926,083.98, as follows:

(i)     $800,000.00 in cash, payable at the Closing (as defined herein), and

(ii)     Assignee shall pay Cure Costs to the Landlords, in an amount up to $126,083.98, based upon the Lease Schedule as set forth in paragraph C below.

~~. The total consideration to be paid by Assignee to Assignor (the "Purchase Price") is  payable at the Closing (as defined herein). Upon execution of this Agreement, Assignee shall pay~~Assignee has paid to Assignor a deposit equal to ~~the greater of~~$138,912.59, representing fifteen percent (15%) of the Purchase Price ~~or $10,000 ~~(the "Deposit"). At the Closing, Assignee shall pay the balance of the Purchase Price to Assignor. ~~Said deposit and balance~~The Deposit shall be paid by certified or bank check made payable to Assignor, or by wire transfer to the account of Assignor, pursuant to written wire instructions to be provided by Assignor. ~~Said funds are to~~The Deposit shall be released and paid as directed by an order of the Bankruptcy Court approving the Assignment of the Lease to Assignee on the terms and conditions set forth herein.

B. <u>Closing and Effective Date of Assignment</u>. The closing of ~~an~~the Assignment shall take place within one (1) business day following approval by the Bankruptcy Court and the entry of the order approving the assumption and assignment and sale of the ~~Lease~~Leases to Assignee, at the offices of Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, or at such other time and place as may be designated by Assignor at its sole discretion (the "Closing"). The effective date of the Assignment shall be the date of the Closing.

C.    Bankruptcy Court Approval. This Agreement is contingent upon an order of the Bankruptcy Court:

(i)    authorizing (1) Assignor to enter into the Agreement, and (2) the assumption and assignment of the Leases pursuant hereto.

(ii)    determining any Cure Costs due to Landlords consistent herewith, and

(iii)    with no stay of any such order being in effect.

. This Agreement is contingent upon Assignor obtaining an order of the Bankruptcy Court authorizing: (1) Assignor to enter into the Agreement and, (2) the assumption and assignment of the Lease pursuant hereto. If the Bankruptcy Court does not approve this Assignment for any reason, other than a material breach of this Agreement by Assignee, or if, notwithstanding such an order of the Bankruptcy Court, Assignor fails to close within forty-five (45) days after entry of such order, then all escrowed funds shall be released to Assignee, and Assignee shall have no further claims against Assignor.

"Cure Costs" shall be determined by agreement of the Assignor, the Assignee and the respective Landlord or by order of the Bankruptcy Court in connection with and as a condition to the approval of the assumption and assignment of any Lease; Cure Costs aggregate up to $126,083.98 for the Leases as stated by the Assignor in the Lease Schedule annexed as Exhibit C; in the event of any discrepancy between the Assignor's and any Landlord's representation of the total Cure Costs, Assignee shall pay up to a 5% variance on a Lease by Lease basis as may ultimately be substantiated and approved by the Bankruptcy Court; to the extent the Cure Costs are ultimately established in an amount in excess of 5% (on a Lease by Lease basis) of the Cure Costs as stated in the Lease Schedule annexed as Exhibit C, such excess shall be paid by Assignor.

Assignor shall obtain the entry by the Bankruptcy Court of the Sale Order in form and substance reasonably satisfactory to Assignee which shall, among other things, (a) determine that (i) this Agreement was entered into by Assignor and Assignee in good faith and represents the highest or otherwise best offer for the Leases and should be approved, and (ii) Assignee is a good faith purchaser under Section 363(m) of the Bankruptcy Code and that the provisions of Section 363(n) of the Bankruptcy Code have not been violated; (b) authorize and direct Assignor to assign the Leases to Assignee pursuant to this Agreement and Section 363 of the Bankruptcy Code, free and clear of any liens, claims, encumbrances, security interests, pledges or other interests ("Liens") (including any and all "interests" in the Leases within the meaning of Section 363(f) of the Bankruptcy Code); (c) authorize and direct Assignor to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing; (d) provide that Assignee will not assume or be liable for any liabilities of Assignor; and (e) contain such other provisions as may be necessary or reasonably desirable or appropriate to give effect to the documents necessary to carry out the transactions contemplated hereby. Assignee will promptly take such actions as are reasonably requested by Assignor to obtain entry of a Sale Order, including furnishing affidavits

or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Assignee is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and that the purchase price was not controlled by an agreement in violation of Section 363(n) or any other section of the Bankruptcy Code.

