# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Case No. 11 - 22866 |
| METROPARK USA, INC. | Chapter 11 |
| Debtor. | **SECOND INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION** |

      **CAME ON FOR CONSIDERATION** the *Motion of the Debtor For (I) Use of Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "Cash Collateral Motion") filed by Metropark USA, Inc., the debtor and debtor-in-possession ("Metropark" or the "Debtor"), pursuant to §§ 105, 361, 362(a) and 363(c), of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), seeking authority for the Debtor to use Cash Collateral (as defined herein) of Wells Fargo Bank, National Association (as successor by merger to Wells Fargo Retail Finance, LLC), as administrative agent and collateral agent (in such capacities, together with any successors in such capacities, the "Prepetition Agent"), and the other Credit Parties referred to in the Prepetition Senior

Credit Agreement defined below (together with the Prepetition Agent, collectively, the "Prepetition Senior Secured Parties");

The Debtor, the Prepetition Agent, and the Committee (as defined in Paragraph 5 below) have represented to the Court that they have agreed in good faith to the terms and conditions of this Second Interim Agreed Order Authorizing Limited Use of Cash Collateral and Granting Adequate Protection (the "Second Interim Cash Collateral Order"). The Court finds notice of the hearing on the interim relief granted herein to have been sufficient and appropriate as required under the Bankruptcy Rules and under the particular circumstances of this Case (as defined below).

After a hearing on May 4, 2011 (the "Hearing"), and based upon the Affidavit of Cynthia Harriss Pursuant to Local Bankruptcy Rule 1007-2, the evidentiary record adduced at the Hearing, and the representations of counsel for the Debtor and for the Prepetition Agent, this Court entered an Agreed Interim Order Authorizing Limited Use of Cash Collateral and Granting Adequate Protection (the "First Interim Cash Collateral Order").

The Debtor, the Prepetition Agent and the Committee have stipulated and agreed as follows, and the Court, on an interim basis subject to entry of a final order (the "Final Cash Collateral Order"), hereby approves and adopts said stipulations and agreements and grants the relief requested herein to prevent immediate and irreparable harm to the Debtor's estate and to facilitate the reorganization or sale of the Debtor's business, and accordingly Orders:

## STATEMENT OF JURISDICTION

1.     This Court has jurisdiction over this case and matter and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## NOTICE

3.      Notice of the hearing on the Cash Collateral Motion has been given to the United States Trustee, counsel to the Committee, the thirty (30) largest creditors and others in interest pursuant to Bankruptcy Rules 2002, 4001(c) and 9006, and as required by Bankruptcy Code §§ 102, 361, 362 and 363.  Other than the notice provided for herein, no further notice of, or hearing on, the relief sought in the Cash Collateral Motion is required.

## FACTUAL AND PROCEDURAL BACKGROUND

4.      On May 2, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code and thereby commenced the above-captioned case (the "Case").  The Debtor has continued in the management and possession of its businesses and properties as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

5.      On May 6, 2011, an Official Committee of Unsecured Creditors (the "Committee") was appointed, and counsel for the Committee has been retained subject to approval by the Court.

### The Prepetition Senior Claims and the Debtor's Stipulations[1]

---

[1]   The stipulations and agreements of the Debtor and the Prepetition Lender in Paragraphs 6 through 10 are referred to collectively as the "Debtor's Stipulations".   The Debtor's Stipulations are made by the Debtor in its capacity as a debtor and not on behalf of its estate or as a debtor-in-possession and are without prejudice to the rights of other parties in interest in challenging them as they may receive authority to act on behalf of the estate, as provided in Paragraph 62.

6.     (a)     Pursuant to (i) that certain Credit Agreement dated April 1, 2008, as previously amended and in effect (the "Prepetition Senior Credit Agreement"), and (ii) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the Prepetition Agent and the other Prepetition Senior Secured Parties, including, without limitation, the promissory notes, security agreements, UCC financing statements, collateral access agreements, cash management agreements, credit card notifications, demand deposit account notifications, control agreements, and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as they have been amended, modified, or supplemented and in effect from time to time) by, among others, the Debtor and the Prepetition Senior Secured Parties, the Prepetition Senior Secured Parties established in favor of the Debtor a secured revolving credit facility in the maximum amount of $6,000,000.00, in addition to other financial accommodations established in the Prepetition Senior Credit Agreement.   (The Prepetition Senior Credit Agreement, and all other documents, instruments, and agreements referenced above and otherwise executed in connection therewith or related thereto shall be referred to herein as the "Prepetition Senior Claim Documents".   True and correct copies of the Prepetition Senior Claim Documents are retained by the Prepetition Agent and the Debtor and will be available to interested parties upon request.

(b)     Under the Prepetition Senior Claim Documents and applicable law, the Debtor and the Prepetition Senior Secured Parties maintain that the Prepetition Agent, for the ratable benefit of the Prepetition Senior Secured Parties, holds valid, enforceable, and allowable claims against the Debtor, as of the Petition Date, in an

aggregate amount equal to at least $2,555,353.12 (inclusive of $618,840.60 of letters of credit), plus any and all interest, fees and costs, and any and all other debts or obligations of the Debtor to the Prepetition Senior Secured Parties under the Prepetition Senior Claim Documents (including all "Obligations" as defined in the Prepetition Senior Claim Documents), or otherwise (collectively, the "Prepetition Senior Claim").

7.    (a)    Metropark was also a party to that certain Note Purchase Agreement, dated March 21, 2011 (the "Prepetition Subordinated Credit Agreement") among the Debtor and Bricoleur Capital Partners, LP, as second lien agent, on behalf of itself and the lenders, including certain officers and directors of the Debtor (the "Prepetition Subordinated Secured Parties").  It is maintained that, As of the Petition Date, the balance owed under the Prepetition Subordinated Credit Agreement was approximately $825,000.00 (the "Prepetition Subordinated Secured Claim"), and that the Prepetition Subordinated Claim is secured by security interests in and liens on the Prepetition Collateral, expressly subordinated to the security interests and liens of the Prepetition Senior Secured Parties pursuant to that certain Security Agreement, dated March 21, 2011.

