COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------- x
                                       :

In re                          :

                          :    Chapter 11

METROPARK USA, INC.,        :

                          :    Case No. 11-22866 (RDD)

        Debtor.        :

                          :

----------------------------------------------------------------------- x

### NOTICE OF FILING AMENDED PROPOSED ORDER APPROVING AUCTION RESULTS AND GRANTING RELATED RELIEF

      **PLEASE TAKE NOTICE** that on May 12, 2011 Metropark USA, Inc. (the "Debtor") filed

its Motion of the Debtor for Order (A) Setting (i) Date to Conduct Auction of Debtor's Interests in

Certain Real Property Leases and Intellectual Property, and (ii) Sale Hearing Date; (B)

Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D)

Authorizing Debtor to Enter Into Lease Termination Agreements; (E) Approving and Authorizing

Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of

all Liens, Interests, Claims and Encumbrances Pursuant to § 363 of the Bankruptcy Code; (F)

Waiving the Requirements of Federal Rule of Bankruptcy Procedure 6004 and Local Rule 6004-

1 and (G) Granting Related Relief (the "Bidding Procedures Motion") (Doc. No. 88).

      **PLEASE TAKE FURTHER NOTICE** that the Court entered an Order (A) Setting (1) Date

to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual

Property, (2) Hearing Date for Approval of Auction and (3) Related Objection Deadlines; (B)

Approving Bidding Procedures and Terms of Auction; and (C) Granting Related Relief (the "Bidding Procedures Order") (Doc. No. 149). Copies of the Bidding Procedures Order can be viewed on the Court's website at www.ecf.nysb.uscourts.gov or on the Debtor's website maintained by Omni Management Group, LLC at www.omnimgt.com/metropark.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order a hearing (the "Sale Hearing") for approval of the sale of Debtor's interests in certain real property leases will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, in Room 118 of the Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on **May 31, 2011 at 2:30 p.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that on May 26, 2011 the Debtor filed its proposed Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 (I) Authorizing and Approving Designation Rights Agreement with the Cotton On Group (II) the Sale of Certain of the Debtor's Leases, (III) Assumption and Assignment Procedures (IV) Cure Amounts and (V) Granting Related Relief (the "Proposed Sale Order") (Dkt. No. 173).

**PLEASE TAKE FURTHER NOTICE** that on May 27, 2011 the Debtor filed an amended proposed Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 (I) Authorizing and Approving Designation Rights Agreement with the Cotton On Group (II) the Sale of Certain of the Debtor's Leases, (III) Assumption and Assignment Procedures (IV) Cure Amounts and (V) Granting Related Relief (the "Amended Proposed Sale Order") attached hereto as Exhibit 1. A redline showing changes from the Proposed Sale Order is attached hereto as Exhibit 2. The Amended Proposed Sale Order includes proposed assumption and assignment provisions applicable to leases subject to the

Designation Rights Agreement between the Debtor and Cotton On as well as copies of all exhibits referenced therein.

Dated: May 27, 2011                 By:     /s/ Cathy Hershcopf
      New York, New York                       Cathy Hershcopf

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

*Attorneys for Debtor and Debtor in Possession*

**EXHIBIT 1**


**AMENDED PROPOSED SALE ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X
                                   :

**IN RE**                       :      **CHAPTER 11**
                                   :

**METROPARK USA, INC.,** [1]      :
                                   :      **CASE NO. 11-22866 (RDD)**

          **DEBTOR.**            :
                                   :

------------------------------------------------------------- X

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING (I) DESIGNATION RIGHTS AGREEMENT WITH THE COTTON ON GROUP (II) THE SALE OF CERTAIN OF THE DEBTOR'S LEASES, (III) ASSUMPTION AND ASSIGNMENT PROCEDURES (IV) CURE AMOUNTS AND (V) GRANTING RELATED RELIEF

Upon consideration of the Motion[2] of the Debtor for Order (A) Setting the (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, and (2) Date of the Sale Hearing (the "Sale Hearing"); (B) Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter Into Lease Termination Agreements, (E) Approving and Authorizing Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of All Liens, Interests, Claims and Encumbrances Pursuant to Section 363 of the Bankruptcy Code; (F) Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure; and (G) Granting Related Relief (the "Sale Motion") (Doc. No. 88); and this Court having entered the Order (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, (2) Hearing Date for Approval of Auction and (3) Related Objection Deadlines; (B) Approving Bidding Procedures and Terms of Auction; and (C) Granting Related

---

[1] The Debtor's tax identification number is 81-0636659.
[2] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Motion.

Relief (the "Bidding Procedures Order") (Doc. No. 149); and the Debtor having held an auction on May 26, 2011 (the "Auction") of the Leases and Intellectual Property; and The Cotton On Group ("Cotton On") having submitted a bid in the form of a sale agreement (the "Cotton On Agreement") for Designation Rights (as that term is defined in the Cotton On Agreement) in advance of the Auction; and Perry Ellis Menswear, LLC ("Perry Ellis" and together with Cotton On, the "Stalking Horse Bidders") having submitted a bid in advance of the Auction for the assumption and assignment of certain of the Debtor's Leases as set forth in the proposed Agreement of Assumption and Assignment between the Debtor and Perry Ellis (together with the Cotton On Agreement, the "Stalking Horse Agreements"); and the Stalking Horse Agreements having been approved pursuant to the Bidding Procedures Order; and the Debtor having selected Cotton On and Perry Ellis (the "Purchasers") as the highest or otherwise best bidders at the Auction; and upon the record herein; and any objection having been resolved, withdrawn or otherwise overruled by this Order; and after due deliberation thereon; and good and sufficient cause appearing therefore;

**NOW, THEREFORE, IT IS HEREBY FOUND AND DETERMINED THAT:**

**Jurisdiction, Final Order and Statutory Predicates**

A.     This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (0). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the

Federal Rules of Civil Procedure as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.     The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.  The proposed sale constitutes a sale of property of the estate outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

D.     The Sale Motion and notice of the Auction were served upon the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the prepetition secured lenders; (c) the Official Committee of Unsecured Creditors; (d) those parties that have expressed an interest in purchasing the Leases and/or Intellectual Property; (h) the counterparties to the Leases; and (i) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  Notice of the Sale Motion, the Auction and this hearing was adequate and sufficient under the circumstances.

**Good Faith of Purchasers**

E.     Purchasers are purchasing the Leases and/or Designation Rights in good faith, are good faith purchasers within the meaning of 11 U.S.C. § 363(m), are entitled to the protection of that provision, and otherwise have proceeded in good faith in all respects in connection with the Sale Agreements (defined below) in that: (a) the Stalking Horse Bidders recognized that the Debtor was free to deal with any other party interested in acquiring the Leases subject to the Stalking Horse Agreements; (b) all payments to be made by the

Purchasers and other agreements or arrangements entered into by the Purchasers in connection with the Stalking Horse Agreements have been disclosed; (c) the Purchasers have not violated 11 U.S.C. § 363(n) by any action or inaction; and (d) the negotiation and execution of the Stalking Horse Agreements and any other agreements or instruments related thereto were in good faith and each party thereto is represented by counsel.

F.     The Sale Agreements were negotiated and proposed, and have been entered into by the parties in good faith within the meaning of Section 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without collusion.

**Highest or Otherwise Best Offers**

G.     The Debtor's determination that the Sale Agreements constitute the highest or otherwise best offers for the Leases and/or Designation Rights constitutes a valid and sound exercise of the Debtor's business judgment.

H.     The Sale Agreements represent fair and reasonable agreements for Purchasers to purchase the Leases and/or Designation Rights (as applicable) under the circumstances of this chapter 11 case.

I.     Approval of the Sale Agreements and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its creditors, and its estate.

J.     The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for entering into the Sale Agreements prior to, and outside of, a plan of reorganization.

4

K.     The Debtor has full corporate power and authority to execute and deliver the Sale Agreements and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor to consummate the transactions contemplated by the Sale Agreements, except as otherwise set forth therein.

**Assumption, Assignment and Sale of Real Property Leases**

L.     Pursuant to Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(B), the Debtor and Perry Ellis have demonstrated adequate assurance of future performance by Perry Ellis under the Leases subject to the Assumption and Assignment Agreement by and between the Debtor and Perry Ellis Menswear, LLC, attached hereto as <u>Exhibit A</u> (the "<u>Perry Ellis Assumption and Assignment Agreement</u>").  Pursuant to Bankruptcy Code § 365(f) notwithstanding any provision to the contrary in the Leases, or in applicable nonbankruptcy law, that prohibits, restricts, or conditions the assignment of the Leases, the Debtor may assign to Perry Ellis the Leases subject to the Perry Ellis Assumption and Assignment Agreement, including, without limitation, the "use" clause in the Perry Ellis Assumption and Assignment Agreement.  No objections to adequate assurance of future performance by Perry Ellis were filed with respect to the Leases subject to the Perry Ellis Assumption and Assignment Agreement.

**Section 363 Sale**

M.     The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full.  Therefore, the Debtor may sell the Leases and Designation Rights free and clear of any interest therein.

N.     Given all of the circumstances of the Debtor's chapter 11 case and the adequacy and fair value of the purchase price under the Stalking Horse Agreements, the proposed sale of the Leases and Designation Rights to the Purchasers constitutes a reasonable and fair exchange of consideration and reasonable and sound exercise of the Debtor's business judgment.

**Miscellaneous**

O.     All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein.

**NOW, THEREFORE, IT HEREBY IS ORDERED THAT:**

1.     The Sale Motion is granted to the extent provided herein.

2.     All objections to the relief granted herein, to the extent not resolved or withdrawn, are overruled on the merits.

3.     The Cure Amounts set forth on Exhibit A to the Perry Ellis Assumption and Assignment Agreement shall constitute the only amounts deemed owing under the corresponding Leases relating to the period prior to the assignment with respect to those Leases subject to the Perry Ellis Assumption and Assignment Agreement, provided that the Debtor shall pay all postpetition rent due and owing under the Leases arising and accruing from the Petition Date through the date of assignment or termination, absent waiver by the respective landlord, within five (5) business days of the entry of this Order.

4.     The Perry Ellis Assumption and Assignment Agreement, including all of its terms and exhibits, and each of the transactions contemplated thereby, is approved.  The Debtor is

authorized and directed to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby and under the Perry Ellis Assumption and Assignment Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Perry Ellis Assumption and Assignment Agreement.

5.     The Designation Rights Agreement by and between the Debtor and Cotton On, attached hereto as Exhibit B (the "Designation Rights Agreement", collectively with the Perry Ellis Assumption and Assignment Agreement, the "Sale Agreements"), including all of its terms and exhibits, and each of the transactions contemplated thereby, is approved.  The Debtor is authorized and directed to take any and all actions as may be necessary to consummate the Designation Rights Agreement.   Pursuant to paragraph 8 below, upon receipt of a Lease Assumption Notice (defined below), Debtor is further authorized to use its best efforts to obtain the entry of an order of the Court approving the assumption of the Lease(s) identified in such Lease Assumption Notice(s) and the assignment of such lease(s) to Cotton On or Cotton On's specified Designee (as defined below) (or to the lessor, in the case of a termination).

6.     The Auction with respect to the Debtor's Intellectual Property is hereby adjourned until June 29, 2011 or such later time determined by the Debtor and noticed on the docket of this case.

7.     Pursuant to section 363 of the Bankruptcy Code, the Debtor is authorized to sell the Leases and Designation Rights to the Purchasers free and clear of any liens, claims, encumbrances, security interests, pledges or other interests (collectively, "Interests") with such

7

Interests to attach to the proceeds to be received by the Debtor in the same priority and subject to the same defenses and avoidability, if any, as before the closing of the transactions contemplated under the Sale Agreements. Pursuant to Section 363(f) of the Bankruptcy Code and the Sale Agreements, including any amendments thereto, the transfer of title to the Leases or Designation Rights, as applicable, to the Purchasers shall be free and clear of any Interest in or against the Leases, the Designation Rights, and the Intellectual Property. Upon the assignment to Perry Ellis or Cotton On (or its specified Designee), as applicable (collectively, the "Assignees"), the Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order and, pursuant to Bankruptcy Code § 365(k), the Debtor and its estate shall be relieved from any further liability thereunder, including for any breach of Leases as of the effective date of such assignment. The Assignees are not the successor of the Debtor for any purpose. The Assignees do not assume and shall not become liable for any liabilities of the Debtor.

8. In connection with the Designation Rights Agreement, Cotton On may designate for assumption and assignment any Lease that is subject to, and as set forth in, the Designation Rights Agreement (each such Lease, a "Designated Lease"), in accordance with the following procedures, provided that Cotton on may not designate any Lease that has been rejected by the Debtor:

(a) Cotton On shall deliver to the Debtor and file with the Court, and simultaneously serve a copy on each counterparty to a Designated Lease (each, a "Landlord") and its counsel of record, if known, by both (x) overnight mail and (y) either email or facsimile, a notice in the form of Exhibit C to this Order (the "Lease Assumption Notice"), which shall include, among other things, (i) the exact name of the proposed assignee

(each, a "<u>Designee</u>")[3], (ii) a summary of all amounts required to be paid in order to effect the assumption and assignment of such Designated Lease pursuant to section 365(b) of the Bankruptcy Code (the "<u>Cure Amount</u>"), (iii) the proposed use of the premises subject to such Designated Lease, and (iv) the proposed form of Lease Sale Order (as defined below). Cotton On shall also deliver to Landlords, together with each Lease Assumption Notice, evidence of such Designee's ability to provide adequate assurance of future performance with respect to such Designated Lease.

(b) The Landlord to any Designated Lease may file an objection to the assignment of such Designated Lease within seven (7) business days of receipt of the Lease Assumption Notice. If no objection is timely received, (i) the Landlord to such Designated Lease shall be deemed to have consented to the entry of a Lease Sale Order with respect to such Designated Lease and shall be forever barred from asserting any objection with regard to the assumption and assignment of such Designated Lease, and (ii) the Cure Amount set forth in the Lease Assumption Notice shall be controlling, notwithstanding anything to the contrary in any Designated Lease, or any other document, and such Landlord shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other cure claims related to such Designated Lease against the Debtor, Cotton On, or such Designee, or the property of any of them.

(c) An objection to the assumption and assignment of any Designated Lease that was timely filed pursuant to subparagraph (b) above will be addressed at a hearing to be held on the earliest practicable date (each, a "<u>Lease Sale Hearing</u>"). Any Landlord that filed a prior objection with respect to such Designated Lease shall not need to file a further objection to raise such objection at any Lease Sale Hearing. If an objection is raised by a Landlord solely to the Cure Amount, and such dispute cannot be consensually resolved prior to the Lease Sale Hearing, the Debtor may nevertheless seek the assumption and assignment of the applicable Designated Lease; <u>provided</u> that the entire disputed Cure Amount must be immediately paid by the Designee to the Debtor, and the Debtor shall hold and segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by agreement by the parties, for payment to the Landlord or repayment to the Designee.

