COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
: 
In re :
: Chapter 11
METROPARK USA, INC., :
: Case No. 11-22866 (RDD)
Debtor. :
:
------------------------------------------------------------------ x

**NOTICE OF FILING PROPOSED ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND BANKRUPTCY RULES 2002 AND 6006 (I) APPROVING THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY TO COTTON ON USA, INC., AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on May 12, 2011 Metropark USA, Inc. (the "Debtor") filed its Motion of the Debtor for Order (A) Setting (i) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, and (ii) Sale Hearing Date; (B) Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter Into Lease Termination Agreements; (E) Approving and Authorizing Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of all Liens, Interests, Claims and Encumbrances Pursuant to § 363 of the Bankruptcy Code; (F) Waiving the Requirements of Federal Rule of Bankruptcy Procedure 6004 and Local Rule 6004-1 and (G) Granting Related Relief (the "Sale Motion") (Doc. No. 88).

**PLEASE TAKE FURTHER NOTICE** on June 3, 2011 the Debtor filed its proposed Order Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Bankruptcy Rules 2002 and 6006 (I)

Approving the Assumption and Assignment of Unexpired Leases of Nonresidential Real Property to Cotton On USA, Inc., and (II) Granting Related Relief (the "Proposed Order"). Copies of the Sale Motion and Proposed Order can be viewed on the Court's website at www.ecf.nysb.uscourts.gov or on the Debtor's website maintained by Omni Management Group, LLC at www.omnimgt.com/metropark.

**PLEASE TAKE FURTHER NOTICE** that a hearing with respect to the approval of the sale of Debtor's interests in certain real property leases and assignment and assumption of those leases to Cotton On USA, Inc. will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, in Room 118 of the Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on **June 6, 2011 at 10:00 a.m. (Prevailing Eastern Time)**.

| | |
|---|---|
| Dated: June 3, 2011<br>New York, New York | By: /s/ Cathy Hershcopf<br>Cathy Hershcopf |
| | COOLEY LLP<br>1114 Avenue of the Americas<br>New York, New York 10036<br>Telephone: (212) 479-6000<br>Facsimile: (212) 479-6275<br>Cathy Hershcopf<br>Jeffrey L. Cohen<br>Alex R. Velinsky |
| | *Attorneys for Debtor and Debtor in Possession* |

# EXHIBIT A

# PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>METROPARK USA, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-22866 (RDD) |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND BANKRUPTCY RULES 2002 AND 6006 (I) APPROVING THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY TO <u>COTTON ON USA, INC., AND (II) GRANTING RELATED RELIEF</u>**

Upon consideration of the Motion of the Debtor for Order (A) Setting the (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, and (2) Date of the Sale Hearing; (B) Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter Into Lease Termination Agreements, (E) Approving and Authorizing Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of All Liens, Interests, Claims and Encumbrances Pursuant to Section 363 of the Bankruptcy Code; (F) Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure; and (G) Granting Related Relief (the "<u>Sale Motion</u>") (Doc. No. 88); and this Court having entered the Order (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, (2) Hearing Date for Approval of Auction and (3) Related Objection Deadlines; (B) Approving Bidding Procedures and Terms of Auction; and (C) Granting Related Relief (the "<u>Bidding Procedures Order</u>") (Doc. No. 149); and the Debtor having held an auction in accordance with the Bidding Procedures Order on May 26, 2011 (the "<u>Auction</u>") of the Leases and Intellectual Property; and The Cotton On Group ("<u>Cotton On</u>") having submitted a bid at the Auction for the assumption and assignment of the Debtor's Leases set forth on <u>Exhibit A</u> to this Order (the "<u>Assigned Leases</u>"); and the Debtor having selected Cotton On as the highest or otherwise best bidder for the Assigned Leases at the Auction; and upon the record herein; and any

objection having been resolved, withdrawn or otherwise overruled by this Order; and after due deliberation thereon; and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED THAT**:

1. The assumption and assignment of the Assigned Leases to Cotton On USA, Inc. ("Cotton On USA"), an affiliate of Cotton On, is approved in all respects. Upon execution of this Order (the "Lease Closing Date") and pursuant to 11 U.S.C. §§ 105(a), 363 and 365, the Debtor is authorized to consummate the assumption, assignment and sale of the Assigned Leases to Cotton On USA pursuant to and in accordance with the terms and conditions of the Assumption and Assignment Agreement between the Debtor and Cotton On USA attached as Exhibit B to this Order (the "Assumption and Assignment Agreement").

