**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
                                :

**IN RE**                          :        **CHAPTER 11**

**METROPARK USA, INC.,**[1]      :
                                :        **CASE NO. 11-22866 (RDD)**
       **DEBTOR.**              :

---------------------------------------------------------------- X

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING (I) DESIGNATION RIGHTS AGREEMENT WITH THE COTTON ON GROUP, (II) THE SALE OF CERTAIN OF THE DEBTOR'S LEASES, (III) ASSUMPTION AND ASSIGNMENT PROCEDURES AND (IV) CURE AMOUNTS AND (V) GRANTING RELATED RELIEF

Upon consideration of the Motion of the Debtor for Order (A) Setting the (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, and (2) Date of the Sale Hearing (the "<u>Sale Hearing</u>"); (B) Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter Into Lease Termination Agreements, (E) Approving and Authorizing Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of All Liens, Interests, Claims and Encumbrances Pursuant to Section 363 of the Bankruptcy Code; (F) Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure; and (G) Granting Related Relief (the "<u>Sale Motion</u>")[2] (Doc. No. 88); and this Court having entered the Order (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, (2) Hearing Date for Approval of Auction and (3) Related Objection Deadlines; (B) Approving Bidding Procedures and Terms of Auction; and (C) Granting Related

---
[1] The Debtor's tax identification number is 81-0636659.
[2] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Sale Motion.

Relief (the "Bidding Procedures Order") (Doc. No. 149); and the Debtor having held an auction on May 26, 2011 (the "Auction") of the Leases and Intellectual Property; and The Cotton On Group ("Cotton On") having submitted a bid in the form of a sale agreement (the "Cotton On Agreement") for Designation Rights (as that term is defined in the Cotton On Agreement) in advance of the Auction; and Perry Ellis Menswear, LLC ("Perry Ellis" and together with Cotton On, the "Stalking Horse Bidders") having submitted a bid in advance of the Auction for the assumption and assignment of certain of the Debtor's Leases as set forth in the proposed Agreement of Assumption and Assignment between the Debtor and Perry Ellis (together with the Cotton On Agreement, the "Stalking Horse Agreements"); and the Stalking Horse Agreements having been approved pursuant to the Bidding Procedures Order; and the Debtor having selected Cotton On and Perry Ellis (the "Purchasers") as the highest or otherwise best bidders for the Leases at the Auction as set forth on the Notice of Successful Bidders filed by the Debtor on May 26, 2011; and the Debtor having requested approval at the Sale Hearing of the assumption and assignment of five of the six Leases subject to the Perry Ellis Assumption and Assignment Agreement (defined below) for an adjusted purchase price and adjourned the Sale Hearing to June 13, 2011 at 10:00 a.m. with respect to the sixth Lease; and the Debtor having adjourned until June 29, 2011 the Auction of the Intellectual Property; and upon the record of the Sale Hearing and the record of this case; and any objections to the Sale Motion having been resolved, withdrawn or otherwise overruled by this Order for the reasons stated by the Court at the Sale Hearing; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY FOUND AND DETERMINED THAT:**

**<u>Jurisdiction, Final Order and Statutory Predicates</u>**

A.       This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (0).

B.       This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.       The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006. The proposed sale constitutes a sale of property of the Debtor's estate outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

D.       The Sale Motion and notice of the Auction were served upon the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the prepetition secured lenders; (c) the Official Committee of Unsecured Creditors; (d) those parties that have expressed an interest in purchasing the Leases and/or Intellectual Property; (h) the counterparties to the Leases; and (i) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Notice of the Sale Motion, the Auction and the Sale Hearing was adequate and sufficient under the circumstances.

**Good Faith of Purchasers**

E. The Purchasers are purchasing the Leases and/or Designation Rights in good faith, are good faith purchasers within the meaning of 11 U.S.C. § 363(m), are entitled to the protection of that provision, and otherwise have proceeded in good faith in all respects in connection with the Sale Agreements (defined below) in that: (a) the Stalking Horse Bidders recognized that the Debtor was free to deal with any other party interested in acquiring the Leases subject to the Stalking Horse Agreements and the Sale Agreements, (b) all payments to be made by the Purchasers and other agreements or arrangements entered into by the Purchasers in connection with the Stalking Horse Agreements and the Sale Agreements have been disclosed, (c) the Purchasers have not violated 11 U.S.C. § 363(n) by any action or inaction, and (d) the negotiation and execution of the Stalking Horse Agreements and any other agreements or instruments related thereto were in good faith and each party thereto is represented by counsel.

F. The Sale Agreements were negotiated and proposed, and have been entered into by the parties in good faith within the meaning of Section 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without collusion.

