**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| METROPARK USA, INC., | Case No. 11-22866 (RDD) |
| Debtor. | |

## ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND BANKRUPTCY RULES 2002 AND 6006 (I) APPROVING THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY TO COTTON ON USA, INC., AND (II) GRANTING RELATED RELIEF

Upon consideration of the Motion of the Debtor for Order (A) Setting the (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, and (2) Date of the Sale Hearing; (B) Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter Into Lease Termination Agreements, (E) Approving and Authorizing Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of All Liens, Interests, Claims and Encumbrances Pursuant to Section 363 of the Bankruptcy Code; (F) Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure; and (G) Granting Related Relief (the "Sale Motion") (Doc. No. 88); and this Court having entered the Order (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, (2) Hearing Date for Approval of Auction and (3) Related Objection Deadlines; (B) Approving Bidding Procedures and Terms of Auction; and (C) Granting Related Relief (the "Bidding Procedures Order") (Doc. No. 149); and the above debtor and debtor in possession (the "Debtor") having held an auction in accordance with the Bidding

Procedures Order on May 26, 2011 (the "Auction") of the Leases[1] and Intellectual Property; and The Cotton On Group ("Cotton On") having submitted a bid at the Auction for the assumption and assignment of the Debtor's Leases set forth on Exhibit A to the Assumption and Assignment Agreement (defined below) (the "Assigned Leases"); and the Debtor having selected Cotton On as the highest or otherwise best bidder for the Assigned Leases at the Auction; and upon the record herein, including the record of the June 6, 2011 hearing before the Court; and any objections to the relief granted herein having been resolved, withdrawn or otherwise overruled by this Order; and after due deliberation thereon and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.     The assumption and assignment of the Assigned Leases to Cotton On USA, Inc. ("Cotton On USA"), an affiliate of Cotton On, is approved in all respects.  Upon execution of this Order (the "Lease Closing Date") and pursuant to 11 U.S.C. §§ 105(a), 363 and 365, the Debtor is authorized to consummate the assumption, assignment and sale of the Assigned Leases to Cotton On USA pursuant to and in accordance with the terms and conditions of the Assumption and Assignment Agreement between the Debtor and Cotton On USA attached as Exhibit 1 to this Order (the "Assumption and Assignment Agreement").

2.     All objections to the entry of this Order that have not been withdrawn, waived or settled are denied and overruled on the merits.

3.     The Debtor and Cotton On USA have provided each non-Debtor party to the Assigned Leases with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1), 365(b)(3) and 365(f)(2)(b).

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion.

4.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the transfer, conveyance and assignment of the Assigned Leases to Cotton On USA pursuant to the Assumption and Assignment Agreement is a legal, valid and effective disposition of the Assigned Leases, and vests Cotton On USA with all right, title and interest of the Debtor to and in the Assigned Leases free and clear of (i) all liens (as that term is defined in section 101(37) of the Bankruptcy Code), encumbrances, mortgages, security interests and other similar encumbrances , (ii) all claims (as that term is defined in section 101(5) of the Bankruptcy Code), demands, liabilities or restrictions of any kind, including, without limitation, rights that purport to give to any party a right or option to effect any forfeiture, modification or termination of the interest of the Debtor or Cotton On USA, as the case may be, in the Assigned Leases, and (iii) in respect of taxes, claims or liabilities accruing during or relating to a period prior to the Lease Closing Date (items (i)-(iii) collectively, "Claims and/or Interests").  All Claims and/or Interests are hereby unconditionally released, discharged and terminated, and all persons and entities holding Claims and/or Interests of any kind and nature accruing, arising or relating to a period prior to the Lease Closing Date with respect to the Assigned Leases are hereby barred from asserting such Claims and/or Interests against Cotton On USA or any of its affiliates, stockholders, members, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys (together, "Released Parties").

5.     Within two (2) business days after the Lease Closing Date, Cotton On or Cotton On USA shall pay to the Debtor the Cure Amounts (as defined in the Assumption and Assignment Agreement) with respect to each Assigned Lease, and the Debtor shall pay such Cure Amounts to the applicable non-Debtor party within two (2) business days thereafter.  All defaults, claims or other obligations of the Debtor arising or accruing under the Assigned Leases,

if any, prior to the Lease Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) shall be deemed cured by the Debtor by the payment of the Cure Amounts.

6.     Payment of the applicable Cure Amounts pursuant to this Order is in full and final satisfaction of all obligations to cure defaults and compensate each non-Debtor party for any pecuniary losses under the Assigned Leases pursuant to section 365(b)(1) of the Bankruptcy Code.

7.     Neither Cotton On nor Cotton On USA shall be responsible for, and each non-Debtor party to the Assigned Leases is hereby barred and permanently enjoined from asserting against Cotton On or Cotton USA, any pre-closing liabilities under the Assigned Leases, or any liability for the cure of any defaults under the Assigned Leases existing or accruing, arising, or relating to a period before the Lease Closing Date, except as otherwise provided for in a separate written agreement between Cotton On USA and such non-Debtor party.

