UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                              :

In Re                                                :                 Chapter 11

                                                         :

**METROPARK USA, INC.,**[1]              :

                                                         :                 Case No. 11-22866 (RDD)

               **Debtor.**                         :
------------------------------------------------------------ X

**ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING THE SALE, ASSUMPTION AND ASSIGNMENT OF LOS CERRITOS CENTER LEASE AND GRANTING RELATED RELIEF**

Upon consideration of the *Motion of the Debtor for Order (A) Setting the (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, and (2) Date of the Sale Hearing* (the "Sale Hearing"); *(B) Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter Into Lease Termination Agreements, (E) Approving and Authorizing Sale of Leases* (the "Leases") *and Intellectual Property* (the "Intellectual Property") *to Highest or Otherwise Best Bidder Free and Clear of All Liens, Interests, Claims and Encumbrances Pursuant to Section 363 of the Bankruptcy Code; (F) Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure; and (G) Granting Related Relief* (the "Sale Motion")[2] (Docket No. 88); and this Court having entered the *Order (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Certain Real Property Leases and Intellectual Property, (2) Hearing Date for Approval of Auction and (3) Related Objection Deadlines; (B) Approving Bidding Procedures and Terms of Auction; and (C) Granting Related Relief* (the "Bidding Procedures Order")

---

[1] The Debtor's tax identification number is 81-0636659.
[2] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Sale Motion.

(Docket No. 149); and the Debtor having held an auction on May 26, 2011 (the "Auction") of the Leases and Intellectual Property; and The Cotton On Group ("Cotton On") having submitted a bid in the form of a sale agreement (the "Cotton On Agreement") for Designation Rights (as that term is defined in the Cotton On Agreement) in advance of the Auction; and Perry Ellis Menswear, LLC ("Perry Ellis" and together with Cotton On, the "Stalking Horse Bidders") having submitted a bid in advance of the Auction for the assumption and assignment of certain of the Debtor's Leases as set forth in the *Agreement of Assumption and Assignment of Leases* between the Debtor and Perry Ellis (the "Perry Ellis Assumption and Assignment Agreement"), a true copy of which is annexed as Exhibit A hereto (together with the Cotton On Agreement, the "Stalking Horse Agreements"); and the Stalking Horse Agreements having been approved pursuant to the Bidding Procedures Order; and the Debtor having selected Cotton On and Perry Ellis (the "Purchasers") as the highest or otherwise best bidders for the Leases at the Auction as set forth on the Notice of Successful Bidders filed by the Debtor on May 26, 2011 (Docket No. 172); and this Court having held a hearing to approve the sale, assumption and assignment of the Leases on May 31, 2011 (the "Sale Hearing"); and the Debtor having requested approval at the Sale Hearing of the sale, assumption and assignment of five of the six Leases subject to the Perry Ellis Assumption and Assignment Agreement for an adjusted purchase price, and adjourned the Sale Hearing to June 29, 2011 with respect to the sixth Lease; and the Court having issued that certain *Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 Authorizing and Approving (i) Designation Rights Agreement with the Cotton On Group, (ii) the Sale of Certain of the Debtors' Leases, (iii) Assumption and Assignment*

