COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x
:
In re                            :
:      Chapter 11
METROPARK USA, INC.,[1]     :
:      Case No. 11-22866 (RDD)
       Debtor.      :
:
---------------------------------------------------------------------- x

## NOTICE OF FILING STALKING HORSE BID FOR DEBTOR'S INTELLECTUAL PROPERTY

**PLEASE TAKE NOTICE** that on May 12, 2011 Metropark USA, Inc. (the "Debtor") filed its Motion of the Debtor for Order (A) Setting (1) Date to Conduct Auction of Debtors Interests in Certain Real Property Leases and Intellectual Property, and (2) Sale Hearing Date; (B) Approving Bidding Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter Into Lease Termination Agreements; (E) Approving and Authorizing Sale of Leases and Intellectual Property to Highest or Otherwise Best Bidder Free and Clear of All Liens, Interests, Claims and Encumbrances Pursuant to § 363 of the Bankruptcy Code; (F) Waiving the Requirements of Rule 6004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 6004-1 and (G) Granting Related Relief (Doc. No. 88), which was subsequently approved by Order of the Court on May 24, 2011 (the "Bidding Procedures Order") (Dkt. No. 149).

---
[1] The Debtor's tax identification number is 81-0636659.

**PLEASE TAKE FURTHER NOTICE** that on July 14, 2011, the Debtor filed a stalking horse Asset Purchase Agreement attached hereto as <u>Exhibit A</u> with respect to the Debtor's intellectual property assets.

**PLEASE TAKE FURTHER NOTICE** that the auction with respect to the Debtor's intellectual property assets has been adjourned (pursuant to prior Notice (Dkt. No. 259)) and will be held on **August 2, 2011**.

**PLEASE TAKE FURTHER NOTICE** that in order to bid at the auction, a bidder must submit a written bid in the form of the Required Bid Documents (as that term is defined in the Bidding Procedures Order), by no later than **July 28, 2011, at 3:00 p.m.**, to the following parties: (i) counsel for the Debtor, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attn: Cathy Hershcopf, Esq. and Jeffrey L. Cohen, Esq.; (ii) the Debtor, Metropark USA, Inc., 5750 Grace Place, Los Angeles, CA 90022, Attn: Rick Hicks; (iii) CRG Partners Group, 7625 Wisconsin Ave. Bethesda, MD 20814, Attn: Craig Boucher; (iv) counsel to the Official Committee of Unsecured Creditors, Blakeley & Blakely LLP, 444 South Flower Street, Suite 1750, Los Angeles, CA 90017, Attn: Ronald A. Clifford, Esq.; (iv) counsel to Wells Fargo Bank, N.A., the Prepetition Senior Secured Lender: Riemer & Braunstein, LLP, Three Center Plaza, Boston, Massachusetts 02108 (Attn: Donald E. Rothman, Esq., Fax: (617) 880-3456); (v) counsel to the Second Lien Agent, Solomon Ward Seidenwurm & Smith, LLP, 401 B Street, Ste. 1200, San Diego, CA 32101 (Attn: Michael D. Breslauer, Esq.); (vi) counsel to Cotton On, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Robert L. LeHane, Esq.; (vi) counsel to Perry Ellis, Greenberg Traurig LLP, 200 Park Avenue, New York, New York 10166, Attn: Allen G. Kadish, Esq and (vii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Susan Golden, Esq.).

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures and each of the pleadings referenced herein can be viewed on the Court's website at

www.ecf.nysb.uscourts.gov, and at the website maintained by Omni Management Group, LLC ("Omni") at www.omnimgt.com/metropark or by contacting Omni directly at Metropark USA, Inc. c/o Omni Management Group, LLC 16161 Ventura Blvd., Suite C, PMB 480, Encino, CA 91436, by telephone at (866) 989-6144, or by facsimile at (818) 783-2737.

Dated: July 14, 2011
     New York, New York

By:   /s/ Cathy Hershcopf
       Cathy Hershcopf

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Cathy Hershcopf
Jeffrey L. Cohen
Alex R. Velinsky

*Attorneys for Debtor and
Debtor in Possession*

**EXHIBIT A**

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is entered into by and between METROPARK USA, INC., a Delaware Corporation, as debtor in possession in that certain Bankruptcy Case pending in the United States Bankruptcy Court for the Southern District of New York, White Plains Division (the "Bankruptcy Court") and entitled In re: Metropark USA, Inc., *Case No. 11-22866 (RDD)* (the "Seller"), on the one hand, and Strato Trading Group, Inc., a New York corporation (the "Buyer"), on the other hand, this 12th day of July, 2011, in contemplation of the following facts.