If Assignee fails to close for any reason other than a material breach of this Agreement by Assignor, then Assignee's deposit shall become non-refundable and shall be forfeited to Assignor as liquidated damages. Assignor shall have forty-five (45) days, subject to a Bankruptcy Court ordered extension, from the date that this Agreement is fully executed, to obtain an order from the Bankruptcy Court authorizing Assignor to enter into this Agreement and to close. If the aforesaid order is not obtained and the Closing does not occur within the aforesaid time period, all escrowed funds shall be released to Assignee and Assignee and Assignor shall have no further claims against one another.

D.  <u>Free and Clear of Liens and Encumbrances</u>. Upon entry of an order approving the assumption and assignment contemplated by this Agreement, the ~~Lease~~Leases shall be free and clear of any ~~liens, security interests, pledges or other interests,~~and all Liens, with all such ~~interests~~Liens to attach to the proceeds paid to Assignor by Assignee.

E.  <u>Break-up Fee</u>. The parties contemplate that Assignor will seek Bankruptcy Court approval for Assignor to enter into this Agreement which will be presented as a "Stalking Horse" sale, subject to any third party's competitive bid as a higher or otherwise better offer. However, in the event that the Bankruptcy Court should approve any third party's competitive bid as a higher and better offer and Assignor thereafter closes an assignment of the ~~the~~any Lease to such third party, then, subject to the Bankruptcy Court's approval, Assignee shall be entitled to a break-up fee in the amount of $~~———— hereunder.~~ 5% of the Purchase Price ($46,304.20) plus reimbursement of Assignee's reasonable and substantiated out-of-pocket expenses incurred in connection therewith up to $40,000.00. Any Bankruptcy Court approved break-up fee shall be paid by Assignor (with the return of the Deposit) within three (3) business days after Assignor's closing with the successful third party competing bidder.

F.  <u>Adequate Assurance Data</u>. As a condition of the bidding procedures approved by the Bankruptcy Court (the "<u>Bidding Procedures</u>") and in compliance with said Bidding Procedures prior to or with the execution of this Agreement, Assignee has supplied Assignor with: (i) the full name and identity of the proposed Assignee of the ~~Lease~~Leases; (ii) a current financial statement or such other proof of financial condition of the proposed Assignee or guarantor, if any; (iii) a written statement of the proposed Assignee's expected use of the respective Premises (see paragraph G below), (iv) such other information relating to the proposed business to be conducted at the respective Premises and retail experience of the proposed Assignee, and (v) a projection of gross sales, if the respective Lease contains a percentage rent provision.

G.  <u>Use</u>. ~~Assignee shall use the Premises for such purposes as are authorized under the Lease or applicable law. More specifically, Assignee's intended use is ————————~~
~~————————————————————————~~
~~————————————————————————.~~
Assignee shall use the respective Premises for the retail sale of men's, women's and/or

children's apparel including, but not limited to, woven and knit tops, sweaters, outerwear, t-shirts, dresses, skirts, jeans, casual pants; women's, men's and/or children's accessories including, but not limited to, jewelry, watches, hair accessories, sunglasses, hats, scarves, handbags, footwear, belts; women's and men's personal care including, but not limited to, cosmetics, fragrance, bath & body products, hair care; women's, men's and children's intimate apparel including, but not limited to, socks, panties, boxers, pajamas; miscellaneous gift items including magazines, books, novelty items, games, home décor, artwork and a limited selection of CD's and DVD's. Assignee shall not use more than 5% of the sales floor area for the sale, rental, display of books, magazines, periodicals and newspapers on tape, disk, CD-ROM and/or any other media (the "Ancillary Items"), and not more than 10% of the sales floor area for the sale of children's wear or footwear. The merchandise for sale at the stores, other than the Ancillary Items, shall bear the Perry Ellis, Original Penguin, and/or any other labels owned or licensed to Perry Ellis International, Inc. or any of its affiliates.

H.    Possession. Assignor agrees to provide Assignee with possession of the Premises on the Closing, subject only to an extension ordered by the Bankruptcy Court and only for good cause shown.