(b)    The Prepetition Senior Secured Parties and the Prepetition Subordinated Secured Parties are party to that certain Subordination Agreement dated as of March 21, 2011 ("Subordination Agreement"), pursuant to which, among other things, the interests of the Prepetition Subordinated Secured Parties are contractually subordinated and subject in right and time of payment to the security interest of the Prepetition Senior Secured Parties.   Under Section 2.3(d) of the Subordination Agreement, in the event Metropark filed for bankruptcy, the Prepetition Subordinated

Secured Parties agreed that the Prepetition Senior Secured Parties "may consent to the use of cash collateral or provide financing to [Metropark] on such terms and conditions and in such amounts as [the Prepetition Senior Secured Parties], in its sole discretion, may decide ...."

## The Prepetition Collateral

8.     The Debtor and the Prepetition Agent maintain that each component of the Prepetition Senior Claim evidenced by the Prepetition Senior Claim Documents is secured by valid, perfected, and unavoidable first priority liens and security interests in substantially all of the personal property of the Debtor, including, without limitation, all "Collateral" (as defined in the Prepetition Senior Credit Agreement), and all proceeds thereof, substitutions therefor, and accessions thereto, as further provided in the Prepetition Senior Claim Documents (the "Prepetition Collateral"), as follows:

(a)     All Accounts.

(b)     All Chattel Paper.

(c)     All Commercial Tort Claims (including, but not limited to, those Commercial Tort Claims listed in the Prepetition Senior Claim Documents).

(d)     All Deposit Accounts.

(e)     All Documents.

(f)     All Equipment.

(g)     All Fixtures.

(h)     All General Intangibles (including Payment Intangibles).

(i)     All Goods.

(j)     All Instruments.

(k)     All Inventory.

(l)     All Investment Property.

(m)     All Letter-of-Credit Rights.

(n)     All Software.

(o)     All Supporting Obligations.

(p)     All money, policies and certificates of insurance, deposits, cash, or other property.

(q)     All books, records, and information relating to any of the foregoing ((a) through (p)) and/or to the operation of the Debtors' business, and all rights of access to such books, records, and information, and all property in which such books, records, and information are stored, recorded and maintained.

(r)     All insurance proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((a) through (q)) or otherwise.

(s)     All liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((a) through (r)), including the right of stoppage in transit.

(t)     Any of the foregoing, whether now owned or now due, or in which the Debtor has an interest, or hereafter acquired, arising, or to become due, or in which the Debtor obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing.[2]

The Prepetition Collateral is more fully described in the Prepetition Senior Claim Documents.  The Prepetition Agent's liens and security interests in the Prepetition Collateral were granted pursuant to the Prepetition Senior Claim Documents.

9.     The Debtor and the Prepetition Senior Secured Parties maintain that the Prepetition Agent (for the ratable benefit of the Prepetition Senior Secured Parties) has properly perfected its first priority liens and security interests and other liens in the Prepetition Collateral as evidenced by the Prepetition Senior Claim Documents, by

---

[2]   Security Agreement (as defined in the Prepetition Senior Credit Agreement), definition of "Collateral".

documents held in possession of the Prepetition Senior Secured Parties, and documents filed with the appropriate federal, state, and/or other offices.

10.     The Debtor and the Prepetition Senior Secured Parties maintain that the Prepetition Senior Claim Documents are genuine, valid, existing, and legally enforceable.

## CASH COLLATERAL

### The Prepetition Senior Secured Parties' Cash Collateral

11.     To the extent the Prepetition Senior Secured Parties have a valid, perfected and enforceable lien or security interest therein as set forth in the Prepetition Senior Claim Documents, and as permitted by this Second Interim Cash Collateral Order and the Bankruptcy Code, all (a) cash of the Debtor's estate, wherever located, and (b) cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, or in any other form, which represent income, proceeds, products, rents, or profits of the Prepetition Collateral that are now in the possession, custody, or control of the Debtor (or of persons in privity with the Debtor), or in which the Debtor will obtain an interest during the pendency of this Case, which represent income, proceeds, products, rents, or profits of the Prepetition Collateral (collectively, the "Cash Collateral"), shall constitute the Cash Collateral of the Prepetition Senior Secured Parties.  The Debtor and the Prepetition Senior Secured Parties maintain that the Prepetition Agent, for the ratable benefit of the Prepetition Senior Secured Parties, has a first priority perfected lien and security interest in the Cash Collateral pursuant to the applicable provisions of the Prepetition Senior Claim

Documents, Bankruptcy Code §§ 363(a) and 552(b), and this Second Interim Cash Collateral Order.

12.     The Debtor shall segregate and account to the Prepetition Agent for all Cash Collateral that it now possesses, that it has permitted to be transferred into the possession of others, if any, that is being held by those in privity with the Debtor, or that the Debtor might hereafter obtain or have any interest in, to include, if any, Cash Collateral received by the Debtor since the Petition Date and prior to the entry of this Second Interim Cash Collateral Order.  The Debtor shall account to the Prepetition Agent for the receipt and use, if any, of the Cash Collateral received by the Debtor since the Petition Date and prior to the entry of this Second Interim Cash Collateral Order. The Debtor is strictly prohibited from using the Cash Collateral except as expressly provided in this Second Interim Cash Collateral Order.