(d) The Designated Leases shall be transferred, suject to Landlords' right to object herein pursuant to a proposed order of assumption and assignment substantially in the form of <u>Exhibit D</u> to this Order (a "<u>Lease Sale Order</u>"), to the applicable Designee, free and clear of all claims, liens, encumbrances or interests of any kind or nature whatsoever, and shall remain in full force and effect for the benefit of such Designee in accordance with their respective terms, notwithstanding any provision in any such Designated Lease (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts,

---

[3] As set forth in the Designation Rights Agreement, Cotton On may designate itself or any affiliate as assignee with respect to any Designated Lease.

or conditions the assignment or transfer of such Designated Lease (each, an "Anti-Assignment Provision"); provided that either Cotton On or the applicable Designee shall be liable for accrued but unbilled items with respect to 2010 and 2011 under assumed non-residential real property leases (including, but not limited to, unbilled taxes and year-end adjustments to common area maintenance charges, insurance, and real estate taxes) with respect to each Designated Lease, and shall be liable for the payment of such charges when same become due in accordance with the terms of such Designated Lease (with all rights reserved to Cotton On or such Designee to challenge said charges as may be set forth in such Designated Lease).

(e)     Pursuant to Bankruptcy Code section 365(k), the Debtor shall be relieved from any further liability with respect to each Designated Lease after the effective date of the assumption and assignment of such Designated Lease to any Designee. The Debtor is authorized to execute and deliver to the applicable Designee such documents or other instruments as may be necessary to assign and transfer the Designated Leases to such Designee at each Lease Closing (as defined in the Designation Rights Agreement).

(f)     With respect to each Designated Lease, upon the Lease Closing and the payment of the relevant Cure Amount (and contingent upon Cotton On's or the applicable Designee's obligations to pay the unbilled charges set forth in Paragraph 7(d) above), such Designee shall be deemed to be substituted for the Debtor as a party to such Designated Lease. There shall be no rent accelerations, assignment fees, increases or any other fees charged to any Designee as a result of the assumption and assignment of the Designated Leases. Each Lease Sale Order shall provide that the assignment of each of the Designated Leases is made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code. With respect to each Designated Lease, the applicable Designee shall execute, in a form reasonably acceptable to the applicable Landlord, an assumption and assignment agreement that shall identify the tenant under the Designated Lease, as well as provide the contact address for the tenant for billing and notice purposes.

9.      Each and every Anti-Assignment Provision in any Designated Lease is null, void and of no force and effect in connection with the transfer of the Designation Rights to Cotton On pursuant to the Designation Rights Agreement.

10.     This Order and the Sale Agreements shall inure to the benefit of and be binding on the Debtor, its estate, its creditors, the non-Debtor counterparties to the Sale Agreements and their respective successors and assigns, any trustees, if any, subsequently appointed in the

Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's case.

11. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Agreements or any of the transactions contemplated thereby.

12. The failure specifically to include any particular provision of the Sale Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreements be authorized and approved in their entirety.

13. The Debtor is hereby authorized to take all such actions and execute any agreements that shall be necessary to consummate and give effect to the Sale Agreements without further order of the Court.

14. The Sale Agreements and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that: (i) any such amendment does not have a material adverse effect on the Debtor or Debtor's estate, (ii) any such amendment does not result in a reduction of the Purchase Price, and (iii) notice of such amendment shall be provided to the Committee and the Debtor's prepetition lenders.

15. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Sale Agreements, all modifications thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchasers, and to adjudicate, if necessary, any and all disputes concerning or relating in

1725663 v2/NY

any way to the transactions contemplated herein.

16.     To the extent that any provisions of this Order shall be inconsistent with the provisions in the Sale Agreements, any prior order, or any pleading with respect to the motions in this case, the terms of this Order shall control.

17.     Pursuant to Rules 7062, 9014, 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the Debtor is authorized to close the transactions contemplated by the Sale Agreements immediately upon entry of this Order.

18.     The Court shall retain jurisdiction over disputes pertaining to this Order or the Sale Agreements.

Dated: _____, 2011

_____
Honorable Robert D. Drain
United States Bankruptcy Judge

1725663 v2/NY

**EXHIBIT A**

ASSIGNOR MAY HAVE CLAIMS UNDER THE LEASES
FOR CHARGES PAID BY THE ASSIGNOR,
WHICH CLAIMS MAY BE DISPUTED.
THESE CLAIMS WILL BE RETAINED BY ASSIGNOR.

## AGREEMENT OF ASSUMPTION AND ASSIGNMENT OF LEASES
### (Stalking Horse)

THIS ASSUMPTION AND ASSIGNMENT AGREEMENT (this "Agreement") is made as of this 26th day of May, 2011, by and among Metropark USA, Inc., a Delaware corporation ("Assignor"), and Perry Ellis Menswear, LLC, a Delaware corporation ("Assignee").[1]

I.  The Leases

Assignor, a debtor in possession, is a tenant under certain leases for certain premises (the "Premises") identified on the schedule (the "Lease Schedule") annexed as Exhibit A hereto (the "Leases"), more specifically described in the Leases. The landlords under the Leases are identified on Exhibit A (the "Landlords"). True copies of the Leases are as posted by the Assignor as of the date hereof at http://www.greatamerican.com/real_estate/properties/metropark /metropark_documents.html.

II.  Assignor's Bankruptcy Case

On May 2, 2011, Assignor filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Assignor continues to operate its business and manage its properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in Assignor's Chapter 11 case.

III.  Assignor's Assignment of the Leases

Assignee is desirous of having Assignor assign to it, pursuant to § 365(f) of the Bankruptcy Code, on the terms and conditions set forth herein, all of Assignor's right, title and interest of any kind or nature in and to the Leases including, without limitation, the right to possession.

NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

Pursuant to the terms and for the consideration set forth below, Assignor hereby assigns to Assignee all of its right, title, and interest in and to the Leases for the remainder of the respective Lease terms (the "Assignments") and Assignee hereby accepts the Assignments; provided, however, that any security deposit presently on account with any Landlord will either

---

[1] This Agreement amends and supersedes that certain *Agreement of Assumption and Assignment of Leases* dated May 20, 2011, as a result of an auction held on May 26, 2011.

be refunded by Assignee to Assignor, or utilized by Assignor to reduce arrearages, if any, under the respective Lease and replaced to Landlords by Assignee. Assignee hereby recognizes and acknowledges that each Landlord's right to full performance of all terms, conditions, and covenants of each Lease remains in effect on and after the effective date of the Assignment. Except to the extent otherwise agreed in writing by Assignee and any Landlord, Assignee assumes all of the terms, conditions, and covenants of each Lease as tenant under the Lease, including without limitation the benefits and burdens of the 2010 and 2011 year end adjustments, except as expressly modified hereby. Further, pursuant to § 365(f) of the Bankruptcy Code, on and after the effective date of the Assignment, Assignor and its estate shall be relieved from any liability for any breach of the Leases occurring after the effective date of the Assignment, and Assignee agrees to indemnify and hold Assignor harmless from any default in the performance of such terms, conditions and covenants occurring after the effective date of the Assignment. To the extent any Landlord and Assignor have agreed to the Cure Costs as full satisfaction of Landlord's claim for monies owed under any Lease by Assignor, payment of such amount by Assignor to Landlord together with the assumption and assignment of the respective Lease to Assignee pursuant to this Agreement shall relieve Assignee of all liability arising under the respective Lease on account of any and all claims or defaults accruing prior to the effective date of the Assignment.

A.    Consideration. The total consideration to be paid by Assignee (the "Purchase Price") is up to $858,885.80, as follows:

(i)     $775,000.00 in cash, payable at the Closing (as defined herein), and

(ii)    Assignee shall pay Cure Costs to the Landlords, in an amount up to $83,885.80, based upon the Lease Schedule as set forth in paragraph C below.

Assignee has paid to Assignor a deposit equal to $138,912.59 (the "Deposit"). At the Closing, Assignee shall pay the balance of the Purchase Price to Assignor. The Deposit shall be released and paid as directed by an order of the Bankruptcy Court approving the Assignment of the Lease to Assignee on the terms and conditions set forth herein.

B.    Closing and Effective Date of Assignment. The closing of the Assignment shall take place within one (1) business day following approval by the Bankruptcy Court and the entry of the order approving the assumption and assignment and sale of the Leases to Assignee, at the offices of Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, or at such other time and place as may be designated by Assignor at its sole discretion (the "Closing"). The effective date of the Assignment shall be the date of the Closing.

C.    Bankruptcy Court Approval. This Agreement is contingent upon an order of the Bankruptcy Court:

(i)     authorizing (1) Assignor to enter into the Agreement, and (2) the assumption and assignment of the Leases pursuant hereto,

(ii)     determining any Cure Costs due to Landlords consistent herewith, and

(iii)    with no stay of any such order being in effect.

If the Bankruptcy Court does not approve this Assignment for any reason, other than a material breach of this Agreement by Assignee, or if, notwithstanding such an order of the Bankruptcy Court, Assignor fails to close within forty-five (45) days after entry of such order, then all escrowed funds shall be released to Assignee, and Assignee shall have no further claims against Assignor.

"Cure Costs" shall be determined by agreement of the Assignor, the Assignee and the respective Landlord or by order of the Bankruptcy Court in connection with and as a condition to the approval of the assumption and assignment of any Lease; Cure Costs aggregate up to $83,885.80 for the Leases as stated by the Assignor in the Lease Schedule annexed as Exhibit C; in the event of any discrepancy between the Assignor's and any Landlord's representation of the total Cure Costs, Assignee shall pay up to a 5% variance on a Lease by Lease basis as may ultimately be substantiated and approved by the Bankruptcy Court; to the extent the Cure Costs are ultimately established in an amount in excess of 5% (on a Lease by Lease basis) of the Cure Costs as stated in the Lease Schedule annexed as Exhibit C, such excess shall be paid by Assignor.

Assignor shall obtain the entry by the Bankruptcy Court of the Sale Order in form and substance reasonably satisfactory to Assignee which shall, among other things, (a) determine that (i) this Agreement was entered into by Assignor and Assignee in good faith and represents the highest or otherwise best offer for the Leases and should be approved, and (ii) Assignee is a good faith purchaser under Section 363(m) of the Bankruptcy Code and that the provisions of Section 363(n) of the Bankruptcy Code have not been violated; (b) authorize and direct Assignor to assign the Leases to Assignee pursuant to this Agreement and Section 363 of the Bankruptcy Code, free and clear of any liens, claims, encumbrances, security interests, pledges or other interests ("Liens") (including any and all "interests" in the Leases within the meaning of Section 363(f) of the Bankruptcy Code); (c) authorize and direct Assignor to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing; (d) provide that Assignee will not assume or be liable for any liabilities of Assignor; and (e) contain such other provisions as may be necessary or reasonably desirable or appropriate to give effect to the documents necessary to carry out the transactions contemplated hereby.  Assignee will promptly take such actions as are reasonably requested by Assignor to obtain entry of a Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Assignee is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and that the purchase price was not controlled by an agreement in violation of Section 363(n) or any other section of the Bankruptcy Code.

If Assignee fails to close for any reason other than a material breach of this Agreement by Assignor, then Assignee's deposit shall become non-refundable and shall be forfeited to Assignor as liquidated damages. Assignor shall have forty-five (45) days, subject to a Bankruptcy Court ordered extension, from the date that this Agreement is fully executed, to

obtain an order from the Bankruptcy Court authorizing Assignor to enter into this Agreement and to close.  If the aforesaid order is not obtained and the Closing does not occur within the aforesaid time period, all escrowed funds shall be released to Assignee and Assignee and Assignor shall have no further claims against one another.

      D.    <u>Free and Clear of Liens and Encumbrances</u>. Upon entry of an order approving the assumption and assignment contemplated by this Agreement, the Leases shall be free and clear of any and all Liens, with all such Liens to attach to the proceeds paid to Assignor by Assignee.

      E.    <u>Break-up Fee</u>. The parties contemplate that Assignor will seek Bankruptcy Court approval for Assignor to enter into this Agreement which will be presented as a "Stalking Horse" sale, subject to any third party's competitive bid as a higher or otherwise better offer. However, in the event that the Bankruptcy Court should approve any third party's competitive bid as a higher and better offer and Assignor thereafter closes an assignment of any Lease to such third party, then, subject to the Bankruptcy Court's approval, Assignee shall be entitled to a break-up fee in the amount of 5% of the Purchase Price ($46,304.20) plus reimbursement of Assignee's reasonable and substantiated out-of-pocket expenses incurred in connection therewith up to $40,000.00.  Any Bankruptcy Court approved break-up fee shall be paid by Assignor (with the return of the Deposit) within three (3) business days after Assignor's closing with the successful third party competing bidder.

      F.    <u>Adequate Assurance Data</u>. As a condition of the bidding procedures approved by the Bankruptcy Court (the "<u>Bidding Procedures</u>") and in compliance with said Bidding Procedures prior to or with the execution of this Agreement, Assignee has supplied Assignor with: (i) the full name and identity of the proposed Assignee of the Leases; (ii) a current financial statement or such other proof of financial condition of the proposed Assignee or guarantor, if any; (iii) a written statement of the proposed Assignee's expected use of the respective Premises (see paragraph G below), (iv) such other information relating to the proposed business to be conducted at the respective Premises and retail experience of the proposed Assignee, and (v) a projection of gross sales, if the respective Lease contains a percentage rent provision.

      G.    <u>Use</u>. Assignee shall use the respective Premises for the retail sale of men's, women's and/or children's apparel including, but not limited to, woven and knit tops, sweaters, outerwear, t-shirts, dresses, skirts, jeans, casual pants; women's, men's and/or children's accessories including, but not limited to, jewelry, watches, hair accessories, sunglasses, hats, scarves, handbags, footwear, belts; women's and men's personal care including, but not limited to, cosmetics, fragrance, bath & body products, hair care; women's, men's and children's intimate apparel including, but not limited to, socks, panties, boxers, pajamas; miscellaneous gift items including magazines, books, novelty items, games, home décor, artwork and a limited selection of CD's and DVD's.  Assignee shall not use more than 5% of the sales floor area for the sale, rental, display of books, magazines, periodicals and newspapers on tape, disk, CD-ROM and/or any other media (the "<u>Ancillary Items</u>"), and not more than 10% of the sales floor area for the sale of children's wear or footwear.  The merchandise for sale at the stores, other than the Ancillary Items, shall bear the Perry Ellis, Original Penguin, and/or any other labels owned or licensed to Perry Ellis International, Inc. or any of its affiliates.

4

H.     Possession. Assignor agrees to provide Assignee with possession of the Premises on the Closing, subject only to an extension ordered by the Bankruptcy Court and only for good cause shown.

I.     Initial Rent. Upon the Closing, Assignee shall be responsible for, and shall pay, rent and other obligations and charges due under the Leases to the Landlords in accordance with the terms of the Leases from and after the Closing and Assignee's possession of the respective Premises.

J.     Reimbursement by Assignee. Assignee shall reimburse Assignor for any rent or other charges due under the Lease for any period subsequent to the Closing that are paid by Assignor to the respective Landlord. Any such amounts shall be reimbursed by Assignee to Assignor within two (2) days of the Closing.

K.     Commission. Any commission due and payable as a result of this Agreement shall be paid by Assignee, unless otherwise provided by prior order of the Bankruptcy Court.

L.     Miscellaneous

(1)     This Agreement shall be governed by and construed in accordance with the laws of the State of New York and to the extent permissible and not inconsistent with the laws of the State of New York, under the laws of the state where the Premises is located. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes hereunder, and they each hereby consent to such jurisdiction.