2. All objections to the entry of this Order that have not been withdrawn, waived or settled are denied and overruled on the merits.

3. The Debtor and Cotton On USA have provided the each non-Debtor party to the Assigned Leases with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1), 365(b)(3) and 365(f)(2)(b).

4. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the transfer, conveyance and assignment of the Assigned Leases to Cotton On USA pursuant to the Assumption and Assignment Agreement is a legal, valid and effective disposition of the Assigned Leases, and vests Cotton On USA with all right, title and interest of the Debtor to and in the Assigned Leases free and clear of (i) all liens (as that term is defined in section 101(37) of the Bankruptcy Code), encumbrances, mortgages, security interests and other similar encumbrances (collectively, "Liens")), (ii) all claims (as that term is defined in section 101(5) of the Bankruptcy Code), demands, liabilities or restrictions of any kind, including, without limitation, rights that purport to give to any party a right or option to effect any forfeiture, modification or termination of the interest of the Debtor or Cotton On USA, as the case may be, in the Assigned Leases, and (iii) in respect of taxes, claims or liabilities accruing during or

relating to a period prior to the Lease Closing Date (items (i)-(iii) collectively, "Claims and/or Interests"). All Claims and/or Interests are hereby unconditionally released, discharged and terminated, and all persons and entities holding Claims and/or Interests of any kind and nature accruing, arising or relating to a period prior to the Lease Closing Date with respect to the Assigned Leases are hereby barred from asserting such Claims and/or Interests against Cotton On USA or any of its affiliates, stockholders, members, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys (together, "Released Parties").

5. Within two (2) business days after the Lease Closing Date, Cotton On or Cotton On USA shall pay to the Debtor the Cure Amounts (as defined in the Assumption and Assignment Agreement) with respect to each Assigned Lease, and the Debtor shall pay the such Cure Amount to the applicable non-Debtor party within two (2) business days thereafter. All defaults, claims or other obligations of the Debtor arising or accruing under the Assigned Leases, if any, prior to the Lease Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) shall be deemed cured by the Debtor by the payment of the Cure Amounts.

6. Payment of the applicable Cure Amount pursuant to this Order is in full and final satisfaction of all obligations to cure defaults and compensate each non-Debtor party for any pecuniary losses under the Assigned Leases pursuant to section 365(b)(1) of the Bankruptcy Code.

7. Neither Cotton On nor Cotton On USA shall be responsible for, and each non-Debtor party to the Assigned Leases is hereby barred and permanently enjoined from asserting against Cotton On or Cotton USA, any post-closing liabilities under the Assigned Leases, or any liability for the cure of any defaults under the Assigned Leases existing or accruing, arising, or relating to a period after the Lease Closing Date, except as otherwise

provided for in a separate written agreement between Cotton On USA and such non-Debtor party.

8.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall have no liabilities for any claims (as that term is defined in section 101(5) of the Bankruptcy Code) arising from, relating to or accruing on or after the Lease Closing Date under the Assigned Leases.

9.     The Assigned Leases may contain provisions that expressly or effectively restrict, prohibit, condition or limit the assignment of the Assigned Leases or the validity of the Assigned Leases following the assignment, including the following provisions:

(i)     any provision of the Assigned Leases that purports to prohibit, condition, limit or otherwise restrict the assignment of the Assigned Leases;

(ii)    any provision of the Assigned Leases that permits a non-Debtor to increase or reallocate payments under (including, without limitation, any rent or percentage rent), declare a default with respect to, terminate, modify or cancel, the Assigned Leases or right or obligation thereunder by reason of (A) the assignment of the Assigned Leases to Cotton On USA; (B) the release of the Debtor from liability; (C) discontinuation of operations, interruption of business, or minimum sales requirements; or (D) the Debtor ceasing to be a party to the Assigned Leases (clauses (A) - (D), the "<u>Triggering Events</u>");

(iii)   any provision of the Assigned Leases that permits a non-Debtor at any time to exercise a right of first refusal or recapture by reason of any Triggering Event;

(iv)   any provision of the Assigned Leases that permits a non-Debtor at any time to require payment of any fee, profit sharing or other payment by reason of any Triggering Event;

(v) any provision of the Assigned Leases that permits a non-Debtor at any time to impose any penalty or rental adjustment or allocation by reason of any Triggering Event;

(vi) any provision of the Assigned Leases that permits a non-Debtor at any time to cancel, modify or restrict Cotton On USA from exercising any renewal options by reason of any Triggering Event;

(vii) any provision of the Assigned Leases that permits a non-Debtor at any time to seek damages or other relief by reason of a Triggering Event, (the foregoing provisions, to the extent they are not of a type enumerated in Section 365(b)(1) or (3) of the Bankruptcy Code, are referred to as "Anti-Assignment Provisions").