**Highest or Otherwise Best Offers**

G. The Debtor's determination that the Sale Agreements constitute the highest or otherwise best offers for the Leases and/or Designation Rights constitutes a valid and sound exercise of the Debtor's business judgment.

1725773 v4/NY

H.  The Sale Agreements represent fair and reasonable agreements for Purchasers to purchase the Leases and/or Designation Rights (as applicable) under the circumstances of this chapter 11 case.

I.  Approval of the Sale Agreements and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its creditors, and its estate.

J.  The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for entering into the Sale Agreements prior to, and outside of, a chapter 11 plan.

K.  The Debtor has full corporate power and authority to execute and deliver the Sale Agreements and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor to consummate the transactions contemplated by the Sale Agreements, except as otherwise set forth therein.

**Assumption, Assignment and Sale of Real Property Leases**

L.  No objections to adequate assurance of future performance by Perry Ellis were filed with respect to the five Leases subject to the Perry Ellis Assumption and Assignment Agreement approved hereby. Pursuant to Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(B), the Debtor and Perry Ellis have demonstrated adequate assurance of future performance by Perry Ellis under the five Leases subject to the Assumption and Assignment Agreement approved hereby, by and between the Debtor and Perry Ellis Menswear, LLC, a copy of which is attached hereto as <u>Exhibit A</u> (the "<u>Perry Ellis Assumption and Assignment Agreement</u>"). Pursuant to Bankruptcy Code § 365(f) notwithstanding any provision to the contrary in such

<mark>5</mark>

Leases, or in applicable nonbankruptcy law, that prohibits, restricts, or conditions the assignment of such Leases, the Debtor may assign to Perry Ellis the Leases subject to the Perry Ellis Assumption and Assignment Agreement, including, without limitation, the "use" clause in the Perry Ellis Assumption and Assignment Agreement.

**Section 363 Sale**

M. The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full. Therefore, the Debtor may sell the Leases and Designation Rights free and clear of any interest therein.

N. Given all of the circumstances of the Debtor's chapter 11 case and the adequacy and fair value of the purchase price under the Stalking Horse Agreements, the proposed sale of the Leases and Designation Rights to the Purchasers constitutes a reasonable and fair exchange of consideration and reasonable and sound exercise of the Debtor's business judgment.

**Miscellaneous**

O. All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein.

**NOW, THEREFORE, IT HEREBY IS ORDERED THAT:**

1. The Sale Motion is granted to the extent provided herein.

2. All objections to the relief granted herein, to the extent not resolved or withdrawn, are overruled on the merits.

1725773 v4/NY

3. The Cure Amounts set forth on Exhibit A to the Perry Ellis Assumption and Assignment Agreement (<u>except</u> for the Cure Amount owing under the Lease for the Los Cerritos Center location (Store Number 14) (the "<u>Los Cerritos Location</u>"), the hearing on which is adjourned, as set forth herein), shall constitute the only amounts deemed owing under the corresponding Leases relating to the period prior to the assignment with respect to those Leases subject to the Perry Ellis Assumption and Assignment Agreement, as the case may be; <u>provided</u> that the Debtor shall pay all postpetition amounts due and owing under the Leases arising and accruing from the Petition Date through the date of assignment or termination, absent waiver by the respective landlord, within five (5) business days of the entry of this Order.

4. The Perry Ellis Assumption and Assignment Agreement, including all of its terms and exhibits, and each of the transactions contemplated thereby, is approved, with the following modifications:

   a. The Los Cerritos Center Location is removed from Exhibit A of the Perry Ellis Assumption and Assignment Agreement and consideration of the assumption and assignment thereof is adjourned as set forth herein; and

   b. The Purchase Price (as that term is defined in the Perry Ellis Assumption and Assignment Agreement) is reduced by $227,859.86, which reduction corresponds to the $225,000 of the Purchase Price allocated by Perry Ellis and the Debtor to the Los Cerritos Location and the Cure Amount of $2,859.86 allocated to the Los Cerritos Location. The Purchase Price as reduced herein reflects the total consideration to be paid by Perry Ellis to the

7

Debtor for the assumption and assignment of the five Leases approved hereby.

For the avoidance of doubt, attached hereto as Exhibit A-1 is a modified Exhibit A to the Perry Ellis Assumption and Assignment Agreement indicating the disposition of each of the six Leases subject to the Perry Ellis Assumption and Assignment Agreement. The parties thereto are authorized and directed to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby and under the Perry Ellis Assumption and Assignment Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Perry Ellis Assumption and Assignment Agreement. The assumption and assignment of the Los Cerritos Location, subject to the terms and conditions of the Perry Ellis Assumption and Assignment Agreement, shall be considered at a hearing to be held before the Court on June 13, 2011, at 10:00 AM (ET), unless any outstanding objections with respect to the Los Cerritos location are consensually resolved by the interested parties prior to such date and time. Nothing in this order shall be deemed to release Perry Ellis or the Debtor from their respective obligations under the Perry Ellis Assumption and Assignment Agreement.