8.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall have no liabilities for any claims (as that term is defined in section 101(5) of the Bankruptcy Code) arising from, relating to or accruing on or after the Lease Closing Date under the Assigned Leases.

9.     The Assigned Leases may contain provisions that expressly or effectively restrict, prohibit, condition or limit the assignment of the Assigned Leases or the validity of the Assigned Leases following the assignment, including the following provisions:

(i)     any provision of the Assigned Leases that purports to prohibit, condition, limit or otherwise restrict the assignment of the Assigned Leases;

(ii)     any provision of the Assigned Leases that permits a non-Debtor to increase or reallocate payments under (including, without limitation, any rent or percentage rent), declare a default with respect to, terminate, modify or cancel, the Assigned Leases or right or obligation thereunder by reason of (A) the assignment of the Assigned Leases to Cotton On USA; (B) the release of the Debtor from liability; (C) discontinuation of operations, interruption of business, or minimum sales requirements; or (D) the Debtor ceasing to be a party to the Assigned Leases (clauses (A) - (D), the "Triggering Events");

(iii)     any provision of the Assigned Leases that permits a non-Debtor at any time to exercise a right of first refusal or recapture by reason of any Triggering Event;

(iv)     any provision of the Assigned Leases that permits a non-Debtor at any time to require payment of any fee, profit sharing or other payment by reason of any Triggering Event;

(v)     any provision of the Assigned Leases that permits a non-Debtor at any time to impose any penalty or rental adjustment or allocation by reason of any Triggering Event;

(vi)     any provision of the Assigned Leases that permits a non-Debtor at any time to cancel, modify or restrict Cotton On USA from exercising any renewal options by reason of any Triggering Event;

(vii)     any provision of the Assigned Leases that permits a non-Debtor at any time to seek damages or other relief by reason of a Triggering Event, (the foregoing

provisions, to the extent they are not of a type enumerated in Section 365(b)(1) or (3) of the Bankruptcy Code, are referred to as "<u>Anti-Assignment Provisions</u>").

10.     The Anti-Assignment Provisions, as they apply to the transaction under the Assumption and Assignment Agreement, are inconsistent with Bankruptcy Code sections 365(f)(1) and 365(f)(3) and the Congressional policy expressed therein favoring a debtor's ability to maximize the value of its assets.  Each and every Anti-Assignment Provision is null, void and of no force and effect solely in connection with any assignment of the Assigned Leases to Cotton On USA under the Assumption and Assignment Agreement but shall continue in full force and effect upon and after an assignment of the Assigned Leases to Cotton On USA, and the Assigned Leases shall be transferred to, and remain in full force and effect for the benefit of Cotton On USA, in accordance with their terms, notwithstanding any Anti-Assignment Provisions contained therein.

11.     The inability of any non-Debtor to enforce an Anti-Assignment Provision in connection with an assignment of the Assigned Leases to Cotton On USA does not in any way constitute a lack of adequate assurance of future performance.

12.     Notwithstanding any Anti-Assignment Provisions or other provision of the type described in the preceding paragraphs, Cotton On USA may (i) erect, maintain, repair or replace interior and exterior signage at the Premises generally in accordance with Cotton On's customary signage to allow for the sale of Cotton On's branded goods, in all events in a manner consistent with the terms of the Assigned Leases, and (ii) close the Premises for such period as is reasonably necessary for the purpose of making such alterations to the Premises as are reasonably necessary to construct a typical Cotton On store at the Premises.

13. The transfer, sale and assignment of the Assigned Leases to Cotton On USA under the Assumption and Assignment Agreement shall not subject or expose Cotton On USA, Cotton On or the Debtor or any of their respective Related Parties to any liability, claim, cause of action or remedy by reason of such transfer under (i) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, or (ii) any employment contract, understanding or agreement, including without, limitation collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

14. Following the Lease Closing Date, Cotton On USA may dispose of any personal property abandoned in the Premises by the Debtor without liability to any third party claiming an interest in such abandoned personal property.

15. This Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assigned Leases, each of whom is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Assigned Leases to Cotton On USA, and such agency or department may rely upon this Order in consummating the transactions contemplated herein. All Liens against the Debtor's estate of record as of the date of

this Order shall forthwith, upon the occurrence of the Lease Closing Date, be removed and stricken as against the Assigned Leases, without further order of the Court or act of any party.

16.     The assumption, assignment and sale of the Assigned Leases to Cotton On USA may not be avoided under 11 U.S.C. § 363(n).

17.     Upon the closing of the assumption, assignment and sale of the Assigned Leases to Cotton On USA in accordance with the Assumption and Assignment Agreement and this Order, Cotton On USA will be deemed to have acted in good faith in purchasing the Assigned Leases, as that term is used in 11 U.S.C, § 363(m), and no reversal or modification of this Order on appeal will affect the validity of the assumption, assignment and sale of the Assigned Leases to Cotton On USA.

18.     This Order shall be effective and enforceable immediately upon entry. The stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is waived.

19.     This Court hereby retains jurisdiction to resolve any dispute relating to the interpretation or enforcement of this Order.

Dated: June 7, 2011
        White Plains, New York

                                        /s/Robert D. Drain
                                        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**