*Procedures and (iv) Cure Amounts and (v) Granting Related Relief*, dated June 6, 2011 (Docket No. 190); and by such Order the Court having approved the sale, assumption and assignment of five of six Leases to Perry Ellis subject to the Perry Ellis Assumption and Assignment Agreement; and the Macerich Company on behalf of its relevant landlord affiliate ("Macerich"), having filed the *Supplemental Objection of the Macerich Company to the Notice of Successful Bidders (Perry Ellis) and Further Objection to Assumption and Assignment of Lease and Request for Final Hearing on Assumption and Assignment of the Los Cerritos Lease*, dated May 31, 2011 (Docket No. 177) (the "Macerich Objection"); and the sale, assumption and assignment to Perry Ellis of the sixth Lease, governing the premises identified by the Debtors as Store No. 14 at the Los Cerritos Center in Cerritos, California (the "Los Cerritos Lease"), having been adjourned in the light of the Macerich Objection; and Macerich, Perry Ellis and the Debtor having come to agreement on the terms of the sale, assumption and assignment of the Los Cerritos Lease to Perry Ellis; and Macerich having informed the Court that it withdraws the Macerich Objection and all other objections to the sale, assumption and assignment of the Los Cerritos Lease to Perry Ellis on the terms set forth herein; and upon the record of the Sale Hearing and the record of this case; and all other objections to the Sale Motion having been resolved, withdrawn or otherwise overruled by this Order for the reasons stated by the Court at the Sale Hearing with respect to the matters set forth herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY FOUND AND DETERMINED THAT:**

**Jurisdiction, Final Order and Statutory Predicates**

A.  This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (0). Venue is proper in this District and in this Court pursuant to 28 U.S.C. § 1408.

B.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.  The statutory predicates for the relief sought in the Motion are Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006. The proposed sale constitutes a sale of property of the Debtor's estate outside the ordinary course of business within the meaning of Section 363(b) of the Bankruptcy Code.

D.  The Sale Motion and notice of the Auction were served upon the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the prepetition secured lenders; (c) the Official Committee of Unsecured Creditors; (d) those parties that have expressed an interest in purchasing the Debtor's Leases and/or Intellectual Property; (h) the counterparties to the Leases; and (i) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Notice of the Sale Motion, the Auction and the Sale Hearing was adequate and sufficient under the circumstances.

**Good Faith of Purchaser**

E. Perry Ellis is purchasing the Los Cerritos Lease in good faith, is a good faith purchaser within the meaning of 11 U.S.C. § 363(m), is entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with the Perry Ellis Assumption and Assignment Agreement in that: (a) Perry Ellis as the Stalking Horse Bidder recognized that the Debtor was free to deal with any other party interested in acquiring the Leases subject to Stalking Horse Agreement, (b) all payments to be made by Perry Ellis and other agreements or arrangements entered into by Perry Ellis in connection with its agreement have been disclosed, (c) Perry Ellis has not violated 11 U.S.C. § 363(n) by any action or inaction, and (d) the negotiation and execution of the Perry Ellis Assumption and Assignment Agreement and any other agreements or instruments related thereto were in good faith and each party thereto is represented by counsel.

F. The Perry Ellis Assumption and Assignment Agreement was negotiated and proposed, and has been entered into by the parties in good faith within the meaning of Section 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without collusion.

**Highest or Otherwise Best Offer**

G. The Debtor's determination that the Perry Ellis Assumption and Assignment Agreement constitutes the highest or otherwise best offer for the Los Cerritos Lease constitutes a valid and sound exercise of the Debtor's business judgment.

H. The Perry Ellis Assumption and Assignment Agreement represents a fair and reasonable agreement for the Debtor to sell the Los Cerritos Lease under the circumstances of this chapter 11 case.

I. Approval of the Perry Ellis Assumption and Assignment Agreement and the consummation of the transaction contemplated thereby are in the best interests of the Debtor, its creditors, and its estate.

J. The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for entering into the Perry Ellis Assumption and Assignment Agreement as to the Los Cerritos Lease prior to, and outside of, a chapter 11 plan.

K. The Debtor has full corporate power and authority to execute and deliver the Perry Ellis Assumption and Assignment Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor to consummate the transaction contemplated by the Perry Ellis Assumption and Assignment Agreement as to the Los Cerritos Lease, except as otherwise set forth therein.

**Assumption, Assignment and Sale of Real Property Lease**

L. No objections to adequate assurance of future performance by Perry Ellis were filed with respect to the Los Cerritos Lease subject to the Perry Ellis Assumption and Assignment Agreement except the Macerich Objection, which has been resolved and is withdrawn. Pursuant to Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(B), and in accordance with the agreement reached between Perry Ellis and Macerich, the Debtor and Perry Ellis have

demonstrated adequate assurance of future performance by Perry Ellis under the Los Cerritos Lease subject to the Perry Ellis Assumption and Assignment Agreement approved hereby.