## RECITALS

A.      The Seller filed a Voluntary Petition for Relief under Chapter 11, Title 11, United States Code (the "Bankruptcy Code") on May 2, 2011. The Seller is the Debtor In Possession in the Bankruptcy Case commenced by the filing of the Voluntary Petition, In re: Metropark USA, Inc., *Case No. 11-22866 (RDD)* (the "Bankruptcy Case").

B.      Pursuant to order of the Bankruptcy Court, the Seller is conducting liquidation or going out of business sales in its retail locations (the "GOB Sales").

C.      Buyer wishes to purchase and Seller wishes to sell all of the Seller's right, title and interest in and to certain intellectual property and related personal property specifically identified on **Exhibit "1"** attached hereto (the "Intellectual Property"), upon the terms and conditions set forth in this Agreement.

WHEREFORE in consideration of the foregoing and the mutual covenants and promises exchanged herein, the parties agree as follows:

1.      Recitals.   The Recitals set forth above are true and correct and they are incorporated into the operative provisions of this Agreement.

2.      Purchase and Sale.  At Closing, in consideration of Buyer's payment to Seller of the cash sum of $175,000.00, plus Buyer's performance of the obligations imposed pursuant to Paragraph 8 below (collectively, the "Purchase Price"), Seller shall sell, transfer, assign and

convey to Buyer and Buyer shall purchase, all of the Seller's right, title and interest in and to the Intellectual Property and all of the goodwill and business associated with the Intellectual Property and more specifically all of the goodwill and business associated with the Marks identified on **Exhibit 1**.

3.      Deposit.   Contemporaneously with the full execution and delivery of this Agreement, Buyer shall deliver to Seller a deposit in the amount of $17,500.00 (the "Deposit") to be held in escrow in the trust account of Seller's counsel and (a) to be applied toward the Purchase Price at Closing; (b) to be delivered to the Seller as damages in the event Buyer is selected as the Successful Bidder (as defined in the Bid Procedures Order (defined below)) or second highest or otherwise best Bidder (the "Back-Up Bidder") and Buyer breaches this Agreement by failing to close pursuant to the terms of this Agreement; (c) to be returned to Buyer if Buyer is not selected as the Successful Bidder or the Back-Up Bidder or if this Agreement is terminated pursuant to Section 15 below.

4.      Sale Free and Clear.   Pursuant to Section 363(f) of the Bankruptcy Code, the Intellectual Property sold, transferred, and assigned to Buyer pursuant to this Agreement shall be free and clear of all liens, mortgages, security interests, charges, licenses, easements, leases, sub-leases, covenants, rights of way, options, claims, restrictions and encumbrances of any kind or nature whatsoever, debts, liabilities, commitments, responsibilities and obligations of any kind or nature whatsoever, direct or indirect, absolute or contingent, matured or unmatured, whether accrued, vested or otherwise, known or unknown, foreseen or unseen (collectively, "Liens").

5.      No Representation.   Buyer acknowledges that Buyer has had the opportunity to independently and personally inspect and conduct its due diligence with respect to the Intellectual Property and that Buyer has entered into this Agreement based upon its ability to conduct such due diligence and to make such examination and inspection.   The Intellectual Property is to be accepted by Buyer at Closing in its then present condition, "AS IS, WITH ALL

FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED." Seller, Seller's agents, attorneys, financial advisors, brokers, directors, officers or employees have not made and are not now making, and they specifically disclaim, any warranties, representations or guaranties of any kind or character, express or implied, oral or written, past, present or future, with respect to the Intellectual Property. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES (EXPRESS OR IMPLIED) OF ANY KIND TO BUYER, INCLUDING, WITHOUT LIMITATION, THE PHYSICAL CONDITION OF THE INTELLECTUAL PROPERTY OR ITS SUITABILITY FOR ANY PARTICULAR PURPOSE OR OF MERCHANTABILITY AND BUYER HAS RELIED ON ITS OWN DUE DILIGENCE AND INVESTIGATIONS OF THE INTELLECTUAL PROPERTY IN DETERMINING WHETHER TO ACQUIRE THE INTELLECTUAL PROPERTY.