I.    Initial Rent. Upon the Closing, Assignee shall be responsible for, and shall pay, rent and other obligations and charges due under the ~~Lease~~Leases to ~~Landlord~~the Landlords in accordance with the terms of the ~~Lease~~Leases from and after the Closing and Assignee's possession of the respective Premises.

J.    Reimbursement by Assignee. Assignee shall reimburse Assignor for any rent or other charges due under the Lease for any period subsequent to the Closing that are paid by Assignor to the respective Landlord. Any such amounts shall be reimbursed by Assignee to Assignor within two (2) days of the Closing.

K.    Commission. Any commission due and payable as a result of this Agreement shall be paid by Assignee, unless otherwise provided by prior order of the Bankruptcy Court.

L.    Miscellaneous

(1)    This Agreement shall be governed by and construed in accordance with the laws of the State of New York and to the extent permissible and not inconsistent with the laws of the State of New York, under the laws of the state where the Premises is located. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes hereunder, and they each hereby consent to such jurisdiction.

(2)    This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes any prior instruments, arrangements and understandings relating to the subject matter hereof, except the ~~Lease~~Leases and all amendments thereto.

(3)    Assignor may assign its rights and obligations hereunder to any trustee appointed by the Bankruptcy Court. Assignee may not assign its rights and obligations hereunder to any party without Assignor's consent and, following Bankruptcy Court approval, any

assignment of this Agreement by Assignee must also be permitted by the terms of the ~~Lease~~Leases or agreed to by ~~Landlord~~Landlords.

(4)     This Agreement may be executed with counterpart signature pages or in more than one counterpart, all of which shall be deemed one and the same agreement, and shall become effective when one or more counterparts have been signed by each of the parties and delivered to all the parties.

(5)     Assignee shall be deemed to be a party in interest for all purposes contemplated by the Bankruptcy Court and the Federal Rules of Bankruptcy Procedure in connection with the assumption and assignment of the Leases and this Agreement. Assignor shall serve upon Assignee all notices given, or required to be given, and all papers served, or required to be served, pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure in Assignor's Chapter 11 case.

(6)     Assignor and Assignee shall take all reasonable efforts pending and following Closing to consummate and effectuate this Agreement and assist the other in effectuating the terms hereof, including by supplying information and documentation upon reasonable request therefor at Assignee's cost and expense.

(7)     ~~(5)~~ Any notice, demand, request or other communication that any party hereto may be required or may desire to give hereunder ("Notice" or "Notices") shall be in writing and shall be given as follows: (a) by hand delivery; (b) by overnight mail via Federal Express or other reputable express courier service; (c) by facsimile transmission; or (d) email (other than for notices of default):

If to Assignor:

    Metropark USA, Inc.
    5750 Grace Place
    Los Angeles, CA 90022
    Attention: Rick Hicks
    Email: Rick.hicks@metroparkusa.com

With a copy to:

    Cooley LLP
    1114 Avenue of the Americas
    New York, NY 10036
    Facsimile: 212.479.6275
    Attn: Cathy Hershcopf, Esq. and Alex Velinsky, Esq.
    Email: chershcopf@cooley.com
    Email: avelinsky@cooley.com

If to Assignee:

Perry Ellis Menswear, LLC
c/o Perry Ellis International, Inc.
3000 Northwest 107th Avenue
Miami, Florida  33172
Facsimile:  (786) 221-8245
Attn:  Cory Shade, Esq., General Counsel
Email:  cory.shade@perry.com

With a copy to:

Greenberg Traurig, LLP
200 Park Avenue
New York, New York  10166
Facsimile:  (212) 805-5546
Attn:  Allen G. Kadish, Esq.
Email:  kadisha@gtlaw.com

or at such other address or to such other addressee or to such other facsimile number as the party to be served with Notice shall have furnished in writing to the party seeking or desiring to serve Notice as a place for the service of Notice. Notices shall be deemed to have been received (a) on the next business day if given by overnight mail, or (b) on the same day, if given by facsimile transmission, upon receipt of successful transmission.

[Signature page follows]

IN WITNESS WHEREOF, this Assignment has been duly executed this 20th day of May, 2011.