13.     Between the Petition Date and the commencement of the Store Closing Sale (as defined in the First Interim Cash Collateral Order), the Prepetition Agent received from the Debtor in the ordinary course the sum of $887,746.00 (the "Interim Cash Proceeds"), as collections and proceeds of Collateral. On May 9, 2011, the Prepetition Agent received $1,875,376.00 from Gordon Brothers Retail Partners, LLC ("Gordon Brothers") and $2,025,376.00 from Hilco Merchant Resources, LLC ("Hilco") (such amounts collectively, the "Initial Store Closing Proceeds"), in each case as proceeds of the Store Closing Sale.  The Interim Cash Proceeds and the Initial Store Closing Proceeds constitute part of the Prepetition Senior Secured Parties' Cash Collateral for all purposes.  In accordance with the First Interim Cash Collateral Order and other orders of this Court, the Prepetition Agent (a) transferred the sum of

$2,069,286.00 of such Interim Cash Proceeds and Initial Store Closing Proceeds into a segregated account for use by the Debtor subject to the terms and provisions of the First Interim Cash Collateral Order and the Budget (as defined in the First Interim Cash Collateral Order), (b) paid the Break-Up Fee (as defined in the Agency Agreement referred to in the First Interim Cash Collateral Order) in the sum of $50,000 to Tiger Capital Group, LLC, and (c) is holding the sum of $2,544,129.00 of such Interim Cash Proceeds and Initial Store Closing Proceeds in a segregated account for application to the Prepetition Senior Claim as provided in Paragraph 28(c) below.

**Need For and Consent To Limited Use Of Cash Collateral**

14.    The Prepetition Senior Secured Parties do not consent to the Debtor's use of Cash Collateral except in strict compliance with the terms and conditions contained in this Second Interim Cash Collateral Order.

15.    Without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain its assets, provide financial information, pay employees, payroll taxes, inventory suppliers and other vendors, overhead, lease expenses, and other expenses necessary for the operation of the Debtor's business in the ordinary course and to maintain the value of the Debtor's assets. The Debtor's efforts in connection with the operation of its business require the use of Cash Collateral as provided herein.

16.    The Debtor has requested that the Prepetition Senior Secured Parties consent to the use of Cash Collateral for such purposes set forth in the Budget (as defined in Paragraph 24 below), and such other purposes as permitted by this Second Interim Cash Collateral Order in order to avoid immediate and irreparable harm to the

Debtor's estate that will occur if this Second Interim Cash Collateral Order is not immediately approved.

17.    Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.   The use of Cash Collateral will benefit the Debtor and its estate.   The ability of the Debtor to reorganize and/or preserve and maintain the value of its assets depends upon the Debtor's ability to use the Cash Collateral of the Prepetition Senior Secured Parties.   Accordingly, the use of Cash Collateral by the Debtor is necessary to preserve its estate and will avoid immediate and irreparable harm to the Debtor, its estate, and its assets.

**Authorization For Limited Use Of Cash Collateral**

18.    The Debtor is hereby authorized, on a limited basis, to use Cash Collateral only in strict compliance with the terms and conditions provided in this Second Interim Cash Collateral Order, including, without limitation, the Budget.   Furthermore, the Debtor is authorized and hereby agrees to perform any and all acts reasonably required by the Prepetition Agent to comply with the terms and conditions of this Second Interim Cash Collateral Order.

19.    The provisions of this Second Interim Cash Collateral Order affecting Cash Collateral are entered pursuant to, and shall be construed and be consistent with, Bankruptcy Code § 363 and Bankruptcy Rules 4001(b)(ii), 4001(d), and 6003 to prevent immediate and irreparable harm to the Debtor.

**Cash Collateral Accounts**

20.    From and after the Petition Date, the Debtor shall cause all cash receipts, collected from any source and of any nature, including the operation and/or liquidation

of its business and assets, to be remitted, as expeditiously as possible, to the appropriate depository account, with a daily sweep of all net account balances to the Prepetition Agent's concentration account as maintained by the Debtor with the Prepetition Agent pursuant to the Prepetition Senior Credit Agreement in accordance with the existing cash management provisions set forth in the Prepetition Senior Claim Documents (the "<u>Cash Collateral Account</u>").  With respect to any and all other accounts into which collections are ever deposited, the Debtor shall irrevocably authorize and direct, in writing, in a form and of substance satisfactory to Prepetition Agent, each such bank to send via wire transfer all funds deposited into each such account to the Cash Collateral Account.

21.     The Debtor shall be prohibited from using the funds from the Cash Collateral Account except as provided for in the Budget.  The Cash Collateral Account shall be maintained for the purpose of complying with this Second Interim Cash Collateral Order, and shall be separate from any other accounts of the Debtor that have been established as "debtor-in-possession" accounts.

22.     The Debtor shall instruct the Prepetition Agent in writing, or in another manner acceptable to the Prepetition Agent, to transfer each day the needed portion of the funds on deposit in the Cash Collateral Account to the Debtor's debtor-in-possession operating account for use by the Debtor subject to the terms and provisions of the Budget and this Second Interim Cash Collateral Order, including, without limitation, the provisions of Paragraph 24 below.  None of the Prepetition Senior Secured Parties shall have any obligation to provide any provisional credit for items presented.  The Debtor shall comply with all rules and regulations of the Office of the

United States Trustee in connection with the accounts referenced above, except as modified by orders of this Court.

23.     In the event an item that was issued prepetition is presented that is not within the Budget, and for which the Debtor has not given a stop payment order, and such item is inadvertently cleared, none of the Prepetition Senior Secured Parties shall have any liability regarding same and the Debtor's sole remedy shall be recovery from the transferee.

## ADEQUATE PROTECTION OF PREPETITION SENIOR SECURED PARTIES' INTEREST

### Budgeted Cash Collateral Usage

24.     As partial adequate protection of the Prepetition Senior Secured Parties' interests in the Prepetition Collateral to the extent such interests are valid, perfected and enforceable (the "Prepetition Senior Secured Parties' Interest"), and for the Debtor's use of Cash Collateral, the Debtor may not request the transfer of, nor use Cash Collateral, except to pay actual, ordinary, and necessary expenses set forth in, and in strict compliance with, the budget attached hereto as Exhibit A, or as such budget may be modified in writing with the prior written consent of the Prepetition Agent (and no such consent shall be inferred from any action, inaction, or acquiescence of any Prepetition Secured Party), and on notice to the Committee, with a copy of any such modified budget to be filed promptly with this Court (the "Budget").  The Debtor may request from time to time, and the Prepetition Agent shall release funds to the Debtor from the Cash Collateral Account consistent with the terms and conditions of this Paragraph 24.  In no event shall the Debtor request any transfer nor use any of the