(2)     This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes any prior instruments, arrangements and understandings relating to the subject matter hereof, except the Leases and all amendments thereto.

(3)     Assignor may assign its rights and obligations hereunder to any trustee appointed by the Bankruptcy Court. Assignee may not assign its rights and obligations hereunder to any party without Assignor's consent and, following Bankruptcy Court approval, any assignment of this Agreement by Assignee must also be permitted by the terms of the Leases or agreed to by Landlords.

(4)     This Agreement may be executed with counterpart signature pages or in more than one counterpart, all of which shall be deemed one and the same agreement, and shall become effective when one or more counterparts have been signed by each of the parties and delivered to all the parties.

(5)     Assignee shall be deemed to be a party in interest for all purposes contemplated by the Bankruptcy Court and the Federal Rules of Bankruptcy Procedure in connection with the assumption and assignment of the Leases and this Agreement.  Assignor shall serve upon Assignee all notices given, or required to be given, and all papers served, or required to be served, pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure in Assignor's Chapter 11 case.

5

(6)     Assignor and Assignee shall take all reasonable efforts pending and following Closing to consummate and effectuate this Agreement and assist the other in effectuating the terms hereof, including by supplying information and documentation upon reasonable request therefor at Assignee's cost and expense.

(7)     Any notice, demand, request or other communication that any party hereto may be required or may desire to give hereunder ("Notice" or "Notices") shall be in writing and shall be given as follows: (a) by hand delivery; (b) by overnight mail via Federal Express or other reputable express courier service; (c) by facsimile transmission; or (d) email (other than for notices of default):

If to Assignor:

> Metropark USA, Inc.
> 5750 Grace Place
> Los Angeles, CA 90022
> Attention: Rick Hicks
> Email: Rick.hicks@metroparkusa.com

With a copy to:

> Cooley LLP
> 1114 Avenue of the Americas
> New York, NY 10036
> Facsimile: 212.479.6275
> Attn: Cathy Hershcopf, Esq. and Alex Velinsky, Esq.
> Email: chershcopf@cooley.com
> Email:  avelinsky@cooley.com

If to Assignee:

> Perry Ellis Menswear, LLC
> c/o Perry Ellis International, Inc.
> 3000 Northwest 107th Avenue
> Miami, Florida  33172
> Facsimile:  (786) 221-8245
> Attn:  Cory Shade, Esq., General Counsel
> Email:  cory.shade@perry.com

With a copy to:

> Greenberg Traurig, LLP
> 200 Park Avenue
> New York, New York  10166
> Facsimile:  (212) 805-5546
> Attn:  Allen G. Kadish, Esq.
> Email:  kadisha@gtlaw.com

or at such other address or to such other addressee or to such other facsimile number as the party to be served with Notice shall have furnished in writing to the party seeking or desiring to serve Notice as a place for the service of Notice. Notices shall be deemed to have been received (a) on the next business day if given by overnight mail, or (b) on the same day, if given by facsimile transmission, upon receipt of successful transmission.

[Signature page follows]

IN WITNESS WHEREOF, this Assignment has been duly executed this 26th day of May, 2011.

ASSIGNOR: Metropark USA, Inc., Debtor-in-Possession

By: _Richard G. Hicks_

Name: Rick Hicks

Title: Chief Financial Officer and Secretary

ASSIGNEE: Perry Ellis International, Inc. on behalf of Perry Ellis Menswear, LLC

By: _____

Name: C. o. 3 Smade

Title: SVP & General Counsel

## **Index to Exhibits**

Exhibit A - Lease Schedule

*NY241,225,527-7*

# EXHIBIT A

## Perry Ellis International, Inc.

## SCHEDULE OF LEASES TO BE ASSUMED AND ASSIGNED, AND CURE COSTS

| Store No. | Mall | Landlord | Cure Costs |
|---|---|---|---|
| 1 | Glendale Galleria<br>Glendale, CA | General Growth Properties | $64,839.00 |
| 4 | Valley Fair Mall<br>Santa Clara, CA | Westfield | $4,108.05 |
| 14 | Los Cerritos Center<br>Cerritos, CA | Macerich | $2,859.86 |
| 15 | Miracle Mile Shops<br>Las Vegas, NV | Related Urban Management | $3,204.89 |
| 17 | Houston Galleria<br>Houston, TX | Simon Property Group | $4,043.00 |
| 18 | Lenox Square<br>Atlanta, GA | Simon Property Group | $4,831.00 |
|  |  | **TOTAL** | $83,885.80 |

# EXHIBIT B

<u>**DESIGNATION RIGHTS AGREEMENT**</u>

This Designation Rights Agreement (the "<u>Agreement</u>") is made as of the 22<u>nd</u> day of May, 2011, by and between Metropark USA, Inc. ("<u>Seller</u>"), and The Cotton On Group ("<u>Purchaser</u>").

<u>**RECITALS**</u>

WHEREAS, Seller filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (hereinafter defined) on May 2, 2011 (the "<u>Petition Date</u>"). Seller's chapter 11 case (the "<u>Bankruptcy Case</u>") is currently pending before the United States Bankruptcy Court for the District of Southern District of New York (Case No. 11-22866 (RDD)) (the "<u>Bankruptcy Court</u>").

WHEREAS, Purchaser desires to purchase, and Seller desires to sell, the Designation Rights (hereinafter defined) upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and in reliance upon the representations and warranties contained herein, the parties hereto covenant and agree as follows:

**ARTICLE I**
**CERTAIN DEFINITIONS**

As used in this Agreement, the following terms shall have the designated meanings set forth below.

1.1     "<u>Additional Lease</u>" means the Lease identified on Schedule 1.1 to this Agreement.

1.2     "<u>Agency Agreement</u>" means that certain Agency Agreement, dated as of May 4, 2011, between Seller and Agent.

1.3     "<u>Agent</u>" means, collectively, Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC.

1.4     "<u>Agreement</u>" means this Designation Rights Agreement, including any exhibits and schedules attached hereto.

1.5     "<u>Alternative Transaction</u>" any transaction undertaken by Seller with respect to the Designation Rights for any Lease, the Leases or any of the Leased Premises with any Person other than Purchaser or a Purchaser Affiliate.

1.6     "<u>Applicable Lease Marketing Period</u>" has the meaning set forth in Section 2.2(b).

1.7     "<u>Approval Order</u>" means an order of the Bankruptcy Court acceptable to Purchaser approving this Agreement and the transactions contemplated thereby.

1.8     "Arrearage Amount" means with respect to the Leases that are assumed and assigned pursuant to this Agreement the amount necessary to satisfy any and all rental arrearage and other payment obligations of any kind under a particular Lease, whether accrued prior or subsequent to the Petition Date, and to otherwise satisfy the requirements of Section 365 of the Bankruptcy Code, but excluding Occupancy Expenses (as defined in the Agency Agreement) payable by Agent under the Agency Agreement.

1.9     "Auction" shall have the meanings set forth in the Bid Protections Order.

1.10    "Authorized Officer" of any Person means the chief executive officer, chief restructuring officer, the president, any vice president or any secretary of such Person.

1.11    "Bankruptcy Case" has the meaning set forth in the recitals hereof.

1.12    "Bankruptcy Code" means Title 11 and applicable portions of Titles 18 and 28 of the United States Code, as amended from time to time.

1.13    "Bankruptcy Court" has the meaning set forth in the recitals hereof.

1.14    "Bid Protections Order" means an order of the Bankruptcy Court acceptable to Purchaser approving, among other things, the Break-Up Fee.

1.15    "Break-Up Fee" means (a) with respect to the Additional Lease, an amount equal to (i) ten percent (10%) of the Initial Payment Allocation for the Additional Lease, plus (ii) any Real Estate Occupancy Expenses paid by Purchaser on account of the Additional Lease prior to the entry of the Approval Order, and (b) with respect to the Bulk Leases, an amount equal to (i) seven and one-half percent (7.5%) of the Initial Payment Allocation for the Bulk Leases, plus (ii) any Real Estate Occupancy Expenses paid by Purchaser on account of the Bulk Leases prior to the entry of the Approval Order.

1.16    "Bulk Leases" means the Leases identified on Schedule 1.16 of this Agreement.

1.17    "Closing" has the meaning set forth in Section 3.1 hereof.

1.18    "Closing Date" means the first business day following the entry of the Approval Order.

1.19    "Deposit" means the deposit in the amount of ten percent (10%) of the Initial Payment previously delivered by Purchaser to Seller in accordance with the Letter of Intent.

1.20    "Designation Period" has the meaning set forth in Section 2.2.

1.21    "Designation Rights" has the meaning set forth in Section 2.2.

1.22    "Designee" means Purchaser's designee for each Leased Premises (it being understood that Purchaser retains the right to designate itself, a Purchaser Affiliate or the applicable landlord).

1.23    "Dropout Lease" has the meaning set forth in Section 2.2(c).

1.24    "Effective Date" has the meaning set forth in Section 3.5.

1.25    "FF&E" shall mean any removable furniture, fixtures and equipment owned by Seller and located at any of the Leased Premises, but excluding all components of energy management systems, HVAC systems and mechanical, electrical and plumbing systems.

1.26    "Initial Payment" has the meaning set forth in Section 3.1.

1.27    "Initial Payment Allocation" has the meaning set forth in Section 3.1.

1.28    "Lease Assumption Procedures Order" means an order mutually acceptable to Seller and Purchaser setting forth Lease assumption and assignment procedures to facilitate the implementation of the transactions contemplated by this Agreement.

1.29    "Lease Closing" has the meaning set forth in Section 3.2.

1.30    "Lease Closing Conditions" means, collectively, with respect to each Lease Closing, (i) the execution and delivery of the closing documents required to be executed and delivered pursuant to this Agreement, each in form and substance reasonably satisfactory to each of Purchaser and Seller; (ii) that, at the time of such Lease Closing, the representations of Seller contained in Article VI of this Agreement as to the applicable Lease are true and correct; (iii) the entry of a Lease Sale Order approving the assignment and assumption of such Lease, (iv) payment by Purchaser of the Arrearages Amount applicable to such Lease.

1.31    "Lease Closing Date" means, with respect to the assignment of any Lease, as soon as reasonably practicable on or after the first (1st) business day following the date that the Lease Sale Order approving such assignment has been entered; provided that the Lease Sale Order contains protections and findings under Section 363(m) of the Bankruptcy Code for the benefit of Designee(s) and shall be in full force and effect and shall not have been amended, reversed, vacated, modified or stayed, but not later than the fifth (5th) day following the entry of such Lease Sale Order (or such other date as Seller and Purchaser may agree).

1.32    "Lease Dropout Notice" has the meaning set forth in Section 2.2(c).

1.33    "Leased Premises" means the real property demised by each Lease including, without limitation, and along with, any improvements located thereon or forming a part thereof (notwithstanding whether Seller leases or owns such improvements).

1.34    "Lease Marketing Period Termination Date" means with respect to each Lease the earliest to occur of (a) the fifth (5th) day following the date upon which Purchaser delivers to the Seller a Lease Dropout Notice with respect to such Lease (the "Dropout Effective Date"), (b) if Purchaser has delivered to Seller a Lease Assumption Notice with respect to such Lease, the date upon which a Lease Sale Order has been entered with respect to such Lease, (c) the expiration of the Designation Period, (d) one business day (which period shall in no event be less than 24 hours) after Seller's delivery of a Vacate Notice if Purchaser does not deliver a Notice

Not to Reject, and (e) the effective date of rejection for such Lease to which the applicable landlord has agreed in writing.

1.35　"Leases" means the interest of Seller, as tenant, subtenant or otherwise, in, collectively, the Bulk Leases and Additional Lease.

1.36　"Lease Sale Order" means an order or orders of the Bankruptcy Court which may be entered from time to time approving the assumption and assignment of a Lease to a Designee containing terms mutually satisfactory to Purchaser and Seller.

1.37　"Letter of Intent" means the Letter of Intent dated May 18, 2011 delivered by Purchaser to Seller and agreed to and accepted by Seller.

1.38　"Liens" has the meaning set forth in Section 6.4.

1.39　"Non-Disturbance Agreement" means a recognition agreement, non-disturbance agreement, subordination, non-disturbance and attornment agreement or similar agreement.

1.40　"Notice Not to Reject" has the meaning set forth in Section 2.2(b).

1.41　"Person" means any natural person, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, trust, union, association, court, agency, government, tribunal, instrumentality, or other entity or authority.

1.42　"Purchaser Affiliate" means a Person controlling, controlled by, under common control with or affiliated with Purchaser or any member of Purchaser; "control," as so used, shall mean the ability to control the voting rights or management rights of such Person.

1.43　"REA" means a reciprocal easement agreement, an operating agreement, an agreement containing a first refusal or recapture right or a similar agreement (other than a Lease).

1.44　"Real Estate Occupancy Expenses" means, with respect to each Lease, the lesser of the per location, per diem costs related to the applicable Leased Premises set forth in Exhibit 2.2(c) and the obligations actually incurred by Seller relating to such Leased Premises with respect to the applicable period.

1.45　"Seller Party REAs" means any REA for or affecting any of the Leased Premises known to Seller and to which Seller is a party.

1.46　"Successful Bidder" shall have the meanings set forth in the Bid Protections Order.

1.47　"Vacate Notice" has the meaning set forth in Section 2.2(b).

## ARTICLE II
## THE TRANSACTION

2.1     Purchase and Sale of Designation Rights.

(a)     On the terms and subject to the conditions contained in this Agreement, on the Closing Date, Purchaser shall purchase from Seller, and Seller shall sell, convey, assign, transfer and deliver to Purchaser, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Designation Rights in respect of the Leases free and clear of all Liens to the fullest extent permissible pursuant to the Bankruptcy Code.

2.2     Designation Rights.

(a)     Designation Period. During the Designation Period, Purchaser shall have the sole, exclusive, and continuing right to select, identify and designate (on one or more occasions): (i) which Leases shall be assumed and assigned in connection with an assumption and assignment, and the Designee to whom such assignment shall be made (including an assignment to a landlord under a Lease which may, at Purchaser's election, involve a consensual agreement with the applicable landlord to waive prepetition rejection damages termination of a Lease in lieu of assigning the Lease to such landlord and, as to which, Seller shall, upon such election by Purchaser, take such actions as may be reasonably required to effectuate such termination) and (ii) which Leases shall become Dropout Leases as provided for in Section 2.2(c) (all of which rights are referred to herein as the "Designation Rights"). The parties agree that the sale of the Designation Rights provided for herein shall not effect a conveyance of the Leases to Purchaser except for those Leases that Purchaser will specifically designate for itself in accordance with Section 2.2(e) herein.  For the avoidance of doubt, subject to the terms and provisions of this Agreement, Purchaser shall have the right to designate as the Designee with respect to any particular Lease itself, any Purchaser Affiliate or any other party or Person. Purchaser's Designation Rights shall commence immediately upon entry of the Approval Order and shall terminate sixty (60) days thereafter, subject to earlier termination with respect to individual Lessees as provided for herein (the "Designation Period").  For the avoidance of doubt, the Designation Period shall continue past the Sale Termination Date under the Agency Agreement, and the Applicable Lease Marketing Period of any Lease may continue past the Vacate Date under the Agency Agreement applicable to the Leased Premises subject to such Lease, with Purchaser responsible for all Real Estate Occupancy Expenses with respect to such Leases for the duration of the Designation Period, as provided in paragraph 2.2(c) below.