10. The Anti-Assignment Provisions are inconsistent with Bankruptcy Code sections 365(f)(1) and 365(f)(3) and the Congressional policy expressed therein favoring a debtor's ability to maximize the value of its assets. Each and every Anti-Assignment Provision is null, void and of no force and effect solely in connection with any assignment of the Assigned Leases to Cotton On USA but shall continue in full force and effect upon and after an assignment of Lease to Cotton On USA, and the Assigned Leases shall be transferred to, and remain in full force and effect for the benefit of Cotton On USA, in accordance with its terms, notwithstanding any Anti-Assignment Provisions contained therein.

11. The inability of any non-Debtor to enforce an Anti-Assignment Provision in connection with an assignment of the Assigned Leases to Cotton On USA does not in any way constitute a lack of adequate assurance of future performance.

12. Notwithstanding any Anti-Assignment Provisions or other provision of the type described in the preceding paragraphs, Cotton On USA may (i) erect, maintain, repair or replace interior and exterior signage at the Premises generally in accordance with Cotton On's customary signage, to allow for the sale of Cotton On's branded goods, in all events in a manner consistent with the terms of the Assigned Leases, and (ii) close the Premises for such

period as is reasonably necessary for the purpose of making such alterations to the Premises as are reasonably necessary to construct a typical Cotton On store at the Premises.

13. The transfer, sale and assignment of the Assigned Leases to Cotton On USA shall not subject or expose Cotton On USA, Cotton On or the Debtor or any of their respective Related Parties to any liability, claim, cause of action or remedy by reason of such transfer under (i) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, or (ii) any employment contract, understanding or agreement, including without, limitation collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

14. Following the Lease Closing Date, Cotton On USA may dispose of any personal property abandoned in the Premises by the Debtor without liability to any third party claiming an interest in such abandoned personal property.

15. This Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assigned Leases, each of whom is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Assigned Leases to Cotton On USA and such agency or department may rely upon this Order in consummating the transactions contemplated herein. All Liens against the Debtor's estate of record as of the date of this Order shall forthwith, upon the occurrence of the Lease Closing Date, be removed

and stricken as against the Assigned Leases, without further order of the Court or act of any party.

16. The assumption, assignment and sale of the Assigned Leases to Cotton On USA may not be avoided under 11 U.S.C. § 363(n).

17. Upon the closing of the assumption, assignment and sale of the Assigned Leases to Cotton On USA in accordance with the Assumption and Assignment Agreement and this Order, Cotton On USA will be deemed to have acted in good faith in purchasing the Assigned Leases, as that term is used in 11 U.S.C, § 363(m), and no reversal or modification of this Order on appeal will affect the validity of the assumption, assignment and sale of the Assigned Leases to Cotton On USA.

18. This Order shall be effective and enforceable immediately upon entry. The stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is waived.

19. This Court hereby retains jurisdiction to resolve any dispute relating to the interpretation or enforcement of this Order.

Dated: _____
      White Plains, New York

                                          HONORABLE ROBERT D. DRAIN
                                          UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

> ASSIGNOR MAY HAVE CLAIMS UNDER THE LEASE
> FOR CHARGES PAID BY THE ASSIGNOR,
> WHICH CLAIMS MAY BE DISPUTED.
> THESE CLAIMS WILL BE RETAINED BY ASSIGNOR.

## AGREEMENT OF ASSUMPTION AND ASSIGNMENT OF LEASES

THIS ASSUMPTION AND ASSIGNMENT AGREEMENT (this "Agreement") is made as of this ____ day of June, 2011, by and among Metropark USA, Inc., a Delaware corporation ("Assignor"), and Cotton On USA, Inc., a Delaware corporation ("Assignee").

I.  The Lease

Assignor, a debtor in possession, is a tenant under the leases for certain premises (the "Premises") identified on the schedule (the "Lease Schedule") annexed as Exhibit A hereto (the "Leases"), and more specifically described in the Leases. The landlords under the Leases are identified on Exhibit A (the "Landlords"). True copies of the Leases are as posted by the Assignor as of the date hereof at http://www.greatamerican.com/real_estate/properties/metropark/metropark_documents.html.