5. The Designation Rights Agreement by and between the Debtor and Cotton On, a copy of which is attached hereto as Exhibit B (the "Designation Rights Agreement"; collectively with the Perry Ellis Assumption and Assignment Agreement, the "Sale Agreements"), including all of its terms and exhibits, and each of the transactions contemplated thereby (except for assumptions and assignments of Designated Leases under the Designation Rights Agreement), is

approved. The parties thereto are authorized and directed to take any and all actions as may be necessary to consummate the Designation Rights Agreement. Pursuant to paragraph 8 below, upon receipt of a Lease Assumption Notice (defined below), the Debtor is further authorized to use its best efforts to obtain the entry of an order of the Court approving the assumption of the Lease(s) identified in such Lease Assumption Notice(s) and the assignment of such lease(s) to Cotton On or Cotton On's specified Designee (as defined below) (or to the lessor, in the case of a termination).

6. The Auction with respect to the Debtor's Intellectual Property is adjourned until June 29, 2011 or such later time to be determined by the Debtor and noticed on the docket of this case.

7. Pursuant to section 363 of the Bankruptcy Code, the Debtor is authorized to sell the Leases and Designation Rights to the Purchasers free and clear of any liens, claims, encumbrances, security interests, pledges or other interests (collectively, "Interests") with such Interests to attach to the proceeds to be received by the Debtor in the same amount and priority and subject to the same defenses and avoidability, if any, as before the closing of the transactions contemplated under the Sale Agreements. Pursuant to Section 363(f) of the Bankruptcy Code and the Sale Agreements, including any amendments thereto, the transfer of title to the Leases or Designation Rights, as applicable, to the Purchasers shall be free and clear of any Interest in or against the Leases and the Designation Rights. Upon the assignment to Perry Ellis or Cotton On (or its specified Designee), as applicable (collectively, the "Assignees"), the Leases shall be deemed valid and binding, in full force and effect in

accordance with their terms, subject to the provisions of this Order and, pursuant to Bankruptcy Code § 365(k), and upon payment to the Landlords of the Cure Amounts under such Leases, the Debtor and its estate shall be relieved from any further liability thereunder, including for any breach such Leases as of the effective date of such assignment. The Assignees are not the successor of the Debtor for any purpose. The Assignees do not assume and shall not become liable for any liabilities of the Debtor except as expressly provided in the relevant Lease Sale Order (defined below).

8. As provided in the Designation Rights Agreement, Cotton On may designate for assumption and assignment any Lease that is subject to, and as set forth in, the Designation Rights Agreement (each such Lease, a "Designated Lease"), in accordance with the following procedures; provided that Cotton On may not designate any Lease that has been rejected by the Debtor:

(a) Cotton On shall deliver to the Debtor and file with the Court, and simultaneously serve a copy on each counterparty to a Designated Lease (each, a "Landlord") and its counsel of record, if known, by both (x) overnight mail and (y) either email or facsimile, a notice in the form of Exhibit C to this Order (the "Lease Assumption Notice"), which shall include, among other things, (i) the exact name of the proposed assignee (each, a "Designee")[3], (ii) a summary of all amounts required to be paid in order to effect the assumption and assignment of such Designated Lease pursuant to section 365(b) of the Bankruptcy Code (the "Cure Amount"), (iii) the proposed use of the premises subject to such Designated Lease, and (iv) the proposed form of Lease Sale Order (as defined below). Cotton On shall also deliver to the applicable Landlord(s), together with each Lease Assumption Notice, evidence of such Designee's ability to provide adequate assurance of future performance with respect to such Designated Lease.

(b) The Landlord to any Designated Lease may file with the Court an objection to the assignment of such Designated Lease within seven (7) business days of receipt of the Lease Assumption Notice. If no objection

---

[3] As set forth in the Designation Rights Agreement, Cotton On may designate itself or any affiliate as assignee with respect to any Designated Lease.

10

is timely received, (i) the Landlord to such Designated Lease shall be deemed to have consented to the entry of the proposed Lease Sale Order with respect to such Designated Lease and shall be forever barred from asserting any objection with regard to the assumption and assignment of such Designated Lease, and (ii) the Cure Amount set forth in the Lease Assumption Notice shall be controlling, notwithstanding anything to the contrary in any Designated Lease, or any other document, and such Landlord shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other cure claims related to such Designated Lease against the Debtor, Cotton On, or such Designee, or the property of any of them.