M. Macerich and Perry Ellis have agreed that a "Perry Ellis" or an "Original Penguin" brand store will occupy the premises governed by the Los Cerritos Lease and that they have agreed on the "use" clause to apply under the Los Cerritos Lease on a going-forward basis, pursuant to a separate agreement between Perry Ellis and Macerich (the "<u>Los Cerritos Agreement</u>").

**<u>Section 363 Sale</u>**

N. The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full. Therefore, the Debtor may sell the Los Cerritos Lease free and clear of any interest therein, except as provided herein and in the Los Cerritos Agreement.

O. Given all of the circumstances of the Debtor's chapter 11 case and the adequacy and fair value of the purchase price under the Stalking Horse Agreements, the proposed sale of the Los Cerritos Lease to Perry Ellis constitutes a reasonable and fair exchange of consideration and reasonable and sound exercise of the Debtor's business judgment.

**<u>Miscellaneous</u>**

P. All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein.

1732019 v4/NY

*NY241,271,056-2*

**NOW, THEREFORE, IT HEREBY IS ORDERED THAT:**

1. The Sale Motion is granted to the extent provided herein.

2. All objections to the relief granted herein, to the extent not resolved or withdrawn, are overruled on the merits.

3. The Cure Amount of $33,455.64 (of which $16,253.53 has already been paid by Perry Ellis to Macerich) shall constitute the only amounts deemed owing under the Los Cerritos Lease relating to the period prior to and effective as of the assignment, except as otherwise set forth herein or in the Los Cerritos Agreement. The Debtor shall pay such Cure Amount (less the $16,253.53 already paid by Perry Ellis to Macerich) within five (5) business days of the entry of this Order.

4. The Perry Ellis Assumption and Assignment Agreement, including all of its terms and exhibits, and each of the transactions contemplated thereby as to the Los Cerritos Lease, is approved as follows:

> The Purchase Price (as that term is defined in the Perry Ellis Assumption and Assignment Agreement) for the Los Cerritos Lease is $225,000 plus the portion of the Cure Amount to be paid as reimbursement to the Debtor in the amount of $6,343.86 (including the amount set forth in the Perry Ellis Assumption and Assignment Agreement of $2,859.86). The Purchase Price as set forth herein reflects the total consideration to be paid by Perry Ellis to the Debtor for the assumption and assignment of the Los Cerritos Lease as approved hereby. The Debtor holds a deposit of $33,750.00 on account of the Los Cerritos Lease. The balance payable upon closing is $197,593.86.

For the avoidance of doubt, attached hereto as <u>Exhibit A-1</u> is a modified Exhibit A to the Perry Ellis Assumption and Assignment Agreement indicating the disposition of the Los Cerritos

8

Lease subject to the Perry Ellis Assumption and Assignment Agreement. The parties thereto are authorized and directed to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby and under the Perry Ellis Assumption and Assignment Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Perry Ellis Assumption and Assignment Agreement.

5.  Pursuant to Section 363 of the Bankruptcy Code, the Debtor is authorized to sell the Los Cerritos Lease to the Purchaser free and clear of any liens, claims, encumbrances, security interests, pledges or other interests (collectively, "Interests") with such Interests to attach to the proceeds to be received by the Debtor in the same amount and priority and subject to the same defenses and availability, if any, as before the closing of the transactions contemplated under the Sale Agreements. Pursuant to Section 363(f) of the Bankruptcy Code and the Perry Ellis Assumption and Assignment Agreement, including any amendments thereto, and subject to the Los Cerritos Agreement, the transfer of title to the Los Cerritos Lease to the Purchaser shall be free and clear of any Interest in or against the Los Cerritos Lease, provided however, that nothing herein relieves the Assignee from liability or impairs Assignee's right to any benefit, if any, for unbilled calendar 2010 and 2011 year-end reconciliation billings for real estate taxes, insurance, and common area costs under the Lease that remain unbilled as of the date of the Effective Date, whether such charges accrued prior to or after the entry of the Effective Date. Upon the assignment to Perry Ellis, the Los Cerritos Lease shall be deemed valid and binding, in full force and effect in accordance with its terms, subject to the provisions of this