6.      Waiver of Stay.  The parties agree that the value of the Intellectual Property is subject to rapid decline in view of the pending GOB Sales.  Accordingly, pursuant to Federal Rule of Bankruptcy Procedure 6004(h) the Seller shall request a waiver of the 14-day stay as provided in said Rule so that, subject to Bankruptcy Court approval, Buyer may close immediately on the purchase of the Intellectual Property.

7.      Protections Under Section 363(m) and Section 363(n).  The parties acknowledge and agree that the Buyer is a good faith purchaser as contemplated by Section 363(m) of the Bankruptcy Code.  Accordingly, the Seller shall use commercially reasonable efforts to obtain an order by the Bankruptcy Court, and Buyer's obligations hereunder are conditioned upon the Seller obtaining and delivering to Buyer such an order by the Bankruptcy Court, finding that the Buyer is a purchaser of the Intellectual Property in good faith so that any reversal or modification on appeal of the order authorizing this sale will not affect the validity of the sale unless such order authorizing the sale is stayed pending appeal.  Furthermore, the parties acknowledge that they have not engaged in any activity which would support the avoidance of the sale pursuant to Section 363(n) of the Bankruptcy Code or which would support any other

3

remedy as provided in said subsection. Accordingly, the Seller shall use commercially reasonable efforts to obtain an order by the Bankruptcy Court, and Buyer's obligations hereunder are conditioned upon the Seller obtaining and delivering to Buyer such an order by the Bankruptcy Court, finding that this Agreement is not avoidable under Section 363(n) and that no other remedy may be sought as provided in said sub-section.

8. <u>Consumer Privacy Ombudsman</u>. The parties believe that the proposed sale of the Intellectual Property to Buyer is consistent with the policies of the Seller, attached hereto as **<u>Exhibit "2,"</u>** regarding the transfer of personally identifiable information about individuals to any Person[1] that is not affiliated with the Debtor (the "<u>Privacy Policy</u>"). Buyer agrees:

(a) to adopt and comply with the Privacy Policy;

(b) to use information covered by the Privacy Policy for the same purposes as are specified in the Privacy Policy;

(c) that prior to making any material change to the Privacy Policy or to use or disclosure of any information protected by the Privacy Policy, the Buyer will notify the persons affected, by mail or e-mail, and afford such persons the opportunity to opt-out of the changes to the Privacy Policy or the new uses of their data;

(d) to employ appropriate information security controls and procedures to protect the data covered by the Privacy Policy;

(e) to abide by all applicable U.S. laws and regulations.

The Seller shall seek approval of the sale of the Intellectual Property without the necessity for the appointment of a consumer privacy ombudsman as contemplated by Section 363(b)(1)(A); provided, however, that if the Bankruptcy Court orders the appointment of a consumer privacy

---

[1] "Person" means any individual, firm, corporation, partnership, limited liability company, trust, joint venture, Governmental Entity or other entity.

1751782 v3/NY

ombudsman pursuant to Section 363(b)(1)(B), the Buyer shall pay the fees and expenses of such consumer privacy ombudsman in such amounts as allowed by the Bankruptcy Court.

9.      Conditions Precedent.  Buyer's obligation to purchase the Intellectual Property is subject to the following conditions precedent:

(a)      The Bankruptcy Court shall have entered an order confirming the sale of the Intellectual Property to the Buyer (the "Approval Order") pursuant to this Agreement, which order shall provide for a waiver of the 14-day stay provided by Federal Rule of Bankruptcy Procedure 6004; which order shall provide for the sale of the Intellectual Property to the Buyer free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code; and which order shall find that the Buyer is a good faith purchaser entitled to the protection of Section 363(m) of the Bankruptcy Code; which order shall provide that all right, title and interest in and to the Intellectual Property shall vest exclusively in the Buyer, free and clear of all Liens; and, which shall further find that the transactions contemplated by this Agreement are not avoidable or subject to any other remedies under Section 363(n) of the Bankruptcy Code.