ASSIGNOR: Metropark USA, Inc., Debtor-in-Possession

By:_____
Name: Rick Hicks
Title: Chief Financial Officer and Secretary


ASSIGNEE:
        Perry Ellis International, Inc. on behalf of
        Perry Ellis Menswear, LLC


By:_____
Name:
Title:

## Index to Exhibits

Exhibit A - Lease Schedule 2

# EXHIBIT A

## Perry Ellis International, Inc.

## SCHEDULE OF LEASES TO BE ASSUMED AND ASSIGNED, AND CURE COSTS

| Store No. | Mall | Landlord | Cure Costs |
|---|---|---|---|
| 1 | Glendale Galleria Glendale, CA | General Growth Properties | $64,839.00 |
| 4 | Valley Fair Mall Santa Clara, CA | Westfield | $4,108.05 |
| 14 | Los Cerritos Center Cerritos, CA | Macerich | $2,859.86 |
| 15 | Miracle Mile Shops Las Vegas, NV | Related Urban Management | $3,204.89 |
| 17 | Houston Galleria Houston, TX | Simon Property Group | $4,043.00 |
| 18 | Lenox Square Atlanta, GA | Simon Property Group | $4,831.00 |
| 21 | Willowbrook Mall Houston, TX | General Growth Properties | $37,931.18 |
| 31 | Brea Mall Brea, CA | Simon Property Group | $4,267.00 |
| | | **TOTAL** | $126,083.98 |

Document comparison by Workshare Professional on Friday, May 20, 2011 4:59:14 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://NY-DMS1/NY/241225527/1 |
| Description | #241225527v1<NY> - Metropark Stalking Horse APA |
| Document 2 ID | interwovenSite://NY-DMS1/NY/241225527/6 |
| Description | #241225527v6<NY> - Metropark Stalking Horse APA |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 141 |
| Deletions | 59 |
| Moved from | 8 |
| Moved to | 8 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 216 |

# **EXHIBIT B**

Executed copy of the *Agreement of Assumption and Assignment of Leases (Stalking Horse)* showing changes from Debtor's proposed form

ASSIGNOR MAY HAVE CLAIMS UNDER THE LEASES
FOR CHARGES PAID BY THE ASSIGNOR,
WHICH CLAIMS MAY BE DISPUTED.
THESE CLAIMS WILL BE RETAINED BY ASSIGNOR.

## AGREEMENT OF ASSUMPTION AND ASSIGNMENT OF LEASES
### (Stalking Horse)

THIS ASSUMPTION AND ASSIGNMENT AGREEMENT (this "Agreement") is made as of this 20th day of May, 2011, by and among Metropark USA, Inc., a Delaware corporation ("Assignor"), and Perry Ellis Menswear, LLC, a Delaware corporation ("Assignee").

I.      The Leases

Assignor, a debtor in possession, is a tenant under certain leases for certain premises (the "Premises") identified on the schedule (the "Lease Schedule") annexed as Exhibit A hereto (the "Leases"), more specifically described in the Leases. The landlords under the Leases are identified on Exhibit A (the "Landlords"). True copies of the Leases are as posted by the Assignor as of the date hereof at http://www.greatamerican.com/real_estate/properties/metropark /metropark_documents.html.

II.     Assignor's Bankruptcy Case

On May 2, 2011, Assignor filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Assignor continues to operate its business and manage its properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in Assignor's Chapter 11 case.

III.    Assignor's Assignment of the Leases

Assignee is desirous of having Assignor assign to it, pursuant to § 365(f) of the Bankruptcy Code, on the terms and conditions set forth herein, all of Assignor's right, title and interest of any kind or nature in and to the Leases including, without limitation, the right to possession.

NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

Pursuant to the terms and for the consideration set forth below, Assignor hereby assigns to Assignee all of its right, title, and interest in and to the Leases for the remainder of the respective Lease terms (the "Assignments") and Assignee hereby accepts the Assignments; provided, however, that any security deposit presently on account with any Landlord will either be refunded by Assignee to Assignor, or utilized by Assignor to reduce arrearages, if any, under the respective Lease and replaced to Landlords by Assignee. Assignee hereby recognizes and acknowledges that each Landlord's right to full performance of all terms, conditions, and