Prepetition Senior Secured Parties' Cash Collateral to pay any items (i) in excess of 105% of the amount set forth in the Budget, (x) by line item, or (y) in the aggregate, or (ii) in advance of the week in which a cash disbursement is scheduled to be paid. However, savings by line item may be utilized thereafter for payment of similar line items, but not other line items. Prior to any transfer or use of Cash Collateral by the Debtor, a Responsible Officer (as defined in the Prepetition Senior Credit Agreement) of the Debtor shall review the proposed transfer or use of Cash Collateral for strict compliance with the Budget as to amount, purpose, and timing, and the Prepetition Agent shall have received a daily officer's certificate, duly executed by a Responsible Officer of the Debtor, which shall include (i) the check register for such day (identifying each check and the line item in the Budget to which it relates), (ii) the Debtor's bank account balances, and (iii) a statement of compliance with the Budget.

25. The Debtor warrants and represents that the Budget includes all reasonable and necessary expenses reasonably foreseeable to be incurred in connection with this Case for the period set forth in the Budget.

26. Except as may be provided in the Budget, including, without limitation, for ordinary course salary, payroll, benefits, tax distributions, and expense reimbursements, the Debtor agrees that no transfer of Cash Collateral shall be made to any of the Debtor's insiders, as that term is defined in Bankruptcy Code § 101(31).

**Replacement Liens and Super Priority Administrative Claims**

27. As partial adequate protection for any use or diminution in the value of the Prepetition Senior Secured Parties' Interest in the Prepetition Collateral and Cash Collateral ("<u>Diminution</u>"), and in the amount of such Diminution, and subject to

paragraph 32 hereof, the Debtor grants the Prepetition Agent, for the ratable benefit of the Prepetition Senior Secured Parties, retroactively effective as of the Petition Date, valid and perfected replacement liens and additional liens and security interests, of the highest available priority in and upon all of the properties and assets of the Debtor on which the Prepetition Agent, for the ratable benefit of the Prepetition Senior Secured Parties, asserts a valid and perfected security interest prepetition, whether real or personal, tangible or intangible, including, but not limited to, the Prepetition Collateral and all of the other assets described in the Prepetition Senior Claim Documents and this Second Interim Cash Collateral Order, expressly to include the proceeds of any leases (but not the leases or leasehold interests themselves), tax refunds, insurance proceeds, insurance premium refunds, security deposits (with utilities, landlords, and other parties), claims, causes of action, whether under contract or in tort, bonds and proceeds of same, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of the Debtor against third parties for loss or damage to such property), including all accessions thereto, substitutions and replacements therefor, and wherever located and all assets acquired by the Debtor postpetition and recoveries by the estate under any provision of the Bankruptcy Code or other applicable law (the "Adequate Protection Collateral").

(a)    The foregoing grant of a lien on the Adequate Protection Collateral shall exclude avoidance actions under chapter 5 of the Bankruptcy Code and the proceeds thereof (other than proceeds of any avoidance action brought pursuant

to § 549 of the Bankruptcy Code to recover any postpetition transfer of Collateral).

(b)     The Adequate Protection Collateral is not exclusive and is provided without prejudice to the Prepetition Senior Secured Parties' rights regarding additional adequate protection.   The lien on Adequate Protection Collateral granted in this Paragraph 27 shall be limited to the extent of the aggregate Diminution of the value of the Prepetition Collateral and Cash Collateral subsequent to the Petition Date, whether by depreciation, use, sale, loss, decline in market price, or otherwise, including such diminution as may arise from the application of Prepetition Collateral (including Cash Collateral) in accordance with this Second Interim Cash Collateral Order or otherwise, other than payments to the Prepetition Agent in accordance with Paragraphs 28 and 31 below.

**Payments**

28.     As additional partial adequate protection for any Diminution in the value of the Prepetition Senior Secured Parties' Interest in the Prepetition Collateral and Cash Collateral, the Debtor shall make the following payments to the Prepetition Agent, for the ratable benefit of the Prepetition Senior Secured Parties (the "Adequate Protection Payments"), which payments shall be subject to allocation and possible disgorgement under 11 U.S.C. § 506:

(a)     Payment of interest on the first day of each month on the Prepetition Senior Claim which shall continue to accrue after the Petition Date at the rate set forth in the Prepetition Senior Claim Documents until the Prepetition Senior Claim has been paid in full.

(b)     Payment of all proceeds from the Store Closing Sale in cash at closing, including without limitation the "Initial Guaranty Payment", the "Guaranteed Amount", the "Recovery Amount", and the "Augment Recovery Amount" (as each of those terms is defined in that certain Agency Agreement dated as of May 4, 2011 by and between Metropark USA, Inc. and a joint venture comprised of Gordon Brothers and Hilco).

(c)     Upon entry of this Second Interim Cash Collateral Order, the Prepetition Agent shall apply funds on deposit in the Cash Collateral Account in satisfaction or reduction of the Prepetition Senior Claim in such amounts as may be agreed to between the Debtor and the Prepetition Agent, including the Prepetition Senior Indemnity Account (as defined below).   Any remaining balance in the Cash Collateral Account following satisfaction in full of the Prepetition Senior Claim shall continue to be maintained by the Debtor at Wells Fargo Bank, National Association pending further written agreement between the Prepetition Agent and the Debtor (including an updated and revised Budget), or further order of the Court.