(b)     Designation Procedure.  Promptly upon Seller's receipt of a notice to vacate any Lease pursuant to Section 6.2 of the Agency Agreement, Seller may provide written notice to Purchaser of its intention to reject such Lease (a "Vacate Notice").  Within one business day of receipt of a Vacate Notice, Purchaser shall provide Seller with written notice requesting that Seller not reject such Lease (a "Notice Not to Reject").  If Purchaser fails to provide a Notice Not to Reject to Seller, Purchaser shall be deemed to accept Seller's treatment of such Lease as a Dropout Lease, in accordance with subsection (d) below.

(c)     Parties Respective Obligations During Designation Period.

(i)     To the extent the Agent is not required to pay such expenses as an Occupancy Expense under the Agency Agreement, Purchaser shall reimburse

Seller for all actual Real Estate Occupancy Expenses paid by Seller under the Leases attributable to the period from the Closing Date through the applicable Lease Marketing Period Termination Date (as to each Lease, the "<u>Applicable Lease Marketing Period</u>"), on a per location, per diem basis limited to the categories and amounts set forth on <u>Exhibit 2.2(c)</u> hereto.  Purchaser shall pay any such Real Estate Occupancy Expenses on each Wednesday of each week during the Applicable Lease Marketing Period.  Except as expressly provided for in this Section 2.2(c)(i), Purchaser shall have no further obligation or liability with respect to any Lease (including any obligation to continue to pay any Real Estate Occupancy Expenses with respect thereto) upon the occurrence of the applicable Lease Marketing Period Termination Date.

(ii)     As security for the payment of obligations provided for in this Section 2.2(c)(i) (i.e., the payment of the Real Estate Occupancy Expenses), Purchaser shall deposit $150,000 (the "<u>Security Deposit</u>") by wire transfer of immediately available funds to Kelley, Drye & Warren LLP (the "<u>Escrow Agent</u>") on or before the Closing.  The Escrow Agent shall hold the Security Deposit in a segregated account pursuant to an escrow agreement in form and substance mutually agreeable to the Purchaser and the Seller (the "<u>Escrow Agreement</u>").  Funds held pursuant to the Escrow Agreement shall be free and clear of all encumbrances, except for encumbrances pursuant to the Escrow Agreement and this Agreement.

(iii)     If Purchaser fails to pay Seller or any lessor on account of any payment obligations hereunder and such failure continues for five (5) days after written notice of such failure is given by Seller to Purchaser, then Seller may demand payment by the Escrow Agent of the Security Deposit in the amount due (and such draw shall immediately cure such failure) by delivering to the Escrow Agent and the Purchaser an officer's certificate stating that such amounts are due and payable and unpaid under this Agreement and that any required notice of default has been given and any applicable grace or cure periods have expired.  Any amount so paid shall be immediately applied to the payment obligations hereunder.  Purchaser shall immediately replenish the Security Deposit in the amount so paid.  If Purchaser fails to replenish the Security Deposit within five (5) days after receipt of written demand to do so from Seller, then for so long as the Security Deposit remains unreplenished, Seller may immediately reject any and all Leases that have not been transferred pursuant to this Agreement, Purchaser waives any right to object to or contest any such rejections, and Purchaser shall have no further right in or to any such Lease that has been so rejected.

(iv)     During the Designation Period, Seller agrees to cooperate reasonably with Purchaser to arrange for the sale of Seller's interests in those Leases designated by Purchaser as provided for herein, and cooperate with Purchaser, its agents and any potential assignees of any of the Leases and provide reasonable access to Leased Premises subject thereto.

(d)     <u>Dropout Rights</u>.  At any time prior to the expiration of the Applicable Lease Marketing Period, Purchaser shall have the right, which right may be exercised at any time and from time to time in Purchaser's sole and absolute discretion, to provide written notice to the Seller (each such notice, a "<u>Lease Dropout Notice</u>") of Purchaser's election to discontinue its efforts to market and attempt to sell the subject Lease (a "<u>Dropout Lease</u>"). Upon delivery by Purchaser of a Lease Dropout Notice, upon the occurrence of the applicable Lease Marketing Period Termination Date, except as specifically provided for in Section 2.2(c)(i), Purchaser shall have no further obligation or liability with respect to the subject Dropout Lease (including any obligation to continue to pay any Real Estate Occupancy Expenses with respect thereto), and the Seller shall thereafter be solely responsible for all amounts payable or other obligations or liabilities that may be owed in connection with the subject Leased Premises. Upon Purchaser's delivery of a Lease Dropout Notice, Seller may dispose of such Lease, and the Leased Premises subject thereto, in such manner as Seller may elect, and all proceeds realized upon a disposition of same shall be the exclusive property of Seller.  The legal costs and expenses of the rejection at any time of any one or more Leases subject to a Dropout Notice, including, without limitation, the filing and prosecution of any motions or other papers with respect to the same, shall be borne solely by Seller and its bankruptcy estate.

(e)     <u>Lease Assumptions</u>.

(i)     As used in this Agreement, the term "commercially reasonable efforts" shall expressly require Seller or its bankruptcy estate to expend or incur fees, costs and expenses for the payment of attorneys and other professionals whose services may reasonably be required by Purchaser in connection with the prosecution of any motion seeking the entry of any order contemplated by this Agreement.

(ii)     A motion for approval of the Lease Assumption Procedures Order shall be filed by Seller as soon practicable following the execution of this Agreement, and Seller shall use all commercially reasonable efforts to obtain the entry of such an order.

(iii)     At any time during the Designation Period prior to the expiration of the Applicable Lease Marketing Period for each Lease, Purchaser shall have the right, which right may be exercised at any time and from time to time, to provide written notice to the Seller (each such notice, a "<u>Lease Assumption Notice</u>") of Purchaser's election to require the Seller to use all commercially reasonable efforts in accordance with the Lease Assumption Procedures Order to assume the Lease(s) identified in the subject Lease Assumption Notice(s) and assign same to Purchaser's Designee.  Following the date Purchaser delivers a Lease Assumption Notice to Seller, Seller shall, at no additional cost or expense to Purchaser, take all requisite actions (including, without limitation, actions required under section 365 of the Bankruptcy Code) to assume and assign the subject Lease(s) to the Designee identified by Purchaser in such Lease Assumption Notice(s) and obtain a Lease Sale Order.  Without limiting the generality of the foregoing, upon receipt of a Lease Assumption Notice, Seller

shall use all commercially reasonable efforts to obtain the entry of a Lease Sale Order approving the assumption of the subject Lease(s) and the assignment of such Lease(s) to the specified Designee within ten (10) days, subject to the availability of the Court.

(f)     Designation Proceeds. The parties agree that Purchaser shall pay to Seller ten percent (10%) of the proceeds it receives on account of the assumption and assignment of Leases to any non-Purchaser Affiliate, and shall be entitled to retain any and all other proceeds it receives on account of the assumption and assignment of Leases; provided, however, that the amounts payable by landlords specified in Exhibit 2.2(f) shall remain the property of Seller.

2.3     Alternative Designees. To the extent any of the Designees fail to close on the assignment of any Lease, for any reason, including, without limitation, because the Bankruptcy Court shall have sustained an objection to the assignment of a Lease as provided for herein, Purchaser shall have the right to direct Seller to use commercially reasonable efforts to assume and assign or sublease in connection with an assumption and assignment such Lease directly to an alternate Designee and Purchaser shall retain all of its respective Designation Rights under this Agreement.

2.4     Arrearage Costs. In the event Purchaser exercises its right to cause the assumption and assignment of a Lease pursuant to Section 2.2(e), Purchaser shall pay the Arrearage Amount, if any, to the applicable landlord.

# ARTICLE III
# THE CLOSING

3.1     Time and Place of Closing; Consideration.

(a)     The consummation of the sale and transfer of the Designation Rights provided for in this Agreement (the "Closing") shall occur on the Closing Date, subject to satisfaction or waiver (by the party entitled to waive the conditions) of all the conditions to Closing set forth in Article IV and Article V of this Agreement.

(b)     At the Closing, Purchaser shall deliver to Seller a payment in the amount of $760,000 (the "Initial Payment") allocated as follows (the "Initial Payment Allocation") (i) $500,000 with respect to the Bulk Leases and (ii) $260,000 with respect to the Additional Lease, less the Deposit, in immediately available funds.  The Initial Payment shall at all times remain severable and subject to the Initial Payment Allocation.  Seller shall be obligated to deliver the Initial Payment only with respect to the Leases for which it is determined to be the Successful Bidder at Auction, subject to Bankruptcy Court approval (e.g. if Purchaser is the Successful Bidder with respect only to the Bulk Leases, Purchaser's obligation hereunder shall be limited to $500,000, subject to increase at auction).  Further, any and all bid protection provided herein, is likewise subject to the Initial Payment Allocation (e.g. if Purchaser is entitled to the Breakup Fee and is not deemed the Successful Bidder with respect to only the Additional Lease, Purchaser will be entitled to a breakup fee in the amount of $26,000, subject to Bankruptcy Court approval).  The payments specified in this Section 3.1 and in Section 2.2(f) above shall be the sole payments due to Seller on account of the Designation Rights being

conveyed to Purchaser hereunder, excluding Real Estate Occupancy Expenses which may from time to time be reimbursed to the Debtor in lieu of direct payment to a particular lessor.

3.2 <u>Time and Place of Lease Closings</u>. The consummation of the sale and assignment of each Lease (each a "<u>Lease Closing</u>") shall occur on the applicable Lease Closing Date, <u>provided</u>, <u>however</u>, that such occurrence shall be subject to satisfaction of all the Lease Closing Conditions for such Lease unless any such Lease Closing Conditions are waived, in writing, by Purchaser.  Seller shall use commercially reasonable efforts to cause all of the Lease Closing Conditions with respect to each Lease Closing to be satisfied as of the applicable Lease Closing Date.  Each Lease Closing shall occur at such location as Seller and Purchaser shall agree.

3.3 <u>Deliveries by Seller</u>. At each Lease Closing, Seller shall deliver to Purchaser or its Designee(s) the following:

(a) an executed assumption and assignment agreement for the applicable Lease being assigned;

(b) an executed bill of sale conveying title to any personal property or fixtures owned by Seller that remains at the applicable Leased Premises as of the Lease Closing Date, and has not been otherwise transferred pursuant to the Agency Agreement;

(c) a Lease Sale Order entered by the Bankruptcy Court with respect to such Lease; and

(d) all other documents (including assignments of operating agreements affecting the applicable Leased Premises and closing statements), affidavits, instruments and writings reasonably required to be executed by Seller at or prior to the Lease Closing Date pursuant to this Agreement or otherwise required by law, or reasonably requested by Purchaser in connection herewith.

All such documents shall be, in form and substance, reasonably satisfactory to each of Seller and Purchaser. The provisions of this Section 3.3 shall survive the Closing.

3.4 <u>Deliveries by Purchaser</u>.  At each Lease Closing, Purchaser or Designee shall deliver to Seller:

(a) executed counterparts of the instruments referred to in Section 3.3 which are to be executed by Designee;

(b) all other documents (including assumptions of operating agreements affecting the applicable Leased Premises and closing statements), instruments and writings reasonably required to be delivered by Purchaser or its Designee(s) at or prior to the Lease Closing Date pursuant to this Agreement or otherwise required by law, or reasonably requested by Seller in connection herewith;

(c) payment in full of the applicable Arrearage Amount, or waiver of any such amounts by the applicable landlord.

All such documents shall be, in form and substance, reasonably satisfactory to each of Seller and Purchaser. The provisions of this Section 3.4 shall survive the Closing.

3.5 <u>Closing Costs, Preparation of Documents</u>. Purchaser shall prepare and deliver to Seller for execution by Seller, the assignments, bills of sale, deeds, transfer tax declarations and other closing documents to be delivered in connection with each Lease Closing, all in a form reasonably acceptable to Seller, <u>provided</u>, <u>however</u>, that Seller shall, at Purchaser's sole cost and expense, reasonably cooperate with Purchaser in such preparation.

**ARTICLE IV**
**CONDITIONS TO SELLER'S OBLIGATIONS**

Seller's obligations to consummate the transactions contemplated by this Agreement are subject to the satisfaction at or prior to the Closing Date of the following conditions:

4.1 <u>Representations and Warranties</u>. All representations and warranties of Purchaser contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date, as if such representations and warranties were made at and as of the Closing Date and Purchaser shall have performed all agreements and covenants required by this Agreement to be performed by it prior to or on the Closing Date in all material respects.

4.2 <u>No Injunction</u>. No injunction, stay or restraining order shall be in effect prohibiting the consummation of the transactions contemplated by this Agreement.

4.3 <u>Approval Order</u>. The Bankruptcy Court shall have entered the Approval Order, and the Approval Order shall be in full force and effect, and shall not have been amended, reversed, vacated, modified or stayed.

Each of the preceding conditions may be waived by Seller (except that Seller may not waive the condition requiring the entry of the Approval Order set forth in Section 4.3, above), but only if such waiver is set forth in a writing executed by Seller.

**ARTICLE V**
**CONDITIONS TO PURCHASER'S OBLIGATIONS**

Purchaser's obligation to consummate the transactions contemplated by this Agreement is subject, in the discretion of Purchaser, to the satisfaction at or prior to the Closing Date of each of the following conditions:

5.1 <u>Representations and Warranties</u>. All representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date as if such representations and warranties were made at and as of the Closing Date and Seller shall have performed all agreements and covenants required by this Agreement to be performed by it prior to or on the Closing Date in all material respects.

5.2     Approval Order.  The Bankruptcy Court shall have entered the Bid Protections Order and the Approval Order, and each of the Bid Protections Order and the Approval Order shall be in full force and effect, and shall not have been amended, reversed, vacated, modified or stayed.

5.3     No Injunction. No injunction, stay or restraining order shall be in effect prohibiting the consummation of the transactions contemplated by this Agreement.

5.4     Agency Agreement. The Agency Agreement shall be in full force and effect.

**ARTICLE VI**
**REPRESENTATIONS, WARRANTIES OF SELLER**

Seller hereby represents and warrants to Purchaser as follows:

6.1     Due Incorporation, Etc.  Subject to any required approval of the Bankruptcy Court, Seller has the power and authority and all necessary governmental approvals to enter into this Agreement and all of the transactions contemplated thereby.

6.2     Authorization, No Conflicts Etc.  Subject to the entry and effectiveness of the Approval Order, this Agreement has been duly and validly executed and delivered by Seller and (assuming this Agreement constitutes a valid and binding obligation of Purchaser and upon receipt of any required approval of the Bankruptcy Court) constitutes a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditor's rights generally from time to time in effect and to general equitable principles.  To Seller's knowledge, subject to any required approval of the Bankruptcy Court, neither the execution and delivery of this Agreement and all documents contemplated hereunder to be executed by Seller, nor the performance of the obligations of Seller hereunder or thereunder will result in the violation of any law or any provision of the organizational documents of Seller or will conflict with any order or decree of any court or governmental instrumentality of any nature by which Seller is bound.