II. Assignor's Bankruptcy Case

On May 2, 2011, Assignor filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Assignor continues to operate its business and manage its properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in Assignor's Chapter 11 case.

III. Assignor's Assignment of the Lease

Assignee is desirous of having Assignor assign to it, pursuant to § 365(f) of the Bankruptcy Code, on the terms and conditions set forth herein, all of Assignor's right, title and interest of any kind or nature in and to the Leases including, without limitation, the right to possession.

NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

Pursuant to the terms and for the consideration set forth below, Assignor hereby assigns to Assignee all of its right, title, and interest in and to the Leases for the remainder of the respective Lease terms (the "Assignments") and Assignee hereby accepts the Assignments; provided, however, that any security deposit presently on account with any Landlord will either be refunded by Assignee to Assignor, or utilized by Assignor to reduce arrearages, if any, under the applicable Lease and replaced to such Landlord by Assignee. Assignee hereby recognizes and acknowledges that each Landlord's right to full performance of all terms, conditions, and covenants of the each Lease remains in effect on and after the effective date of the Assignments. Except to the extent otherwise agreed in writing by any Landlord, Assignee assumes all of the terms, conditions, and covenants of each Lease as tenant under such Lease, including, without limitation, accrued but unbilled items with respect to 2010 and 2011 under the

Leases (including, but not limited to, unbilled taxes and year-end adjustments to common area maintenance charges, insurance, and real estate taxes) with respect to each of the Leases, and shall be liable for the payment of such charges when same become due in accordance with the terms of such Leases (with all rights reserved to Assignee to challenge said charges as may be set forth in such applicable Lease).  Further, pursuant to § 365(f) of the Bankruptcy Code, on and after the effective date of the Assignments, Assignor and its estate shall be relieved from any liability for any breach of the Leases occurring after the effective date of the Assignments, and Assignee agrees to indemnify and hold Assignor harmless from any default in the performance of such terms, conditions and covenants occurring after the effective date of the Assignments.

Without limiting any amounts payable pursuant to the immediately preceding paragraph, to the extent any Landlord and Assignor have agreed to the Cure Amount (as defined below) as full satisfaction of such Landlord's claim for monies owed under the applicable Lease by Assignor, payment of such amount by Assignor to Landlord together with the assumption and assignment of such Lease to Assignee pursuant to this Agreement shall relieve Assignee of all liability arising under the Lease on account of any and all claims or defaults accruing prior to the effective date of the Assignments.

A. <u>Consideration</u>.  The total consideration to be paid by Assignee to Assignor (the "<u>Purchase Price</u>") is $150,000.00 payable at the Closing (as defined herein), together with such amount (the "<u>Cure Amount</u>") as shall be determined by agreement of Assignor, Assignee and the respective Landlord for each Lease or by order of the Bankruptcy Court in connection with and as a condition to the approval of the assumption and assignment of any Lease.

B. <u>Closing and Effective Date of Assignment</u>.  The closing of the Assignments with respect to each Lease shall take place one (1) business day following the entry of the order by the Bankruptcy Court approving the assumption and assignment and sale of the Leases to Assignee, at the offices of Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 (the "<u>Closing</u>").  The effective date of the Assignments with respect to each Lease (the "<u>Effective Date</u>") shall be the later of (i) the date of the Closing, and (ii) the date that Assignor shall have vacated the Premises with respect to such Lease.

C. <u>Bankruptcy Court Approval</u>. This Agreement is contingent upon Assignor obtaining an order of the Bankruptcy Court reasonably satisfactory to Assignee and Assignor (i) authorizing (1) Assignor to enter into the Agreement and, (2) the assumption and assignment of the Leases pursuant hereto; and (ii) if applicable, determining any Cure Amount due to Landlords.

If the Bankruptcy Court does not approve this Assignment for any reason, other than a material breach of this Agreement by Assignee, or if, notwithstanding such an order of the Bankruptcy Court, Assignor fails to close within forty-five (45) days after entry of such order, then any escrowed funds shall be released to Assignee, and Assignee shall have no further claims against Assignor.  If Assignee fails to close for any reason other than a material breach of this Agreement by Assignor, then any deposit paid by Assignee shall become non-refundable and shall be forfeited to Assignor as liquidated damages.  Assignor shall have thirty (30) days from the date that this Agreement is fully executed to obtain an order from the Bankruptcy Court authorizing Assignor to enter into this Agreement.  If the aforesaid order is not obtained within the aforesaid time period, all escrowed funds shall be released to Assignee and Assignee and Assignor shall have no further claims against one another.