(c) An objection to the assumption and assignment of any Designated Lease that was timely filed pursuant to subparagraph (b) above will be addressed at a hearing to be held on the earliest practicable date (each, a "Lease Sale Hearing"). Any Landlord that filed a prior objection with the Court with respect to such Designated Lease shall not need to file a further objection to raise such objection at any Lease Sale Hearing. If an objection is raised by a Landlord solely to the Cure Amount, and such dispute cannot be consensually resolved prior to the Lease Sale Hearing, the Debtor may nevertheless seek the assumption and assignment of the applicable Designated Lease; provided that the entire disputed Cure Amount must be immediately paid by the Designee to the Debtor, and the Debtor shall hold and segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by agreement by the parties, for payment to the Landlord or repayment to the Designee as ultimately determined.

(d) Subject to Landlords' right to object as set forth herein, the Designated Leases shall be transferred pursuant to a proposed order of assumption and assignment substantially in the form of Exhibit D to this Order (a "Lease Sale Order"), to the applicable Designee, free and clear of all Interests of any kind or nature whatsoever, and shall remain in full force and effect for the benefit of such Designee in accordance with their respective terms, notwithstanding any provision in any such Designated Lease (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions the assignment or transfer of such Designated Lease (each, an "Anti-Assignment Provision"); provided that either Cotton On or the applicable Designee shall be liable for accrued but unbilled items under assumed non-residential real property leases (including, but not limited to, unbilled taxes and year-end adjustments to common area maintenance charges, insurance, and real estate taxes) with respect to each Designated Lease, and shall be liable for the payment of such charges when same become due in accordance with the terms of such Designated Lease (with all rights reserved to Cotton On or such Designee to challenge said charges as may be set forth in such Designated Lease).

(e) Pursuant to Bankruptcy Code section 365(k), the Debtor shall be relieved from any further liability with respect to each Designated Lease after the payment to the Landlord of the Cure Amount under the Designated Lease and the effective date of the assumption and assignment of such Designated

11

Lease to any Designee.  The Debtor is authorized to execute and deliver to the applicable Designee such documents or other instruments as may be necessary to assign and transfer the Designated Leases to such Designee at each Lease Closing (as defined in the Designation Rights Agreement).

(f) With respect to each Designated Lease, upon the Lease Closing and the payment of the relevant Cure Amount (and contingent upon Cotton On's or the applicable Designee's obligations to pay the unbilled charges set forth in Paragraph 8(d) above), such Designee shall be deemed to be substituted for the Debtor as a party to such Designated Lease.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to any Designee as a result of the assumption and assignment of the Designated Leases.  Each Lease Sale Order shall provide that the assignment of each of the Designated Leases is made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code. With respect to each Designated Lease, the applicable Designee shall execute, in a form reasonably acceptable to the applicable Landlord, an assumption and assignment agreement that shall identify the tenant under the Designated Lease, as well as provide the contact address for the tenant for billing and notice purposes.

9. Each and every Anti-Assignment Provision in any Designated Lease is null, void and of no force and effect in connection with the transfer of the Designation Rights to Cotton On pursuant to the Designation Rights Agreement.

10. This Order and the Sale Agreements shall inure to the benefit of and be binding on the Debtor, its estate, its creditors, the non-Debtor counterparties to the Sale Agreements and their respective successors and assigns, any trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's case.

11. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Agreements or any of the transactions contemplated thereby.

12. The failure specifically to include any particular provision of the Sale Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of

12

the Court that the Sale Agreements be authorized and approved in their entirety.

13. The Debtor is authorized to take all such actions and execute any agreements that shall be necessary to consummate and give effect to the Sale Agreements without further order of the Court.

14. The Sale Agreements and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that: (i) any such amendment does not have a material adverse effect on the Debtor, the Debtor's estate or the Debtor's Landlords, (ii) any such amendment does not result in a reduction of the Purchase Price, and (iii) notice of such amendment shall be provided to the Committee and the Debtor's prepetition lenders.

15. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Sale Agreements, all modifications thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchasers, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the transactions contemplated herein.

16. To the extent that any provisions of this Order shall be inconsistent with the provisions in the Sale Agreements, any prior order, or any pleading with respect to the motions in this case, the terms of this Order shall control.

17. Pursuant to Rules 7062, 9014, 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the Debtor is

1725773 v4/NY

authorized to close the transactions contemplated by the Sale Agreements immediately upon entry of this Order.

18. This Order shall be deemed to be a separate order with respect to the Court's approval of (a) the Perry Ellis Assumption and Assignment Agreement and (b) the Designation Rights Agreement.

19. The Court shall retain jurisdiction over disputes pertaining to this Order or the Sale Agreements.

Dated: June 6, 2011
      White Plains, New York

                                            /s/Robert D. Drain
                                            Honorable Robert D. Drain
                                            United States Bankruptcy Judge