9

1732019 v4/NY

*NY241,271,056-2*

Order and, pursuant to Bankruptcy Code § 365(k), and upon payment to the landlord of the Cure Amounts under the Los Cerritos Lease, the Debtor and its estate shall be relieved from any further liability thereunder, including for any breach of such lease as of the effective date of such assignment; provided, however, nothing herein shall prevent Macerich from proceeding against Debtor's insurance, if any, for claims arising prior to the effective date of such assignment. Perry Ellis is not the successor of the Debtor for any purpose. Perry Ellis does not assume and shall not become liable for any liabilities of the Debtor.

6. This Order and the Perry Ellis Assumption and Assignment Agreement shall inure to the benefit of and be binding on the Debtor, its estate, its creditors, the non-Debtor counterparty to the Perry Ellis Assumption and Assignment Agreement and their respective successors and assigns, any trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's case.

7. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Perry Ellis Assumption and Assignment Agreement or any of the transactions contemplated thereby.

8. The failure specifically to include any particular provision of the Perry Ellis Assumption and Assignment Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreements be authorized and approved in its entirety.

9. The Debtor is authorized to take all such actions and execute any agreements that shall be necessary to consummate and give effect to the Sale Agreements without further order

of the Court.

10. The Perry Ellis Assumption and Assignment Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that: (i) any such amendment does not have a material adverse effect on the Debtor, the Debtor's estate or the Debtor's landlords, (ii) any such amendment does not result in a reduction of the Purchase Price, and (iii) notice of such amendment shall be provided to the Committee and the Debtor's prepetition lenders.

11. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Perry Ellis Assumption and Assignment Agreement, all modifications thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the transactions contemplated herein.

12. To the extent that any provisions of this Order shall be inconsistent with the provisions in the Perry Ellis Assumption and Assignment Agreement, any prior order, or any pleading with respect to the motions in this case, the terms of this Order shall control.

13. Pursuant to Rules 7062, 9014, 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the Debtor is authorized to close the transactions contemplated by the Sale Agreements immediately upon entry of this Order.

14. The Court shall retain jurisdiction over disputes pertaining to this Order or the

11

1732019 v4/NY

*NY241,271,056-2*

Perry Ellis Assumption and Assignment Agreement.

Dated: July 5, 2011
      White Plains, New York

                                      /s/Robert D. Drain
                                      HONORABLE ROBERT D. DRAIN
                                      UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**PERRY ELLIS ASSUMPTION AND ASSIGNMENT AGREEMENT**

# EXHIBIT A-1

## Perry Ellis International, Inc.

## SCHEDULE OF LEASES TO BE ASSUMED AND ASSIGNED, AND CURE COSTS

| Store No. | Mall | Landlord | Cure Costs (X) (Paid to Debtor by Perry Ellis to be Paid to Macerich) | Cure Costs (Y) (Portion to be Paid by Debtor) | Total Cure Costs (X + Y) (To be Paid by Debtor to Macerich) |
|---|---|---|---|---|---|
| 14 | Los Cerritos Center Cerritos, CA | Macerich | $22,597.39* | $10,858.25 | $33,455.64* |

* Perry Ellis has already paid $16,253.53 of the total Cure Amount directly to Macerich. Accordingly, the total Cure Amount to be paid by Perry Ellis to the Debtor is reduced by this amount and the total Cure Amount to be paid by the Debtor to Macerich is reduced by this amount.