Buyer, but not Seller, may waive any conditions precedent in this paragraph in its sole discretion.

10.      Closing.  The closing shall take place at the offices of Cooley LLP located at 1114 Avenue of the Americas, New York, NY 10036 at 10:00 a.m. within five (5) business days following the entry of the Approval Order (the "Closing").

11.      Certain Deliveries of Seller.  At the Closing, the Seller shall, at its expense, deliver the following to the Buyer:

(a)      an executed Bill of Sale;

(b)      a certified copy of the Approval Order;

5

(c)     duly executed and acknowledged (as applicable) assignments of the U.S. trademark registrations and applications together with all goodwill and business associated therewith, U.S. copyright registrations and applications, and U.S. patents and patent applications, included in the Intellectual Property contemplated to be acquired pursuant to the terms hereof, in a form reasonably acceptable to Buyer and suitable for recording in the U.S. Patent and Trademark Office, as well as assignment documents for trademark, copyright and/or patent rights in other jurisdictions as reasonably requested by Buyer;

(d)     such other documents of assumption and adequate assurances as may be required by the Approval Order;

(e)     such other documents as Buyer may reasonably require, including, without limitation, as needed to convey to Buyer the Intellectual Property;

(f)     possession, custody, and control of the electronically stored Intellectual Property, duly executed and acknowledged (as applicable) assignments of the of domain names, internet URLs, and the like contemplated to be acquired pursuant to the terms hereof, in a form reasonably acceptable to Buyer and suitable for recording; and,

(g)     all electronically stored Intellectual Property, including customer data, in .txt electronic format or such other format mutually agreed-upon by Buyer and Seller.

12.     <u>Certain Deliveries of Buyer</u>.  At the Closing, (i) Seller's counsel shall deliver the Deposit to Seller, and (ii) Buyer shall, at Buyer's expense, deliver to the Seller:

(a)     By wire transfer of immediately available funds to the accounts designated by Seller the sum of $157,500.00; and,

(b)     such other documents of assumption as may be required by the Approval Order.

13.     <u>Further Assurances</u>.  Seller shall take all actions reasonably necessary to deliver possession, custody, and control of the Intellectual Property to the Buyer at Closing, including, without limitation, executing and delivering any additional documents and perform any additional acts that may be necessary or appropriate to effectuate and perform its obligations under this

Agreement and the transactions contemplated hereby.  For the avoidance of doubt, any additional actions that Buyer requests Seller to complete subsequent to Closing, shall be performed by Seller at Buyer's sole cost and expense, unless such additional actions are necessary due to the fault of Seller.  The parties will cooperate to enable Seller such continued use of the Intellectual Property as is reasonably necessary for Seller's operation as debtor in possession in the Bankruptcy Case.

14.     Agreement Subject to Higher Bid.  The parties acknowledge and understand that this Agreement is subject to the Seller soliciting and receiving higher or better offers for the purchase of the Intellectual Property pursuant to the bidding procedures approved by the Bankruptcy Court.

15.     Termination of Agreement.  This Agreement may be terminated prior to the Closing as follows:

(a)     by Buyer if the Bankruptcy Court has not entered the Approval Order on or before September 23, 2011;

(b)     by Buyer if the Closing has not occurred by September 30, 2011; or

(c)     with no further action by either Seller or Buyer if the Bankruptcy Court enters an order approving a bid made by any party other than Buyer at the Auction (a "Competing Bid") and the transaction contemplated by such Competing Bid is thereafter consummated.

16.     Approval of Break-Up Fee, Expense Reimbursement, Overbid Protection.  In consideration for Buyer having expended considerable time and expense in connection with this Agreement and the negotiation thereof and the identification and quantification of assets of Seller, Seller shall pay to Buyer promptly upon the sale of the Intellectual Property to a third party other than Buyer:  (1) a break-up fee in the amount of $8,750.00 (the "Break-Up Fee") and (2) Buyer's reasonable expenses (including, without limitation, consultants' and attorneys' fees and costs) incurred in connection with the transactions contemplated by this Agreement, provided that the amount of such expense reimbursement does not exceed $8,750.00 (the "Expense Reimbursement").  In addition, the Bid Procedures Order shall provide for an initial

7

overbid protection in the amount of $250,000.00, approval of the Break-Up Fee and the Expense Reimbursement, and minimum bid increments thereafter of $10,000.00. For avoidance of doubt, Buyer's bid of $175,000 and all of Buyer's obligations set forth herein are contingent upon the Bankruptcy Court's approval in the Bid Procedures Order of the Break-Up Fee, the Expense Reimbursement and initial overbid protection in the amount of $250,000.00 prior to commencement of any auction.