covenants of each Lease remains in effect on and after the effective date of the Assignment. Except to the extent otherwise agreed in writing by Assignee and any Landlord, Assignee assumes all of the terms, conditions, and covenants of each Lease as tenant under the Lease, including without limitation the benefits and burdens of the 2010 and 2011 year end adjustments, except as expressly modified hereby. Further, pursuant to § 365(f) of the Bankruptcy Code, on and after the effective date of the Assignment, Assignor and its estate shall be relieved from any liability for any breach of the Leases occurring after the effective date of the Assignment, and Assignee agrees to indemnify and hold Assignor harmless from any default in the performance of such terms, conditions and covenants occurring after the effective date of the Assignment. To the extent any Landlord and Assignor have agreed to the Cure Costs as full satisfaction of Landlord's claim for monies owed under any Lease by Assignor, payment of such amount by Assignor to Landlord together with the assumption and assignment of the respective Lease to Assignee pursuant to this Agreement shall relieve Assignee of all liability arising under the respective Lease on account of any and all claims or defaults accruing prior to the effective date of the Assignment.

     A.    <u>Consideration</u>. The total consideration to be paid by Assignee (the "<u>Purchase Price</u>") is up to $926,083.98, as follows:

     (i)    $800,000.00 in cash, payable at the Closing (as defined herein), and

     (ii)    Assignee shall pay Cure Costs to the Landlords, in an amount up to $126,083.98, based upon the Lease Schedule as set forth in paragraph C below.

Assignee has paid to Assignor a deposit equal to $138,912.59, representing fifteen percent (15%) of the Purchase Price (the "<u>Deposit</u>"). At the Closing, Assignee shall pay the balance of the Purchase Price to Assignor. The Deposit shall be paid by certified or bank check made payable to Assignor, or by wire transfer to the account of Assignor, pursuant to written wire instructions to be provided by Assignor. The Deposit shall be released and paid as directed by an order of the Bankruptcy Court approving the Assignment of the Lease to Assignee on the terms and conditions set forth herein.

     B.    <u>Closing and Effective Date of Assignment</u>. The closing of the Assignment shall take place within one (1) business day following approval by the Bankruptcy Court and the entry of the order approving the assumption and assignment and sale of the Leases to Assignee, at the offices of Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, or at such other time and place as may be designated by Assignor at its sole discretion (the "Closing"). The effective date of the Assignment shall be the date of the Closing.

     C.    <u>Bankruptcy Court Approval</u>. This Agreement is contingent upon an order of the Bankruptcy Court:

     (i)    authorizing (1) Assignor to enter into the Agreement, and (2) the assumption and assignment of the Leases pursuant hereto,

2

(ii)     determining any Cure Costs due to Landlords consistent herewith, and

(iii)    with no stay of any such order being in effect.

If the Bankruptcy Court does not approve this Assignment for any reason, other than a material breach of this Agreement by Assignee, or if, notwithstanding such an order of the Bankruptcy Court, Assignor fails to close within forty-five (45) days after entry of such order, then all escrowed funds shall be released to Assignee, and Assignee shall have no further claims against Assignor.

"Cure Costs" shall be determined by agreement of the Assignor, the Assignee and the respective Landlord or by order of the Bankruptcy Court in connection with and as a condition to the approval of the assumption and assignment of any Lease; Cure Costs aggregate up to $126,083.98 for the Leases as stated by the Assignor in the Lease Schedule annexed as Exhibit C; in the event of any discrepancy between the Assignor's and any Landlord's representation of the total Cure Costs, Assignee shall pay up to a 5% variance on a Lease by Lease basis as may ultimately be substantiated and approved by the Bankruptcy Court; to the extent the Cure Costs are ultimately established in an amount in excess of 5% (on a Lease by Lease basis) of the Cure Costs as stated in the Lease Schedule annexed as Exhibit C, such excess shall be paid by Assignor.