**Prepetition Senior Indemnity Account**

29.     As additional partial adequate protection for any Diminution in the value of the Prepetition Senior Secured Parties' Interest in the Prepetition Collateral and Cash Collateral, upon the entry of this Second Interim Cash Collateral Order, the Debtor shall establish an account in the control of the Prepetition Agent (the "Prepetition Senior Indemnity Account") into which the sum of $50,000 shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtor in

favor of the Prepetition Senior Secured Parties under the Prepetition Senior Claim Documents, including to pay any expenses (including reasonable attorneys' fees) incurred by the Prepetition Senior Secured Parties in connection with this Case or any successor chapter 7 case (the "Prepetition Senior Indemnity Obligations"), subject to § 506 of the Bankruptcy Code; provided, however, that the Prepetition Senior Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtor, after the Prepetition Senior Claim has been paid in full in cash, upon the earlier to occur of:  (a) the Challenge Period Termination Date (as defined below) if, as of such date, no party has filed or asserted an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraph 60 hereof, or if such a challenge has been brought, the entry of a final judgment resolving such challenge, and (b) the date the Court enters a final order closing the Case.  The Prepetition Senior Indemnity Obligations shall be secured by the Adequate Protection Collateral, the Adequate Protection Payments and a first-priority lien on the Prepetition Senior Indemnity Account

30.    To the extent such adequate protection is insufficient to adequately protect the Prepetition Senior Secured Parties' Interest in the Prepetition Collateral from Diminution, and in the amount of such Diminution, the Prepetition Agent, for the ratable benefit of the Prepetition Senior Secured Parties, shall have an allowed claim under § 507(a)(2) of the Bankruptcy Code, which claim is and shall at all times during the pendency of this Case or any successor case have superiority in accordance with the provisions of § 507(b) of the Bankruptcy Code, over all administrative expenses of the kind specified in the Bankruptcy Code subject to the Carve Out.

31.     Further, nothing in this Second Interim Cash Collateral Order shall limit the right of the Prepetition Senior Secured Parties from seeking additional adequate protection, including, without limitation, seeking to establish and maintain one or more cash collateralization reserve accounts so as to provide adequate protection and security for the Debtor's continuing indemnification obligations and reimbursement obligations to the Prepetition Senior Secured Parties under the Prepetition Senior Claim Documents, including under (i) Sections 3.01(c), 10.02(d), 10.04 and 10.11 of the Prepetition Senior Credit Agreement, and (ii) this Second Interim Cash Collateral Order.

## ADDITIONAL CASH COLLATERAL USAGE
## AND ADEQUATE PROTECTION TERMS

### Prior Liens; Fees; Carve Out

32.     The security interests and liens of the Prepetition Agent granted pursuant to the terms of this Second Interim Cash Collateral Order shall not have priority over (a) prior perfected and unavoidable liens and security interests in property of the Debtor's estate as of the Petition Date, including, without limitation, security deposits, other than the Prepetition Agent's liens in the Prepetition Collateral (the "Prior Liens"), provided that (i) the Prior Liens are paramount to the Prepetition Agent's liens and security interests pursuant to the Prepetition Senior Claim Documents, and are valid, perfected, and non-avoidable in accordance with applicable law, and (ii) the foregoing is without prejudice to the rights of the Debtor or any other party in interest, including the Prepetition Senior Secured Parties, to object to the validity, priority, or extent of such Prior Liens, or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto; and (b)(i) the quarterly fees payable to the United States Trustee, plus interest, if any, pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717; (ii) the fees and expenses of the Clerk of this Court; (iii) subject to Paragraph 50 below, up to the amounts set forth in the Budget for

professional fees and expenses incurred by professionals employed by the Debtor or by the Committee rendering services to advance this Case, as the same may be hereafter allowed by this Court (the "Professional Expenses"); or (iv) up to $30,000 for fees and expenses incurred by a chapter 7 trustee, in the event this Case converts to a case under chapter 7 of the Bankruptcy Code (items (i), (ii), (iii), and (iv) shall collectively be referred to as the "Carve Out"). The Carve Out may be used solely and exclusively for the items enumerated above in this Paragraph 32, and no other party may assert any claim or interest in the Carve Out. The Carve Out has been fully funded prior to the date hereof as part of the funding of the Budget, as provided in Paragraph 13 above. Accordingly, the Prepetition Senior Secured Parties shall have fully satisfied any obligation that any of them may have had with respect to the Carve Out and none of them shall have any further liability or responsibility with respect thereto, including with respect to disbursement of all or any portion of the Carve Out. The funding of the Carve Out shall not reduce the amount of the Prepetition Senior Claims.

### Automatic Perfection

33.    This Second Interim Cash Collateral Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Prepetition Agent's security interests in, and liens on, as applicable, the Adequate Protection Collateral, and the liens and security interests granted and created herein shall, by virtue of this Second Interim Cash Collateral Order, constitute valid, automatically perfected and unavoidable security interests, with the priorities granted hereunder, without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect (a) the security interests and liens granted to the Prepetition Agent.

34.     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the Prepetition Agent's liens and security interests authorized, or created by this Second Interim Cash Collateral Order, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, otherwise applicable federal law, and the judicial power of the United States Bankruptcy Court.

35.     By virtue of the terms of this Second Interim Cash Collateral Order, to the extent that the Prepetition Agent has filed Uniform Commercial Code financing statements, entered into control agreements, collateral access agreements, or otherwise perfected the Prepetition Senior Secured Parties' Interest in the  Adequate Protection Collateral under the name of the Debtor, such filings and other actions and agreements shall be deemed to properly perfect its liens and security interests in the Adequate Protection Collateral under this Second Interim Cash Collateral Order without further action by any Prepetition Secured Party.

36.     So long as this Second Interim Cash Collateral Order is in effect, and without further Order of the Court: (a) no other entity shall foreclose or otherwise seek to enforce any lien or other right such other party may have in and to any property of the estate of the Debtor which the Prepetition Agent deems material and upon which the Prepetition Agent, for the ratable benefit of the Prepetition Senior Secured Parties, holds or asserts a senior lien or security interest; and (b) the Debtor shall not, without prior written approval from the Prepetition Agent or Order of the Court, engage in any

transaction that is not in the ordinary course of the Debtor's business, except as contemplated in connection with the Store Closing Sale.

## No Additional Liens

37.     So long as this Second Interim Cash Collateral Order is in effect, the Debtor shall not be authorized to obtain credit secured by a lien or security interest in the Prepetition Collateral or Cash Collateral without the prior written consent of the Prepetition Agent, which may be given or withheld by the Prepetition Agent in its sole and exclusive discretion, unless the terms of such financing provide that the Prepetition Senior Claim to the extent it constitutes a valid, perfected and enforceable secured claim shall be paid and satisfied in full in cash at the closing of such financing.