6.3     Consents and Approvals.  To Seller's knowledge, no consent, approval or authorization of, or declaration, filing, or registration with, any United States federal or state governmental or regulatory authority is required to be made or obtained by Seller in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, except (a) for consents, approvals, or authorizations of, or declarations or filings with, the Bankruptcy Court, and (b) for consents, approvals, authorizations, declarations, filings or registrations, which, if not obtained, would not, individually or in the aggregate, have a material adverse effect on the transactions contemplated by this Agreement.

6.4     Leases and Real Estate.

(a)     Subject to entry of the Approval Order by the Bankruptcy Court, to Seller's knowledge, Seller has with respect to the Leases, leasehold title, and valid leases as to all of the Leased Premises, free and clear of all liens, claims, mechanics liens and encumbrances to the extent permitted by the Bankruptcy Code (but excluding liens, claims,

mechanics liens and encumbrances that were created by order of the Bankruptcy Court or will be released at Closing or the applicable Lease Closing by (i) payment by Seller, (ii) to the extent authorized by order of the Bankruptcy Court, by establishment, by Seller, of an escrow for any cure thereof in an amount reasonably agreed upon between the applicable landlord and Seller or as otherwise ordered by the Bankruptcy Court, or (iii) otherwise pursuant to the Approval Order, a Lease Sale Order or any other order of the Bankruptcy Court) (collectively "Liens").

(b)     Complete and correct copies of the Leases have been made available for inspection by Purchaser and none of the Leases have been modified in any material respect except to the extent that such modifications are disclosed by the copies delivered to or made available for inspection by Purchaser.

6.5     Insurance.  To Seller's knowledge, Seller currently maintains fire and other casualty insurance upon each of the Leased Premises as required by the Leases (which Leases may permit self-insurance by Seller).

6.6     Litigation.  There is no action, suit, inquiry, proceeding or investigation by or before any court or governmental or other regulatory or administrative agency or commission pending, or, to the best knowledge of Seller, threatened against Seller which questions or challenges the validity of this Agreement or in connection with the transactions contemplated thereby; nor, to the best knowledge of Seller, is there any basis for any such action, proceeding or investigation.  To the best of Seller's knowledge, there are no circumstances or facts that would prevent Seller from engaging in the transactions contemplated in this Agreement.

6.7     Prepetition Rental Arrearages.  To the best of Seller's knowledge, Exhibit 6.7 correctly lists all known unpaid rent payments, tax payments and other payment obligations accrued prior to the Petition Date with respect to each Lease.  Exhibit 6.7 does not include any obligations accrued or due and owing subsequent to the Petition Date.

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller as follows:

7.1     Due Incorporation, Etc.  Each organization comprising Purchaser is duly organized, validly existing and in good standing under the laws of the State or Country of its formation.

7.2     Authorization, No Conflicts. Etc.  Purchaser has the power and authority, to enter into this Agreement and to carry out its obligations hereunder. The execution, delivery and performance of this Agreement by Purchaser and the consummation by Purchaser of the transactions contemplated hereby have been duly authorized by all requisite (and to the extent applicable to Purchaser) corporate, partnership or limited liability company action.  This Agreement has been duly and validly executed and delivered by Purchaser and, subject to the entry and effectiveness of the Approval Order (assuming this Agreement constitutes a valid and binding obligation of Seller), this Agreement constitutes the valid and binding agreement of Purchaser, enforceable against Purchaser in accordance with its terms, subject to applicable

bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditor's rights generally from time to time in effect and to general equitable principles. Neither the execution and delivery of this Agreement and all documents contemplated hereunder to be executed by Purchaser, nor the performance of the obligations of Purchaser hereunder or thereunder will result in the violation of any law or any provision of the organizational documents of Purchaser or will conflict with any order or decree of any court or governmental instrumentality of any nature by which Purchaser is bound.

7.3    Consents and Approvals. To Purchaser's knowledge, no consent, approval or authorization of, or declaration, filing, or registration with, any United States federal or state Governmental or regulatory authority is required to be made or obtained by Purchaser in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, except (a) for consents, approvals, or authorizations of, or declarations or filings with, the Bankruptcy Court; and (b) for consents, approvals, authorizations, declarations, filings or registrations, which, if not obtained, would not, individually or in the aggregate, have a material adverse effect on the transactions contemplated by this Agreement.

7.4    Litigation. There is no action, suit, inquiry, proceeding or investigation by or before any court or governmental or other regulatory or administrative agency or commission pending, or, to the best knowledge of Purchaser, threatened against Purchaser which questions or challenges the validity of this Agreement or in connection with the transactions contemplated thereby; nor., to the best knowledge of Purchaser, is there any basis for any such action, proceeding or investigation.  To the best of Purchaser's knowledge, there are no circumstances or facts that would prevent Purchaser from engaging in the transactions contemplated in this Agreement.

## ARTICLE VIII
## COVENANTS

8.1    Affirmative and Negative Covenants.

(a)    Seller covenants and agrees that, after the date of this Agreement, it shall, unless otherwise agreed with Purchaser, do each of the following:

(i)    Affirmative Covenants Pending Lease Closing.

(A)    Maintenance. Until the applicable Vacate Date under the Agency Agreement, Seller shall, and shall cause the Agent to, maintain the subject Leased Premises in the same condition as it is today, subject only to ordinary wear and tear, and keep and perform all of its obligations under the applicable Lease, consistent with the terms of the Agency Agreement.

(B)    Court Orders. Seller shall use all commercially reasonable efforts to obtain the Approval Order.  Seller shall also use all commercially reasonable efforts to obtain the Lease Assumption Procedures Order and all Lease Sale Orders approving the

assumption and assignment of Leases to any Designees, as provided for in Section 2.2(e).

(ii)    <u>Negative Covenants Pending Lease Closing</u>. Except as expressly permitted herein (including pursuant to this Section 8.1(a)), Seller shall not, from and after the date hereof, prior to the applicable Lease Marketing Period Termination Date, do any of the following with respect to the applicable Lease without the consent of Purchaser (whose consent shall not be unreasonably withheld or delayed):

(A)    <u>Leases</u>.  Renew, terminate or amend such Lease, enter into new leases or subleases or grant or voluntarily terminate any other interests in the subject Leased Premises.

(B)    <u>REAs</u>.  Renew, terminate or amend any existing REAs with respect to or affecting the subject Leased Premises or enter into new REAs with respect to or affecting the subject Leased Premises.

(C)    <u>Non Disturbance Agreements</u>. Renew, terminate or amend any existing Non-Disturbance Agreements with respect to or affecting the subject Leased Premises or enter into new Non-Disturbance Agreements with respect to or affecting the subject Leased Premises.

(D)    <u>Encumbrances</u>.  Encumber, sublease or otherwise grant any Liens or other rights with respect to the subject Leased Premises.

(E)    <u>Contracts</u>.  Enter into any contracts or agreements affecting the Leased Premises which will be binding on Purchaser (or its Designee), in any case, from and after the execution of this Agreement.

(b)    Purchaser covenants and agrees that it shall, from and after the date hereof (unless otherwise agreed with Seller), with respect to each Lease, use commercially reasonable efforts to provide adequate assurance as required under the Bankruptcy Code of the future performance of the applicable Lease by Purchaser or its Designee.  Purchaser agrees that it will promptly take, and/or cause its Designee to take, all actions reasonably required by Seller or ordered by the Bankruptcy Court to assist in obtaining the Bankruptcy Court's entry of the Approval Order and each additional Lease Sale Order, such as furnishing affidavits, non-confidential financial information, confidential information subject to a reasonable form of confidentiality agreement or other documents or information for filing with the Bankruptcy Court and making Purchaser's employees and representatives available to be interviewed by Seller's counsel and to testify before the Bankruptcy Court and at depositions, with respect to demonstrating adequate assurance of future performance by Designees under the Leases.

(c)     Except as provided herein, until the applicable Lease Marketing Period Termination Date, Seller shall not, without the prior consent of Purchaser, file a lease rejection notice or motion with respect to any Lease.

8.2     <u>Title Insurance</u>.  Designees may obtain title insurance for any or all of the Leased Premises at their own discretion and at their sole cost and expense.

8.3     <u>Consents and Further Actions</u>.  Subject to the terms and conditions herein provided, Seller and Purchaser covenant and agree to use their good faith efforts to take, or cause to be taken, all reasonable action, or do, or cause to be done, all reasonable things, necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement, including without limitation, satisfying all Closing conditions and Lease Closing Conditions to be satisfied.

8.4     <u>Further Transfers and Assurances</u>.  Seller and Purchaser will execute and deliver such further instruments of conveyance and transfer and take such additional action as Purchaser may reasonably request to effect, consummate, confirm or evidence the assignment to Designees of the Leases.

8.5     <u>Taxes, Recording Charges</u>.  If the disposition of any Lease is not found to be exempt under section 1146(a) of the Bankruptcy Code, then all transfer, documentary, sales, use, stamp, registration, conveyance, income, gains, value added or other taxes and fees arising out of the assignment of the Leases and all charges for or in connection with the recording of any document or instrument contemplated hereby shall be paid by Purchaser.  Seller and Purchaser or Designee, as required by local law, will file all necessary tax returns and other documentation in connection with the taxes and fees encompassed in this Section 8.5 relating to the assignment of Leases.

8.6     <u>Insurance</u>.  Without the prior written consent of Purchaser, Seller will not cancel any insurance policy relating to any Leased Premises or permit any such policy to expire prior to the applicable Lease Marketing Period Termination Date.

8.7     <u>Access and Cooperation</u>.  During the Designation Period, Seller shall provide Purchaser with reasonable access to such documents and information as Purchaser shall reasonably request related to the Leases, and the Leased Premises subject thereto, in connection with Purchaser's efforts to market the Leases.  Without limiting the generality of the foregoing, Seller shall provide Purchaser with (i) access to Seller's data room, (ii) all landlord and other relevant contact information for each Lease, and (iii) access to all correspondence, notices, reports and other communications concerning the Leases and the Leased Premises, currently and on a continuing basis.

8.8     <u>Extension Options</u>.  Between the date of the Closing and the applicable Lease Marketing Termination Date for each Lease, Seller shall give Purchaser at least ten business days advanced notice of the last date upon which any and all renewal and/or extension rights exercisable fur such Lease are exercisable, which notice shall indicate whether or not Seller is exercising the applicable option.

**ARTICLE IX**
**EVENTS OF DEFAULT, TERMINATION**

9.1     <u>Events of Default</u>.  The material breach of any representation, warranty or covenant herein shall constitute a breach of this Agreement.

9.2     <u>Termination; Other Remedies</u>.

(a)     This Agreement may be terminated and the transactions contemplated hereby may be abandoned:

(i)     by the mutual consent of Purchaser and Seller;

(ii)    by Purchaser, if the Bid Protections Order shall not have been approved by the Bankruptcy Court by no later than May 23, 2011;

(iii)   by Purchaser or Seller, provided such party is not in default hereunder, if either (A) the Approval Order shall not have been approved by the Bankruptcy Court by no later than May 31, 2011, or (B) the Closing does not occur within ten (10) day after the Closing Date;

(iv)    by Purchaser, if there has been a breach by Seller of any material representation, warranty or covenant in this Agreement that (a) is not curable or, if curable, has not been cured within five (5) business days following receipt by Seller of written notice of such breach from Purchaser, and (b) is not waived by Purchaser in its sole discretion;

(v)     by Seller, if there has been a breach by Purchaser of any material representation, warranty or covenant in this Agreement that (a) is not curable or, if curable, has not been cured within five (5) business days following receipt by Purchaser of written notice of such breach from Seller, and (b) is not waived by Seller in its sole discretion; or

(vi)    by Purchaser, upon the approval by the Bankruptcy Court of an Alternative Transaction for the Bulk Leases or the Additional Lease, as applicable, i.e., if the Bankruptcy Court approves an Alternative Transaction for the Bulk Leases, the Purchaser may terminate this Agreement and abandon the transaction contemplated for the Bulk Leases, and if the Bankruptcy Court approves an Alternative Transaction for the Additional Lease, the Purchaser may terminate this Agreement and abandon the transaction contemplated for the Additional Lease.

(b)     In the event that this Agreement is terminated pursuant to Section 9.2(a)(i-iv) above, Seller shall immediately return the Deposit (and all interest accrued thereon) to Purchaser, as Purchaser's sole remedy in the event of such termination.  In the event that this Agreement is terminated pursuant to Section 9.2(a)(v), Seller shall retain the Deposit, as Seller's sole remedy in the event of such termination.  In the event that this Agreement is terminated pursuant to Section 9.2(a)(vi), Seller shall immediately return the Deposit (and all

interest accrued thereon) to Purchaser and pay the applicable Break-Up Fee to Purchaser, as Purchaser's sole remedy in the event of such termination.

(c)     Upon the termination of this Agreement pursuant to Section 9.2(a), other than as set forth in Section 9.2(b), neither Seller nor Purchaser shall have any further liability to the other hereunder.  This Section 9.2(c) shall survive the termination of this Agreement.

## ARTICLE X
## LEASE ASSIGNMENT

10.1     Post-Closing Lease Expenses.  Except as otherwise provided in this Agreement, all obligations with respect to each Lease assigned to Designees shall be the sole responsibility of Designee from and after the Lease Closing Date with respect to such Lease.  Notwithstanding anything to the contrary in the foregoing sentence, or in any other provision of this Agreement, Designees shall not be liable for any monetary obligations or monetary liabilities relating to the Leased Premises which are attributable in any way to, or were incurred during, the period prior to the applicable Lease Closing Date, unless such Designee agrees with the Purchaser to pay the applicable Arrearage Amounts, provided however, that Designee shall be liable for any and all year-end adjustments relating to the Leased Premises whether incurred prior to or after the Lease Closing Date.

10.2     Conditions to Assignment.  It shall be a condition to assignment of any Lease to any Designee that Purchaser shall have paid the applicable Arrearage Amount; provided, however, that Purchaser shall not be obligated to pay any portion of the Arrearage Amount that is in dispute as of the Lease Closing Date if an escrow or other commercially reasonable arrangement with respect thereto shall have been established at or following the applicable Lease Closing pursuant to an order of the Bankruptcy Court.

## ARTICLE XI
## MISCELLANEOUS

11.1     Successors and Assigns.  This Agreement is made solely and specifically by and for the benefit of the parties hereto, and their respective successors and assigns.

11.2     Notices. All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if and when delivered personally, or sent by facsimile transmission, or mailed, by certified or registered mail, return receipt requested, first class postage prepaid, or by Federal Express or some other nationally reputable overnight carrier (or when delivery is rejected or refused), to the parties at the following addresses and facsimile numbers:

If to Purchaser:

Michael Hardwick
The Cotton On Group
Tel: 61 35277 7022
E-mail: michael.hardwick@cottonon.com.au

With a copy to:

Robert L. LeHane, Esq
Kelley Drye & Warren LLP
Tel: 212-808-7573
E-mail: rlehane@kelleydrye.com

With copies to:

If to Seller:

Richard Hicks
Metropark USA
Tel: 323-622-3620
E-mail: rhicks@metroparkusa.com

with copies to:

Cathy Hershcopf, Esq.
Jeffrey L. Cohen, Esq.
Cooley LLP
Tel: (212) 479-6000
email address: chershcopf@cooley.com
                jcohen@cooley.com

or to such other place and with such other copies as any party may designate by written notice to all of the other parties provided in the manner set forth herein.