D. <u>Free and Clear of Liens and Encumbrances</u>. Upon entry of an order approving the assumption and assignment contemplated by this Agreement, the Leases shall be free and clear of any liens, claims, security interests, pledges or other interests, all such interests to attach to the proceeds paid to Assignor by Assignee.

E. <u>Adequate Assurance Data</u>. Assignee has supplied Assignor and the Landlords with evidence of Assignee's ability to provide adequate assurance of future performance with respect to each Lease.

F. <u>Use</u>. Assignee shall use the respective Premises for such purposes as are authorized under applicable Lease or applicable law. More specifically, Assignee shall use the respective Premises for the retail sale of men's, women's and/or children's apparel.

G. <u>Possession</u>. Assignor agrees to provide Assignee with possession of the Premises on the Effective Date with respect to each Lease.

H. <u>Initial Rent</u>. Upon the Effective Date, Assignee shall be responsible for, and shall pay, rent and other obligations and charges due under the Lease to Landlord in accordance with the terms of the Lease from and after the Effective Date.

I. <u>Reimbursement by Assignee</u>. Assignee shall reimburse Assignor for any rent or other charges due under the Lease for any period subsequent to the Effective Date that are paid by Assignor to Landlord. Any such amounts shall be reimbursed by Assignee to Assignor within two (2) business days of the Effective Date.

J. <u>Commission</u>. No commission is due or payable as a result of this Agreement.

K. <u>Miscellaneous</u>.

(1) This Agreement shall be governed by and construed in accordance with the laws of the State of New York and to the extent permissible and not inconsistent with the laws of the State of New York, under the laws of the respective states where the Premises are located. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes hereunder, and they each hereby consent to such jurisdiction.

(2) This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes any prior instruments, arrangements and understandings relating to the subject matter hereof, except the Lease and all amendments thereto.

(3) Assignor may assign its rights and obligations hereunder to any trustee appointed by the Bankruptcy Court. Assignee may not assign its rights and obligations hereunder to any party other than an affiliate of Assignee without Assignor's consent and, following Bankruptcy Court approval, any assignment of this Agreement by Assignee must also be permitted by the terms of the Lease or agreed to by Landlord.

(4) This Agreement may be executed with counterpart signature pages or in more than one counterpart, all of which shall be deemed one and the same agreement, and shall become effective when one or more counterparts have been signed by each of the parties and delivered to all the parties.

3

(5) Any notice, demand, request or other communication that any party hereto may be required or may desire to give hereunder ("Notice" or "Notices") shall be in writing and shall be given as follows: (a) by hand delivery; (b) by overnight mail via Federal Express or other reputable express courier service; (c) by facsimile transmission; or (d) email (other than for notices of default):

If to Assignor:

> Metropark USA, Inc.
> 5750 Grace Place
> Los Angeles, CA 90022
> Attention: Rick Hicks

With a copy to:

> Cooley LLP
> 1114 Avenue of the Americas
> New York, NY 10036
> Facsimile: 212.479.6275
> Attn: Cathy Hershcopf, Esq.

If to Assignee:

> Cotton On USA, Inc.
> Attn: Sheril Miller
> sherilm@cottonon.com

With a copy to:

> Kelley Drye & Warren LLP
> 101 Park Avenue
> New York, NY 10178
> Facsimile: 212.808.7897
> Attn: Robert LeHane, Esq.

or at such other address or to such other addressee or to such other facsimile number as the party to be served with Notice shall have furnished in writing to the party seeking or desiring to serve Notice as a place for the service of Notice. Notices shall be deemed to have been received (a) on the next business day if given by overnight mail, or (b) on the same day, if given by facsimile transmission, upon receipt of successful transmission.

1727720 v1/NY

IN WITNESS WHEREOF, this Assignment has been duly executed this \_\_\_\_\_ day of June, 2011.

        ASSIGNOR:   Metropark USA, Inc., Debtor-in-Possession

        By:_____
        Name: Richard A. Hicks
        Title:   Chief Financial Officer and Secretary

        ASSIGNEE:   Cotton On USA, Inc.

        By:_____
        Name:  Ashley Hardwick
        Title:  Director

1727720 v1/NY

**Exhibit A**

Lease Schedule

| Store No. | Mall | Landlord |
|---|---|---|
| 21 | Willowbrook Mall<br>Houston, TX | General Growth Properties |
| 31 | Brea Mall<br>Brea, CA | Simon Property Group |

1727720 v1/NY