17. <u>Assignability</u>.  Buyer may, at its sole discretion, assign its rights and obligations under this Agreement to an affiliate (as defined in Section 101(2) of the Bankruptcy Code).

18. <u>Binding Effect</u>.  This Agreement is binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.  Specifically, but without limitation, upon the entry of the Approval Order, this Agreement and the Approval Order shall be binding upon the Seller and its bankruptcy estate even if:

    (a)    the Bankruptcy Case is dismissed;

    (b)    a trustee is appointed in the Bankruptcy Case; or

    (c)    the Bankruptcy Case is converted to a case under Chapter 7 of the Bankruptcy Code.

19. <u>Access to Records and Information</u>.  Between the Closing and the first anniversary of the Closing, Seller shall have reasonable access to all of the books and records actually delivered by Seller to the Buyer relating to the Intellectual Property and existing as of the Closing, to the extent that such access may reasonably be required by Seller in connection with the completion of the GOB Sales or the administration of the Bankruptcy Case.  Such access shall be afforded by Buyer upon receipt of reasonable advance notice and during normal business hours; provided, however, that any such access shall be conducted in such a manner as not to interfere unreasonably with the operation of the business of Buyer and shall be at the Seller's sole cost and expense.

1751782 v3/NY

20.  <u>General Provisions</u>.

(a)  <u>Expenses</u>.  Except as set forth in this Agreement and whether or not the transactions are consummated, each party shall bear all costs and expenses incurred or to be incurred by such party in connection with this Agreement and the consummation of the transactions contemplated by this Agreement.

(b)  <u>No Third Party Beneficiaries</u>:  This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any Person, other than the parties hereto and such assigns, and legal or equitable rights hereunder.

(c)  <u>Remedies</u>.  Except as otherwise expressly provided in this Agreement, any and all remedies expressly conferred upon a party to this Agreement shall be cumulative with, and not exclusive of, any other remedy contained in this Agreement, at law or in equity and the exercise by a party to this Agreement of any one remedy shall not preclude the exercise by it of any other remedy. In addition, the parties agree that irreparable damage would occur in the event that the parties fail to perform their obligations in accordance with the terms of this Agreement and each party shall be entitled to specific performance in such event, in addition to any other remedy at law or in equity.

(d)  <u>Interpretation; Exhibits and Schedules; Certain Definitions</u>.  The headings contained in this Agreement, in any Exhibit or Schedule hereto and in the table of contents to this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if

set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein, shall have the meaning as defined in this Agreement. When a reference is made in this Agreement to a Section, Exhibit or Schedule, such reference shall be to a Section of, or an Exhibit or Schedule to, this Agreement unless otherwise indicated.

(e) <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, including via facsimile or PDF scans, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other parties.

(f) <u>Entire Agreement</u>.  This Agreement, along with the Schedules and Exhibits thereto, contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter.  None of the parties shall be liable or bound to any other party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein.

(g) <u>Severability</u>.  If any provision of this Agreement (or any portion thereof) or the application of any such provision (or any portion thereof) to any Person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof (or the remaining portion thereof) or the application of such provision to any other Persons or circumstances.

(h) <u>Exclusive Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any

claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated by this Agreement. Any and all claims, actions, causes of action, suits and proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

(i) <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and the internal laws of the State of New York applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

(j) <u>Waiver of Jury Trial</u>.  Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement or the transactions.  Each party (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement, as applicable, by, among other things, the mutual waivers and certifications in this Section.