Assignor shall obtain the entry by the Bankruptcy Court of the Sale Order in form and substance reasonably satisfactory to Assignee which shall, among other things, (a) determine that (i) this Agreement was entered into by Assignor and Assignee in good faith and represents the highest or otherwise best offer for the Leases and should be approved, and (ii) Assignee is a good faith purchaser under Section 363(m) of the Bankruptcy Code and that the provisions of Section 363(n) of the Bankruptcy Code have not been violated; (b) authorize and direct Assignor to assign the Leases to Assignee pursuant to this Agreement and Section 363 of the Bankruptcy Code, free and clear of any liens, claims, encumbrances, security interests, pledges or other interests ("Liens") (including any and all "interests" in the Leases within the meaning of Section 363(f) of the Bankruptcy Code); (c) authorize and direct Assignor to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing; (d) provide that Assignee will not assume or be liable for any liabilities of Assignor; and (e) contain such other provisions as may be necessary or reasonably desirable or appropriate to give effect to the documents necessary to carry out the transactions contemplated hereby. Assignee will promptly take such actions as are reasonably requested by Assignor to obtain entry of a Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Assignee is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and that the purchase price was not controlled by an agreement in violation of Section 363(n) or any other section of the Bankruptcy Code.

If Assignee fails to close for any reason other than a material breach of this Agreement by Assignor, then Assignee's deposit shall become non-refundable and shall be forfeited to Assignor as liquidated damages. Assignor shall have forty-five (45) days, subject to a

3

Bankruptcy Court ordered extension, from the date that this Agreement is fully executed, to obtain an order from the Bankruptcy Court authorizing Assignor to enter into this Agreement and to close. If the aforesaid order is not obtained and the Closing does not occur within the aforesaid time period, all escrowed funds shall be released to Assignee and Assignee and Assignor shall have no further claims against one another.

D. <u>Free and Clear of Liens and Encumbrances</u>. Upon entry of an order approving the assumption and assignment contemplated by this Agreement, the Leases shall be free and clear of any and all Liens, with all such Liens to attach to the proceeds paid to Assignor by Assignee.

E. <u>Break-up Fee</u>. The parties contemplate that Assignor will seek Bankruptcy Court approval for Assignor to enter into this Agreement which will be presented as a "Stalking Horse" sale, subject to any third party's competitive bid as a higher or otherwise better offer. However, in the event that the Bankruptcy Court should approve any third party's competitive bid as a higher and better offer and Assignor thereafter closes an assignment of any Lease to such third party, then, subject to the Bankruptcy Court's approval, Assignee shall be entitled to a break-up fee in the amount of 5% of the Purchase Price ($46,304.20) plus reimbursement of Assignee's reasonable and substantiated out-of-pocket expenses incurred in connection therewith up to $40,000.00. Any Bankruptcy Court approved break-up fee shall be paid by Assignor (with the return of the Deposit) within three (3) business days after Assignor's closing with the successful third party competing bidder.

F. <u>Adequate Assurance Data</u>. As a condition of the bidding procedures approved by the Bankruptcy Court (the "<u>Bidding Procedures</u>") and in compliance with said Bidding Procedures prior to or with the execution of this Agreement, Assignee has supplied Assignor with: (i) the full name and identity of the proposed Assignee of the Leases; (ii) a current financial statement or such other proof of financial condition of the proposed Assignee or guarantor, if any; (iii) a written statement of the proposed Assignee's expected use of the respective Premises (see paragraph G below), (iv) such other information relating to the proposed business to be conducted at the respective Premises and retail experience of the proposed Assignee, and (v) a projection of gross sales, if the respective Lease contains a percentage rent provision.

G. <u>Use</u>. Assignee shall use the respective Premises for the retail sale of men's, women's and/or children's apparel including, but not limited to, woven and knit tops, sweaters, outerwear, t-shirts, dresses, skirts, jeans, casual pants; women's, men's and/or children's accessories including, but not limited to, jewelry, watches, hair accessories, sunglasses, hats, scarves, handbags, footwear, belts; women's and men's personal care including, but not limited to, cosmetics, fragrance, bath & body products, hair care; women's, men's and children's intimate apparel including, but not limited to, socks, panties, boxers, pajamas; miscellaneous gift items including magazines, books, novelty items, games, home décor, artwork and a limited selection of CD's and DVD's. Assignee shall not use more than 5% of the sales floor area for the sale, rental, display of books, magazines, periodicals and newspapers on tape, disk, CD-ROM and/or any other media (the "<u>Ancillary Items</u>"), and not more than 10% of the sales floor area for the sale of children's wear or footwear. The merchandise for sale at the stores, other than the Ancillary Items, shall bear the Perry Ellis, Original Penguin, and/or any other labels owned or licensed to Perry Ellis International, Inc. or any of its affiliates.