## Automatic Stay

38.     The automatic stay, under 11 U.S.C. § 362(a) is hereby vacated and modified to the extent necessary to permit (a) the Debtor and the Prepetition Senior Secured Parties to take all acts and take all actions necessary to implement this Second Interim Cash Collateral Order, and (b) all acts, actions, and transfers contemplated herein including, without limitation, transfers of Cash Collateral and other funds to the Prepetition Agent, for the ratable benefit of the Prepetition Senior Secured Parties, by the Debtor and the application by the Prepetition Agent of same as provided herein.

## Collateral Insurance, Maintenance, Taxes, Deposits

39.     The Debtor shall maintain insurance of the kind covering the Collateral, and in accordance with the Prepetition Senior Claim Documents (covering such risks in amounts as shall be satisfactory to the Prepetition Agent and shall name the Prepetition Agent as lender's loss payee thereunder) including, without limitation, insurance covering the Collateral and such other collateral of the Prepetition Agent, if any, as the

Prepetition Agent may from time to time reasonably request, and, at the Prepetition Agent's request, deliver to the Prepetition Agent evidence of the maintenance of such insurance.

40.    To the extent the Debtor has made or makes any deposits for the benefit of utility companies or any other entity, such deposits shall be, and hereby are, upon any return of same to the Debtor, subject to the first priority perfected liens and security interests of the Prepetition Agent in respect of the Debtor's use of Cash Collateral granted by this Second Interim Cash Collateral Order. The Debtor may not use, except in accordance with the Budget, or transfer any such returned deposits, and the Debtor assigns and sets over its rights in and to all such returned deposits to the Prepetition Agent.

### Reporting Requirements

41.    The Debtor is authorized and directed to provide to the Prepetition Senior Secured Parties (with copies to counsel to the Committee) all of the documentation and reports required under the Prepetition Senior Claim Documents, schedules, assignments, financial statements, insurance policies and endorsements, and such other information as the Prepetition Agent may from time to time request (the "Reporting Information"), unless the Prepetition Agent waives or modifies such requirements in writing.

42.    The Reporting Information shall also include: (a) copies of all reports filed with the Office of the United States Trustee simultaneously with such filing, and (b) within two (2) days of any such request, such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of the Debtor, or concerning any matter that may affect the

administration of the estate, as the Prepetition Agent may from time to time reasonably request.  All Reporting Information shall be in accordance with accounting principles consistently applied with past accounting principles.

43.     The Prepetition Agent and its agents shall have full access, upon reasonable notice during normal business hours, to the Debtor's business records, business premises, and to the Collateral to enable the Prepetition Agent or its agents to (a) review, appraise, and evaluate the physical condition of the Collateral, (b) inspect and review the financial records and all other records of the Debtor concerning the operation of the Debtor's business, and (c) evaluate the Debtor's overall financial condition and all other records relating to the operations of the Debtor.  The Debtor shall fully cooperate with the Prepetition Agent and its agents regarding such reviews, evaluations, and inspections, and shall make its employees and professionals available to the Prepetition Agent and its agents to conduct such reviews, evaluations, and inspections.

**Administrative Expenses**

44.     The Debtor agrees not to knowingly or intentionally incur any administrative expenses other than as set forth in the Budget, exclusive of professional fees, taxes, and other amounts approved by the Bankruptcy Court pursuant to §§ 330, 331, or 503(b) of the Bankruptcy Code and fees payable pursuant to 28 U.S.C. §1930, without the prior written consent of the Prepetition Agent or approval by the Bankruptcy Court after notice to the Prepetition Agent and a hearing.

45.     Subject to the entry of a Final Cash Collateral Order, no costs or expenses of administration which have been or may be incurred in this Case at any time shall be charged against any Prepetition Senior Secured Party, the Prepetition Collateral, or the

Collateral pursuant to §§ 105, 506(c), or 552 of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Agent, and no such consent shall be implied from any action, inaction, or acquiescence by the Prepetition Agent. Nothing contained in this Second Interim Cash Collateral Order shall be deemed a consent by the Prepetition Agent to any charge, lien, assessment, or claim against the Prepetition Collateral or the Collateral under § 506(c) of the Bankruptcy Code or otherwise.

## EVENTS OF DEFAULT/REMEDIES

### Events of Default

46.     The occurrence of any of the following shall constitute an event of default (each an "Event of Default") under this Second Interim Cash Collateral Order, with or without notice of any kind to the Debtor by any Prepetition Secured Party, and, except as provided in Paragraph 47, below, no Prepetition Secured Party shall have any obligation to provide any notice of any such occurrence: (a) any default, violation, or breach of any of the terms of this Second Interim Cash Collateral Order by the Debtor, including all reporting requirements and all representations, warranties, covenants, and other obligations; (b) the dismissal of this Case or the conversion of this Case to a case under chapter 7 of the Bankruptcy Code; (c) the appointment of a trustee or examiner in this Case; (d) the sale of all or any substantial portion of the Debtor's assets, other than incidental to the Store Closing Sale unless the secured loan, to the extent allowed, is paid in full in cash; (e) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Second Interim Cash Collateral Order without the express written consent of the Prepetition Agent; (f) any other security interest, lien, claim, or encumbrance shall be granted on the Collateral, other than as consented to in writing by the Prepetition Agent in its sole and exclusive discretion; (g) the entry of an

order granting relief from the automatic stay to the holder or holders of any security interest or lien to permit the pursuit of any judicial or non-judicial transfer or other remedy against any material assets of the Debtor; (h) any expenditure of Cash Collateral at variance from the Budget in excess of 105% of the budgeted amount either (x) by line item or (y) in the aggregate, or in advance of the week in which the cash disbursement is scheduled to be made; (i) the failure of the Debtor to maintain all insurance required under the Prepetition Senior Claim Documents and this Second Interim Cash Collateral Order; (j) the occurrence of a postpetition event that causes or would cause a material adverse change or a material adverse effect on the ability of the Debtor to continue to operate its business as contemplated herein, or (k) the failure of the Debtor to obtain entry of a Final Cash Collateral Order of the Bankruptcy Court authorizing the use of the Prepetition Senior Secured Parties' cash and non-cash Collateral on terms and conditions substantially identical to those set forth herein, and acceptable to the Prepetition Agent in its sole and exclusive discretion in any event, on or before the Expiration Date (as defined below).