11.3    Expenses. Each party shall bear its own legal, appraisal and title costs with respect to the drafting of the agreements involved in these transactions and the closing of such transactions.

11.4    Brokerage Commissions and Fees.  Purchaser warrants and represents that no brokerage commissions or fees are due any real estate broker(s) as a result of Purchaser's acts or omissions in connection with the transactions contemplated by this Agreement, and Purchaser agrees that should any claim be made for commissions or fees by any broker(s) against Seller, Purchaser will indemnify and hold Seller free and harmless from and against any and all such claims in connection therewith to the extent the same are based upon any acts or omissions of Purchaser or its agents.  Seller warrants and represents that no brokerage commissions or fees are due any real estate broker(s) as a result of Seller's acts or omissions in connection with the transactions contemplated by this Agreement and Seller agrees that should any claim be made for commissions or fees by any broker(s) against Purchaser, unless otherwise authorized by prior order of the Bankruptcy Court, Seller will indemnify and bold Purchaser free and harmless from and against any and all such claims in connection therewith to the extent the same are based upon any acts or omissions of Seller or its agents.

11.5     Casualty and Condemnation.  If any particular Leased Premises is materially destroyed or materially damaged, or if condemnation proceedings are commenced against all or substantially all of such particular Leased Premises, all proceeds of insurance or condemnation awards shall be paid to, and retained by, Seller and such affected Leased Premises shall be excluded from this Agreement.  In the event of non-material damage or non-material condemnation to any particular Leased Premises, which damage Seller is unwilling to repair prior to the applicable Lease Closing, the applicable Lease Closing shall be unaffected thereby and any proceeds of insurance or condemnation awards shall be used to repair the Leased Premises to the same condition that the Leased Premises was in immediately prior to such casualty or condemnation.

11.6     Entire Agreement.  This Agreement supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof and this Agreement, including the schedules and exhibits hereto, and other documents to be delivered in connection herewith (together with such confidentiality letter), contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof.

11.7     Waiver.  Except as otherwise specifically provided for in this Agreement, any term or condition of this Agreement may be waived at any time by the party which is entitled to the benefit thereof.  To be effective, each such waiver shall be in writing, shall specifically refer to this Agreement and the term or condition being waived, and shall be executed by an Authorized Officer of such party.  A waiver on one occasion shall not be deemed to be a waiver of the same or any other breach on a future occasion.  A waiver hereunder shall be effective without an order of the Bankruptcy Court, or notice to the Bankruptcy Court or any third party, in relation to such waiver.

11.8     Amendment.  This Agreement may be modified or amended only in a writing duly executed by or on behalf of each of the parties hereto.

11.9     Counterparts; Facsimile Signatures.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement may be executed and delivered by facsimile and facsimile signatures hereof shall be deemed effective and binding as original signatures.

11.10    Invalid Provisions.  If any provision of this Agreement is held to be illegal, invalid, or unenforceable under any present or future law, rule, or regulation, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof.  The remaining provisions of this Agreement shall remain in full force and effect, and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance herefrom.  Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as a part of this Agreement a legal, valid, and enforceable provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible.

11.11    Headings, Gender, Etc.  The headings used in this Agreement have been inserted for convenience, do not modify the terms of this Agreement and do not constitute matter to be

construed or interpreted in connection with this Agreement.  Unless the context of this Agreement otherwise requires, (a) words of any gender shall be deemed to include each other gender, (b) words using the singular or plural number shall also include the plural or singular number, respectively, (c) references to "hereof," "herein," "hereby" and similar terms shall refer to this entire Agreement, and (d) the words "include" and "including" shall be construed as incorporating "but not limited to" or "without limitation."  The language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent and no rule of strict construction shall be applied against any Person.

11.12   Continuing Jurisdiction.  The parties agree that the Bankruptcy Court shall retain jurisdiction over the enforcement of this Agreement, including, but not limited to, the performance of the obligations and transactions contemplated hereunder.

11.13   Choice of Law.  This Agreement shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of New York without regard to conflicts of laws principles thereof, except with respect to matters of law concerning the internal corporate affairs of any corporation or limited liability company which is a party to or the subject of this Agreement, and as to those matters the law of the jurisdiction of incorporation or organization of such entity shall govern.  In the event of any litigation concerning this Agreement, proper venue shall be the Bankruptcy Court and the parties hereto consent to the jurisdiction of such court.

11.14   No Partnership or Joint Venture.  Nothing contained in this paragraph or elsewhere in this Agreement shall be deemed to create a partnership, joint venture, or any other relationship other than that of Seller and Purchaser between the parties hereto.

11.15   No Third Party Beneficiaries.  Nothing herein expressed or implied is intended or shall be construed to confer upon or give to any person, firm or corporation, other than the parties hereto, their affiliates and their respective permitted successors and assigns, any rights or remedies under or by reason of this Agreement.

11.16   Employees.  Purchaser and its Designees shall not be deemed an employer with Seller or any of its affiliates or subsidiaries and Purchaser and its Designees shall have no obligation to pay wages or benefits (or to fund any pension plan) or to employ any employee of Seller or any affiliates or subsidiaries other than as part of the Real Estate Occupancy Expenses. All WARN Act or similar obligation shall be Seller's sole obligation.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK)**

**IN WITNESS WHEREOF**, each of the parties hereto has caused this Agreement to be duly executed as of the date first above written.

**SELLER:**

**METROPARK USA, INC.**

By:_____
      Name: Richard Hicks
      Title: Chief Financial Officer

**PURCHASER:**

**THE COTTON ON GROUP**

By:_____
      Name: Ashley Hardwick
      Title: Director

**Schedule 1.1**
**Additional Lease**

| Store No. | Location | Street | City | State | Zip |
|---|---|---|---|---|---|
| 52 | Aventura Mall | 19575 Biscayne Blvd. Space 1019 | Aventura | FL | 33180 |

# Schedule 1.16
# Bulk Leases

| Store No. | Location | Street | City | State | Zip |
|---|---|---|---|---|---|
| 45 | Danbury Fair Mall | 7 Backus Avenue, Space G207 | Danbury | CT | 6810 |
| 53 | Smith Haven Mall | 142 Smith Haven Mall | Lake Grove | NY | 11755 |
| 3 | Oakridge Mall | 925 Blossom Hill Road, Space V22 | San Jose | CA | 95123 |
| 8 | Irvine Spectrum | 83 Fortune Drive, Suite 233 | Irvine | CA | 92618 |
| 9 | Fresno Fashion Fair | 639 E Shaw Avenue, Suite 173 | Fresno | CA | 93710 |
| 10 | Fashion Show | 3200 Las Vegas Blvd S, Suite 2290 | Las Vegas | NV | 89109 |
| 11 | Northpark Center | 8687 N Central Expy, Suite 2120 | Dallas | TX | 75225 |
| 12 | Beachwood Place | 26300 Cedar Road, Space 2250 | Beachwood | OH | 44122 |
| 20 | Freehold Raceway Mall | 3710 Route 9, Space G214 | Freehold | NJ | 07728 |
| 22 | San Francisco Centre | 845 Market Street, Space 309 | San Francisco | CA | 94103 |
| 24 | Baybrook Mall | 500 Baybrook Mall, Space 1192 | Friendswood | TX | 77546 |
| 25 | Walden Galleria | One Walden Galleria, Space TH150 | Buffalo | NY | 14225 |
| 27 | Town Square | 6551 Las Vegas Bvld., | Las Vegas | NV | 89119 |
| 34 | The Shops at Willow Bend | 6121 W Park Blvd, Space B105 | Plano | TX | 75093 |
| 39 | Westfarms | 500 Westfarms Mall, Space E107 | Farmington | CT | 6032 |
| 40 | South Center | 657 Southcenter Mall, Space 1525 | Seattle | WA | 98188 |
| 43 | Burlington Mall | 75 Middlesex Turnpike, Space 1303 | Burlington | MA | 1803 |
| 44 | Alderwood Mall | 3000 184th Street SW, Space 592 | Lynwood | WA | 98037 |
| 46 | Scottsdale Fashion Square | 7014 E Camelback Road | Scottsdale | AZ | 85251 |
| 49 | Victoria Gardens | 7825 Kew Avenue, Space 5010 | Rancho Cucamonga | CA | 91739 |
| 50 | Menlo Park | 55 Parsonage Road, Space 2415 | Edison | NJ | 8837 |
| 55 | Willowbrook Mall, NJ | 1830 Willowbrook Mall | Wayne | NJ | 7470 |
| 60 | Garden State | One Garden State Plaza Space I-5 | Paramus | NJ | 7652 |
| 63 | Roosevelt Field | 630 Old Country Rd. Space 1073A | Garden City | NY | 11530 |
| 65 | Santa Anita | 400 S. Baldwin Ave | Arcadia | CA | 91007 |
| 67 | Memorial City | 303 Memorial City Space 255 | Houston | TX | 77024 |

## Schedule 2.2(c)
## Occupancy Per Diem

| Store No. | Location | Street | City | State | Zip | Per Diem |
|---|---|---|---|---|---|---|
| 13 | Washington Square | 9681 SW Washington Square Road | Tigard | OR | 97223 | $ 822.14 |
| 45 | Danbury Fair Mall | 7 Backus Avenue, Space G207 | Danbury | CT | 6810 | 689.52 |
| 53 | Smith Haven Mall | 142 Smith Haven Mall | Lake Grove | NY | 11755 | 819.78 |
| 3 | Oakridge Mall | 925 Blossom Hill Road, Space V22 | San Jose | CA | 95123 | 635.99 |
| 6 | Mall of America | 108 N Garden, Bloomington | Bloomington | MN | 55425 | 1,136.82 |
| 7 | Galleria at Tyler | 2045 Galleria at Tyler | Riverside | CA | 92503 | 585.55 |
| 8 | Irvine Spectrum | 83 Fortune Drive, Suite 233 | Irvine | CA | 92618 | 528.72 |
| 9 | Fresno Fashion Fair | 639 E Shaw Avenue, Suite 173 | Fresno | CA | 93710 | 594.84 |
| 10 | Fashion Show | 3200 Las Vegas Blvd S, Suite 2290 | Las Vegas | NV | 89109 | 1,085.90 |
| 11 | Northpark Center | 8687 N Central Expy, Suite 2120 | Dallas | TX | 75225 | 709.18 |
| 12 | Beachwood Place | 26300 Cedar Road, Space 2250 | Beachwood | OH | 44122 | 685.56 |
| 16 | Del Amo Fashion Center | 3525 Carson Street, Suite 82 | Torrance | CA | 90503 | 564.33 |
| 20 | Freehold Raceway Mall | 3710 Route 9, Space G214 | Freehold | NJ | 07728 | 719.62 |
| 22 | San Francisco Centre | 845 Market Street, Space 309 | San Francisco | CA | 94103 | 1,197.46 |
| 24 | Baybrook Mall | 500 Baybrook Mall, Space 1192 | Friendswood | TX | 77546 | 629.97 |
| 25 | Walden Galleria | One Walden Galleria, Space TH150 | Buffalo | NY | 14225 | 579.60 |
| 27 | Town Square | 6551 Las Vegas Bvld., | Las Vegas | NV | 89119 | 615.59 |
| 34 | The Shops at Willow Bend | 6121 W Park Blvd, Space B105 | Plano | TX | 75093 | 577.37 |
| 38 | Stonestown Galleria | 3251 20th Avenue, Space 212 | San Francisco | CA | 94132 | 653.72 |
| 39 | Westfarms | 500 Westfarms Mall, Space E107 | Farmington | CT | 6032 | 769.38 |
| 40 | South Center | 657 Southcenter Mall, Space 1525 | Seattle | WA | 98188 | 672.92 |
| 43 | Burlington Mall | 75 Middlesex Turnpike, Space 1303 | Burlington | MA | 1803 | 909.75 |
| 44 | Alderwood Mall | 3000 184th Street SW, Space 592 | Lynwood | WA | 98037 | 622.20 |
| 46 | Scottsdale Fashion Square | 7014 E Camelback Road | Scottsdale | AZ | 85251 | 1,030.02 |
| 47 | Ala Moana Center | 1450 Ala Moana Blvd, Space 2316 | Honolulu | HI | 96814 | 1,206.67 |
| 49 | Victoria Gardens | 7825 Kew Avenue, Space 5010 | Rancho Cucamonga | CA | 91739 | 585.03 |
| 50 | Menlo Park | 55 Parsonage Road, Space 2415 | Edison | NJ | 8837 | 851.83 |
| 55 | Willowbrook Mall, NJ | 1830 Willowbrook Mall | Wayne | NJ | 7470 | 750.48 |
| 60 | Garden State | One Garden State Plaza Space I-5 | Paramus | NJ | 7652 | 1,322.77 |
| 63 | Roosevelt Field | 630 Old Country Rd. Space 1073A | Garden City | NY | 11530 | 1,303.74 |
| 65 | Santa Anita | 400 S. Baldwin Ave | Arcadia | CA | 91007 | 694.64 |
| 67 | Memorial City | 303 Memorial City Space 255 | Houston | TX | 77024 | 547.11 |
| 52 | Aventura Mall | 19575 Biscayne Blvd., Space 1019 | Aventura | FL | 33180 | 1,197.21 |

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| **METROPARK USA, INC.,** | **Case No. 11-22866 (RDD)** |
| Debtor. | |

## NOTICE OF ASSUMPTION AND ASSIGNMENT OF UNEXPIRED
## LEASE OF NONRESIDENTIAL REAL PROPERTY

TO:     Each of the parties identified on the attached Schedule A (collectively, the
          "Notice Parties")

Re:      [Name of Lease Agreement] between _____, as landlord (the "Landlord") and
          Metropark USA, Inc., as tenant, (the "Lease") for premises located at
          _____.

          **PLEASE TAKE NOTICE** that, on [__], 2011, the United States Bankruptcy Court
for the Southern District of New York (the "Bankruptcy Court") entered the Order Pursuant to
Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004
Authorizing and Approving (i) Designation Rights Agreement with The Cotton On Group, (ii) the
Sale of Certain of the Debtor's Leases, (iii) Assumption and Assignment Procedures,
(iv) Cure Amounts and (v) Granting Related Relief [Dkt. No. __] (the "Order").

          **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Order, the above-
captioned debtor and debtor-in-possession (the "Debtor") hereby provides notice of its intent to
assume and assign the above-referenced Lease. The Debtor intends to assume and assign the
lease to [_____] (the "Designee"). The Designee intends to use the premises that are the
subject of the Lease for [_____]. Designee has the financial wherewithal to meet
all future obligations under the Lease, as evidenced by the documentation provided either
directly to the Landlord or attached hereto as Exhibit A, thereby demonstrating that it has the
ability to comply with the requirements of adequate assurance of future performance under
section 365(f)(2)(B) of the Bankruptcy Code and, applicable, section 365(b)(3) of the Bankruptcy
Code (as limited by section 365(f) of the Bankruptcy Code); and the proposed cure amount with
respect to the Lease is $[____] (the "Proposed Cure Amount").