1751782 v3/NY

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

SELLER:                                    BUYER:

METROPARK USA, INC.,                       STRATO TRADING GROUP, INC.
A Delaware Corporation                     A New York Corporation

_____                _____

By: Richard A. Hicks              By:      Bruce Weisfeld

Its: Vice President, Finance      Its:     President

12

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

SELLER:                                                    BUYER:

METROPARK USA, INC.,                                       STRATO TRADING GROUP, INC.
A Delaware Corporation                                     A New York Corporation

_____                           _____

By:  Richard A. Hicks                    By:     Bruce Weisfeld

Its:  Vice President, Finance            Its:    President

12

## EXHIBIT "1"

(Intellectual Property)

**U.S. Trademarks (the "Marks"):**

| Registered Owner | Trademark | Country | Registration No. | Reg. Date |
|---|---|---|---|---|
| Metropark USA, Inc. | METROPARK | USA | 2,984,190 | August 9, 2005 |
| Metropark USA, Inc. | METROPARK | USA | 2,984,191 | August 9, 2005 |

For the avoidance of doubt, the transfer of the Marks includes, without limitation, any and all goodwill symbolized by and in any manner associated with the Marks.

**Domain names:**

metropark.net
metroparksuppliers.com
metroparkusa.com
metroparkusa.net
shopmetropark.com
shopmetropark.net

**Customer Data:**

A database containing approximately 700,000 email addresses.

**Social Media:**

http://www.facebook.com/MetroparkUSA
twitter: @metroparkusa

**Miscellaneous:**

- Website content and graphics
- Advertising and promotional materials
- Any and all copyrights associated with the Marks or any of the other foregoing items of property.

1751782 v3/NY

## EXHIBIT "2"

(Privacy Policy)

1751782 v3/NY

# Metroparkusa.com Privacy and Security

**Metroparkusa.com is committed to your privacy**

Your privacy is important, so we have created the following Privacy and Security Policy to let you know what information we collect when you visit our web site, Metroparkusa.com, why we collect it, and how it is used. This Privacy and Security Policy also addresses our data security practices, the options you have to access and control any personally identifiable information you provide to us, and other matters. This Privacy and Security Policy is governed by our Terms and Conditions. We may periodically make changes to this Privacy and Security Policy which will be included on this page. It is your responsibility to review this Privacy and Security Policy frequently and remain informed about any changes to it, so we encourage you to visit this page often.

**Special note about children**

This Site is not intended for or directed to persons under the age of 18. Metroparkusa.com does not sell products for purchase by children. Metroparkusa.com sells children's products for purchase by adults. By registering with this web site, purchasing products from Metroparkusa.com or providing Metroparkusa.com with any information, you represent to Metroparkusa.com that you are 18 years of age or older and that any information you provide to Metroparkusa.com about a third party that is 18 years of age or older.

**What information do we collect from you? Why?**

We May Collect Information Needed to Contact You Later. If we collect personal contact information (as described below), you may later access and modify it, and remove it from our system. You may also choose simply not to provide your personal contact information at the point of collection.

**We may collect your name, address and phone number**

When you use our web Site, we may request your first and last name, home or other physical address, including your street name and address and name of your city or town, your telephone number or other "real world" contact information.

We use this information to complete, support and analyze your purchases from Metroparkusa.com and use of the Metroparkusa.com web site, for internal purposes and to comply with any requirements of law. This information may be disclosed to our staff and to third parties involved in the completion of your transaction, the delivery of your order or the analysis and support of your use of the Metroparkusa.com web site.

**We may collect your email address**

We may request your email address, or other information needed to contact you online. We use it to complete, support and analyze your purchases from Metroparkusa.com and use of the Metroparkusa.com web site, and to comply with any requirements of law. We use it to respond to any questions you might have and to provide you with information about specials occurring on the Metroparkusa.com web site if you have chosen this service on the Account Login page. This information may be disclosed to our staff and to third parties involved in the completion of your transaction, the delivery of your order or the analysis and support of your use of the Metroparkusa.com website.

**We may collect other kinds of information from you**

When you use our web site, we may collect personal information about you described below. You may later access and modify the information, or have it removed. You may also simply choose not to provide your personal contact information at the point of collection; however, if you do not provide such information, we will be unable to complete your purchase.

**We may collect purchase information**

We may collect information actively generated by the purchase of a product or service, such as a payment method. We use this information to process your order and analyze and support your use of the Metroparkusa.com web site. This information may be disclosed only to our staff and to third parties involved in the completion of your transaction, the delivery of your order or the analysis and support of your use of the Metroparkusa.com web site.