NY241,225,527-6

H.     Possession. Assignor agrees to provide Assignee with possession of the Premises on the Closing, subject only to an extension ordered by the Bankruptcy Court and only for good cause shown.

I.     Initial Rent. Upon the Closing, Assignee shall be responsible for, and shall pay, rent and other obligations and charges due under the Leases to the Landlords in accordance with the terms of the Leases from and after the Closing and Assignee's possession of the respective Premises.

J.     Reimbursement by Assignee. Assignee shall reimburse Assignor for any rent or other charges due under the Lease for any period subsequent to the Closing that are paid by Assignor to the respective Landlord. Any such amounts shall be reimbursed by Assignee to Assignor within two (2) days of the Closing.

K.     Commission. Any commission due and payable as a result of this Agreement shall be paid by Assignee, unless otherwise provided by prior order of the Bankruptcy Court.

L.     Miscellaneous

(1)     This Agreement shall be governed by and construed in accordance with the laws of the State of New York and to the extent permissible and not inconsistent with the laws of the State of New York, under the laws of the state where the Premises is located. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes hereunder, and they each hereby consent to such jurisdiction.

(2)     This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes any prior instruments, arrangements and understandings relating to the subject matter hereof, except the Leases and all amendments thereto.

(3)     Assignor may assign its rights and obligations hereunder to any trustee appointed by the Bankruptcy Court. Assignee may not assign its rights and obligations hereunder to any party without Assignor's consent and, following Bankruptcy Court approval, any assignment of this Agreement by Assignee must also be permitted by the terms of the Leases or agreed to by Landlords.

(4)     This Agreement may be executed with counterpart signature pages or in more than one counterpart, all of which shall be deemed one and the same agreement, and shall become effective when one or more counterparts have been signed by each of the parties and delivered to all the parties.

(5)     Assignee shall be deemed to be a party in interest for all purposes contemplated by the Bankruptcy Court and the Federal Rules of Bankruptcy Procedure in connection with the assumption and assignment of the Leases and this Agreement.  Assignor shall serve upon Assignee all notices given, or required to be given, and all papers served, or required to be served, pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure in Assignor's Chapter 11 case.

5

(6)    Assignor and Assignee shall take all reasonable efforts pending and following Closing to consummate and effectuate this Agreement and assist the other in effectuating the terms hereof, including by supplying information and documentation upon reasonable request therefor at Assignee's cost and expense.

(7)    Any notice, demand, request or other communication that any party hereto may be required or may desire to give hereunder ("Notice" or "Notices") shall be in writing and shall be given as follows: (a) by hand delivery; (b) by overnight mail via Federal Express or other reputable express courier service; (c) by facsimile transmission; or (d) email (other than for notices of default):

If to Assignor:

> Metropark USA, Inc.
> 5750 Grace Place
> Los Angeles, CA 90022
> Attention: Rick Hicks
> Email: Rick.hicks@metroparkusa.com

With a copy to:

> Cooley LLP
> 1114 Avenue of the Americas
> New York, NY 10036
> Facsimile: 212.479.6275
> Attn: Cathy Hershcopf, Esq. and Alex Velinsky, Esq.
> Email: chershcopf@cooley.com
> Email:  avelinsky@cooley.com

If to Assignee:

> Perry Ellis Menswear, LLC
> c/o Perry Ellis International, Inc.
> 3000 Northwest 107th Avenue
> Miami, Florida  33172
> Facsimile:  (786) 221-8245
> Attn:  Cory Shade, Esq., General Counsel
> Email:  cory.shade@perry.com

With a copy to:

> Greenberg Traurig, LLP
> 200 Park Avenue
> New York, New York  10166
> Facsimile:  (212) 805-5546
> Attn:  Allen G. Kadish, Esq.
> Email:  kadisha@gtlaw.com

or at such other address or to such other addressee or to such other facsimile number as the party to be served with Notice shall have furnished in writing to the party seeking or desiring to serve Notice as a place for the service of Notice. Notices shall be deemed to have been received (a) on the next business day if given by overnight mail, or (b) on the same day, if given by facsimile transmission, upon receipt of successful transmission.

[Signature page follows]

IN WITNESS WHEREOF, this Assignment has been duly executed this 20th day of May, 2011.