**Remedies**

47.    Upon the occurrence of any Event of Default, the Prepetition Agent may immediately deliver a written notice of default (the "<u>Default Notice</u>"), served by e-mail, overnight delivery service, or facsimile to (i) the Debtor, (ii) the United States Trustee, and (iii) counsel to the Committee of the occurrence of such Event of Default.  Five (5) business days after delivery of the Default Notice, and at all times thereafter, and without further act or action by any Prepetition Secured Party or any further notice, hearing, or Order of this Court, the Debtor's authority to use Cash Collateral and any and all obligations of the Prepetition Senior Secured Parties under this Second Interim

Cash Collateral Order shall terminate; <u>provided</u> however, during such five (5) business day period, all Cash Collateral usage shall be strictly in accordance with the terms and conditions of this Second Interim Cash Collateral Order, including without limitation, the Budget.

48.     Upon the failure of the Debtor to timely perform in accordance with the terms and conditions of this Second Interim Cash Collateral Order, it being expressly acknowledged and agreed that TIME IS OF THE ESSENCE, then the Prepetition Senior Secured Parties may request an emergency hearing before the Bankruptcy Court to enforce and otherwise implement the terms and conditions of this Second Interim Cash Collateral Order, specifically including Paragraph 47, above.  In this regard, the Debtor acknowledges and agrees that the Prepetition Senior Secured Parties will suffer irreparable injury if the terms and conditions of this Second Interim Cash Collateral Order are not implemented strictly in accordance with their terms, and that injunctive relief shall be necessary and appropriate to insure compliance with this Second Interim Cash Collateral Order.

49.     Notwithstanding the foregoing, each Prepetition Secured Party reserves the right to seek emergency relief, as may be necessary, pursuant to the applicable provisions of the Bankruptcy Code or other applicable law.

<b><u>Professional Fees</u></b>

50.     Cash Collateral shall not be used for the payment or reimbursement of any fees, expenses, costs, or disbursements of any of the professionals, including any professionals retained by the Committee, incurred in connection with the assertion, prosecution, or joinder in any claim, counter-claim, action, proceeding, application,

motion, objection, defense, or contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief (i) invalidating, setting aside, avoiding, or subordinating in whole or part the Prepetition Agent's liens and security interests provided by the Prepetition Senior Claim Documents or this Second Interim Cash Collateral Order, (ii) delaying, limiting, hindering, or preventing the prompt, full, and indefeasible payment of the Prepetition Senior Claims, including the opposition to the conduct of the Store Closing Sale, or (iii) preventing, hindering, or delaying, whether directly or indirectly, the Prepetition Senior Secured Parties' assertion, enforcement, or realization upon any Collateral (including the Prepetition Senior Indemnity Account), provided however, that the Committee may use $10,000 in connection with its investigation of the matters listed in this Paragraph 50, above, but not in connection with the filing of adversary proceeding or contested matter and prosecution thereof.

51.     Each Prepetition Secured Party reserves the right to object to the Professional Expenses and nothing herein shall be construed to obligate the Prepetition Secured Parties in any way to pay the Professional Expenses, the U.S. Trustee Fees, or the chapter 7 Trustee Fees, or to assure that the Debtor has sufficient funds on hand to pay any Professional Expenses, U.S. Trustee Fees, or chapter 7 Trustee Fees.

## OTHER TERMS

52.     Except for the Carve Out, no priority claims shall be allowed that are or will be prior to or on a parity with the superpriority claims or secured claims of the Prepetition Senior Secured Parties against the Debtor and its estate arising out of the Prepetition Senior Claim Documents and this Second Interim Cash Collateral Order.

53.     The terms and provisions of this Second Interim Cash Collateral Order and any actions taken pursuant hereto, except for the termination of the Debtor's authority to use Cash Collateral, shall survive entry of any order that may be entered converting to a case under chapter 7 of the Bankruptcy Code or dismissing the Case. Such dismissal or conversion shall not affect or diminish the Prepetition Senior Secured Parties' rights, priorities, or remedies hereunder or under applicable law.

54.     The terms and provisions of this Second Interim Cash Collateral Order as well as the priorities in payment, liens, and security interests granted pursuant to this Second Interim Cash Collateral Order shall continue in this or any superseding case under the Bankruptcy Code of the Debtor, and such priorities in payment, liens, and security interests shall maintain the priority provided by this Second Interim Cash Collateral Order.

55.     The provisions of this Second Interim Cash Collateral Order shall inure to the benefit of the Debtor and the Prepetition Senior Secured Parties and they shall be binding upon (a) the Debtor and its successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of the Debtor or with respect to property of the estate of the Debtor, whether under chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case, and (b) all creditors of the Debtor and other parties in interest.  However, nothing in this Second Interim Cash Collateral Order shall limit, modify, affect, or impair the right of any party in interest to object to the entry of any of the terms and conditions of this Second Interim Cash Collateral Order on a final basis.

56. The Prepetition Senior Secured Parties and the Debtor may agree to non-material modifications or amendments to this Second Interim Cash Collateral Order without further order of the Bankruptcy Court, <u>provided</u> that prior written notice of any such modification or amendment has been provided to counsel to the Committee.

57. No approval, agreement, or consent requested of the Prepetition Senior Secured Parties by the Debtor pursuant to the terms of this Second Interim Cash Collateral Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Prepetition Senior Secured Parties other than a writing acceptable to and signed by the Prepetition Agent, and expressly shows such approval, agreement, or consent. Nothing herein shall in any way affect the rights of Prepetition Senior Secured Parties as to any non-Debtor entity, or with respect to any collateral granted or payment made by such entity.

58. Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the Prepetition Senior Secured Parties to seek additional relief in this Case in accordance with any provision of the Bankruptcy Code or applicable law.

59. This Second Interim Cash Collateral Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by the Prepetition Senior Secured Parties and the Debtor upon entry by this Court. To the extent any findings herein may constitute conclusions, and vice versa, they are hereby deemed as such.

60. The Committee (or any other party in interest with requisite standing other than the Debtor) may (a) object to or challenge the findings herein, including, but not limited to, the Debtor's Stipulations in relation to (i) the validity, extent, perfection, or

priority of the security interests and liens in the Prepetition Collateral under the Prepetition Senior Claim Documents, or (ii) the validity, allowability, priority, status or amount of the Prepetition Senior Claim, or (b) bring suit against the Prepetition Senior Secured Parties in connection with or related to the Prepetition Senior Claim Documents, or the actions or inactions of the Prepetition Senior Secured Parties arising out of or related to the Prepetition Senior Claim Documents; provided, however, that, unless the Committee (or any other party in interest with requisite standing) commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Prepetition Senior Secured Parties in the nature of a setoff, counterclaim, or defense to the Prepetition Senior Claim (including, but not limited to, those under §§ 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Senior Secured Parties), within the period commencing on the entry of this Second Interim Cash Collateral Order and ending on the date which is the earlier to occur of (i) 60 days after the retention by the Committee of counsel, or (ii) the date on which the Prepetition Agent shall have received written, irrevocable notice from counsel to the Committee stating that no objection or challenge will be brought by the Committee against any of the Prepetition Senior Secured Parties and that the Challenge Period Termination Date (as defined below) has been established (the "Challenge Period", and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "Challenge Period Termination Date"), then, upon the Challenge Period Termination Date, all of the Debtor's Stipulations shall be binding upon all parties in interest in this

Case, and any and all such challenges and objections by any party (including, without limitation, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any successor case, and any other party in interest) shall be deemed to be forever waived and barred, and (i) the Prepetition Senior Claim, the Prepetition Senior Claim Documents, and the Prepetition Collateral shall be valid, perfected, non-avoidable, and in full force and effect, subject to valuation of the Collateral under §506(a) of the Bankruptcy Code, not subject to any claims, counter claims, setoffs or defenses, and (ii) the Prepetition Senior Claim shall be deemed to be allowed in full and, to the extent of the value of the Prepetition Collateral on the Petition Date, shall be deemed to be allowed as a fully secured claim within the meaning of § 506 of the Bankruptcy Code for all purposes in connection with this Case and the Debtor's Stipulations and all other waivers and agreements by the Debtor contained in this Second Interim Cash Collateral Order shall be binding on all creditors, interest holders, and all other parties (including, without limitation, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any successor case, and any other party in interest).

61.    This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Second Interim Cash Collateral Order and to adjudicate any and all disputes in connection therewith, notwithstanding anything to the contrary in the Prepetition Senior Credit Agreement.

62.    All objections to the Cash Collateral Motion to the extent not withdrawn or resolved, are hereby overruled.

63.     Nothing in this Second Interim Cash Collateral Order shall affect or prejudice the Agent's rights and interests under the Agency Agreement and/or granted pursuant to the Order Pursuant to Bankruptcy Code Sections 105, 363, 364 and 554 (I) Approving Agency Agreement, (II) Approving Store Closing Sales Free and Clear of Liens, Claims and Encumbrances, (II) Approving Break-Up Fee, (IV) Authorizing the Debtor to Abandon Property, and (V) Granting Related Relief.

## FINAL HEARING

64.     A final hearing (the "Final Hearing") to consider entry of a Final Cash Collateral Order on the Cash Collateral Motion is scheduled for June 24, 2011 at 10:00 a.m. at the United States Bankruptcy Court for the Southern District of New York, White Plains Division.

65.     On or before May 24, 2011, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Second Interim Cash Collateral Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Second Interim Cash Collateral Order and the Cash Collateral Motion, on: (a) the parties having been given notice of the Cash Collateral Motion, including the parties listed in Paragraph 3 above; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for the Committee.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Cash Collateral Order shall file written objections with the Clerk of the Bankruptcy Court no later than noon on May 26, 2011 which objections shall be served so that the same are received on or before such date by:  (a) counsel for the Debtor:   Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Cathy Hershcopf, Esq. and

Jeffrey L. Cohen, Esq., Fax: (212) 479-6275; (b) counsel to the Prepetition Agent: Riemer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108, Attn: Donald E. Rothman, Esq., Fax: (617) 880-3456, E-mail: drothman@riemerlaw.com; (c) counsel to the Second Lien Agent:  Solomon Ward Seidenwurm & Smith, LLP, 401 B Street, Ste. 1200 San Diego, CA 92101, Attn: Michael D. Breslauer, Esq.; (d) counsel to the Committee; (e) those parties requesting notice pursuant to Bankruptcy Rule 2002; and (f) the U.S. Trustee.

## EXPIRATION DATE/MATURITY

66.    The Prepetition Senior Secured Parties' consent and the Debtor's authority to use Cash Collateral under this Second Interim Cash Collateral Order shall be effective retroactively from the Petition Date to and including the earlier of: (a) the occurrence of an Event of Default; or (b) June 30, 2011, at 5:00 p.m. prevailing eastern time  (the "Expiration Date"), at which time all of the Debtor's authority to use Cash Collateral under this Second Interim Cash Collateral Order shall terminate, unless a Final Cash Collateral Order shall have been entered by that date and time.

**IT IS HEREBY ORDERED THAT THE CASH COLLATERAL MOTION IS APPROVED**

**AND GRANTED ON AN INTERIM BASIS AS SET FORTH HEREIN.**

DATED:  May 23, 2011

/s/Robert D. Drain
HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT "A"**

**<u>BUDGET</u>**

1305422.5