          **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Order, to the extent the
Landlord has not already filed a Lease Objection (as defined below), the Landlord has until 5:00
p.m. on the seventh (7th) business day following its receipt of this "Notice of Assumption and
Assignment of Unexpired Lease of Nonresidential Real Property" (the "Notice") to object (a
"Lease Objection") to the assumption and assignment of the Lease and/or the Proposed Cure
Amount (the "Assumption Objection Deadline"). Any Lease Objection must be written, filed with
the Bankruptcy Court and served on the Notice Parties, the Bankruptcy Court and counsel to
the Debtor by the Assumption Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Order, if a Lease Objection is properly filed and served on the Notice Parties by the Assumption Objection Deadline, and the Debtor, The Cotton On Group or the Designee cannot resolve the issue or issues raised in the Lease Objection, the Lease Objection will be addressed at a hearing to be held on the earliest practicable omnibus hearing date established by the Bankruptcy Court in the above-captioned case (the "Lease Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that, if a Lease Objection relates solely to the Proposed Cure Amount and such objection cannot be resolved consensually before the Lease Sale Hearing, the Debtor may nevertheless seek the assumption and assignment of the Lease; provided that the Designee must immediately pay the entire disputed Cure Amount to the Debtor, and the Debtor shall segregate and hold the applicable disputed Cure Amount pending the resolution of the dispute by the Court or agreement of the parties, for payment to the Landlord or repayment to the Designee.

**PLEASE TAKE FURTHER NOTICE** that, if no Lease Objection is filed and served by the Assumption Objection Deadline, (i) the Landlord shall be deemed to have consented to the assumption and assignment of the Lease to the Designee, (ii) the Lease shall be transferred to the Designee pursuant to an order of assumption and assignment substantially in the form of Schedule B to this Notice (the "Lease Sale Order"), free and clear of all claims, liens, encumbrances or interests of any kind or nature whatsoever, and shall remain in full force and effect for the benefit of the Designee, notwithstanding any provision in the Lease (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions the assignment or transfer of the Lease, and (iii) the Cure Amount set forth in this Notice shall be controlling, notwithstanding anything to the contrary in the Lease or any other document, and the Landlord shall be forever barred from asserting any other cure claims related to the Lease against the Debtor, The Cotton On Group or the Designee.

Dated: _____, 2011
     New York, New York

           COOLEY LLP

           By: _____
              Cathy Hershcopf

           1114 Avenue of the Americas
           New York, New York 10036
           Telephone: (212) 479-6000
           Facsimile: (212) 479-6275
           Cathy Hershcopf
           Jeffrey L. Cohen
           Alex R. Velinsky

           *Attorneys for Debtor and*
           *Debtor in Possession*

1725740 v1/NY

**Schedule A**
**<u>Notice Parties</u>**

1725740 v1/NY

## Schedule B

**Proposed Order**

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| METROPARK USA, INC., | Case No. 11-22866 (RDD) |
| Debtor. | |

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND BANKRUPTCY RULES 2002 AND 6006 (I) APPROVING THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY TO [_____] AND (II) GRANTING RELATED RELIEF

This Court having entered the Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 Authorizing and Approving (i) Designation Rights Agreement with The Cotton On Group, (ii) the Sale of Certain of the Debtor's Leases, (iii) Assumption and Assignment Procedures, (iv) Cure Amounts and (v) Granting Related Relief (the "Designation Rights Order") [Dkt. No. ____], pursuant to which the Debtor, inter alia, sold and transferred to The Cotton On Group ("Cotton On") the exclusive right to select and identify, from time to time until [July 31, 2011], one or more designees to which certain of the Debtor's leasehold interests identified in the Designation Rights Agreement (as defined in the Designation Rights Order) may be sold and assigned; and the Debtor having provided notice (the "Notice"), pursuant to the Designation Rights Order, of its intent to (i) assume the lease specified in the Notice (the "Lease") relating to the premises located at [_____] (the "Premises") and (ii) assign such Lease to [_____] (the "Designee"); and the Court having found that the Notice was adequate and properly served in accordance with the Designation Rights Order; and the Debtor having filed a copy of the Notice with the Court [Dkt. No. __]; and the Notice having set forth the proposed cure amount with respect to the Lease (the "Proposed Cure Amount"); and pursuant to the Designation Rights Order, the landlord under the Lease (the, "Landlord") having had until 5:00 p.m. on the seventh (7th) business day following its receipt of the Notice (the "Lease Objection

Deadline") to file an objection to the assumption and assignment of the Lease and/or the Proposed Cure Amount (a "Lease Objection"); and [the Landlord having failed to file a Lease Objection by the Lease Objection Deadline –OR– the Landlord having filed a Lease Objection by the Lease Objection Deadline; and the Court having held a hearing to consider such Lease Objection]; **IT IS HEREBY ORDERED THAT**:

1.      The assumption and assignment of the Lease to Designee is approved in all respects.  Upon execution of this Order (the "Effective Date") and pursuant to 11 U.S.C. §§ 105(a), 363 and 365, the Debtor is authorized to consummate the assumption, assignment and sale including transferring and conveying the Lease to Designee pursuant to and in accordance with the terms and conditions of the Designation Rights Agreement and the Designation Rights Order.

2.      All objections to the entry of this Order or to the relief granted or requested in the Notice[, including without limitation, the Lease Objection filed by the Landlord,] that have not been withdrawn, waived or settled are denied and overruled on the merits; provided that, in the event the Landlord has filed a Lease Objection to the Proposed Cure Amount, such objection only has been preserved in accordance with the Paragraph 8(c) of the Designation Rights Order and set forth below in Paragraph 5 of this Order, but the preservation of such limited objection to the Proposed Cure Amount shall not prevent or delay the closing of the assignment of the Lease.

3.      The Debtor and the Designee have provided the Landlord with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1), 365(b)(3) and 365(f)(2)(b).

4.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the transfer, conveyance and assignment of the Lease to Designee pursuant to the Designation Rights Order and the Notice is a legal, valid and effective disposition of the Lease, and vests Designee with all right, title and interest of the Debtor to and in the Lease free and clear of (i) all

liens (as that term is defined in section 101(37) of the Bankruptcy Code), encumbrances, mortgages, security interests and other similar encumbrances (collectively, "Liens")), (ii) all claims (as that term is defined in section 101(5) of the Bankruptcy Code), demands, liabilities or restrictions of any kind, including, without limitation, rights that purport to give to any party a right or option to effect any forfeiture, modification or termination of the interest of the Debtor or the Designee, as the case may be, in the Lease, and (iii) in respect of taxes, claims or liabilities accruing during or relating to a period prior to the Effective Date (items (i)-(iii) collectively, "Claims and/or Interests").   All Claims and/or Interests are hereby unconditionally released, discharged and terminated, and all persons and entities holding Claims and/or Interests of any kind and nature accruing, arising or relating to a period prior to the Effective Date with respect to the Lease are hereby barred from asserting such Claims and/or Interests against Designee or any of its affiliates, stockholders, members, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys (together, "Released Parties").

       5.       Promptly after the Effective Date, Cotton On shall pay to the Debtor the Designation Proceeds (as defined in the Designation Rights Agreement) or such other amount as may be agreed upon between Cotton On and the Debtor or as ordered by the Court, and the Debtor shall pay the Proposed Cure Amount to Landlord and, to the extent necessary, establish a reserve for any disputed Cure Amount as provided in the Designation Rights Order (the "Reserve").  All defaults, claims or other obligations of the Debtor arising or accruing under the Lease, if any, prior to the Effective Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) shall be deemed cured by the Debtor or Cotton On, as the case may be, by the payment of the Proposed Cure Amount, plus such portion of the Reserve as may be agreed to by the parties or otherwise ordered by the Court.  In no event shall the Debtor or Cotton On be obligated to pay a cure obligation in excess of the Proposed Cure Amount, plus the Reserve.

6.    Payment of the applicable Cure Amount pursuant to this Order is in full and final satisfaction of all obligations to cure defaults and compensate Landlord for any pecuniary losses under the Lease pursuant to section 365(b)(1) of the Bankruptcy Code.

7.    Cotton On shall not be responsible for, and each non-Debtor party to the Lease is hereby barred and permanently enjoined from asserting against Cotton On, any post-closing liabilities under the Lease, or any liability for the cure of any defaults under the Lease existing or accruing, arising, or relating to a period after the Effective Date, except as otherwise provided for in the Designation Rights Agreement, the Notice, the Designation Rights Order and this Order or separate written agreement between Cotton On and such non-Debtor party or between Cotton On and Designee, and except with respect to payments pursuant to the Designation Rights Agreement or as otherwise may be agreed upon between Cotton On and the Debtor or as ordered by the Court.

8.    Pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall have no liabilities for any claims (as that term is defined in section 101(5) of the Bankruptcy Code) arising from, relating to or accruing on or after the Effective Date under the Lease.

9.    The Lease may contain provisions that expressly or effectively restrict, prohibit, condition or limit the assignment of the Lease or the validity of the Lease following the assignment, including the following provisions:

(i)    any provision of the Lease that purports to prohibit, condition, limit or otherwise restrict the assignment to Designee of the Lease;

(ii)    any provision of the Lease that permits a non-Debtor to increase or reallocate payments under (including, without limitation, any rent or percentage rent), declare a default with respect to, terminate, modify or cancel, the Lease or right or obligation thereunder by reason of (A) the assignment of the Lease to Designee; (B) the release of the Debtor from liability; (C) discontinuation of operations, interruption of

business, or minimum sales requirements; or (D) the Debtor ceasing to be a party to the Lease (clauses (A) - (D), the "Triggering Events");

(iii)     any provision of the Lease that permits a non-Debtor at any time to exercise a right of first refusal or recapture by reason of any Triggering Event;

(iv)     any provision of the Lease that permits a non-Debtor at any time to require payment of any fee, profit sharing or other payment by reason of any Triggering Event;

(v)     any provision of the Lease that permits a non-Debtor at any time to impose any penalty or rental adjustment or allocation by reason of any Triggering Event;

(vi)     any provision of the Lease that permits a non-Debtor at any time to cancel, modify or restrict Designee from exercising any renewal options by reason of any Triggering Event;

(vii)     any provision of the Lease that permits a non-Debtor at any time to seek damages or other relief by reason of a Triggering Event,

The foregoing provisions, to the extent they are not of a type enumerated in Section 365(b)(1) or (3) of the Bankruptcy Code, are referred to as "Anti-Assignment Provisions."

10.     The Anti-Assignment Provisions are inconsistent with Bankruptcy Code sections 365(f)(1) and 365(f)(3) and the Congressional policy expressed therein favoring a debtor's ability to maximize the value of its assets. Each and every Anti-Assignment Provision is null, void and of no force and effect solely in connection with any assignment of the Lease to Designee but shall continue in full force and effect upon and after an assignment of Lease to Designee, and the Lease shall be transferred to, and remain in full force and effect for the benefit of Designee, in accordance with its terms, notwithstanding any Anti-Assignment Provisions contained therein.

11.     The inability of any non-Debtor to enforce an Anti-Assignment Provision in connection with an assignment of the Lease to Designee does not in any way constitute a lack of adequate assurance of future performance.

12.     Notwithstanding any Anti-Assignment Provisions or other provision of the type described in the preceding paragraphs of this Order that may be contained in the Lease, Designee shall have the right to use the Premises as [_____].

13.     Notwithstanding any Anti-Assignment Provisions or other provision of the type described in the preceding paragraphs, Designee may (i) erect, maintain, repair or replace interior and exterior signage at the Premises generally in accordance with Designee's customary signage, to allow for the sale of Designee's branded goods, and (ii) close the Premises for such period as is reasonably necessary for the purpose of making such alterations to the Premises as are reasonably necessary to construct a typical _____ store at the Premises.

14.     The transfer, sale and assignment of the Lease to Designee shall not subject or expose Designee, Cotton On or the Debtor or any of their respective Related Parties to any liability, claim, cause of action or remedy by reason of such transfer under (i) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, or (ii) any employment contract, understanding or agreement, including without, limitation collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

15.     Following the Effective Date, Designee may dispose of any personal property abandoned in the Premises by the Debtor without liability to any third party claiming an interest in such abandoned personal property.

16.     This Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Lease, each of whom is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Lease to Designee and such agency or department may rely upon this Order in consummating the transactions contemplated herein. All Liens against the Debtor's estate of record as of the date of this Order shall forthwith, upon the occurrence of the Effective Date, be removed and stricken as against the Lease, without further order of the Court or act of any party.

17.     The assumption, assignment and sale of the Lease to Designee may not be avoided under 11 U.S.C. § 363(n).

18.     Upon the closing of the assumption, assignment and sale of the Lease to Designee in accordance with the Designation Rights Agreement, the Designation Rights Order, the Notice and this Order, Designee will be deemed to have acted in good faith in purchasing the Lease, as that term is used in 11 U.S.C, § 363(m), and no reversal or modification of this Order on appeal will affect the validity of the assumption, assignment and sale of the Lease to Designee.

19.     Nothing herein shall affect the Debtor's rights under the Designation Rights Agreement, the Designation Rights Order or the Agency Agreement (as defined in the Designation Rights Agreement).

20.     This Order shall be effective and enforceable immediately upon entry. The stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is waived.

21.     This Court hereby retains jurisdiction to resolve any dispute relating to the interpretation or enforcement of this Order.

Dated: _____
      White Plains , New York

_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 2**

**REDLINE**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------- X
                                                                    :
IN RE                                          :          **CHAPTER 11**
                                                                    :
**METROPARK USA, INC.,** [1]                :
                                                                    :          **CASE NO. 11-22866 (RDD)**
                  **DEBTOR.**                  :
                                                                    :
                                                                    :
----------------------------------------------------------------- X

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING (I) DESIGNATION RIGHTS AGREEMENT WITH THE COTTON ON GROUP (II) THE SALE OF CERTAIN OF THE DEBTOR'S LEASES, (III) ASSUMPTION AND ASSIGNMENT PROCEDURES (IV) CURE AMOUNTS AND (V) GRANTING RELATED RELIEF

Upon consideration of the Motion[2] of the Debtor for Order (A) Setting the (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, and (2) Date of the Sale Hearing (the "Sale Hearing"); (B) Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter Into Lease Termination Agreements, (E) Approving and Authorizing Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of All Liens, Interests, Claims and Encumbrances Pursuant to Section 363 of the Bankruptcy Code; (F) Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure; and (G) Granting Related Relief (the "Sale Motion") (Doc. No. 88); and this Court having entered the Order (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, (2) Hearing Date for Approval of Auction and (3) Related Objection Deadlines; (B) Approving Bidding Procedures and Terms of Auction; and (C) Granting Related

---

[1] The Debtor's tax identification number is 81-0636659.
[2] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Motion.

Relief (the "Bidding Procedures Order") (Doc. No. 149); and the Debtor having held an auction on May 26, 2011 (the "Auction") of the Leases and Intellectual Property; and The Cotton On Group ("Cotton On") having submitted a bid in the form of a sale agreement (the "Cotton On Agreement") for Designation Rights (as that term is defined in the Cotton On Agreement) in advance of the Auction; and Perry Ellis Menswear, LLC ("Perry Ellis" and together with Cotton On, the "Stalking Horse Bidders") having submitted a bid in advance of the Auction for the assumption and assignment of certain of the Debtor's Leases as set forth in the proposed Agreement of Assumption and Assignment between the Debtor and Perry Ellis (together with the Cotton On Agreement, the "Stalking Horse Agreements"); and the Stalking Horse Agreements having been approved pursuant to the Bidding Procedures Order; and the Debtor having selected Cotton On and  Perry Ellis (the "Purchasers") as the highest or otherwise best bidders at the Auction; and upon the record herein; and any objection having been resolved, withdrawn or otherwise overruled by this Order; and after due deliberation thereon; and good and sufficient cause appearing therefore;

**NOW, THEREFORE, IT IS HEREBY FOUND AND DETERMINED THAT:**

**Jurisdiction, Final Order and Statutory Predicates**

A.      This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (0).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the

Federal Rules of Civil Procedure as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.     The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.  The proposed sale constitutes a sale of property of the estate outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

D.     The Sale Motion and notice of the Auction were served upon the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the prepetition secured lenders; (c) the Official Committee of Unsecured Creditors; (d) those parties that have expressed an interest in purchasing the Leases and/or Intellectual Property; (h) the counterparties to the Leases; and (i) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  Notice of the Sale Motion, the Auction and this hearing was adequate and sufficient under the circumstances.