**We may collect navigation and clickstream data**

As you browse our web site, we may gather navigational and clickstream data that shows what pages are visited and how long various features are used. This information will not reveal your identity or be linked to you personally. We use this information to complete, analyze and support your purchases from Metroparkusa.com and use of the Metroparkusa.com web site to comply with any requirements of law and to determine the commissions for our Affiliates. This information may be disclosed only to our staff and to third parties involved in the completion of your transaction, the delivery of your order, and the analysis and support of your use of the Metroparkusa.com web site.

**We may use third-party advertising companies to serve ads on our behalf**

These companies may employ cookies and action tags (also known as single pixel gifs or web beacons) to measure advertising effectiveness. Any information that these third parties collect via cookies and action tags is completely anonymous. If you would like more information about this practice and your choices, click here.

**Certain exception disclosures**

We may disclose your information if necessary to protect our legal rights, if the information relates to actual or threatened harmful conduct, or Metroparkusa.com has good faith belief that such action is necessary to (1) conform to the requirements of law or comply with governmental orders, court orders, or legal process served on Metroparkusa.com or (2) to protect and defend the property or rights of Metroparkusa.com, the users of its website or the public. This includes exchanging information with other companies and organizations for fraud protection and credit risk protection. If Metroparkusa.com should ever file for bankruptcy or merge with another company, we may sell the information you provide to us on the Metroparkusa.com website to a third party or share your personal information with the company we merge with.

**What are cookies? Why do we use them?**

Cookies are very tiny text files that are stored on your computer when you visit certain web pages that record your preferences. Metroparkusa.com uses cookies to keep track of what you have in your shopping cart and to remember you when you return to our store. They cannot harm your computer and they do not contain any personal or private information. You must accept cookies to shop at Metroparkusa.com.

**How do we protect information we collect?**

We offer secure web pages to collect certain kinds of user information and we store certain kinds of data in encrypted form. We follow reasonable technical and management practices to help protect the confidentiality, security and integrity of data stored on our system. While no computer system is completely secure, we believe the measures implemented by our web site reduce the likelihood of security problems to a level appropriate to the type of data involved. Metroparkusa.com's servers use Secure Sockets Layer (SSL), an encryption technology that works with Netscape Navigator, Microsoft Internet Explorer, Firefox, Safari, and AOL's browser, so that only Metroparkusa.com can read a customer's personal information.

**How long do we keep user information?**

We generally keep user data on our server or in our archives for as long as we reasonably need it. We may alter this practice according to changing requirements. For example, we may delete some data if needed to free up storage space. We may keep other data for longer periods if the law requires it. In addition, information posted in a public forum could stay in the public domain indefinitely.

Data management requests are administered in an orderly manner to the extent feasible and within our direct control. Note: we have greater control over recently collected data than for archived data. Once data is removed from the system and archived, it may not be feasible to accommodate specific requests. In those cases, our general data retention policy applies.

**Third party sites**

This Site contains links to third party websites, including sites of Travel providers that post last-minute content on this Site. Metroparkusa.com is not responsible for the privacy practices or the content of such websites. Your use of these third party websites is entirely at your own risk. When you click on a link in an Offer Detail, you are essentially taken to the originating Travel Provider's site. Any log in, booking or reservation you perform there are done directly with the Travel Provider.

**Your consent to this policy**

By using the Metroparkusa.com web site, you agree to this Privacy and Security Policy. This is our entire and exclusive Privacy and Security Policy and it supersedes any earlier version. Our Terms and Conditions take precedence over any conflicting Policy provision. We may change our Privacy and Security Policy by posting a new version of the policy on this page which it is your responsibility to review frequently.

**Legal disclaimer**

This Site operates AS-IS and AS-AVAILABLE, without liability of any kind. We are not responsible for events beyond our direct control. This Privacy and Security Policy is governed by California law, excluding conflicts of law principles. Any legal actions against us must be commenced in California within one year after the claim arose, or be barred.

**If you have a privacy question**

If you have a privacy question about the Metroparkusa.com web site, please email: Customer Service at info@Metroparkusa.com. Or write:

Metropark USA, Inc.,
Attn: Customer Security Department
532 Coral Ridge Pl
City of Industry, CA. 91746

Effective as of October 26, 2005