ASSIGNOR: Metropark USA, Inc., Debtor-in-Possession

By:_____
Name: Rick Hicks
Title: Chief Financial Officer and Secretary


ASSIGNEE: Perry Ellis International, Inc. on behalf of
Perry Ellis Menswear, LLC

By:_____
Name: _Cory Shade_
Title: _SVP & General Counsel_

## **Index to Exhibits**

Exhibit A - Lease Schedule

*NY241,225,527-6*

# EXHIBIT A

## Perry Ellis International, Inc.

## SCHEDULE OF LEASES TO BE ASSUMED AND ASSIGNED, AND CURE COSTS

| Store No. | Mall | Landlord | Cure Costs |
|---|---|---|---|
| 1 | Glendale Galleria<br>Glendale, CA | General Growth Properties | $64,839.00 |
| 4 | Valley Fair Mall<br>Santa Clara, CA | Westfield | $4,108.05 |
| 14 | Los Cerritos Center<br>Cerritos, CA | Macerich | $2,859.86 |
| 15 | Miracle Mile Shops<br>Las Vegas, NV | Related Urban Management | $3,204.89 |
| 17 | Houston Galleria<br>Houston, TX | Simon Property Group | $4,043.00 |
| 18 | Lenox Square<br>Atlanta, GA | Simon Property Group | $4,831.00 |
| 21 | Willowbrook Mall<br>Houston, TX | General Growth Properties | $37,931.18 |
| 31 | Brea Mall<br>Brea, CA | Simon Property Group | $4,267.00 |
|  | **TOTAL** |  | $126,083.98 |

## EXHIBIT C

## Perry Ellis International, Inc.

## SCHEDULE OF LEASES TO BE ASSUMED AND ASSIGNED, AND CURE COSTS

| Store No. | Mall | Landlord | Cure Costs |
|---|---|---|---|
| 1 | Glendale Galleria<br>Glendale, CA | General Growth Properties | $64,839.00 |
| 4 | Valley Fair Mall<br>Santa Clara, CA | Westfield | $4,108.05 |
| 14 | Los Cerritos Center<br>Cerritos, CA | Macerich | $2,859.86 |
| 15 | Miracle Mile Shops<br>Las Vegas, NV | Related Urban Management | $3,204.89 |
| 17 | Houston Galleria<br>Houston, TX | Simon Property Group | $4,043.00 |
| 18 | Lenox Square<br>Atlanta, GA | Simon Property Group | $4,831.00 |
| 21 | Willowbrook Mall<br>Houston, TX | General Growth Properties | $37,931.18 |
| 31 | Brea Mall<br>Brea, CA | Simon Property Group | $4,267.00 |
| | | **TOTAL:** | $126,083.98 |

NY241,228,218-5

## Exhibit D

## Evidence of adequate assurance of future performance

Perry Ellis International, Inc., the corporate parent of Perry Ellis Menswear, LLC, is a leading designer, distributor and licensor of a broad line of high quality men's and women's apparel, accessories, and fragrances. The Company's collection of dress and casual shirts, golf sportswear, sweaters, dress and casual pants and shorts, jeans wear, active wear and men's and women's swimwear is available through all major levels of retail distribution. The Company, through its wholly owned subsidiaries, owns a portfolio of nationally and internationally recognized brands including Perry Ellis(R), Jantzen(R), Laundry by Shelli Segal(R), C&C California(R), Cubavera(R), Munsingwear(R), Savane(R), Original Penguin(R) by Munsingwear(R), Grand Slam(R), Natural Issue(R), Pro Player(R), the Havanera Co.(R), Axis(R), Tricots St. Raphael(R), Gotcha(R), Girl Star(R), MCD(R) John Henry(R), Mondo di Marco(R), Redsand(R), Manhattan(R), Axist(R) and Farah(R). The Company enhances its roster of brands by licensing trademarks from third parties including Pierre Cardin(R) for men's sportswear, Nike(R) and Jag(R) for swimwear, and Callaway(R) and PGA TOUR(R) for golf apparel.

Our public filings and financial information are available at www.pery.com.

3000 NW 107TH AVENUE, MIAMI, FL 33172   T 305 592 2830   F 305 594 2307   WWW.PERY.COM   (NASDAQ:PERY)