**Good Faith of Purchasers**

E.     Purchasers are purchasing the Leases and/or Designation Rights in good faith, are good faith purchasers within the meaning of 11 U.S.C. § 363(m), are entitled to the protection of that provision, and otherwise have proceeded in good faith in all respects in connection with the Sale Agreements (defined below) in that: (a) the Stalking Horse Bidders recognized that the Debtor was free to deal with any other party interested in acquiring the Leases subject to the Stalking Horse Agreements; (b) all payments to be made by the

Purchasers and other agreements or arrangements entered into by the Purchasers in connection with the Stalking Horse Agreements have been disclosed; (c) the Purchasers have not violated 11 U.S.C. § 363(n) by any action or inaction; and (d) the negotiation and execution of the Stalking Horse Agreements and any other agreements or instruments related thereto were in good faith and each party thereto is represented by counsel.

F.      The Sale Agreements were negotiated and proposed, and have been entered into by the parties in good faith within the meaning of Section 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without collusion.

**Highest or Otherwise Best Offers**

G.      The Debtor's determination that the Sale Agreements constitute the highest or otherwise best offers for the Leases and/or Designation Rights constitutes a valid and sound exercise of the Debtor's business judgment.

H.      The Sale Agreements represent fair and reasonable agreements for Purchasers to purchase the Leases and/or Designation Rights (as applicable) under the circumstances of this chapter 11 case.

I.      Approval of the Sale Agreements and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its creditors, and its estate.

J.      The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for entering into the Sale Agreements prior to, and outside of, a plan of reorganization.

4

K.    The Debtor has full corporate power and authority to execute and deliver the Sale Agreements and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor to consummate the transactions contemplated by the Sale Agreements, except as otherwise set forth therein.

**Assumption, Assignment and Sale of Real Property Leases**

L.    Pursuant to Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(B), the Debtor and Perry Ellis have demonstrated adequate assurance of future performance by Perry Ellis under the Leases subject to the Assumption and Assignment Agreement by and between the Debtor and Perry Ellis Menswear, LLC, attached hereto as Exhibit A (the "Perry Ellis Assumption and Assignment Agreement").  Pursuant to Bankruptcy Code § 365(f) notwithstanding any provision to the contrary in the Leases, or in applicable nonbankruptcy law, that prohibits, restricts, or conditions the assignment of the Leases, the Debtor may assign to Perry Ellis the Leases subject to the Perry Ellis Assumption and Assignment Agreement, including, without limitation, the "use" clause in the Perry Ellis Assumption and Assignment Agreement.  No objections to adequate assurance of future performance by Perry Ellis were filed with respect to the Leases subject to the Perry Ellis Assumption and Assignment Agreement.

M.    Pursuant to Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(B), the Debtor and Cotton On have demonstrated adequate assurance of future performance by Cotton On under the Leases subject to the Assumption and Assignment Agreement by and between the Debtor and The Cotton On Group, attached hereto as Exhibit B (the "Cotton On Assumption and Assignment Agreement").  Pursuant to Bankruptcy Code § 365(f) notwithstanding any provision

5

to the contrary in the Leases, or in applicable nonbankruptcy law, that prohibits, restricts, or conditions the assignment of the Leases, the Debtor may assign to Cotton On the Leases subject to the Cotton On Assumption and Assignment Agreement, including, without limitation, the "use" clause in the Cotton On Assumption and Assignment Agreement.  No objections to adequate assurance of future performance by Cotton On were filed with respect to the Leases subject to the Cotton On Assumption and Assignment Agreement.

**Section 363 Sale**

M. ~~N.~~ The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full.  Therefore, the Debtor may sell the Leases and Designation Rights free and clear of any interest therein.

N. ~~O.~~ Given all of the circumstances of the Debtor's chapter 11 case and the adequacy and fair value of the purchase price under the Stalking Horse Agreements, the proposed sale of the Leases and Designation Rights to the Purchasers constitutes a reasonable and fair exchange of consideration and reasonable and sound exercise of the Debtor's business judgment.

**Miscellaneous**

O. ~~P.~~ All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein.

**NOW, THEREFORE, IT HEREBY IS ORDERED THAT:**

1.    The Sale Motion is granted to the extent provided herein.

2. All objections to the relief granted herein, to the extent not resolved or withdrawn, are overruled on the merits.

3. The Cure Amounts set forth on Exhibit ~~C to this Order~~<u>A to the Perry Ellis Assumption and Assignment Agreement</u> shall constitute the only amounts deemed owing under the corresponding Leases relating to the period prior to the assignment with respect to those Leases subject to the Perry Ellis ~~Assumption and Assignment Agreement and the Cotton On~~ Assumption and Assignment Agreement, provided that the Debtor shall pay all postpetition rent due and owing under the Leases arising and accruing from the Petition Date through the date of assignment or termination, absent waiver by the respective landlord, within five (5) business days of the entry of this Order.

4. The Perry Ellis Assumption and Assignment Agreement, including all of its terms and exhibits, and each of the transactions contemplated thereby, is approved. The Debtor is authorized and directed to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby and under the Perry Ellis Assumption and Assignment Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Perry Ellis Assumption and Assignment Agreement.

~~5. The Cotton On Assumption and Assignment Agreement, including all of its terms and exhibits, and each of the transactions contemplated thereby, is approved. The Debtor is authorized and directed to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby and under the Cotton~~

7

On Assumption and Assignment Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Cotton On Assumption and Assignment Agreement.

5. 6. The Designation Rights Agreement by and between the Debtor and Cotton On, attached hereto as Exhibit ~~D~~B (the "Designation Rights Agreement", collectively with the Perry Ellis Assumption and Assignment Agreement ~~and the Cotton On Assumption and Assignment Agreement~~, the "Sale Agreements"), including all of its terms and exhibits, and each of the transactions contemplated thereby, is approved. The Debtor is authorized and directed to take any and all actions as may be necessary to consummate the Designation Rights Agreement. Pursuant to paragraph ~~9~~8 below, upon receipt of a Lease Assumption Notice (defined below), Debtor is further authorized to use its best efforts to obtain the entry of an order of the Court approving the assumption of the Lease(s) identified in such Lease Assumption Notice(s) and the assignment of such lease(s) to Cotton On or Cotton On's specified Designee (as defined below) (or to the lessor, in the case of a termination).

6. 7. The Auction with respect to the Debtor's Intellectual Property is hereby adjourned until June 29, 2011 or such later time determined by the Debtor and noticed on the docket of this case.

7. 8. Pursuant to section 363 of the Bankruptcy Code, the Debtor is authorized to sell the Leases and Designation Rights to the Purchasers free and clear of any liens, claims, encumbrances, security interests, pledges or other interests (collectively, "Interests") with such Interests to attach to the proceeds to be received by the Debtor in the same priority and subject

to the same defenses and avoidability, if any, as before the closing of the transactions contemplated under the Sale Agreements. Pursuant to Section 363(f) of the Bankruptcy Code and the Sale Agreements, including any amendments thereto, the transfer of title to the Leases or Designation Rights, as applicable, to the Purchasers shall be free and clear of any Interest in or against the Leases, the Designation Rights, and the Intellectual Property. Upon the assignment to Perry Ellis or Cotton On (or its specified Designee), as applicable (collectively, the "Assignees"), the Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order and, pursuant to Bankruptcy Code § 365(k), the Debtor and its estate shall be relieved from any further liability thereunder, including for any breach of Leases as of the effective date of such assignment. The Assignees are not the successor of the Debtor for any purpose. The Assignees do not assume and shall not become liable for any liabilities of the Debtor.

8. 9. In connection with the Designation Rights Agreement, Cotton On may designate for assumption and assignment any Lease that is subject to, and as set forth in, the Designation Rights Agreement (each such Lease, a "Designated Lease"), in accordance with the following procedures, provided that Cotton on may not designate any Lease that has been rejected by the Debtor:

> (a)      Cotton On shall deliver to the Debtor and file with the Court, and simultaneously serve a copy on each counterparty to a Designated Lease (each, a "Landlord") and its counsel of record, if known, by both (x) overnight mail and (y) either email or facsimile, a notice in the form of Exhibit EC to this Order (the "Lease Assumption Notice"), which shall include, among other things, (i) the exact name of the proposed assignee

9

(each, a "<u>Designee</u>")[3], (ii) a summary of all amounts required to be paid in order to effect the assumption and assignment of such Designated Lease pursuant to section 365(b) of the Bankruptcy Code (the "<u>Cure Amount</u>"), (iii) the proposed use of the premises subject to such Designated Lease, and (iv) the proposed form of Lease Sale Order (as defined below). Cotton On shall also deliver to Landlords, together with each Lease Assumption Notice, evidence of such Designee's ability to provide adequate assurance of future performance with respect to such Designated Lease.

(b)    The Landlord to any Designated Lease may file an objection to the assignment of such Designated Lease within ~~five~~<u>seven</u> (~~5~~<u>7</u>) business days of receipt of the Lease Assumption Notice.  If no objection is timely received, (i) the Landlord to such Designated Lease shall be deemed to have consented to the entry of a Lease Sale Order with respect to such Designated Lease and shall be forever barred from asserting any objection with regard to the assumption and assignment of such Designated Lease, and (ii) the Cure Amount set forth in the Lease Assumption Notice shall be controlling, notwithstanding anything to the contrary in any Designated Lease, or any other document, and such Landlord shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other cure claims related to such Designated Lease against the Debtor, Cotton On, or such Designee, or the property of any of them.

(c)    An objection to the assumption and assignment of any Designated Lease that was timely filed pursuant to subparagraph (b) above will be addressed at a hearing to be held on the earliest practicable date (each, a "<u>Lease Sale Hearing</u>").   Any Landlord that filed a prior objection with respect to such Designated Lease shall not need to file a further objection to raise such objection at any Lease Sale Hearing.  If an objection is raised by a Landlord solely to the Cure Amount, and such dispute cannot be consensually resolved prior to the Lease Sale Hearing, the Debtor may nevertheless seek the assumption and assignment of the applicable Designated Lease; <u>provided</u> that the entire disputed Cure Amount must be immediately paid by the Designee to the Debtor, and the Debtor shall hold and segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by agreement by the parties, for payment to the Landlord or repayment to the Designee.

(d)    The Designated Leases shall be transferred, <u>suject to Landlords' right to object herein</u> pursuant to ~~an~~<u>a</u> proposed order of assumption and assignment substantially in the form of <u>Exhibit</u> ~~F~~<u>D</u> to this Order (a "<u>Lease Sale Order</u>"), to the applicable Designee, free and clear of all claims, liens, encumbrances or interests of any kind or nature whatsoever, and shall remain in full force and effect for the benefit of such Designee in accordance with their respective terms, notwithstanding any provision in any such Designated Lease (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts,

---

[3]    As set forth in the Designation Rights Agreement, Cotton On may designate itself or any affiliate as assignee with respect to any Designated Lease.

or conditions the assignment or transfer of such Designated Lease (each, an "Anti-Assignment Provision"); provided that either Cotton On or the applicable Designee shall be liable for accrued but unbilled items with respect to 2010 and 2011 under assumed non-residential real property leases (including, but not limited to, unbilled taxes and year-end adjustments to common area maintenance charges, insurance, and real estate taxes) with respect to each Designated Lease, and shall be liable for the payment of such charges when same become due in accordance with the terms of such Designated Lease (with all rights reserved to Cotton On or such Designee to challenge said charges as may be set forth in such Designated Lease).

(e)     Pursuant to Bankruptcy Code section 365(k), the Debtor shall be relieved from any further liability with respect to each Designated Lease after the effective date of the assumption and assignment of such Designated Lease to any Designee. The Debtor is authorized to execute and deliver to the applicable Designee such documents or other instruments as may be necessary to assign and transfer the Designated Leases to such Designee at each Lease Closing (as defined in the Designation Rights Agreement).

(f)     With respect to each Designated Lease, upon the Lease Closing and the payment of the relevant Cure Amount (and contingent upon Cotton On's or the applicable Designee's obligations to pay the unbilled charges set forth in Paragraph 7(d) above), such Designee shall be deemed to be substituted for the Debtor as a party to such Designated Lease. There shall be no rent accelerations, assignment fees, increases or any other fees charged to any Designee as a result of the assumption and assignment of the Designated Leases. Each Lease Sale Order shall provide that the assignment of each of the Designated Leases is made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code. With respect to each Designated Lease, the applicable Designee shall execute, in a form reasonably acceptable to the applicable Landlord, an assumption and assignment agreement that shall identify the tenant under the Designated Lease, as well as provide the contact address for the tenant for billing and notice purposes.

9.     10. Each and every Anti-Assignment Provision in any Designated Lease is null, void and of no force and effect in connection with the transfer of the Designation Rights to Cotton On pursuant to the Designation Rights Agreement.

10.     11. This Order and the Sale Agreements shall inure to the benefit of and be binding on the Debtor, its estate, its creditors, the non-Debtor counterparties to the Sale Agreements and their respective successors and assigns, any trustees, if any, subsequently

11

appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's case.

11. ~~12.~~ No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Agreements or any of the transactions contemplated thereby.

12. ~~13.~~ The failure specifically to include any particular provision of the Sale Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreements be authorized and approved in their entirety.

13. ~~14.~~ The Debtor is hereby authorized to take all such actions and execute any agreements that shall be necessary to consummate and give effect to the Sale Agreements without further order of the Court.

14. ~~15.~~ The Sale Agreements and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that: (i) any such amendment does not have a material adverse effect on the Debtor or Debtor's estate, (ii) any such amendment does not result in a reduction of the Purchase Price, and (iii) notice of such amendment shall be provided to the Committee and the Debtor's prepetition lenders.

15. ~~16.~~ This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Sale Agreements, all modifications thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by

the Debtor to the Purchasers, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the transactions contemplated herein.

16. ~~17.~~ To the extent that any provisions of this Order shall be inconsistent with the provisions in the Sale Agreements, any prior order, or any pleading with respect to the motions in this case, the terms of this Order shall control.

17. ~~18.~~ Pursuant to Rules 7062, 9014, 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the Debtor is authorized to close the transactions contemplated by the Sale Agreements immediately upon entry of this Order.

18. ~~19.~~ The Court shall retain jurisdiction over disputes pertaining to this Order or the Sale Agreements.

Dated: _____, 2011

_____
Honorable Robert D. Drain
United States Bankruptcy Judge

**EXHIBIT A**

**EXHIBIT B**

**EXHIBIT C**

**EXHIBIT D**